IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

ALISA WALTON,

      Plaintiff,

v.                                                                    Civil Action No. 3:25-cv-00535-S

LEE ZELDIN, Administrator, U.S.
Environmental Protection Agency,

      Defendant.

## **DEFENDANT'S RENEWED MOTION TO DISMISS**

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Tel: 817.252.5230
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

**Table of Contents**

I.      Introduction ................................................................................. 1

II.     Procedural Context ...................................................................... 2

III.    Background................................................................................... 3

IV.     Legal Standard ............................................................................ 5

V.      Argument and Authorities .......................................................... 6

     A.      The Amended Complaint fails to state a cognizable claim of
retaliation because the alleged retaliatory actions pre-date any
relevant EEO activity. .................................................................. 6

     B.      The Amended Complaint fails to state a claim for discrimination
because the alleged discriminatory employment actions do not clear
the *de minimis* threshold for an actionable employment action. .................. 9

          1.      The Amended Complaint does not plausibly allege that
Walton's 2021 performance rating was more than a *de
minimus* injury................................................................ 11

          2.      The Amended Complaint does not plausibly allege that
Walton's placement on a performance improvement plan was
more than a *de minimus* injury. ...................................... 15

VI.     Conclusion................................................................................... 17

# Table of Authorities

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................... 5, 6, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 5

*Bravo v. Kendall*,
2025 WL 965927 (W.D. Tex. Mar. 31, 2025) ............................ 11, 12

*Brazoria Cnty. v. E.E.O.C.*,
391 F.3d 685 (5th Cir. 2004) .......................................................... 6

*Dixon v. Garland*,
2024 WL 150509 (N.D. Tex. Jan. 12, 2024) ................. 11, 12, 13, 15

*Epple v. BNSF Ry. Co.*,
2018 WL 10374615 (N.D. Tex. Feb. 9, 2018) ................................. 7

*Fleming v. Methodist Healthcare Sys.*,
2024 WL 1055120 (W.D. Tex. Mar. 11, 2024) .......................... 10, 16

*Green v. Kijakazi*,
2024 WL 969703 (W.D. La. Mar. 6, 2024) ................................ 11, 12

*Hamilton v. Dallas Cnty.*,
79 F.4th 494 (5th Cir. 2023) ................................... 9-12, 15-16

*Harrison v. Brookhaven Sch. Dist.*,
82 F.4th 427 (5th Cir. 2023) ................................................ 9, 10-12

*Johnson v. McDonald*,
623 F. App'x 701 (5th Cir. 2015) ............................ 11, 13, 14, 15

*Lemonia v. Westlake Mgmt. Servs.*,
2023 WL 6878915 (5th Cir. Oct. 18, 2023) ............................. 15, 16

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ................................................................. 9, 12

*Oyekwe v. Rsch. Now Grp., Inc.*,
542 F. Supp. 3d 496 (N.D. Tex. 2021) ........................................ 5, 6

*Price v. Wheeler*,
834 F. App'x 849 (5th Cir. 2020) .................................................. 11

*Saketkoo v. Adm'rs of the Tulane Educ. Fund*,
31 F.4th 990 (5th Cir. 2022) .......................................................... 6

*Scott v. Performance Contractors Inc.*,
    95 F.3d 55, 1996 WL 460145 (5th Cir. Aug. 2, 1996) ................................................. 6, 8

*Thomas v. Exxon*,
    943 F. Supp. 751 (S.D. Tex. 1996) ................................................................................. 7

*Threat v. City of Cleveland*,
    6 F.4th 672 (6th Cir. 2021) .......................................................................................... 10

*Welsh v. Fort Bend Indep. Sch. Dist.,*
    941 F.3d 818 (5th Cir. 2019) ............................................................................... 11, 15

*Wilkiewicz v. City of Cibolo*,
    2025 U.S. Dist. LEXIS 116428 (W.D. Tex. Jun. 18, 2025) ......................................... 16

## Statutes

42 U.S.C. § 2000e-3(a) ......................................................................................................... 6

42 U.S.C. § 2000e-16 ........................................................................................................... 6

## Rules

Federal Rule of Civil Procedure 8(a)(2) .............................................................................. 5

Federal Rule of Civil Procedure Rule 12(b)(6) ......................................................... *passim*

# I.    Introduction

This an employment-discrimination case. The plaintiff, Alisa Walton, works as a Special Agent for the defendant, the Environmental Protection Agency. At this point in the proceedings, Walton's case concerns only two workplace events:

(1) her performance rating for fiscal year 2021, and

(2) her placement on a performance improvement plan in 2021.

In her lawsuit, Walton claims that those two events constitute discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. However, her Amended Complaint fails to state a claim for either retaliation or discrimination for the following reasons:

- *The Amended Complaint fails to state a <u>retaliation</u> claim*. The timing of events as alleged in the Amended Complaint preclude Walton from claiming that either her performance rating or performance improvement plan were retaliation. As set forth in the Amended Complaint, Walton received her 2021 performance rating and was placed on a performance improvement plan *before* she initiated the EEO complaint process. So, even taking the events in the complaint as true, neither her 2021 performance rating nor her performance improvement plan could have been retaliation for engaging in protected activity.

- *The Amended Complaint also fails to state a <u>discrimination</u> claim*. Neither Walton's placement on a performance improvement plan nor her performance rating can support a discrimination claim because neither of those employment actions impacted the terms, conditions, or privileges of Walton's employment as required to plead an employment action that is more than *de minimis*.

Accordingly, Walton's Amended Complaint should be dismissed in its entirety, under Rule 12(b)(6).

## II.    Procedural Context

This suit was previously pending in the United States District Court for the District of Columbia.[1] In that forum, the EPA moved to dismiss Walton's Amended Complaint in its entirety, and, alternatively, sought to transfer venue to the Northern District of Texas.[2] In its motion, the EPA explained that Walton had failed to exhaust her administrative remedies as to all claims, except two: (1) her claim challenging her FY2021 performance rating, and (2) her claim challenging her placement on a performance improvement plan in 2021.[3] With respect to those two claims, the Agency sought dismissal on the ground that Walton's Amended Complaint failed to state a claim of retaliation or discrimination.[4]

The District Court for the District of Columbia granted the EPA's motion to dismiss as to all but two of Walton's claims due to her failure to exhaust her administrative remedies.[5] Among the claims dismissed by the District of Columbia district court was Walton's claim that she was denied a performance bonus in 2021.[6] For the two claims that Walton did exhaust — her FY2021 performance rating and her 2021 placement on a performance improvement plan — the court made "no determination as to

---

[1] Compl. and Demand for Jury Trial, ECF No. 1.

[2] Def.'s Mot. to Dismiss Compl., or, in the Alternative, for Summ. J. and to Transfer Venue, ECF No. 9.

[3] *Id.* at 10.

[4] *Id.* at 13-17.

[5] Order, ECF No. 27; Mem. Op. 5-8, ECF No. 28.

[6] Mem. Op. 8 (grating "the defendant's motion to dismiss her unexhausted claims relating to the 2021 denial of a performance bonus . . . .").

whether Walton has stated a claim under Rule 12(b)(6)."[7] Instead, the court transferred those surviving claims to the Northern District of Texas.[8] Because the District Court for the District of Columbia did not reach the issue of whether the Amended Complaint failed to state a claim on either of the two remaining employment actions, the EPA respectfully renews its motion to dismiss before this Court.

### III.     Background[9]

Walton is employed as a Special Agent in the EPA's Office of Inspector General at a field office in Dallas, Texas. (Am. Compl. ¶¶ 1, 6, ECF No. 20-1.) She has worked in the Dallas field office since 2006 and was employed there at the time of the employment actions in question. (*Id.* ¶¶ 9-12; 26, 38-39.) She remains employed as a Special Agent. (*Id.* ¶ 1.)

On October 12, 2021, her supervisor, Garrett Westfall (the Assistant Special Agent in Charge of the Dallas Field Office), issued her a rating of "unacceptable" for the Fiscal Year 2021 performance period. (*Id.* ¶¶ 26, 41, 43.) When Walton questioned him about the basis for the rating, he cited her late submission of investigative reports, inaccuracies in her reports, errors in investigative memoranda, failing to document chain of custody, and lack of regular communication with her supervisor. (*Id.* ¶¶ 47-52.)

---

[7] Mem. Op. 10.

[8] Mem. Op. 10.

[9] Unless otherwise noted, the factual background is drawn from the allegations in the Amended Complaint and Demand for Jury Trial, ECF No. 21-1, which are assumed to be true solely for purposes of this motion to dismiss.

On November 10, 2021, Westfall issued Walton a Performance Improvement Plan. (Am. Compl. ¶ 55.) The purpose of a Performance Improvement Plan is to "give the employee an opportunity to demonstrate acceptable performance." (*Id*.)

*After* receiving the Performance Improvement Plan on November 10, 2021, Walton contacted an EEO counselor that same day regarding the performance improvement plan, the October 2021 "unacceptable" rating, and alleged "ongoing harassment." (*Id*. ¶ 61.)

On March 1, 2022, after determining that Walton had failed to improve her performance under the Performance Improvement Plan, her supervisor (Westfall) issued her a Notice of Proposed Removal. (Am. Compl. ¶ 64.) The deciding official on the proposed removal was a Deputy Assistant Inspector General (Thomas Roelke). (*Id*. ¶ 65.) On April 22, 2022, the deciding official issued a decision "not sustaining" the proposed removal. (*Id*. ¶ 72.) So Walton remained (and remains employed) as a Special Agent with EPA's Office of Inspector General. (*Id*. ¶ 1.)

Walton's job title, grade, hours, and salary were never impacted by either the performance rating or performance improvement plan. (Am. Compl. ¶¶ 1, 6.) Nonetheless, in the Amended Complaint, she speculates that the performance rating may have negatively impacted her in two ways. (Am. Compl. ¶¶ 54.) First, she opines that, if not for the low rating, "her supervisor or supervisors would have automatically signed off" on a performance bonus for fiscal year 2021. (Am. Compl. ¶53.) Second, she speculates that the rating is the reason she was not successful when attempting to apply for another position as a Special Agent — even though her complaint acknowledges that

her application was not accepted because she chose not to submit the required full-year

performance appraisal. (Am. Compl. ¶ 54.)

## IV.    Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way,

the applicable standard of pleading. It requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P.

8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds

upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

Although a complaint need not contain detailed factual allegations, the "showing"

contemplated by Rule 8 requires the plaintiff to do more than simply allege legal

conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 & n.3;

*accord Oyekwe v. Rsch. Now Grp., Inc.*, 542 F. Supp. 3d 496, 503 (N.D. Tex. 2021)

(Scholer, J.). Thus, while a court must accept all the factual allegations in the complaint

as true, it need not credit bare legal conclusions that are unsupported by any factual

underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions

can provide the framework of a complaint, they must be supported by factual

allegations."); *Oyekwe*, 542 F. Supp. 3d at 503.

The facts pleaded must allow a court to infer that the plaintiff's right to relief is

plausible. *Iqbal*, 556 U.S. at 678; *Oyekwe*, 542 F. Supp. at 502. To allege a plausible right

to relief, the facts pleaded must suggest liability; allegations that are merely consistent

with unlawful conduct are insufficient. *Iqbal*, 556 U.S. at 678; *Oyekwe*, 542 F. Supp. at

502. In other words, where the facts pleaded do no more than permit the court to infer the

possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 678; *Oyekwe*, 542 F. Supp. at 502. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

A motion to dismiss under Rule 12(b)(6) is based on the face of the complaint. *Scott v. Performance Contractors Inc.*, 95 F.3d 55, 1996 WL 460145, at *1 (5th Cir. Aug. 2, 1996). For purposes of such a motion, the plaintiff is "bound by the assertions made on the face of her complaint." *Id.*

## V.    Argument and Authorities

### A.    The Amended Complaint fails to state a cognizable claim of <u>retaliation</u> because the alleged retaliatory actions pre-date any relevant EEO activity.

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "*because* he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *See Saketkoo v. Adm'rs of the Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022) (cleaned up) (emphasis added).[10] Common sense dictates that "when an

---

[10] Title VII's public-sector provision, 42 U.S.C. § 2000e-16, contains no express anti-retaliation provision. With respect to private employees, section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Although not expressly provided in the statute, the Fifth Circuit has held that "§ 2000e-16 bars retaliation" against federal employees as well. *Brazoria Cnty. v. E.E.O.C.*, 391 F.3d 685, 690 (5th Cir. 2004).

adverse employment action occurs before the plaintiff engages in activity protected by Title VII," that adverse employment action could not possibly have been caused by the plaintiff's protected activity, so there can be no retaliation claim. *See, e.g., Thomas v. Exxon*, 943 F. Supp. 751, 763 (S.D. Tex. 1996) (granting summary judgment on a retaliation claim because the adverse employment action occurred before the plaintiff complained of discrimination).

Here, the Amended Complaint does not, and cannot, state a retaliation claim because Walton's protected activity (initiating the EEO complaint process) occurred *after* the employment actions about which she complains. Specifically, according to the Amended Complaint, Walton first sought EEO counseling on November 10, 2021, immediately *after* being placed on a Performance Improvement Plan earlier that day, which was *after* she had received her October 2021 performance rating:

> Walton initiated the EEO complaints process on November 10, 2021, over the PIP Westfall issued on November 10, 2021; the FY 2021 performance appraisal Westfall gave her; and the ongoing harassment to which she had been subjected . . . .

(Am. Compl. ¶ 61.) Based on that timing of events, there is no plausible retaliation claim because the challenged employment actions — the 2021 performance rating and the 2021 performance improvement plan — occurred before Walton's protected activity. "It is axiomatic that retaliation can not occur before the alleged protected activity." *Epple v. BNSF Ry. Co.*, No. 3:16-CV-1505-C, 2018 WL 10374615, at *3 (N.D. Tex. Feb. 9, 2018), *aff'd*, 785 F. App'x 219 (5th Cir. 2019). Walton's retaliation claim should, therefore, be dismissed for failure to state a claim, under Rule 12(b)(6).

**Defendant's Renewed Motion to Dismiss – Page 7**

The fact that the Amended Complaint makes a passing reference to an earlier instance of protected activity does not change that result. The Amended Complaint alleges in passing that, sometime in the past, Walton accused another Special Agent of racism. (Am. Compl. ¶ 13.) But in the section of her Amended Complaint that specifically lays out the basis for her retaliation claim, the Amended Complaint makes no mention of that earlier complaint about a co-worker. (Am. Compl. ¶¶ 115-123.) Rather, that section of the complaint explicitly identifies the relevant protected activity as the EEO complaint process Walton initiated on November 10, 2021:

> 115.)  Beginning on November 10, 2021, and continuing through the present, plaintiff has been continuously engaged in EEO activity protected under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3 (incorporated into 42 U.S.C. § 2000e-16(c)), with the initiation and pursuit of the administrative EEO complaints processes in EPA No. 2022-0009-R06, and pursuing her rights and remedies before the U.S. Equal Employment Opportunity Commission.

(Am. Compl. ¶ 115.) As noted above, a plaintiff "is bound by the assertions made on the face of her complaint," against which a motion to dismiss is judged. *Scott*, 1996 WL 460145, at *1. Because Walton's Amended complaint does not plead that any earlier instance of alleged protected activity caused the alleged retaliation in this case, she cannot rely on any such allegation to state a claim. Her retaliation claim must be dismissed under Rule 12(b)(6).

**B.    The Amended Complaint fails to state a claim for <u>discrimination</u> because the alleged discriminatory employment actions do not clear the *de minimis* threshold for an actionable employment action.**

Although the caselaw regarding what constitutes an actionable employment action has changed in the last several years, even under the current caselaw, not every workplace event that an employee dislikes can provide the basis for a federal-court lawsuit. Under the current standard, a plaintiff "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024).

The caselaw regarding actionable employment actions changed in this circuit in 2023, when the Fifth rejected its earlier "ultimate employment decision" test for an "adverse employment action" in favor of a less strict standard. *See Hamilton v. Dallas Cnty.,* 79 F.4th 494, 502 (5th Cir. 2023) (en banc). Although *Hamilton* lowered the "ultimate employment decision" threshold for adverse employment actions, it declined to provide a minimum standard for what constitutes an actionable "adverse employment action." *Hamilton,* 79 F.4th at 505 ("We thus leave for another day the precise level of minimum workplace harm a plaintiff must allege on top of showing discrimination in one's 'terms, conditions, or privileges of employment.'").

The Fifth Circuit provided further guidance the following month, when it issued its opinion in *Harrison v. Brookhaven School District*, 82 F.4th 427 (5th Cir. 2023). There, the Fifth Circuit explained that to state a discrimination claim, a plaintiff "must allege not only an adverse action, but something more than a *de minimis* harm borne of that action." *Harrison*, 82 F.4th at 431 (5th Cir. 2023) (citation omitted). That

requirement constitutes the "materiality" threshold, which the Fifth Circuit described as follows:

> To "discriminate" reasonably sweeps in some form of an adversity and a materiality threshold. It prevents the undefined word "discrimination" from commanding judges to supervise the minutiae of personnel management. It ensures that a discrimination claim involves a meaningful difference in the terms of employment and one that injures the affected employee.

*Id*. at 431 (quoting *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021)). As one district court explained, *Hamilton* lowered the bar, but *Harrison* ensured the lower bar did not "transform Title VII into a general civility code for the American workplace." *Fleming v. Methodist Healthcare Sys.,* SA-21-CV-01234-XR, 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2024) (quoting *Hamilton*, 79 F.4th at 504-05 (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998))). Even under the lower bar, "[t]he challenged action must not only 'involve[] a meaningful difference in the terms of employment' but also 'injure[] the affected employee.'" *Fleming*, 2024 WL 1055120, at *12.

So under the current state of the law, the question is this: does Walton's Amended Complaint allege facts that, if true, would show that she suffered a non-de minimis injury when she (1) received an "unacceptable" performance rating, or (2) was placed on a performance improvement plan? As explained below and in accordance with caselaw in this Circuit, the answer is "no."

1.    **The Amended Complaint does not plausibly allege that Walton's 2021 performance rating was more than a *de minimus* injury.**

The Fifth Circuit has long held that performance ratings do not constitute adverse employment actions under Title VII. *See, e.g.*, *Price v. Wheeler*, 834 F. App'x 849, 856 (5th Cir. 2020) ("Receiving a low performance evaluation does not alone constitute an adverse employment action").[11] Even after *Hamilton* and *Harrison*, district courts have continued to hold that a low performance evaluation is not an adverse employment action because a performance evaluation does not meet the materiality requirement. *See Bravo v. Kendall*, No. 5:22-CV-1186-JKP, 2025 WL 965927, at *32 (W.D. Tex. Mar. 31, 2025); *Dixon v. Garland*, No. 4:23-cv-00019-P, 2024 WL 150509, at *5 (N.D. Tex. Jan. 12, 2024); *aff'd*, No. 24-10215, 2024 WL 4948843 (5th Cir. Dec. 3, 2024); *Green v. Kijakazi*, No. CV 21-3938, 2024 WL 969703, at *8 (W.D. La. Mar. 6, 2024).

For example, in one of those recently issued cases, an employee of the federal Bureau of Prisons argued that receiving an "excellent" rating on her performance review (as opposed to an "outstanding" rating) constituted an adverse employment action because it affected her ability to receive raises. *Dixon*, 2024 WL 150509, at * 5. The district court flatly rejected that argument, calling it "uniquely absurd" for two reasons. *Id.* First, "'outstanding' reviews do not guarantee a raise." *Id.* (citing *Johnson v. McDonald*, 623 F. App'x 701, 704 (5th Cir. 2015) for the proposition that "performance

---

[11] *See also Welsh v. Fort Bend Indep. Sch. Dist.,* 941 F.3d 818, 824 (5th Cir. 2019) (citing cases for the proposing that a poor performance review is not an adverse employment action); *Johnson v. McDonald*, 623 F. App'x 701, 704 (5th Cir. 2015) (per curiam) ("[T]his court has held a low performance evaluation alone is not an adverse employment action, . . .").

pay is not automatic upon achieving a specific review rating"). Second, the court refused "to act as the BOP's super-personnel department" by scrutinizing "the specifics of standard performance reviews." *Dixon*, 2024 WL 150509, at *5. Relying on *Dixon*, another federal district court also refused "to scrutinize the specifics of standard performance reviews" because they "do not rise above the *de minimus* standard articulated in *Harrison*." *Green*, 2024 WL 969703, at *8.

Similarly, in a case issued earlier this year, the district court rejected the argument that a poor performance review, by itself, somehow makes a meaningful difference in the terms of employment or injures an employee. *Bravo*, 2025 WL 965927, at *32. "Plaintiff has not shown that her performance review brought about any disadvantageous change to any employment term or condition," the court reasoned. "Accordingly, under *Hamilton* and *Muldrow*, the review does not qualify as an adverse employment action." *Id.* (emphasis added).

In sum, poor performance evaluations do not rise above the *de minimus* standard necessary to state a claim.

Just like the plaintiffs in the three cases above, Walton cannot state a claim based on her performance rating because, based on the allegations in her Amended Complaint, her performance rating does not rise above the *de minimus* standard necessary to state a claim. The Court should, therefore, dismiss Walton's performance-evaluation claim for failure to state a claim, under Rule 12(b)(6).

Walton cannot avoid this result by pointing to passages in her complaint where she *speculates* that a higher performance rating would have resulted in a performance bonus

or a different job. (*E.g.*, Am. Compl. ¶ 54, 103.) The Fifth Circuit has specifically held

that a plaintiff cannot bring a claim based on a low-performance rating merely by making

bald assertions about how the rating might have impacted the plaintiff's pay or

promotions:

> Even assuming that a low evaluation coupled with other tangible effects is
> an adverse employment action, Johnson's complaint is unspecific on
> what—if any—effect the "low" ratings had. It baldly asserts that the "low"
> rating resulted in loss of "performance awards" and had a "negative impact
> on [his] ability to be promoted." The only fact supporting these allegations
> is that in 2010, when Johnson was rated "outstanding," he received a bonus.
> But that says nothing about Johnson's entitlement to an award in 2011 or
> 2012. *There is no indication that performance pay is automatic upon
> achieving a specified rating*. Nor does Johnson allege that individuals who
> were rated "outstanding" in those years received bonuses. Consequently,
> Johnson's allegation that he was denied performance pay is speculative at
> best.

*Johnson v. McDonald*, 623 F. App'x 701, 704-05 (5th Cir. 2015) (emphasis added); *see

also Dixon*, 2024 WL 150509, at *5 (ruling that plaintiff's bald assertions that her

performance review "materially impacted her ability to receive raises" was insufficient).

Here, Walton tries the same tactic that failed in *Johnson* and *Dixon*: she makes

two bald, speculative allegations about how her performance evaluation may have led to

some sort of harm. Specifically, she speculates that, *if* she had received a higher rating,

(1) "her supervisor or supervisors would have automatically signed off" on a performance

bonus; and (2) her application for another position as a Special Agent would not have

been rejected. (Am. Compl. ¶¶ 54, 103.) She identifies no facts to support her speculation

and neither allegation is sufficient to raise her performance rating above the *de minimis*

threshold.

**Defendant's Renewed Motion to Dismiss – Page 13**

The allegation about an alleged missed performance bonus is not sufficient for two reasons. First, the District Court for the District of Columbia already dismissed Walton's claim related to the allege denial of her performance bonus.[12] So Walton cannot rely on the missed performance bonus to show that her performance rating caused her more than *de minimus* harm. Second, the missed-performance-bonus allegation is purely speculative. Walton surmises that if she had received a different performance rating, her supervisors would have exercised their discretion to "sign off" on a performance bonus. (Am. Compl. ¶53.) However, the Amended Complaint cites no facts to indicate or identify any EPA policy or procedure that provides that bonuses are automatically tied to performance ratings. Nor does the Amended Complaint allege that all other employees who received the rating Walton sought in FY2021 received performance bonuses. As in *Johnson*, "[t]here is no indication that performance pay is automatic upon achieving a specified rating. Nor does [Plaintiff] allege that individuals who were rated 'outstanding' in those years received bonuses. Consequently, [Plaintiff's] allegation that [she] was denied performance pay is speculative at best." *Johnson v. McDonald*, 623 F. App'x at 704-05. Walton's speculative allegations about an alleged performance bonus therefore cannot save her claim from dismissal.

Walton's allegation about a rejected application for another Special Agent position is equally unavailing. (Am. Compl. ¶¶ 54.) The Amended Complaint itself explains that

---

[12] *See* Order ("The motion is granted for failure to exhaust claims based on the plaintiff's denial of a performance bonus, . . ."); Mem. Op. 8 (granting "the defendant's motion to dismiss her unexhausted claims relating to the 2021 denial of a performance bonus . . .").

the reason her application was rejected is not because of her 2021 performance rating but because she chose to submit an incomplete application. Specifically, she chose to submit only a partial-year performance appraisal, even though "[a]n application for a position as a Special Agent must be accompanied by the applicant's most recent Full Year performance appraisal." (Am. Compl. ¶ 54.) She cannot tie her FY2021 performance rating to any non-de minimus harm.

Just like the plaintiffs in *Johnson* and *Dixon*, Walton's allegations about how her performance rating impacted her employment are "speculative at best." *Johnson*, 623 F. App'x at 704. Her speculative allegations, like those rejected in *Johnson* and *Dixon*, are insufficient to state a claim. Walton's discrimination claim regarding her FY2021 performance evaluation should therefore be dismissed under Rule 12(b)(6).

### 2. The Amended Complaint does not plausibly allege that Walton's placement on a performance improvement plan was more than a *de minimus* injury.

The Amended Complaint also fails to state an actionable discrimination claim regarding Walton's 2021 placement on a performance improvement plan. Fifth Circuit and lower courts within the circuit have held that mere placement on a performance improvement plan alone does not constitute an adverse employment action — both before and after *Hamilton*. *See Lemonia v. Westlake Mgmt. Servs.*, No. 22-30630, 2023 WL 6878915, at *7 (5th Cir. Oct. 18, 2023) ("[T]he district court did not err to the extent the court concluded that [the plaintiff's] placement on a PIP, without more, did not constitute an adverse employment action."); *Welsh*, 941 F.3d at 824 ("An employer's decision to place an employee on a performance improvement plan is not an adverse employment

action."); *Wilkiewicz v. City of Cibolo*, No. 5:24-cv-01471, 2025 U.S. Dist. LEXIS 116428, at *7-8 (W.D. Tex. Jun. 18, 2025) (finding that the plaintiff "insufficiently alleged an adverse employment action" because his placement on PIP did not constitute an adverse action post-*Hamilton*, given that he failed "to demonstrate how the plan affected his title, hours, salary, benefits, or reputation"); *Fleming v. Methodist Healthcare Sys.*, No. SA-21-CV-01234, 2024 WL 1055120, at *13 (W.D. Tex. Mar. 11, 2024) ("Even after *Hamilton*, the Fifth Circuit has confirmed that written reprimands, placement on a performance improvement plan ('PIP'), and other corrective or remedial measures do not constitute adverse employment actions unless they 'affect job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers.'"). To be actionable, the PIP must negatively affect the employee's job title, hours, grade, salary, or benefits. *See Lemonia*, 2023 WL 6878915 at *7 n. 2 (holding that summary judgment for the employer was on "solid footing" where the employee failed "to show that his PIP affected his employment").

Here, as in *Lemonia* and *Wilkiewicz*, the Amended Complaint fails to allege that Walton's placement on a performance improvement plan in 2021 negatively affected her job title, hours, grade, salary, or benefits. Tellingly, the Amended Complaint does not allege that placement on the plan changed any of those aspects of Walton's employment as a Special Agent. To the contrary, the Amended Complaint acknowledges that Walton's job title, grade, hours, and salary were never impacted by the performance improvement plan. (Am. Compl. ¶¶ 1, 6.) In addition, the Amended Complaint acknowledges that aim of a PIP is to improve an employee's performance:

> A PIP is designed to give an employee notice that his or her performance is
> not at the Minimally Successful level in one or more of the Critical
> Elements in his or her Performance Plan provide them with specific
> examples of deficient performance, specific assignments, and clear
> directions how to succeed and schedule regular in-person mentoring. The
> aim of a PIP is improving an employee's performance, . . . . .

(Am. Compl. ¶ 55.) Because the Amended Complaint does not allege any facts showing

that the performance improvement plan negatively affected Walton's job title, hours,

grade, salary, or benefits, her placement on the performance improvement plan

insufficiently alleges an adverse employment action.

* * *

In sum, the Amended Complaint does not state a claim for discrimination. It does

not plausibly allege facts showing that either the FY2021performance rating or 2021

placement on a performance improvement plan caused Walton anything more than *de

minimus* injury. Walton's conclusory and speculative allegations cannot change this

result.

## VI.    Conclusion

The Amended Complaint is ripe for dismissal for failure to state a claim under

Rule 12(b)(6). Because Walton has already taken advantage of the opportunity to amend

her complaint, the Court need not provide Walton another opportunity to amend before

dismissing the Amended Complaint.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Tel: 817.252.5230
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

<u>Certificate of Service</u>

On July 16, 2025, I electronically submitted the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court. I hereby certify that I have served all parties electronically or

by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrea Hyatt*
Assistant United States Attorney