# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| ALISA WALTON, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Civ. Action No. 3:25-cv-00535-S |
| | ) | |
| LEE ZELDIN, | ) | |
|   Administrator, U.S. Environmental | ) | |
|   Protection Agency, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## APPENDIX IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO DISMISS

| Page Nos. | Description |
|---|---|
| 3-16 | EEO Counselor's Report, Case No. 2022-0009-R06 |
| 17-22 | Formal Complaint, Case No. 2022-0009-R06 |
| 23-28 | March 1, 2022 Notice of Proposed Removal for Unacceptable Performance |
| 29 | May 9, 2022 email from Alisa Walton |
| 30 | May 10, 2022 email from Alisa Walton |
| 31-42 | Affidavit of Marc A. Perez |
| 43-51 | Affidavit of Sean Earle |
| 52-88 | Affidavit of Garrett J. Westfall and documents submitted with the affidavit |
| 89-98 | Affidavit of Thomas Roelke and documents submitted with the affidavit |
| 99-102 | May 22, 2022 Statement of Amended Claims |
| 103-130 | Affidavit of Alisa Walton |
| 131-138 | March 17, 2022 Reply to Notice of Proposed Removal |

Respectfully submitted,


s/ Robert C. Seldon
Robert C. Seldon, Esq.
 D.C. Bar No. 245100

Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
Phone: (202) 393-8200
Fax: (202) 318-2287

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Fax: (972) 777-6951
Email: don.uloth@uloth.pro


Counsel for Plaintiff


**<u>CERTIFICATE OF SERVICE</u>**


I hereby certify that on this 6th day of August, 2025, I served a copy of this document by email to:

Andrea Hyatt
Assistant United States Attorney
Burnett Plaza, Suite 1700
801 Cherry Stret, Unit #4
Andrea.Hyatt@usdoj.gov


 /s/ Donald E. Uloth
Donald E. Uloth

App 002

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C. 20460**

OFFICE OF
CIVIL RIGHTS

# EEO COUNSELOR'S REPORT

# CASE NUMBER: 2022-0009-R06

REQUIRED ELEMENTS OF THE EEO COUNSELOR'S REPORT

### A.    AGGRIEVED INDIVIDUAL INFORMATION

1. Name: Alisa Walton

2. Job Title/Series/Grade: Special Agent, GS-1811-13

3. Place of Employment: Environmental Protection Agency, Region 6 (Dallas TX), Office of Inspector General/Investigations

4. Work Phone Number: 214-665-3135

5. Home Address: 929 Cherry Hill Lane Desoto TX 75115

6. Home Phone Number: 214-287-1551 cell

7. E-mail Address: Walton.alisa@epa.gov

### B.    AGGRIEVED INDIVIDUAL'S REPRESENTATIVE INFORMATION

1. Name: Molly E. Buie

2. Title: Esq.

3. Address: Seldon Bofinger & Associates, P.C., 1319 F Street, NW, Suite 200 Washington, D.C. 20004

4. Phone Number: Telephone: (202) 393-8200; Cell: (202) 841-5038; Fax: (202) 318-2287

5. E-mail Address: meb@sba-pc.com

### C.    CHRONOLOGY OF COUNSELING EVENTS

1. Date of Initial Contact: November 10, 2021

2. Date of Initial Interview: December 3, 2021

3. Date(s) of alleged discriminatory event(s): November 10, 2021

4. Date ADR Offered:

    a. ADR Accepted Date or: December 1, 2021
    b. ADR Rejected Date:

5. Date Mediation Occurred: Mediation did not occur. OIG management conveyed via their attorneys that they would not be willing to participate in mediation.

    a. Outcome of mediation: n/a

6. Date Extension Granted (if applicable): n/a

7. Date of the Final Interview: February 1, 2022 (via email)

8. Date Notice of Right to File Issued: February 1, 2022

## D.    **CLAIM (BASES AND ISSUES)**

Counselee indicates she has been subjected to a history of discrimination on the bases of race (African American) and sex (female) with the most recent incident being placed on a performance improvement plan on 11/10/21 after receiving a low rating on her annual performance appraisal (10/13/21), despite positive feedback on tangible work products and a track record of high performance ratings.

## E.    **SUMMARY OF INTERVIEW WITH AGGRIEVED**

The following is a series of events leading up to the Counselee contacting the EEO office on November 10, 2021, for discrimination on the bases of race (African American) and sex (female). The Counselee has worked at the agency for 16 years. Her current position is as an investigator in the Office of the Inspector General. Her annual performance each year has typically been rated as fully successful or exceeds fully successful.

### FY2019
In fiscal year 2019 she earned a performance rating of 4.0 out of 5.0 from her supervisor Edwin D. who had been her supervisor for a number of years (5+ years). They both work out of the Dallas office. Around April 2019, her second line supervisor in the Chicago office, Mike Fiore, placed her a 30-day PIP for not uploading documents by a certain date. She uploaded the documents sooner than the 30-day PIP period ended. And was therefore off the PIP after the 30-day period spanning from April 19 to May 24. Her direct supervisor, Edwin was not aware that Mike had placed her on a PIP until she herself informed Edwin of what had happened. Based on her overall performance for the year, Edwin rated her performance as a 4.0 (fully successful) for FY19 even though she had been on a PIP for 30 days in April/May for the reason described above.

The Counselee suspects that Mike F. who placed her on the PIP in 2019 and who is no longer with the agency was under a lot of pressure from his colleague Sean Earle to take certain actions possibly including placing her on the PIP in 2019. Mike had previously stated to the Counselee to watch out because Sean feels like women do not belong in law enforcement and when Sean realizes he is getting under your skin he digs deeper. Counselee is the only African American female in IG investigations. The Counselee did not provide information about whether non-female and non-African American staff are treated this way (i.e. placed on 30-day PIPs) for slight delays in uploading of documents.

The Counselee alleges that the culture in the office is such that people talk about Sean and his personality with a sense of fear and fear of retaliation from him unless they go along with his preferences even if he is not a superior but an equal colleague as was the case with Mike F. Sean has since been promoted a couple of times. Even her current supervisor Garrett has suggested to her if she gets into a conversation alone with Sean and it seems to escalate for her to be very polite and indicate she would like to take a moment to get Garrett on the phone with her and Sean.

### FY2020
In fiscal year 2020 her supervisor (Edwin) rated the Counselee's performance at 4.33 out of 5.0 before he retired in June 2020. On June 22, 2020, Dan Hawthorne took over as her acting supervisor. On August 4, 2020, Garrett Westlake took over as her first line supervisor. On November 6, 2020, Dan and Garrett jointly changed her FY20 performance rating from the 4.33 that Edwin had rated her down to a 3.0. The two of them had not been supervising her for more than 90 days at that point when they downgraded her to a 3.0. Note: the performance and fiscal year end on September 30. Counselee suspects they downgraded her rating for the following reason. During the time that Dan was her supervisor one day she was working from home and stepped away from her computer to do a breathing treatment when she happened to miss call and email from Dan. Afterward Dan asked her to call his supervisor Alan to explain why Dan was not able to get in touch with her. She called Alan and did so. The Counselee did not provide information about whether non-female and non-African American staff are treated this way (i.e. asked to call second line supervisors to explain themselves for short absences for taking bio-breaks). The Counselee did not provide information about whether non-female and non-African American staff are downgraded on their performance evaluations for being unreachable during short bio-breaks, such as stepping away for a breathing treatment (later she found out she had COVID).

### FY2020
Since Garrett took over as her supervisor, he has told her that Edwin, her previous supervisor, did her a disservice and did not properly train her. She has indicated she is simply doing her job the way she was told to do it in the way they had been doing it there in the Dallas office. Garrett has different preferred procedures on various tasks e.g. evidence and handling than what they had been doing prior to Garrett's arrival which do not align with how Edwin had her do certain tasks. She notes that she inherited cases from a retired agent and since then two additional agents have been hired so there are total of three agents in the Dallas office. The Counselee did not provide information about whether her new supervisor had offered her new training on methodology for doing tasks according to new supervisor preferences.

Counselee has stated that when she meets one-on-one with Garrett, if he does not know the answer to a question, he sometimes badgers her with additional questions i.e. he continues to ask the same question in different ways. She indicates when she doesn't know the answer to a question, she will get back to him. The Counselee did not provide information about whether non-female and non-African American staff are treated this way (i.e. badgered with questions or allowed to follow up with answers later). She does not feel Garrett is particularly supportive of her, although she acknowledges he did indicate when she needed to attend a funeral that the funeral is more important than the meeting he had with her so they rescheduled the meeting. Additionally, Garrett has been critical of her written reports. On October 13, 2021 Garrett has rated her performance at 1.66 and on November 10, 2021, he placed her on a PIP due to her low performance rating. This is the day she contacted the EEO office to file her complaint.

On September 21, 2021, Staci Gurin came onboard as the first line supervisor. However, Garrett has indicated he will continue to act as the Counselee's supervisor during the 45-day PIP period, which started on November 10, 2021. Staci has very recently reached out to ask what the Counselee's retirement eligibility date would be. Counselee will be eligible to retire in four years August 2026, at which point she will have 20 years of service as an 1811 (law enforcement officer/investigator); 20 years of service are required for her to earn her law-enforcement pension. Counselee felt it is not right for management to be asking when she will be retirement eligible. Counselee is worried they may be aiming to attempt to terminate her before she reaches her 20 years of service. The Counselee did not provide information about whether non-female and non-African American staff are subjected to questioning about their retirement status.

### Additional Info

Counselee stated that Dan and Sean have seemed close with each other in the past and Dan and Garrett have seemed close with each other, personally, so it feels like they are setting her up to fail by first downgrading her performance in FY20 and now giving her a low performance rating for FY21 and an associated PIP.

The table below shows the breakdown of her recent ratings. For the communications and results categories Garrett rated her a zero. In conversation he said she had earned a value of 1.0 for each of those categories but in cases where the rating is equal to 1.0 it is rounded down to 0.0 hence her average score of 1.66. She cites specific positive feedback on communications and tangible results during the review which are documented in her reading performance rating and which are included in her review write-up given to her by her supervisor.

| Supervisor (fiscal year) | Edwin (initial FY20) | Garrett & Dan (downgraded FY20) | Garrett (FY21) |
|---|---|---|---|
| Leadership | 4 | 4 | 3 |
| Communications | 4 | 2 | 1 rounded down to 0 |
| Results | 5 | 3 | 1 rounded down to 0 |
| Teamwork | 5 | 3 | 2 |
| Customer Service | 4 | 3 | 3 |
| Resource Management | 4 | 3 | 2 |
| **Overall Rating** | **4.33** | **3.0** | **1.66** |

The other two new investigators in the Dallas office who were hired during the pandemic are male-Paul Guillory and Brett Nelson. The Counselee did not provide information about whether her non-female and non-African American colleagues received similar performance ratings (i.e. based on rounding 1 down to 0, etc).

Overall, the Counselee indicates she has been subjected to a history of discrimination and harassment (hostile work environment) on the bases of race (African American) and sex (female) as detailed collectively in the events described above. The Counselee did not provide any specific instances of her colleagues who are not African American female have been treated in a similar manner. The Counselee alluded to having knowledge of African American colleagues who have had issues with discrimination over the years.

### F.  REMEDY REQUESTED/INFORMAL RESOLUTION ATTEMPTS

In terms of a remedy, the Counselee indicated her performance ratings should be corrected to reflect a fair performance review rating of fully successful or exceeds fully successful based on her performance during FY2021. She seeks a remedy to have her current performance rating revised and the 1.66 for FY21 stricken from her record as well as the FY20 downgraded rating of 3.0 removed from the record and replaced with the 4.33 from her supervisor Edwin for FY20, since he was her supervisor for the majority of the FY20 time-period. Additionally, the Counselee would like the opportunity to do a detail to another office (outside of EPA OIG) to work out her remaining years to get to a total of 20 years of service as a 1811 law enforcement officer to earn her full pension.

### G.  RESPONSIBLE MANAGEMENT OFFICIAL (RMO)

1. Name: Garrett Westfall

2. Job Title: Special Agent in Charge Western Region Field Office

3. Place of Employment: Dallas TX

4. Work Phone Number: 214-665-2249

5. E-Mail Address: Westfall.Garrett@epa.gov

6. Supervisory Relationship to Aggrieved: Counselee explained that while Staci Gurin who started in September 2021, is technically her new direct supervisor, Garrett Westfall is continuing to act as the Counselee's supervisor during her time on the PIP.

7. Role in Alleged Discriminatory Incident: Person who evaluated the Counselee's performance giving her a low rating and placing her on a PIP.

H.    **SUMMARY OF INTERVIEW WITH THE RMO**

No RMO interview since Counselee opted for mediation.

I.    **ADDITIONAL INTERVIEWS**

n/a

J.    **FINAL INTERVIEW**

Email sent on February 1, 2022, with Notice of Right to File a Formal Complaint; Counselee signed and returned acknowledgement of receipt of notice of right to file on February 2, 2022

K.    **MISCELLANEOUS**

| | YES | NO |
|---|---|---|
| **Anonymity Waived** | ☑ | ☐ |
| **Member of Bargaining Unit** | ☐ | ☑ |
| **Union Grievance Filed** | ☐ | ☑ |
| **Administrative Grievance Filed** | ☐ | ☑ |
| **MSPB Appeal Filed** | ☐ | ☑ |
| **If applicable, Aggrieved was advised of alternative procedures (Age, Equal Pay Act, and** | ☐ | ☐ |

– 6 –

00012

**Non-Title VII complaints)***      **(not applicable)**

*\*For Age complaints, refer to item 8 on the Rights & Responsibilities letter*
*For Equal Pay Act complaints, refer to item 9 on the Rights & Responsibilities letter*
*For Non-Title VII (sexual orientation, marital/parental status, political affiliation) provide*
*the Aggrieved with Information Sheet*


____Jennifer Liljegren_____
Name of EEO Counselor


2/14/2022


X  Jennifer Liljegren
_____
Jennifer Liljegren

Signed by: Liljegren, Jennifer
_____
Signature of EEO Counselor      Date


__312-886-6832_____
Telephone Number of EEO Counselor


ATTACHMENTS
    1. Signed Notice of Rights and Responsibilities
    2. ADR Election or Extension Form
    3. Notice of Final Interview
    4. Intake Form



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

**WASHINGTON, D.C. 20460**

OFFICE OF CIVIL RIGHTS

# NOTICE OF RIGHTS AND RESPONSIBILITIES

I acknowledge receipt of the Notice of Rights and Responsibilities:

Alisa Walton

_____
Printed Name

ALISA WALTON   Digitally signed by ALISA WALTON
Date: 2021.11.29 17:56:52 -06'00'

_____          _____
Signature                                                              Date

6



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

**WASHINGTON, D.C. 20460**

**OFFICE OF
CIVIL RIGHTS**

**Date:** 12/1/2021

<u>MEMORANDUM</u>

**From:**   Jennifer Liljegren

**To:**   Alisa Walton

**Subject:** Election Form - Alternative Dispute Resolution (ADR)

**Case Number:** 2022-0009-R06

As an employee or applicant for employment with the U.S. Environmental Protection Agency (EPA), you have been advised that you may request to participate in the ADR process to seek resolution of these matters.  Mediation is the ADR technique that the Agency will make available to resolve allegations. If you would like your concerns to be mediated using ADR, please be advised that:

1.   Your decision to participate in ADR is voluntary.

2.   Your request for ADR will be reviewed and, if accepted by the Agency, will be scheduled and completed within 90 calendar days of your initial complaint contact.

3.   All discussions during ADR are confidential.

4.   Statements made in ADR may not be used as evidence should you elect to file a discrimination complaint.

5.   Reasonable accommodation requests for ADR should be made when requesting ADR.

– 1 –

6.    You are entitled to representation throughout the EEO Complaint process, including ADR.

You retain the right to file a discrimination complaint on any and all allegations raised during counseling and not resolved during ADR.

In the event a resolution is not reached during mediation, you will be issued a Notice of Final Interview and will have 15 calendar days from receipt to file a discrimination complaint.

\_\_\_\_X\_\_\_\_ YES. I request to participate in mediation to seek resolution of the matters raised.

_____ NO. I do not request to participate in mediation. I will participate in EEO pre-complaint counseling to seek resolution of the matters raised.


_____        _____
Signature                                                                      Date


Please see Optional Questions below:

– 2 –

[OPTIONAL] We are requesting your response to the following questions to help us improve our services.

1.    Please describe your reason for your choice to participate or not to participate in mediation:

_____
_____
_____

2.    Have you participated in mediation before?  YES  / NO
                                                                              ☐        ☐
            If YES, was it for an EEO matter?  YES / NO
                                                                              ☐        ☐

3.    Was the Mediation process explained clearly enough to help you make an election decision?  YES / NO
            Comments:_____

_____
_____

3

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
OFFICE OF CIVIL RIGHTS
EEO INTAKE FORM

---

**EEO CASE #:** *2022-0009-R06*

### A) AGGRIEVED'S INFORMATION

| | |
|---|---|
| 1. FULL NAME **Alisa Walton** | 2. WORK PHONE *(including area code)* **214-665-3135**<br><br>HOME PHONE *(including area code)* 214-287-1551 cell |
| HOME STREET ADDRESS (OR POST OFFICE BOX NUMBER)<br>929 Cherry Hill Lane | EMAIL ADDRESS *(Preferred email address for correspondence and other info)*: Walton.alisa@epa.gov |
| CITY      STATE      ZIP CODE<br>Desoto   TX      75115 | 3. TITLE, SERIES, AND GRADE: Special Agent, GS-1811-13 |

**4. EMPLOYMENT STATUS IN RELATION TO THIS COMPLAINT**

☑ Current Employee           ☐ Other: (e.g., Contractor, SEEP, Research Associate)

☐ Applicant      _____

| 5. WORK LOCATION: | 6. LOCATION WHERE DISCRIMINATION OCCURRED: |
|---|---|
| OFFICE/DIVISION/BRANCH/SECTION:<br>Environmental Protection Agency<br>Office of Inspector General/Investigations | A. OFFICE/DIVISION/BRANCH/SECTION<br>SAME |
| B. STREET ADDRESS/MAIL CODE: OIG-WRFO U.S. 1201 Elm Street, Suite 500, | B. STREET ADDRESS/MAIL CODE: |
| C. CITY     STATE     ZIP CODE<br>Dallas    Texas    75270-2102 | C. CITY     STATE     ZIP CODE |
| 7. NAME OF REPRESENTATIVE *(If applicable)* | 8. TYPE OF REPRESENTATIVE<br>☐ Attorney      ☐ Non-Attorney |
| 9. REPRESENTATIVE'S ADDRESS | 10. REPRESENTATIVE'S PHONE NUMBER<br><br>N/A |
| | 11. ANONYMITY WAIVED<br>☑ Yes      ☐ No |

### B) COMPLAINT INFORMATION

| 12. DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE: November 10, 2021 | 13. INITIAL CONTACT DATE: 11/10/2021 |
|---|---|

**14. WHICH BASES APPLY - SPECIFY/DESCRIBE EACH BASIS**

☑ **RACE:**  African American  -

☐ **COLOR:**

☐ **RELIGION:**

☑ **SEX:**  Female

☐ **NATIONAL ORIGIN:**

☐ **AGE:**

☐ **DISABILITY:**

☐ **RETALIATION:**

☐ **GENETIC INFO:**

☐ **MARITAL STATUS:**

☐ **PARENTAL STATUS:**

☐ **SEXUAL ORIENTATION:**

☐ **POLITICAL AFFILIATION:**

**15. BRIEFLY DESCRIBE THE INCIDENT OR PERSONNEL ACTION THAT PROMPTED THE AGGRIEVED TO REQUEST COUNSELING**

 Aggrieve alleges discrimination bases on Race (African American) and Gender (female).  The Aggrieved alleges a history or discrimination with the most recent incident occurring on November 10, 2021 when she rated 1.66 in her EPARS on October 13, 2021 and was placed on a performance improvement plan (PIP). The Aggrieved alleges that as early as April 2019 she has been subjected to discrimination by upper management when she was placed on a PIP. Prior to being placed on the PIP her second line supervisor (Mike F) told her first line supervisor (Edwin D) to no longer supervisor her day-to-day activities/assignments (although they were in the same office) because the second line supervisor would now supervise her. The first line supervisor continued to supervise other individuals in various offices. The Aggrieved believes the action of removing the previous first line supervisor was a set up so she would not be able provided guidance/assistance, if need.

The Aggrieved stated due to her first line supervisor (Edwin D) retiring in June 2020, she received Early Closeout EPARs and was rated 4.33. In November 2020, after the rating period, the Aggrieved received another rating of 3.0 from her new supervisor, who began employment with the EPA-OIG-OI, July 2020. The Aggrieved downgrades were based on the Aggrieves' delayed response by 30 minutes to an email and phone call due to being ill with COVID.  The aggrieved alleges that the downgrade laid the groundwork to ultimately take the action on 11/10/2021.

The Aggrieved alleges the lower ratings she received were subjective and not a requirement.  Aggrieved alleges that she is being held accountable for past practices and procedures and assignments that she was not responsible for and she should be given the opportunity to learn these processes.

The Aggrieved stated on numerous occasions her current supervisor has stated she was not properly

EEO INTAKE FORM                    00019                    Counselor's Report

This statement was placed in the EPARS section of *Results Orientation* "Due to an upgraded transition and limitations of the electronic case management system, the analytics involving the performance measures for Results Orientation were unquantifiable, and as such, will not be used as a basis for rating the performance standard."  The Aggrieved states that without the electronic case management system properly documenting, the percentage of her work products were input in the system on time is not accurate.

The Aggrieved was also informed by a supervisor that his superior constantly "pick" on people of color and did not believe women belong in law enforcement. The supervisor also stated that once the individual realize he is getting under your skin he digs deeper and gets a kick out of it.

The Aggrieved has been advised by several managers to watch out for upper management as all blacks have had issues and her day is coming.

---

**16. REMEDY REQUESTED**

A new supervisor intervention, outside monitoring until I retire or leave EPA OIG.  A monetary award for years of unfair and disparate treatment.

| **17. OFFER ADR** <mark>Very interested in ADR</mark> | **18.** *(reserved for future use)* |
|---|---|
| ☑ Yes ☐ No | |
| **19. INTAKE CONDUCTED BY:** Dorothy Whaley | **20. INTAKE DATE:** November 10, 2021 |
| **21. NAME OF COUNSELOR ASSIGNED:** Jennifer Liljegren | **22. DATE ASSIGNED** November 17,2021 |

ADDITIONAL INFORMATION (AS NEEDED)

EEO INTAKE FORM                    00020                    Counselor Report 006



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C. 20460**

OFFICE OF
CIVIL RIGHTS

## COMPLAINT OF DISCRIMINATION IN THE FEDERAL GOVERNMENT
### BECAUSE OF
### RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, DISABILITY, RETALIATION or GENETIC INFORMATION
*(Please type or print)*

| | |
|---|---|
| 1.  YOUR (COMPLAINANT=S) FULL NAME:<br><br>Alisa Walton | 2.  WHAT IS YOUR TELEPHONE NUMBER INCLUDING AREA CODE?<br><br>HOME PHONE:  214-529-3841 |
| STREET ADDRESS (OR POST OFFICE BOX NUMBER)<br><br>1201 Elm St #500 | WORK PHONE:<br><br>214-287-1551 |
| CITY            STATE            ZIP CODE<br><br>Dallas, TX 75270 | 4.  ARE YOU NOW WORKING FOR THE FEDERAL GOVERNMENT?<br>☑ Yes (Answer A, B, C, and D below)<br>☐ No (Go to Question # 5) |
| 3.    WHICH FEDERAL OFFICE DO YOU BELIEVE DISCRIMINATED AGAINST YOU?<br>*(Prepare a separate complaint form for each office.)* | A. NAME OF AGENCY WHERE YOU WORK:<br><br>US Environmental Protection Agency |
| A. NAME OF OFFICE WHICH YOU BELIEVE DISCRIMINATED AGAINST YOU:<br>Office of Inspector General, Office of Investigations | B. STREET ADDRESS OF YOUR AGENCY: |
| B. STREET ADDRESS OF OFFICE:<br><br>1201 Elm St. #500 | C. CITY            STATE            ZIP CODE |
| C. CITY          STATE          ZIP CODE<br>Dallas, TX 752020 | D.  WHAT IS THE TITLE, SERIES, AND GRADE OF YOUR JOB?<br><br>Special Agent, GS1811-13 |
| 5.  DATE ON WHICH MOST RECENT ALLEGED DISCRIMINATION TOOK PLACE:<br>MONTH: 11        DAY: 10        YEAR: 2021 | 6.  NAME AND ADDRESS OF REPRESENTATIVE:<br>Molly E. Buie, Esq., 1319 F Street, NW, Ste 200, Washington, D.C. 20004 |

7. CHECK BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST. (Check all that apply and specify/describe the basis. For example if you check the race box, provide your race, if you check the age box, provide your date of birth on the line provided):

| | |
|---|---|
| ☑ Race:      African American | ☐ Age*: |
| ☑ Color:       Black | ☐ Disability: |
| ☐ Religion: | ☑ Retaliation:   Filed EEO Cplt in 2015 |
| ☑ Sex:      Female | ☐ Genetic Information: |
| ☐ National Origin: | *(*Complaints of discrimination because of age apply only to employees or applicants who are at least 40 years of age at the time of the alleged discriminatory actions.)* |

8.  EXPLAIN HOW YOU BELIEVE YOU WERE DISCRIMINATED AGAINST (TREATED DIFFERENTLY FROM OTHER EMPLOYEES OR APPLICANTS) BECAUSE OF YOUR RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, DISABILITY, OR RETALIATION. *(For each allegation, please state to the best of your knowledge, information and belief what incident occurred and when the incident occurred.  Use a separate sheet of paper and attach to the Complaint form.)* (SEE ATTACHED)

| | |
|---|---|
| 9(a).   I HAVE DISCUSSED MY COMPLAINT WITH AN EEO COUNSELOR<br>☑ Yes      ☐ No | 9(b).  NAME OF COUNSELOR:<br><br>Jennifer Liljegren |

10.  WHAT CORRECTIVE ACTION ARE YOU SEEKING?  *(If additional space is needed, use separate sheet.)*

(See Attached)

| | |
|---|---|
| 11. DATE OF THIS COMPLAINT<br><br>February   15th              2022 | 12.  SIGN YOUR (COMPLAINANT=S) NAME HERE:<br><br>*Alisa Walton* |

0000                                             Formal Complaint
Page 1 of 6

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C. 20460**

OFFICE OF
CIVIL RIGHTS

**DISCRIMINATION COMPLAINT FORM**

EXPLANATION FOR QUESTION # 8

See attached page.

EXPLANATION FOR QUESTION # 10

I am seeking for each of the critical elements in the FY 2020 Interim rating provided by Garrett Westfall/Dan Hawthorne to be changed to "Exceeds Fully Successful;" and all critical elements and the overall rating for my FY 2021 performance rating to be increased to reflect my actual performance of "Exceeds Fully Successful." I am seeking retroactive payment for any monetary bonus, time off award, step increase, or other benefit that I would have received had I been rated at the "Exceeds Fully Successful" level for FY 2021. I am also seeking to have all records of the lowered performance appraisal removed from my official and unofficial personnel records and all other federal records. In addition, I am seeking to have the 2019 and 2021 Performance Improvement Plans (PIPs), and all documents that refer or relate toboth PIPs, removed from my official and unofficial personnel records and all other federal records.

I am seeking to be reassigned to a non-hostile work environment, outside the chain of command of the management officials who have been named in my complaint, to an 1811 position that commensurates with my background, skills, abilities, and current grade level.

I am seeking the maximum amount available under the law for the emotional distress, pain and suffering, embarrassment, and harm to my reputation the agency's acts have caused. I am also seeking payment of my attorneys' fees and costs.

**READ CAREFULLY**

< You may have a representative of your choice at all stages of the discrimination complaint process.

< This form should be used only if you, as a federal employee, or as an applicant for federal employment, think you have been discriminated against because of your race, color, religion, sex, national origin, age, disability, or retaliation by a federal agency and have presented the matter for informal resolution to an Equal Employment Opportunity (EEO) Counselor within 45 calendar days of the date the incident occurred, or if a personnel action, within 45 calendar days of its effective date.

< If the matter has not been resolved to your satisfaction within 30 calendar days from the date on which the matter was first called to the attention of the EEO Office, the EEO Counselor must on the 30th day issue to you a NOTICE OF FINAL INTERVIEW. You have the right to file a discrimination complaint at any time within 15 calendar days of receipt of the NOTICE OF FINAL INTERVIEW.

< These time limits may be extended if you show that you were not notified of the time limits and were not otherwise aware of them, or that you were prevented by circumstances beyond your control from submitting the matter within the time limits, or for other reasons considered sufficient by the agency.

< Your written discrimination complaint should be filed by you, or by your designated representative, with the U. S. Environmental Protection Agency (Agency), Office of Civil Rights, 1200 Pennsylvania Avenue, Washington, DC 20460.

< The Agency must accept or dismiss the discrimination complaint and if it does not dismiss it, the agency must, within 180 days, conduct a complete and fair investigation. You will have an opportunity to talk with an investigator and present all the facts which you believe show discrimination. The investigator will afford you an opportunity to review affidavits intended for inclusion in the investigative report so that you may rebut testimony given by witnesses or alleged discriminating officials.

< At the conclusion of the investigation, the Agency must provide you with a copy of the investigative file and a notice that, within 30 days of your receipt of the investigative file, you have the right to request a hearing or a final agency decision. You have the right to request a hearing at any time 180 days after the filing of the discrimination complaint.

< If the discrimination complaint is one that does not contain issues that are appealable to the Merit Systems Protection Board (MSPB), at the conclusion of the investigation, you may request either a hearing by an Equal Employment Opportunity Commission (EEOC) administrative judge (AJ) or an immediate final decision by the Agency.

< The AJ must process the request for a hearing, issue findings of fact, and conclusions of law within 180 days.

< After the final decision of the Agency, you may appeal to the EEOC within 30 days or you may file in U.S. District Court within 90 days. Either party may request reconsideration by the EEOC.

< If the agency dismisses your discrimination complaint, you may file an appeal, within 30 days of the final agency decision, with the EEOC.

< You also may appeal a final agency decision to the EEOC within 30 days of notice of the decision. The EEOC will examine the record and issue decisions.

< If the discrimination complaint is on a matter that is appealable to the Merit Systems Protection Board (e.g., a mixed case such as a termination of a career employee), you may appeal the final agency decision to the MSPB within 20 days of receipt or go to U.S. District Court within 30 days. You may petition the EEOC for review of the MSPB decision concerning the claim of discrimination.

**Information on all EEOC enforced laws may be obtained at http://www.eeoc.gov, or by calling toll free on 800-669-3362.  EEOC=s toll free TDD number is 800-800-3302.**

**Question #8:**

**a) 2021 Performance Improvement Plan**

On November 10, 2021, I learned that I would be placed on a Performance Improvement Plan (PIP) by Garret Westfall (Caucasian male), who served as my first-level supervisor for Fiscal Year 2021. The alleged basis for the PIP was that I had unsatisfactory performance in two critical elements: Critical Element 2 (Communication) and Critical Element 3 (Results Orientation). The PIP and the performance ratings it was based on were completely unjustified and pretexts to discriminate and retaliate against me.

**b) FY 2021 Unacceptable Performance Appraisal**

Westfall issued me ratings of zero on Critical Elements 2 and 3 on my FY 2021 annual performance appraisal, which I received on October 12, 2021. Westfall downgraded the ratings on my other critical elements as well, for an overall rating of 1.6. Prior to FY 2021, I had never received an annual rating below the Fully Successful level.

None of the ratings in my FY 2021 appraisal reflected my actual performance for FY 2021, which was at the "Exceeds Fully Successful" level or better. As a result of the 1.6 rating, I am not eligible to receive a bonus or consideration for promotion and will not be able to apply for positions within or outside the EPA-OIG.

**c) Ongoing Hostile Work Environment**

The 2021 appraisal and PIP were only the most recent incidents of discrimination and reprisal that the agency has taken against me.

In April of 2019, I was placed on an unwarranted 30-day PIP by Special Agent in Charge (SAC) Mike Fiore (Caucasian male). Prior to the PIP, I had been supervised by Assistant Special Agent in Charge (ASAC) Edwin Debiew (African American male), who was located in the same Dallas office where I worked. Debiew and I had a very good working relationship, and he had always rated my performance at the "Fully Successful" level or better on all of my Critical Elements.

A couple of weeks before being placed on the 2019 PIP, I was told that Debiew would no longer be supervising my day-to-day activities – that Fiore, who was located in the Chicago office, would be taking over that role. Even though Debiew had been my first line supervisor for seven years and seven months, he was not informed nor consulted about the 2019 PIP before it was imposed on me. I was the one who informed Debiew that I had been placed on a PIP. Debiew continued to supervise day-to-day activities of agents located in other offices.

I successfully completed the PIP and received an overall rating of 4.0 on my annual appraisal for FY 2019. On October 1, 2019, Debiew resumed supervising me.

Debiew left the agency in late June of 2020, prior to the close of the performance rating cycle. Because he had supervised me for the majority of the year, he left an "interim rating" of 4.33 for me. Even though I became sick with COVID and was out of work for a period of time between Debiew's departure and the end of the FY 2020 rating cycle three months later, my annual rating was baselessly downgraded to 3.0 by then-SAC Dan Hawthorne (Caucasian male) and Westfall.

Hawthorne told me that I had been downgraded because I missed a meeting on July 1, 2020, when I was sick with COVID; however, each one of my Critical Elements, with the exception of No. 1 (Leadership), was lowered on the final appraisal without explanation. The communications element was lowered from a 4 to a 2. The others were lowered from ratings of 4 or 5 to 3. None of the lowered ratings was justified, particularly given my illness and the fact that I had carried a heavier case load than any other agent in the Western Region Field Office (WRFO) in FY 2020. During March 2020, Debiew advised Hawthorne to reassign some of my cases to another agent. None of my cases were assigned to another agent until September 2020.

On information and belief, many of these actions have been encouraged or directed by Sean Earle (Caucasian male), who is currently the Acting Deputy Assistant Inspector General for Investigations (DAIGI). Earle has been known to be close friends with Hawthorne and Fiore and has reportedly made statements in the past to the effect that women do not belong in law enforcement. Mr. Earle also has reportedly been known to have discriminatory animus toward African-Americans.

At one point, Earle was close friends with former Special Agent Susan Chandler (Caucasian female), who was the subject of my 2015 EEO complaint. It is therefore likely that Mr. Earle has been aware of my protected activity since that time.



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C. 20460**

OFFICE OF
INSPECTOR
GENERAL

March 1, 2022

## MEMORANDUM

**SUBJECT:**    Notice of Proposed Removal for Unacceptable Performance

**FROM:**    Garrett Westfall, Special Agent in Charge
Western Region Field Office, Office of Investigations    Garrett J. Westfall    Digitally signed by Garrett J. Westfall
Date: 2022.03.01 12:55:36 -06'00'

**TO:**    Alisa Walton, Special Agent
Dallas Field Office, Office of Investigations

The purpose of this memorandum is to notify you that I propose to remove you from your position as a Criminal Investigator, GS-1811-13, with the Office of Investigations, Office of Inspector General, U.S. Environmental Protection Agency, due to unacceptable performance on Critical Element 2: Communication and Critical Element 3: Results Orientation in your Employee Performance Appraisal and Recognition System (EPARS) performance plan for fiscal year 2021. If this proposed removal is sustained by the Deciding Official, your removal will be effective no earlier than thirty (30) calendar days from the date you receive this notice. I am taking this action pursuant to 5 U.S.C. Chapter 43 and 5 C.F.R. Part 432.

## Background

I notified you by memorandum dated November 10, 2021 that your performance was Unacceptable regarding Critical Element 2: Communication, and Critical Element 3: Results Orientation in your FY 2021 EPARS performance plan and that you were being provided an opportunity to demonstrate acceptable performance through a Performance Improvement Plan (PIP), for a period of forty-five (45) calendar days (Attachment 1, referred to as the PIP memorandum). You acknowledged receipt and signed the PIP memorandum on November 10, 2021. The PIP became effective November 10, 2021 and concluded on December 24, 2021.

During the PIP, we met each week to review your progress and provide opportunities for discussion and feedback. At these meetings, you were informed of the specific deficiencies in your performance. I provided explicit guidance as to what changes needed to be made to your assignments to reach a Minimally Successful level of performance. Following each meeting I sent you an email reiterating my detailed feedback. You were asked to inform me if anything in my email summaries was incorrect. On November 24, 2021, December 3, 2021, December 9, 2021, and December 16, 2021, I emailed you modifications to Attachment 2 to the PIP ("Assignments to be completed during the Performance Improvement Plan"), to reduce the assigned tasks and/or to extend the deadlines for assignments.

As stated in the PIP memorandum, you were advised that failure to improve your performance to at least the Minimally Successful level for both Critical Element 2 and Critical Element 3 could result in reassignment, reduction in grade, or removal from federal service based on unacceptable performance. During this opportunity period, you failed to demonstrate acceptable performance, and as a result, I am proposing your removal from federal service.

## **Performance Improvement Plan Critical Elements**

The PIP memorandum listed the Critical Elements which resulted in your performance being rated at an Unacceptable level for fiscal year 2021; identified the performance standards required of you to meet at least a Minimally Successful (Level 2) level of performance; defined what an unsuccessful performance level would include; and provided a list of assignments to be completed during the PIP period. Additionally, to assist in your effort to improve your performance, the PIP memorandum required that, during the PIP period, you attend a meeting with me once per week to discuss your work and that you submit weekly reports updating me on the progress of your assignments.

The following are the Minimally Successful performance standards for Critical Element 2: Communication during your PIP that were identified in the PIP memorandum:

- Generally, communicates clearly, professionally, and in a timely manner with management and stakeholders. This includes documenting all investigative activity; presenting information orally; conveying ideas or investigative findings; defending rationale; and clearly articulating a proposed investigative activity in the investigative plan. Responds to management requests for information in a timely manner, ensuring information provided is relevant and clear.

- Prepares thorough, timely, and relevant investigative documents with minimal assistance and generally no more than minimal grammatical errors while providing facts in a logical and clear manner. At least 80 percent of investigative work products must be entered into the electronic case management system; documented and produced in accordance with OIG policies, procedures, and guidance; accurate with minimal errors and edits; and complete and consistent, with all sources identified and documented.

- Communicates by oral, electronic, and written means using appropriate methods to identify and protect sensitive information, including Bank Secrecy Act and grand jury information.

The following are the Minimally Successful performance standards for Critical Element 3: Results Orientation during your PIP that were identified in the PIP memorandum:

- Demonstrates proficient knowledge of applicable laws, regulations, investigative standards, policies, and procedures to further investigations. Determines with minimal assistance what information is relevant to advance investigations, including the identification of relevant information during document reviews. Takes appropriate action in response to management feedback about work activities.

- Generally conducts timely activity in all open investigations to bring them to a logical conclusion with minimal supervision or instructions. This includes, but is not limited to, conducting interviews; reviewing documents and other data; and coordinating with other law enforcement agencies and EPA OIG internal and external stakeholders to advance an investigation.

- Generally conducts investigative activity with minimal supervision or instruction; and documents timely, accurate, and complete submission of all relevant data in the electronic case management system, including entries made in the chronology log to summarize all investigative activities.

## **PIP Overall Assessment and Basis for Proposed Removal Action**

This proposed action is based on your unsuccessful performance on Critical Element 2: Communication, and Critical Element 3: Results Orientation. Your performance as described in the attached Notice of Performance Evaluation for Performance Improvement Plan (PIP) Period has not met the Minimally Successful performance level and remains Unacceptable (Attachment 2).

You have been afforded the opportunity to demonstrate acceptable performance during a PIP period, during which time you were provided closer than normal supervision. Despite these efforts, your performance level has not improved to a minimally successful level for either of the two critical elements. Accordingly, I am proposing your removal from your current position and from the Federal service.

Your work product as a GS-13 Criminal Investigator is relied upon by both internal and external stakeholders to the government to include the Agency, prosecutors, judges, victims, and the subjects of our investigations. It is imperative that all work products from the Office of Investigations be accurate. In particular, Memoranda of Activity are provided to prosecutors to support criminal or civil prosecutions, or they are provided to the Agency and may be used to support administrative actions, including suspensions or termination from federal service. Reliance on your work products has real world effects to include taking away someone's civil liberties and livelihood. MOAs that contain factual errors or discrepancies could result in, for example, a criminal or civil case being dismissed if the underlying statements in the MOA are later determined to be inaccurate or lacking in credibility.

As set forth in the PIP memorandum, an unsuccessful performance level for Critical Element 2 would include:

- Submission of investigative documents that require significant edits due to issues of relevancy, failure to properly identify source material, or inaccurate information, including incorrect dates, or substantial grammatical errors.

- Failure to communicate with management and stakeholders in a reasonably timely manner and provide relevant and clear information.

Notice of Proposed Removal for Unacceptable Performance

Similarly, an unsuccessful performance level for Critical Element 3 would include:

- Failure to complete assignments by the established due dates in instances where you have not previously sought and received an approved extension based on a reasonable business rationale for the delay.

- Failure to report investigative actions in the electronic case management system in accordance with policy and procedures.

- Failure to take appropriate action in response to management feedback on assignments.

- Failure to clearly identify logical and relevant information, while still documenting mitigating or exculpatory information.

Only two of the eight PIP tasks that required you to submit a written work product were initially submitted at a Minimally Successful performance level (Assignments 8 and 10).[1] The remaining six tasks (Assignments 1, 2, 4, 5, 7, and 13) as initially submitted failed to meet Minimally Successful performance standards and instead required significant revisions due to failing to properly identify source material, including inaccurate dates or other information, or failing to include or cite to relevant information. Of the six assignments that initially failed to meet a Minimally Successful performance level, after significant feedback and edits from me, you were able to submit a revised version for three of them (Assignments 1, 2, and 4) that met Minimally Successful standards (but the resubmitted versions, while they met Minimally Successful standards, still required additional edits to be made to be considered final for approval). In addition, two of the PIP tasks were untimely at the initial submission because complete assignments (to include attachments) were submitted after the deadline without an approved extension (Assignments 5 and 7).

Although you were able to prepare work product that met Minimally Successful standards in five of the eight assigned tasks, three of which required significant instruction to meet these standards, what was apparent is that I cannot rely on your submissions to be factually accurate and without substantial errors. Your numerous inaccuracies have required me to spend a significant amount of time to verify dates, monetary amounts, cited sources, and other statements contained in your work products. This type of extensive review should not be conducted by management on work produced by a GS-13 Criminal Investigator. I do not have confidence in your work product to provide as a deliverable to either internal or external stakeholders. In sum, your unacceptable performance has caused me to lose confidence in your ability to contribute to the important mission of this office. I cannot assign projects to you with the expectation that they will be accurate, timely, and utilizing established practices and procedures.

Your PIP was structured to provide you with the opportunity to demonstrate performance at the Minimally Successful level. I modified the assignment task list multiple times throughout the performance period to reduce assignments and extend timelines in order to give you the maximum opportunity to succeed. As a Criminal Investigator at the GS-13 level, you should be able to consistently provide work products that accurately document investigative activity, but over the course of the PIP

---

[1] As explained in the attached Notice of Performance Evaluation for Performance Improvement Plan (PIP) Period, Assignment 3 was not considered in my assessment. Assignment 3 was to request copies of invoices from a grantee, and if the invoices were received during the PIP period, to complete a Memorandum of Activity documenting the receipt and review of the invoices. Although you requested the invoices in a timely manner, the complete production was not received during the PIP period and therefore you were unable to complete the MOA. Due to time constraints, Assignments 6, 9, 11, and 12 were removed as tasks to be completed during the PIP.

you failed to demonstrate that you are able to perform at a Minimally Successful performance level for Critical Element 2 and Critical Element 3. Therefore, I consider it necessary that you be removed for unacceptable performance.

You will remain in duty status during the notice period of this proposed action. Any absence during this period will be charged appropriately. While in duty status, you are entitled to a reasonable amount of official time to review the material relied upon to support the proposed adverse action; to prepare and present written and oral replies; and to secure affidavits and other evidence. Arrangements for the use of this official duty time must be made with me, and you must notify me of any official time required for this purpose.

## Employee Assistance Program

The EPA provides employees with access to an Employee Assistance Program (EAP). EAP provides confidential counseling and referral services to assist employees in resolving personal or work-related problems. The availability of this program is routinely communicated. Participation is voluntary, and the program is strictly confidential. If you believe these services would be appropriate for your situation or would like more information, you may review the EAP website at http://intranet.epa.gov/ohr/benefits/eap/index.htm. Employees can access Espyr, which is a provider of employee assistance programs, at 1-888-635-3202 or by logging into the website at www.espyr.com with the password: usepa.

## Employee Rights Information

You have the right to review the material relied upon to support this proposal. Copies of the materials relied upon to support this action are provided as attachments to this proposal. Due to the confidential nature of the work products which relate to ongoing criminal investigations, redactions have been made to protect the privacy of the individuals and entities under OIG investigation and as required by the Federal Rule of Criminal Procedure 6(e). The Deciding Official will only receive the redacted documents provided to you. If you determine that you need to review any of the unredacted materials, please contact Erik Mabry, Office of Management, Employee Relations at mabry.rufus@epa.gov or (202) 566-2048.

You have the right to reply to this notice orally and/or in writing to the Deciding Official in this matter, Tom Roelke, Deputy Assistant Inspector General for the Office of Investigations. You have the right to furnish affidavits or other documentary evidence in support of your reply and to be represented by an attorney or other representative. **Your written and/or oral reply must be received by the Deciding Official in this matter within ten (10) calendar days of your receipt of this notice.** Any written reply should be sent via email to roelke.thomas@epa.gov.

If you choose to provide an oral reply to the proposal, a meeting has been arranged for **March 10, 2022 at 2:30 PM EST**. **You will receive an email with the Microsoft Teams meeting invitation.** If you are unable to provide a reply at this time, you may contact Mr. Thomas Roelke at the email address above or phone number (202) 617-6730 to reschedule the appointment for another date and time within the reply period.

You have the right to be represented in this matter by an attorney or other representative. If you designate a representative, you must inform Mr. Roelke in writing at the above email address, indicating the name, title (if any), and contact information of the representative.

Notice of Proposed Removal for Unacceptable Performance

A final decision in this matter will not be made until your reply has been received and considered, or, if you choose not to reply, until after the time specified for the reply has passed. Any replies submitted by you or on your behalf will be given full consideration. You will be notified in writing of the Deciding Official's final decision.

If you have questions about your rights or the procedures used in this matter, you may contact Erik Mabry, Office of Management, Employee Relations at mabry.rufus@epa.gov or (202) 566-2048.

Attachments
1. Notice of Opportunity to Demonstrate Acceptable Performance, dated November 10, 2021 (PIP memorandum) with accompanying attachments "Fiscal Year 2021 EPARS" and "Assignments to be completed during the PIP" (redacted)
2. Notice of Performance Evaluation for Performance Improvement Plan (PIP) Period, dated March 1, 2022 (with accompanying attachments)

cc: Thomas Roelke, Deputy Assistant Inspector General, Office of Investigations
    Erik Mabry, Employee Relations, Office of Management

## Amendment to EEO Claim - 2022-0009-R06

Alisa Walton <alisawalton43@gmail.com>
Mon 5/9/2022 6:39 PM
To:Molly Buie <meb@sba-pc.com>

Hello,

I would like to submit an amendment to my existing complaint, number 2022-0009-R06, regarding me being subjected to a hostile work environment.

I would like to add the two new claims: 1) On March 1, 2022, I was issued a Notice of Proposed Removal for not successfully completing the unwarranted PIP I was placed on November 10, 2021. 2) On May 2, I received an email an learned the agency is subjecting me to an internal investigation.

Confidential: Amendment

Alisa Walton <alisawalton43@gmail.com>

Tue 5/10/2022 2:29 PM

To:clark.renee@epa.gov <clark.renee@epa.gov>;darden.cynthia@epa.gov <darden.cynthia@epa.gov>

Cc:Molly Buie <meb@sba-pc.com>

Hello Renee,

I would like to amend my existing EEO complaint, number 2022-0009-R06, to add two additional claims to the hostile work environment allegation:

1) On March 1, 2022, I was issued a Notice of Proposed Removal for supposedly failing to successfully complete the unwarranted PIP I was placed on November 10, 2021.  The supervisor who issued the proposed removal, Garrett Westfall, is also named as a Responsible Management Official in several of my other claims that have already been accepted for investigation.  A decision not sustaining the proposal to remove was issued by Thomas Roelke on April 22, 2022. (I am not naming Mr. Roelke as an RMO.)

2) On May 2 – just over a week after the proposed removal was not sustained – I received an email from an investigator from the Office of Inspector General informing me that I am being interviewed as part of an internal investigation. On information and belief, the internal investigation was initiated by Garrett Westfall and is based on allegations of alleged misconduct by me.

I allege that both of these actions are part of an ongoing hostile work environment based on my sex, race, and protected EEO activity.

Please feel free to contact me via email and cc my attorney, Molly Buie, if you have any questions or concerns. Thank you.


Alisa Walton, MBA, CFE

214-529-3841

**EEO Investigative Affidavit** *(Witness)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| **1** | **11** | **2022-0009-R06** |

| 1. Affiant's Name (Last, First, MI)<br>**Perez, Marc A.** | 2. Employing Federal Agency and Office<br>**EPA OIG/Seattle** | | |
|---|---|---|---|
| 3. Position Title<br>**Investigative Counsel** | 4. Grade and Series<br>**GS-15-0905** | 5.Address and Zip +4<br>**1200 Sixth Ave., Ste. 155**<br>**Seattle, WA 98101** | 6. Organizational Unit<br>**Office of Investigations** |

### Privacy Act Notice and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### Response to Complaint

Regulations require all employees to cooperate in any EEO investigation

7. Statement (*Continue on Form 2569 if additional space is required.  Form will auto-create if using Microsoft Word*)

**Please complete the top section of this form, boxes #2 thru #6.**

1. Please state your name, position title, grade level, work location, work address (include zip+4), work telephone number, and work e-mail address.

**Name: Marc A. Perez**
**Position title and grade level: Investigative Counsel; GS-15-0905**
**Department/division/work group: Office of Investigations**
**Work address: 1200 Sixth Ave., Ste. 155, Seattle, WA 98101**
**Work telephone number: (202) 603-4861**
**Work e-mail address: Perez.Marc@epa.gov**

2. State the period of time you have held your current position.

**I have served as Investigative Counsel since September 2020; from September 2021 until June 2022, I served as the acting Assistant Inspector General for Investigations.**

**[NOTHING FOLLOWS ON THIS PAGE]**

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed<br>09.13.2022 |
|---|---|

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet***)* | **2** | **11** | **2022-0009-R06** |

3. Identify your first and second line supervisors.

**My first line supervisor is Assistant Inspector General for Investigations Jason Abend; my second line supervisor is Deputy Inspector General Nicole Murley**

4. Describe your past or current working/reporting relationship with Complainant, Lisa Walton (i.e., co-worker, supervisor, etc.). State the period of time of the working/reporting relationship with Complainant.

**I began working with Special Agent Alisa Walton after I joined the EPA's Office of Inspector General in September 2020. I provide the special agents legal assistance on their criminal and civil investigations. My first encounter with SA Walton would have been around December 2020 or January 2021.**

**<u>RACE AND SEX ALLEGATION:</u>**

5. Please identify your **race.**

**I am White and of Latino (Central American) ethnicity.**

6. Were you aware of Complainant's **race** during the time period (2019, 2020 and 2021) of this complaint? How and when were you made aware of her **race**?

**Yes, I am aware of SA Walton's race. I became aware of SA Walton's race when I met her on a video conference call in December 2020 or January 2021. Since then, I have joined her on several video conference calls.**

7. Please identify your **sex.**

**Male**

8.       Were you aware of Complainant's **sex** during the time period (2019, 2020 and 2021) of this complaint? How and when were you made aware of her **sex**?

**Yes, I am aware of SA Walton's sex. I became aware of SA Walton's sex when I met her on a video conference call in December 2020 or January 2021. Since then, I have joined her on several video conference calls.**

**[NOTHING FOLLOWS ON THIS PAGE]**

_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| | |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet*)*** | **3** | **11** | **2022-0009-R06** |

## RETALIATION ALLEGATION:

9.      Were you aware of the Complainant being involved in EEO activity prior to this complaint?  (EEO activity includes filing a charge, testifying, assisting another, or participating in a discrimination proceeding; or otherwise opposing discrimination.) If so, when did you become aware of the Complainant's EEO activity?

**I was unaware of SA Walton's "prior EEO activity" when I initiated an internal investigation into her alleged misconduct. I became aware that SA Walton claimed she had been involved in "prior EEO activity" when, on or about March 2, 2022, I was provided a copy of her allegations under EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment, in which she claimed she had been subjected to a hostile work environment on account of her race, sex, and prior EEO activity. I was and remain unaware of any details related to "prior EEO activity" by SA Walton.**

10. If you were named by the Complainant as a Responsible Management Official or witness, in a prior EEO Complaint that he/she filed or was involved in, please identify the case number(s) and identify the issue(s) involved in the complaint.

**I have not been named as the Responsible Management Official or witness in any prior EEO complaint.**

11.     If you were involved in the prior EEO activity, what was your personal involvement in that case(s)?

**I have not been involved in any prior EEO activity.**

12.      If not involved, how did you become aware of the EEO activity?

**I became aware that SA Walton claimed she had been involved in "prior EEO activity" when, on or about March 2, 2022, I was provided a copy of her allegations under EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment, in which she claimed she had been subjected to a hostile work environment on account of her race, sex, and prior EEO activity. I was and remain unaware of any details related to "prior EEO activity" by SA Walton.**

13.     If you were involved in the prior EEO activity, what was your personal involvement in that case(s)?

**I was not involved in any prior EEO activity.**

**[NOTHING FOLLOWS ON THIS PAGE]**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| | |
|---|---|
| Affiant's Signature | Date Signed |

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| **4** | **11** | **2022-0009-R06** |

**CLAIM 6:    ON MAY 2, 2022, COMPLAINANT WAS INFORMED THAT AN INTERNAL INVESTIGATION WAS INITIATED BASED ON ALLEGATIONS OF MISCONDUCT BY COMPLAINANT.**

14.    Complainant alleged she was informed that an internal investigation was initiated based on allegations of misconduct. Please respond to Complainant's allegation.

**SA Walton is the subject of an ongoing internal investigation into allegations that she inflated her Law Enforcement Availability Pay (LEAP) hours prior to her submission of her FY2021 annual certification to ensure she attained the average of 2.0 hours of unscheduled duty per regular work day as required by federal law and agency policy, and that, on several occasions, she manipulated data in the electronic case management system to support investigative activity that never occurred.**

15.    Was it your decision to have an internal investigation conducted based on allegations of Complainant's misconduct?  If so, please give in detail the reason for your decision.

**Yes, it was my decision to initiate an internal investigation into allegations of misconduct.**

16.    If you did not make the decision, what was your involvement, if any, in this action?

**Not applicable.**

17.    If you had no knowledge or involvement in Complainant being subjected to an internal investigation, please identify who did and the reason(s) for doing so.  Provide the management official's name, position title, facility address, telephone number and email address.

**Not applicable.**

18.    Who concurred with the action for there to be an internal investigation for Complainant's alleged misconduct? Identify by name, position title work location and phone number?

**Not applicable.**

19.    Did you consult with anyone for guidance and or advice prior to initiating an internal investigation for Complainant's alleged misconduct? If so, identify him/her/them by full name and position and describe his/her/their involvement.

**No.**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| | |
|---|---|
| Affiant's Signature | Date Signed |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet***)* | **5** | **11** | **2022-0009-R06** |

20. Identify by full name, position title and work location the management official(s) who was/were responsible for the internal investigation.  Please describe each manager's role in the decision.

**At the time that I initiated the internal investigation into allegations of misconduct, I was the acting Assistant Inspector General for Investigations.**

21. Please explain in detail the facts that led up to the internal investigation.

**SA Walton is the subject of an internal investigation into allegations that she inflated her Law Enforcement Availability Pay (LEAP) hours prior to her submission of her FY2021 annual certification to ensure she attained the average of 2.0 hours of unscheduled duty per regular work day as required by federal law and agency policy, and that, on several occasions, she manipulated data in the electronic case management system to support investigative activity that never occurred.**

**The investigation is ongoing.**

22. How was Complainant notified (verbally or in writing) and who notified her regarding the internal investigation? ***If in writing, please provide a copy.  If verbally, explain what was said or done.***

**SA Walton was notified verbally of the allegations on or about May 25, 2022, when she was interviewed. A transcript of the interview is in the case file.**

**The internal investigation is ongoing.**

23. When did the (dates to and from) internal investigation take place?

**The allegations of misconduct were first raised in October 2021 and the internal investigation was initiated in November 2021.**

**The internal investigation is ongoing.**

24. Were you present during the internal investigation?  If so, please explain what happened and why.

**I was the acting Assistant Inspector General for Investigations when I initiated the internal investigation. I am now back to serving as the Investigative Counsel.**

**The internal investigation is ongoing.**

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| | |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet*)* | **6** | **11** | **2022-0009-R06** |

25. Please state what information was to be obtained from the internal investigation.

**The internal investigation is ongoing.**

26. Please explain why there was an investigation into Complainant's misconduct.

**SA Walton is the subject of an ongoing internal investigation into allegations that she inflated her Law Enforcement Availability Pay (LEAP) hours prior to her submission of her FY2021 annual certification to ensure she attained the average of 2.0 hours of unscheduled duty per regular work day as required by federal law and agency policy, and that, on several occasions, she manipulated data in the electronic case management system to support investigative activity that never occurred.**

**Each criminal investigator who receives availability pay (LEAP) must certify annually that she has "read the requirements for availability pay authorized by 5 U.S.C. § 5545a and set forth in OIG Policy 218" and "met the requirements to perform an annual average of 2 hours of unscheduled duty per regular work day." A false certification could expose a criminal investigator to criminal and/or civil liability.**

**Similarly, entering false data into the electronic case management system could expose a criminal investigator to criminal liability and compromise the integrity of an ongoing criminal or civil investigation.**

27. Did the Complainant communicate with you and/or any management official(s) her concerns regarding the internal investigation? If so, please explain what was said and response Complainant received.

**SA Walton did not communicate with me about any concerns regarding the internal investigation. I am unaware if she communicated any concerns about the internal investigation to any other management official.**

28. Do you have any documentation or evidence to support the internal investigation? If so, what and provide a copy with your affidavit.

**I do not maintain any evidence or documentation related to this internal investigation. All evidence and documentation should be maintained in the case file in the electronic case management system.**

**The internal investigation is ongoing.**

**[NOTHING FOLLOWS ON THIS PAGE]**

---

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| **7** | **11** | **2022-0009-R06** |

29. Was Complainant given a reason/explanation/justification for the internal investigation of Complainant's misconduct?

**SA Walton was advised of the allegations of misconduct at her interview, which occurred on or about May 25, 2022.**

**The internal investigation is ongoing.**

a.  If so, state the reason/explanation Complainant was given and identify by full name and position the management official(s) who gave her the reason/explanation.

**At her interview, SA Walton was advised that she was being investigated for allegations of misconduct, including that she inflated her Law Enforcement Availability Pay (LEAP) hours prior to her submission of her FY2021 annual certification to ensure she attained the average of 2.0 hours of unscheduled duty per regular work day as required by federal law and agency policy, and that, on several occasions, she manipulated data in the electronic case management system to support investigative activity that never occurred.**

**No management official was present for the interview of SA Walton.**

**The internal investigation is ongoing.**

b.  If Complainant was given a reason/explanation, did she disagree with it?  If so, explain in detail why.

**I am unaware whether SA Walton disagreed with the allegations of misconduct during or after her interview. A transcript of the interview is in the case file.**

**The internal investigation is ongoing.**

30. Was Complainant's **race** a factor when an internal investigation was initiated based on allegations of misconduct?

**No.**

31. Was Complainant's **sex** a factor when an internal investigation was initiated based on allegations of misconduct?

**No.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| | |
|---|---|
| Affiant's Signature | Date Signed |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet*)*** | **8** | **11** | **2022-0009-R06** |

32. Was Complainant's **prior EEO activity/protected activity** a factor when an internal investigation was initiated based on allegations of misconduct?

**No. I became aware of the allegations of misconduct in October 2021. I initiated the internal investigation in November 2021, and, in March 2022, I became aware that SA Walton claimed she had engaged in some form of prior EEO activity.**

33. How do you respond to Complainant's allegation that the cited action in this claim is a form of harassment against her?

**If SA Walton believes that I initiated an internal investigation into the allegations of misconduct as a form of harassment, then she is mistaken. Both allegations of misconduct are serious.**

**Falsely certifying LEAP could expose a criminal investigator to criminal and/or civil liability. Similarly, entering false data into the electronic case management system could expose a criminal investigator to criminal liability and compromise the integrity of an ongoing investigation.**

34. Cite the Agency policies and/or contract provisions that were relied upon in your decisions and/or actions when an internal investigation was initiated based on allegations of misconduct by Complainant. Explain in detail how each policy and/or contract provision applies.

**Each criminal investigator who receives availability pay (LEAP) must certify annually that she has "read the requirements for availability pay authorized by 5 U.S.C. § 5545a and set forth in OIG Policy 218" and "met the requirements to perform an annual average of 2 hours of unscheduled duty per regular work day."**

**A criminal investigator must enter correct and accurate information into the electronic case management system because incorrect and inaccurate information can compromise the integrity of an investigation. Moreover, the nature of a criminal investigator's activities creates a special need for high standards of professionalism and integrity. Thus, all special agents must adhere to high standards in their professional and personal conduct.**

**[NOTHING FOLLOWS ON THIS PAGE]**

---

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| Affiant's Signature | Date Signed |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet*)* | **9** | **11** | **2022-0009-R06** |

35.    <u>**Other than this EEO complaint**</u> are you aware if the Complainant filed any other administrative action/appeal, grievance and/or met with higher level management when Complainant was given an internal investigation? If so, to whom (name and title) did she complain, when (what date), what was the resolution/response? And what is the status of the appeal? **Provide a copy of the written contentions, if applicable.**

**The internal investigation is ongoing.**

**On or about March 2, 2022, I became aware that SA Walton filed a complaint under EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment, and alleged she had been subjected to a hostile work environment on account of her race, sex, and prior EEO activity. I was and remain unaware of any details related to any "prior EEO activity."**

**The Office of Counsel for EPA's Office of Inspector General maintains an unredacted version of SA Walton's complaint under EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment.**

<u>**HARASSMENT/HOSTILE WORK ENVIRONMENT:**</u>

36.    Did Complainant tell you that your actions constituted harassment and/or a hostile work environment for her?  If so, describe in detail when and what specifically the Complainant told you and what was your response/action?

**No, SA Walton never told me that my actions constituted harassment or a hostile work environment for her.**

37.    Are you aware of Complainant (or anyone acting on behalf of Complainant) bringing to the attention of any other management official concerns about her allegation of harassment/hostile work environment?  If so, to whom did he/she inform of her concerns and when, to the best of your knowledge.

**On or about March 2, 2022, I became aware that SA Walton filed a complaint under EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment, and alleged she had been subjected to a hostile work environment on account of her race, sex, and prior EEO activity. I was and remain unaware of any details related to any "prior EEO activity."**

**[NOTHING FOLLOWS ON THIS PAGE]**

_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| | |
|---|---|
| Affiant's Signature | Date Signed |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| **10** | **11** | **2022-0009-R06** |

38.    Was an investigation conducted into Complainant's allegations of harassment/hostile work environment?  If so, by whom and when?

**Yes. As the acting Assistant Inspector General for Investigations, I approved the Administrative Investigations Directorate (AID) to investigate SA Walton's complaint under EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment.**

39.    To your knowledge, what was the outcome of the investigation?  Please provide a copy of the report.

**I reviewed the fact-finding results; consulted with agency's legal counsel and human resources officials; and concluded that the conduct described in the information gathered as part of the fact-finding inquiry failed to constitute harassment under EPA Order 4711.**

**The agency's Office of Counsel maintains a copy of the fact-finding report.**

40.    Was Complainant informed of the outcome?  If yes, how?

**Yes, SA Walton was provided a written determination on her allegation of harassment.**

41.    Was any corrective or preventative action necessary?  If so, what action was taken?

**No. I determined that the conduct described in the information gathered as part of the fact-finding inquiry failed to constitute harassment under EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment.**

42.    If no investigation was conducted, please explain why.

**Not applicable.**

43.    Have you received training on anti-harassment/hostile work environment while employed by agency?  If so, when and what?

**As part of my annual training requirements at EPA's Office of Inspector General, in Fiscal Year 2022, I completed No FEAR Act (Notification & Federal Employee Anti-Discrimination & Retaliation Act) training.**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---------------------|-------------|
|                     |             |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet*)* | **11** | **11** | **2022-0009-R06** |

44.    Do you have any additional information or documentation that is relevant to the issue including in this EEO complaint and/or Complainant's claim of discrimination, retaliation and harassment/hostile work environment?  *[If you mentioned any documents in answering your affidavit questions please provide.]*

**I do not have any additional relevant information or documentation. To the extent I mentioned any documents in my answers, those documents are maintained by the agency's Office of Counsel or in the case file of the internal investigation, which is ongoing.**

**[NOTHING FOLLOWS ON THIS PAGE]**

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
|---|---|---|
| Marc A. Perez  Digitally signed by Marc A. Perez Date: 2022.09.13 23:57:37 -07'00' | | 09.13.2022 |

October 2015

# Certification

Case Number
## 2022-0009-R06

I have read the proceeding attached statement, consisting of 11 pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

## Standards of Conduct

Regulations require all employees to cooperate in any EEO investigation.

Subscribed and (sworn) (affirmed) before me on the _____ day of_____, 20_____.

*(Affiant, sign in the presence of an EEO Complaints Investigator.)*

| Signature of EEO Complaints Investigator | Signature of Affiant |
|---|---|
| | |

## Declaration

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant must sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed |
|---|---|
| X | X    09.13.2022 |

Form 2571 October 2015

**EEO Investigative Affidavit *(Witness)***

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | **1** | **9** | **2022-0009-R06** |

| 1. Affiant's Name (Last, First, MI) **Earle, Sean** | | 2. Employing Federal Agency and Office **EPA Office of Inspector General** |
|---|---|---|

| 3. Position Title **DAIGI** | 4. Grade and Series GS-15 | 5.Address and Zip +4 61 Forsyth Street Atlanta GA 30303 | 6. Organizational Unit **Office of Investigations** |
|---|---|---|---|

### Privacy Act Notice and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### Response to Complaint

Regulations require all employees to cooperate in any EEO investigation

7. Statement (*Continue on Form 2569 if additional space is required.  Form will auto-create if using Microsoft Word*)

### *Amended Affidavit*

**CLAIM 5:ON MARCH 1, 2022, COMPLAINANT WAS ISSUED A NOTICE OF PROPOSED REMOVAL FOR SUPPOSEDLY FAILING TO SUCCESSFULLY COMPLETE THE PIP COMPLAINANT WAS PLACED ON NOVEMBER 10, 2021. COMPLAINANT WAS NOTIFIED ON APRIL 22, 2022, THAT A DECISION WAS MADE TO NOT SUBSTANTIATE THE REMOVAL.**

109.  The Complainant alleged in her amended complaint that she received a Notice of Proposed Removal on or about March 1, 2022 for failing to successfully complete the PIP Complainant was placed on November 10, 2021 and  notified on April 22, 2022, that a decision was made to not substantiate the Removal. Is this true?  Please respond to Complainant's allegation.
   **Answer:** I was not SA Walton's supervisor and have no knowledge if the statement above is true.

110.  Was it your decision to issue the Complainant a Notice of Proposal Removal from her position with the agency?  If so, please give in detail the reason for your decision.
    **Answer:** I had no involvement in the PIP mentioned above, I was not SA Walton's supervisor.

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature **Earle, Sean** | Digitally signed by Earle, Sean Date: 2022.07.25 11:59:39 -04'00' | Date Signed |
|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| **2** | **9** | **2022-0009-R06** |

111.  If you did not make the decision, what was your involvement, if any, in this action? Please be specific.
 **Answer:** I had no involvement in this action.

112. If you had no involvement in Complainant being issued the Notice of Proposed Removal, please provide the management official(s) who did. Identify by name, position title, facility address, telephone number and email address.
**Answer:** SA Walton's supervisor was SAC Garrett Westfall, EPA OIG Dallas, and ASAC Staci Gurin EPA OIG Kansas City.

113. Who concurred with the action to issue the Complainant a Notice of Proposed Removal? Identify by name, position title work location and phone number.
 **Answer:** I am not aware of this information, I was not her supervisor.

114. Did you consult with anyone for guidance and or advice prior to issuing Complainant the Notice of Proposed Removal? If so, identify him/her/them by full name and position and describe his/her/their involvement.
 **Answer:**  I was not involved in the issuance of the PIP and did not consult with anyone regarding the issuance of the PIP.

115.  How was the Complainant notified (verbally or in writing) of being issued a Notice of Proposed Removal? If verbally, who notified her and when? **If in writing, provide a copy of the written notification**.
 **Answer:** I am unaware of how she was notified, I was not her supervisor.

116. Please explain, if not already done so, why Complainant was issued a Notice of Proposed Removal?
 **Answer:**

117. Was the Complainant given any type of warning prior to being issued the Notice of Proposed Removal? If yes, please explain what type of warning was given and what occurred.
 **Answer:** I do not know if she was given any warning prior to the Notice of Removal.  I was not her supervisor.

118. What reason(s) was provided to the Complainant for issuing her a Notice of Proposed Removal?
 **Answer:**  I do not know what reasons were provided.

_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Digitally signed by Earle, Sean | Date Signed |
|---|---|---|
| Earle, Sean | Date: 2022.07.25 12:00:53 -04'00' | |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **3** | **9** | **2022-0009-R06** |

119. Did the Complainant dispute the reason(s) given? If so, how, and why,
**Answer:** I am unaware of her disputing the reasons given, I was not involved in the PIP process.

120. What was/is Complainant's current work status as result of the Notice of Proposed Removal and why?
**Answer:** In recent case reviews I had with all field agents, SA Walton is working cases as expected. I was not informed that her status was different than any other agent, and it was not disclosed to me during our recent case review if her status was anything other than full duty.

121. What documentation, if any, exists to support allegedly issuing a Notice of Proposed Removal to Complainant? Please explain and provide a copy of the documentation.
**Answer:** I do not know what documentation exists. I was not her supervisor nor was I involved in the PIP.

122. Was Complainant's **race** a factor in your decision when she was allegedly given a Notice of Proposed Removal?
**Answer:** I was not involved in the issuance of a Notice of Proposed Removal to SA Walton, and race is never a factor in my decision making.

   If so, explain in detail how the Complainant's **race** was a factor and why.
   **Answer:**

123. Was Complainant's **sex** a factor in your decision when she was allegedly given a Notice of Proposed Removal
?
   **Answer:** I was not involved in the issuance of a Notice of Proposed Removal to SA Walton and sex is not a factor in my decision making.

   If so, explain in detail how the Complainant's **sex** was a factor and why.
   **Answer:**

124. Was Complainant's **prior EEO activity** a factor in your decision when she was allegedly given a Notice of Proposed Removal?
**Answer:** I was not involved in the decision to issue a Notice of Proposed Removal, I am unaware of any prior EEO activity, nor would that be a factor in any decision I would make.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Digitally signed by Earle, Sean | Date Signed |
|---|---|---|
| Earle, Sean | Date: 2022.07.25 12:02:34 -04'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 4 | 9 | 2022-0009-R06 |

125.  How do you respond to Complainant's allegation that the cited action in this claim is a form of harassment against her?
**Answer:** I would disagree.

If so, explain in detail how the Complainant's **prior EEO activity** was a factor and why.
**Answer:**

126.  Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who <u>were</u> issued a Notice of Proposed Removal as the Complainant?
**Answer:** No employees I supervise have been issued a Notice of Proposed Removal.

If so, identify each comparator employee by full name, race, sex, position title, type of discipline/infraction issued, date of issuance, and by whom it was issued and concurred. Provide the name of each employee's supervisor. **Provide copies of the discipline issued to <u>each</u> cited comparator.**
**Answer:**

Are you aware of each cited comparator having prior EEO activity? State yes, no, or unknown.
**Answer:**

127.  Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who <u>were not</u> issued a Notice of Proposed Removal as the Complainant?
**Answer:** No employees I supervise were not issued a Notice of Proposed Removal under the same or similar circumstances.

If so, identify each comparator employee by full name, race, sex, position title, and explain why the Notice of Proposed Removal was not issued.  Provide the name of each employee's supervisor. **Provide copies of the discipline issued to <u>each</u> cited comparator.**
**Answer:**

Are you aware of each comparator cited having prior EEO activity? State yes, no, or unknown.
**Answer:**

128. Cite the Agency policies and/or contract provisions that were relied upon in your decisions and/or actions when issuing the Complainant a Notice of Proposed Removal.  Explain in detail how each policy and/or contract provision applies.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
|---|---|---|
| Earle, Sean | Digitally signed by Earle, Sean<br>Date: 2022.07.25 12:03:16 -04'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 5 | 9 | 2022-0009-R06 |

**Answer:** I was not involved in the decision to issue a Notice of Proposed Removal to SA Walton.  I was not her supervisor.

129.  **Other than this EEO complaint** are you aware if the Complainant filed any other kind of administrative action/appeal, grievance and/or met with higher level management when Complainant was issued a Notice of Proposed Removal? If so, to whom (name and title) did she complain, when (what date), what was the resolution/response? And what is the status of the appeal? **Provide a copy of the written contentions, if applicable.**
  **Answer:** I am unaware of any other complaint being filed by SA Walton.

**CLAIM 6:  ON MAY 2, 2022, COMPLAINANT WAS INFORMED THAT AN INTERNAL INVESTIGATION WAS INITIATED BASED ON ALLEGATIONS OF MISCONDUCT BY COMPLAINANT**

130. Complainant alleged she was informed  that an internal investigation was initiated based on allegations of misconduct. Please respond to Complainant's allegation.
  **Answer:** I was not her supervisor and am unaware of the facts of this internal investigation.

131. Was it your decision to have an internal investigation conducted on Complainant based on allegation of misconduct?  If so, please give in detail the reason for your decision.
  **Answer:** I am not her supervisor and have no input into this investigation.

132. If you did not make the decision, what was your involvement, if any, in this action?
  **Answer:** I have had no involvement in this investigation and have made no decisions in this investigation.

133. If you had no knowledge or involvement in an internal investigation being conducted on Complainant, please identify who did and the reason(s) for doing so.  Provide the management official's name, position title, facility address, telephone number and email address.
  **Answer:** I have no knowledge of the facts of the internal investigation.  Acting AIGI Marc Perez would have requested the opening of the investigation.  His number is 202-603-4861.

134. Who concurred with the action for there to be an internal investigation on Complainant? Identify by name, position title work location and phone number?
  **Answer:**  I was not involved and have no knowledge of who concurred with the action.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
|---|---|---|
| Earle, Sean | Digitally signed by Earle, Sean  Date: 2022.07.25 12:03:57 -04'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 6 | 9 | 2022-0009-R06 |

135. Did you consult with anyone for guidance and or advice prior to Complainant being involved in an internal investigation.? If so, identify him/her/them by full name and position and describe his/her/their involvement.
 **Answer:** I was not her supervisor and was not involved in this investigation.

136. Please explain in detail the facts that led up to the internal investigation.
 **Answer:** I am unaware of the facts that led up to this investigation.

137. How was Complainant notified (verbally or in writing) and who notified her regarding the internal investigation? ***If in writing, please provide a copy. If verbally, explain what was said or done.***
 **Answer:** I was not her supervisor and am unaware of how she was notified.

138. When did the (dates- to and from ) internal investigation take place?
 **Answer:** I was not her supervisor and do not have knowledge of the dates.

139. Were you present during the internal investigation? If so, please explain what happened and why.
 **Answer:** I was not present during the internal investigation. I was not her supervisor.

140. Please state what information was to be obtained from the internal investigation.
 **Answer:** I do not know what was obtained from the internal investigation.

141. Please explain why there was an investigation into Complainant's misconduct.
 **Answer:** I was not her supervisor. I do not have information as to why an internal investigation was conducted.

142. Did the Complainant communicate with you and/or any management official(s) her concerns regarding the internal investigation? If so, please explain what was said and response Complainant received.
 **Answer:** The complainant did not communicate with me. I was not her supervisor.

143. Do you have any documentation or evidence to support the internal investigation? If so, what and provide a copy with your affidavit.
 **Answer:** I do not have any documentation or evidence in this matter.

144. Was Complainant given a reason/explanation/justification for the internal investigation of Complainant's misconduct?
 **Answer:** I do not have information concerning this investigation.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature<br>Earle, Sean | Digitally signed by Earle, Sean<br>Date: 2022.07.25 12:04:30 -04'00' | Date Signed |
|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 7 | 9 | 2022-0009-R06 |

If so, state the reason/explanation Complainant was given and identify by full name and position the management official(s) who gave her the reason/explanation.
   **Answer:**

If Complainant was given a reason/explanation, did she disagree with it? If so, explain in detail why.
   **Answer:**

145. What was the outcome of the internal investigation?
   **Answer:** I do not know what the outcome was in this investigation. I was not her supervisor.

146. Was Complainant's **race** a factor when an internal investigation was initiated based on allegations of misconduct?
   **Answer:** The complainant's race would never be a factor in the initiation of an investigation.

147. Was Complainant's **sex** was a factor when an internal investigation was initiated based on allegations of misconduct ?
   **Answer:** The complainant's sex would never be a factor in the initiation of an investigation.

148. Was Complainant's **prior EEO activity** was a factor when an internal investigation was initiated based on allegations of misconduct?
   **Answer:** Any prior EEO activity would have no place in determining whether or not to open an investigation.

149. How do you respond to Complainant's allegation that the cited action in this claim is a form of harassment against her?
   **Answer:** I do not have information concerning the facts of the investigation cited.

150. Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who **were given an internal investigation** as the Complainant?
   **Answer:** I have had no employees under my supervision that were involved in allegations of misconduct as stated in this document.

If so, identify each comparator employee by full name, position title race and sex and explain why they were given an internal investigation. .Provide the name of each employee's supervisor. **Provide copy for each cited comparator.**
   **Answer:**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Digitally signed by Earle, Sean | Date Signed |
|---|---|---|
| Earle, Sean | Date: 2022.07.25 12:05:05 -04'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 8 | 9 | 2022-0009-R06 |

Are you aware of each cited comparator having prior EEO activity? If so, when, and how did you become aware?
**Answer:**

151.  Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who **were not** **given an internal investigation** as the Complainant?
**Answer:** I have not had any employees under my supervision who meet the criteria cited above.

If so, identify each comparator employee by full name, position title race, sex and explain why they were not given an internal investigation.  Provide the name of each employee's supervisor. **Provide copies for each cited comparator.**

Are you aware of each cited comparator having prior EEO activity? If so, when, and how did you become aware?
**Answer:**

152. Cite the Agency policies and/or contract provisions that were relied upon in your decisions and/or actions when an internal investigation was initiated based on allegations of misconduct by Complainant. Explain in detail how each policy and/or contract provision applies.  I did not have a role in the initiation of this investigation.  I was not the supervisor of the complainant.

153. **Other than this EEO complaint** are you aware if the Complainant filed any other administrative action/appeal, grievance and/or met with higher level management when Complainant was given an internal investigation? If so, to whom (name and title) did she complain, when (what date), what was the resolution/response? And what is the status of the appeal **Provide a copy of the written contentions, if applicable.**
**Answer:**  I am unaware of any other EEO filings by the complainant.

**HARASSMENT/HOSTILE WORK ENVIRONMENT:**

154. Did Complainant tell you that your actions constituted harassment and/or a hostile work environment for her?  If so, describe in detail when and what specifically the Complainant told you and what was your response/action?
**Answer:**  The complainant did not have any conversations with me regarding harassment or allegations of a hostile work environment.  I was not her supervisor.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Digitally signed by Earle, Sean | Date Signed |
|---|---|---|
| Earle, Sean | Date: 2022.07.25 12:05:44 -04'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| **9** | **9** | **2022-0009-R06** |

155. Are you aware of Complainant (or anyone acting on behalf of Complainant) bringing to the attention of any other management official concerns about her allegation of harassment/hostile work environment?  If so, to whom did he/she inform of her concerns and when, to the best of your knowledge.
**Answer:**  I am unaware of the complainant bringing this allegation to anyone.

156. Was an investigation conducted into Complainant's allegations of harassment/hostile work environment?  If so, by whom and when?
**Answer:**  I am unaware of the allegation and whether or not an investigation was conducted.

157. To your knowledge, what was the outcome of the investigation?  Please provide a copy of the report.
**Answer:**  I have no knowledge of the investigation.

158. Was Complainant informed of the outcome?  If yes, how?
**Answer:** I do not know if the complainant was informed.  I have no knowledge of the investigation.

159. Was any corrective or preventative action necessary?  If so, what action was taken?
**Answer:** I do not have any information on whether or not any action was necessary.

160. If no investigation was conducted, please explain why.
**Answer:** I have no knowledge on whether or not an investigation was conducted.

161. Have you received training, since your last affidavit, on anti-harassment/hostile work environment while employed by the agency?  If so, when and what?
**Answer:**  I have not received additional training.

162. Do you have any additional information or documentation that is relevant to the issue including in this EEO complaint and/or Complainant's claim of discrimination, retaliation and harassment/hostile work environment?  *[If you mentioned any  documents in answering your affidavit questions please provide.*
**Answer:**  I have no documents to provide.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed |
|---|---|---|
| Earle, Sean | Digitally signed by Earle, Sean<br>Date: 2022.07.25 12:06:27 -04'00' | |

October 2015

**EEO Investigative Affidavit *(Witness)***

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | **1** | **19** | **2022-0009-R06** |

| 1. Affiant's Name (Last, First, MI) | 2. Employing Federal Agency and Office |
|---|---|
| **Westfall, Garrett, J.** | **EPA OIG, OI, Dallas, TX** |

| 3. Position Title | 4. Grade and Series GS-1811-15 | 5.Address and Zip +4 | 6. Organizational Unit |
|---|---|---|---|
| **Special Agent in Charge** | | 1201 Elm Street, Suite 500 Dallas, TX 75270 | **OIG Office of Investigations** |

### Privacy Act Notice and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### Response to Complaint

Regulations require all employees to cooperate in any EEO investigation

7. Statement (*Continue on Form 2569 if additional space is required. Form will auto-create if using Microsoft Word*)

**Please complete the top section of this form, boxes #2 through #6.**

### <u>AMENDED AFFIDAVIT</u>

**CLAIM 5: ON MARCH 1, 2022, COMPLAINANT WAS ISSUED A NOTICE OF PROPOSED REMOVAL FOR SUPPOSEDLY FAILING TO SUCCESSFULLY COMPLETE THE PIP COMPLAINANT WAS PLACED ON NOVEMBER 10, 2021. COMPLAINANT WAS NOTIFIED ON APRIL 22, 2022, THAT A DECISION WAS MADE TO NOT SUBSTANTIATE THE REMOVAL.**

109.  The Complainant alleged in her amended complaint that she received a Notice of Proposed Removal on or about March 1, 2022 for failing to successfully complete the PIP Complainant was placed on November 10, 2021 and notified on April 22, 2022, that a decision was made to not substantiate the Removal. Is this true? Please respond to Complainant's allegation.

**Answer:** Yes, I provided, via email (Exhibit 33), a Notice of Proposed Removal to SA Walton on March 1, 2022, based on the results of the failed PIP, and her inability to improve her performance to a minimally successful level (Exhibit 8). On April 22, 2022, Thomas Roelke, Deputy Assistant Inspector General for Investigations, Headquarters

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed 6/15/2022 |
|---|---|
| GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:00:04 -05'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 2 | 19 | 2022-0009-R06 |

Operations, EPA OIG, Washington, DC, did not substantiate the removal recommendation (Exhibit 30).

**\*\*Please note: certain data within Exhibits/Attachments will be redacted due to active OIG investigations, including case titles/subject names, and or information containing grand jury or Bank Secrecy Act restrictions.\*\***

110. Was it your decision to issue the Complainant a Notice of Proposal Removal from her position with the agency?  If so, please give in detail the reason for your decision.
 **Answer:** Yes, I made the decision to issue SA Walton a Notice of Proposed Removal, in consultation and concurrence with HRD and OC.  I recommended the action because SA Walton failed to improve her performance to a minimally successful level in the cited critical elements during the 45-day PIP evaluation (Exhibit 8). Please refer to the Notice of Proposed Removal and attached PIP evaluation, which details the reasons for the proposal.

As discussed previously, as an EPA OIG agent, an agent's work product is relied upon by both internal and external stakeholders to the government to include the Agency, prosecutors, judges, victims, and the subjects of our investigations. It is imperative that all work products be accurate, including information provided to prosecutors to support criminal or civil prosecutions. In short, case work products, whether a memorandum or electronic case management system (ECMS) chronology log entry are legal documents open to discovery, and subsequent review, examination, and suppression. Reliance on work products has real world effects to include taking away someone's civil liberties and livelihood. Products that contain factual errors or discrepancies could result in, for example, a criminal or civil case being dismissed if the underlying statements in the work products are later determined to be inaccurate or lacking in credibility.  During the 45-day PIP evaluation, SA Walton failed to provide accurate, relevant, correctly sourced records, and clear and concise work products.  The tasks assigned during the PIP were relevant, stakeholder requests to be provided to the U.S. Attorney's Office, in the form of discovery. As a management official, I am responsible to ensure OIG work products are relevant, clear, concise, accurate, and supported with facts.  As a result, I do not have confidence that SA Walton can submit accurate, factual work products to internal and external stakeholders.

For example, during the PIP, SA Walton converted another Agency's work product and used the information inaccurately in her self-created attachment and claimed the investigative activity as her own (Exhibit 8 page 100). Specifically, she cut website screen shots taken by an EPA CID agent on December 10, 2020 and pasted the screen shots into a self-created attachment to reference an alleged investigative activity conducted by SA Walton on June 9, 2020; an investigative activity that had never been documented by SA Walton per policy in the ECMS.  While SA Walton stated that this was an error done

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:00:47 -05'00' | Date Signed  6/15/2022 |
|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 3 | 19 | 2022-0009-R06 |

inadvertently during the PIP, this example illustrates the lack of improvement in her performance and the potential inaccuracies and integrity concerns in her work products. Had the discrepancies not been identified during management review prior to being provided to an external stakeholder, this error could have affected the case and the reputation of the OIG. Further, the conduct represented serious integrity concerns that could have ramifications of SA Walton's ability to testify under oath, per Giglio vs. United States, as the conduct could result in her being placed on a Giglio list.  A Giglio list is a list compiled usually by a prosecutor's office or a law enforcement office containing the names and details of law enforcement officers who have had sustained incidents of untruthfulness, criminal convictions, candor issues, or some other type of issue placing their credibility into question.

111.  If you did not make the decision, what was your involvement, if any, in this action?
    **Answer:**  N/A. See answer to question 110.

112. If you had no involvement in Complainant being issued the Notice of Proposed Removal, please provide the management official who did. Identify by name, position title, facility address, telephone number and email address.
    **Answer:** N/A. See answer to question 110.

113. Who concurred with the action to issue the Complainant a Notice of Proposed Removal? Identify by name, position title work location and phone number.
    **Answer:**  The following officials were consulted and concurred with regarding the proposed action: Erik Mabry, HRD, EPA OIG, Boston, MA, (202) 566-2048; Elizabeth Moreira, OC, EPA OIG, Washington, DC, (202) 566-2695; and Lori Ruk, OC, EPA OIG, Washington, DC, (202) 566-1287.

114. Did you consult with anyone for guidance and or advice prior to issuing Complainant the Notice of Proposed Removal? If so, identify him/her/them by full name and position and describe his/her/their involvement.
    **Answer:** Yes.  I consulted and received guidance from Erik Mabry, HRD, EPA OIG; Elizabeth Moreira, OC, EPA OIG, and Lori Ruk, OC, EPA OIG.  Mabry, Moreira, and Ruk provided guidance on drafting and issuing the Notice of Proposed Removal.  At no point was there a concern by HRD or OC that there was insufficient evidence to warrant the proposed action.

115.  How was the Complainant notified (verbally or in writing) of being issued a Notice of Proposed Removal? If verbally, who notified her and when? **If in writing, provide a copy of the written notification**.
    **Answer:**  I notified SA Walton, via email, of the Proposed Removal on March 1, 2022, at approximately 2:31 pm CST (Exhibit 32 & Exhibit 8).  On March 1, 2022, at approximately

_____
_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL | Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:01:32 -05'00' | Date Signed  6/15/2022 |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 4 | 19 | 2022-0009-R06 |

2:30 pm CST, I conducted a Microsoft (MS) Teams meeting (video conference) with SA Walton to discuss the proposed action.  Erik Mabry was present during the MS Teams meeting. During the meeting, I notified SA Walton of the proposed removal and advised her to direct any questions to Mabry.  I also advised her to read the proposed removal in detail as it provided information and a timeframe on her response to the decision maker.

116. Please explain, if not already done so, why Complainant was issued a Notice of Proposed Removal?
**Answer:** See answer to question 110. Please refer to the Notice of Proposed Removal and attached PIP evaluation, which details the reasons for the proposal.

117. Was the Complainant given any type of warning prior to being issued the Notice of Proposed Removal? If yes, please explain what type of warning was given and what occurred.
**Answer:** I did not provide any warning to SA Walton prior to being issued the Notice of Proposed Removal.  I was unaware of any a requirement for prior notification to the complainant, as it was never discussed or advised by HRD and OC.  However, in the conclusion section of the PIP, the memorandum explains the possible actions for failure.

118. What reason(s) was provided to the Complainant for issuing her a Notice of Proposed Removal?
**Answer:** During the meeting on or about March 1, 2022, I informed SA Walton that she was being issued a Notice of Proposed Removal because of her failure to improve her performance in two critical performance elements during the PIP.

119. Did the Complainant dispute the reason(s) given? If so, how, and why,
**Answer:**  I do not recall any dispute provided by SA Walton to me.  SA Walton provided a verbal and/or written response to the Notice of Proposed Removal, as part of the PIP process, to the decision official, DAIGI Roelke. I am neither aware of the response nor been given a copy or information regarding the response by SA Walton. On April 22, 2022, DIAGI Roelke did not sustain the removal action of SA Walton (Exhibit 30).

120. What was/is Complainant's current work status as result of the Notice of Proposed Removal and why?
**Answer:**  Prior to, during, and after the PIP/Proposed Removal, SA Walton has remained a GS-1811-13 Special Agent within the OIG, Office of Investigations, Western Region Field Office, Southwest Division, assigned to the Dallas office.  SA Walton's current work status has remained unchanged.

121. What documentation, if any, exists to support allegedly issuing a Notice of Proposed Removal to Complainant?  Please explain and provide a copy of the documentation.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL | Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:02:16 -05'00' | Date Signed  6/15/2022 |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 5 | 19 | 2022-0009-R06 |

**Answer:** I notified SA Walton, via email, of the Proposed Removal on March 1, 2022, at approximately 2:31 pm CST (Exhibit 32 & Exhibit 8). The Notice provided evidence to support that SA Walton failed to improve her performance during the PIP to a minimally successful level. The Notice of Proposed Removal, which includes the PIP evaluation, supported my decision to issue the proposed action.

122. Was Complainant's **race** a factor in your decision when she was allegedly given a Notice of Proposed Removal for failing to successfully complete the PIP Complainant was placed on November 10, 202 and notified on April 22, 2022, that a decision was made to not substantiate the Removal?
     **Answer:** No.

   If so, explain in detail how the Complainant's **race** was a factor and why.
   **Answer:** N/A

123. Was Complainant's **sex** a factor in your decision when she was allegedly given a Notice of Proposed Removal for failing to successfully complete the PIP Complainant was placed on November 10, 202 and notified on April 22, 2022, that a decision was made to not substantiate the Removal?
     **Answer:** No

   If so, explain in detail how the Complainant's **sex** was a factor and why.
   **Answer:** N/A

124. How do you respond to Complainant's allegation that the cited action in this claim is a form of harassment against her?
     **Answer:** I disagree with above statement that the cited action is a form of harassment. I did not propose and initiate the cited action based on race, sex, religion, national origin, age, disability, or genetic information. I proposed the action for the reasons previously stated. The PIP was not punitive, as she was given the opportunity to illustrate improved performance in several critical elements. Furthermore, SA Walton never made any harassment claims or reported to me that she felt she was being harassed or there was a hostile work environment. As stated previously, in consultation with HRD and OC, I recommended the action because SA Walton failed to improve her performance to a minimally successful level in the cited critical elements during the 45-day PIP evaluation.

As an EPA OIG agent, an agent's work product is relied upon by both internal and external stakeholders to the government to include the Agency, prosecutors, judges, victims, and the subjects of our investigations. It is imperative that all work products be accurate, including information provided to prosecutors to support criminal or civil prosecutions. In short, case work products, whether a memorandum or ECMS chronology log entry are

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:03:04 -05'00' | Date Signed  6/15/2022 |
|---|---|---|

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **6** | **19** | **2022-0009-R06** |

legal documents open to discovery, and subsequent review, examination, and suppression. Reliance on work products has real world effects to include taking away someone's civil liberties and livelihood. Products that contain factual errors or discrepancies could result in, for example, a criminal or civil case being dismissed if the underlying statements in the work products are later determined to be inaccurate or first lacking in credibility.

When I began as a first-line supervisor in approximately July 19, 2020, I immediately began to see that SA Walton exhibited poor performance in several performance standards to include product timeliness and accuracy; identification and documentation of relevant records; and poor communication. As her performance could have material effects on her cases and the integrity and credibility of the OIG, I had a duty to address the performance deficiencies observed.  Accordingly, I began coordination with HR and OC in as early as October 13, 2020, on performance and conduct related issues and ways to improve her performance and engage SA Walton in communication (Exhibit 10).  I repeatedly told her I was open to mentor her to assist in her performance.  SA Walton chose not to engage me as a coach/mentor and failed to communicate with me on a regular basis.

125. Was Complainant's **prior EEO activity** a factor in your decision when she was allegedly given a Notice of Proposed Removal for  failing to successfully complete the PIP Complainant was placed on November 10, 2021 and  notified on April 22, 2022, that a decision was made to not substantiate the Removal?
   **Answer:** No., I have no knowledge or involvement in SA Walton's prior EEO activity.

If so, explain in detail how the Complainant's **prior EEO activity** was a factor and why.
**Answer:** N/A

126.  Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who **were** issued a Notice of Proposed Removal as the Complainant?
   **Answer:**  I have not supervised any other employees who were in the same or similar circumstances like SA Walton.  Other than SA Walton, I have not issued a Notice of Proposed Removal any other employee under my supervision.

If so, identify each comparator employee by full name, race, sex, position title, type of discipline/infraction issued, date of issuance, and by whom it was issued and concurred. Provide the name of each employee's supervisor. **Provide copies of the discipline issued to each cited comparator.**
**Answer:** N/A

Are you aware of each cited comparator having prior EEO activity? State yes, no, or unknown.

_____
_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:03:55 -05'00' | Date Signed  6/15/2022 |
|---|---|---|

**EEO Investigative Affidavit (Continuation Sheet***)*

| Page No. | No. Pages | Case No. |
|---|---|---|
| 7 | 19 | 2022-0009-R06 |

**Answer:** N/A

127.  Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who **were not** issued a Notice of Proposed Removal as the Complainant?
**Answer:**  I have not supervised any other employees who were the same or similar circumstances like SA Walton.  Other than SA Walton, I have not issued a Notice of Proposed Removal any other employee under my supervision.

 If so, identify each comparator employee by full name, race, sex, position title, and explain why the Notice of Proposed Removal was not issued.  Provide the name of each employee's supervisor. **Provide copies of the discipline issued to each cited comparator.**
**Answer:** N/A

 Are you aware of each comparator cited having prior EEO activity? State yes, no, or unknown.
**Answer:** N/A

128. Cite the Agency policies and/or contract provisions that were relied upon in your decisions and/or actions when issuing the Complainant a Notice of Proposed Removal.  Explain in detail how each policy and/or contract provision applies.
**Answer:** EPA OIG's policy and procedures for a PIP and related actions are detailed in OIG Supervisor's Guide to Dealing with Poor Performance (Exhibit 6) and OIG Policy & Procedure 313 – Employee Performance Appraisal and Recognition System (Exhibit 7).  I initially consulted the OIG Supervisor's Guide, which stated that, "If the supervisor determines that the employee has failed to improve their performance, the supervisor must initiate a performance based action to either reassign, reduce in grade, or remove the employee. The supervisor must consult with OC and HRD prior to taking any action."  After the termination of the PIP on or about December 24, 2021, I subsequently consulted and coordinated the proposed action with HRD and OC. OC reviewed the proposed action for legal sufficiency.

129.  **Other than this EEO complaint** are you aware if the Complainant filed any other kind of administrative action/appeal, grievance and/or met with higher level management when Complainant was issued a Notice of Proposed Removal? If so, to whom (name and title) did she complain, when (what date), what was the resolution/response? And what is the status of the appeal? **Provide a copy of the written contentions, if applicable.**
 **Answer:** I am unaware whether SA Walton filed an appeal or an administrative grievance for being issued a Notice of Proposed Removal.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL | Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:05:11 -05'00' | Date Signed  6/15/2022 |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 8 | 19 | 2022-0009-R06 |

**CLAIM 6: ON MAY 2, 2022, COMPLAINANT WAS INFORMED ME THAT AN INTERNAL INVESTIGATION WAS INITIATED BASED ON ALLEGATIONS OF MISCONDUCT BY COMPLAINANT**

130. Complainant alleged she was informed that an internal investigation was initiated based on allegations of misconduct by you (Garrett). Please respond to Complainant's allegation.

    **Answer:** I can't attest to what SA Walton was informed, as I was not directly involved in any interview with SA Walton regarding the internal investigation.

    I referred possible misconduct allegations involving SA Walton to HRD and OC as early as October 2021 (Exhibit 1). Based on consultation with HRD and OC on several occasions, they opined that any possible conduct related issues could not be addressed until the full PIP and possible recommending action were resolved. Accordingly, the conduct issues were tabled until the PIP action, complainant response, and decision were concluded. However, during subsequent managerial discussions with Acting AIGI Marc Perez and DAIGI Sean Earle as early as November 2021, Acting AIGI Perez decided to initiate an internal investigation, directed by the Office of Investigations' Eastern Region Field Office, based on two matters that I brought to his attention. I did not make the decision to initiate an internal investigation but relayed my concerns and related relevant documents/evidence to Acting AIGI Perez and DAIGI Earle regarding several alleged misconduct issues. While I was not involved in the investigation, the case was investigated by SA Paul Brezinski, EPA OIG, Philadelphia, PA, and Joey Campbell, EPA OIG, Atlanta, GA. I had no visibility or oversight of the case, including being restricted from viewing the case in the ECMS. Accordingly, I had no detailed knowledge of the investigative plan, steps taken, or findings.

    The internal investigation of SA Walton was derived based on four referrals from me – 1) the circumstances surrounding the loss of computer evidence in the Dallas office; 2) concerns with the possible inflation of SA Walton's Law Enforcement Availability Pay (LEAP) hours to achieve the required 2.0 FY21 LEAP average; 3) the modification and manipulation of the case chronology log in the ECMS, including my supervisory case review, to support a previously unsupported investigative activity; and 4) the modification of another (separate case and occurrence than No. 3) case chronology log in the ECMS to support a previously undocumented investigative activity, which was later reported falsely after the PIP. Please note, based on my knowledge, the last two misconduct allegations were added later during the investigation after being discovered, as described below. I also referred a fifth (5) allegation concerning the modification of a subject matter expert (SME) report without the SME's knowledge, but it was not included, to my knowledge, in the internal investigation.

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed 6/15/2022 |
|---|---|---|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:39:11 -05'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 9 | 19 | 2022-0009-R06 |

On or about November 10, 2021, I briefed Acting AIGI Perez on the status of the WRFO, including the loss of civilian computer in evidence discovered in June 2021 in the Dallas office.  Acting AIGI Perez requested records related to the loss of the computer (Exhibit 34). During the briefing with Acting AIGI Perez, I recommended an internal investigation into the circumstances and reasons as to why the computer was lost.  An investigation would include possible misconduct or dereliction of duty by officials with the Electronic Crimes Division and SA Walton, as she was the evidence custodian at the time in the Dallas office.  SA Walton did not adequately conduct a thorough evidence inventory in 2019 and 2020 sufficient to discover the loss and incorrectly reported that the contents of the evidentiary items, including the computer, were verified during the above inventories.

On or about November 15, 2021, I had a discussion with Acting AIGI Perez and DAIGI Earle regarding concerns that I had with SA Walton's final LEAP average for FY21. Acting AIGI requested that I forward him background and related records regarding SA Walton's FY21 LEAP average.  On November 15, 2021, I sent records related to her LEAP average to DAIGI Earle (Exhibit 35). Specifically, I believed that SA Walton may have inflated her LEAP hours worked prior to the fiscal year end to meet the annual LEAP requirement.  While SA Walton reported 11.5 case related LEAP hours between September 26, 2021 and September 30, 2021, there were no documented work products or chronology entries in the ECMS by SA Walton to account for the reported time. During the mid-year evaluation on or about April 12, 2021, I notified SA Walton of her need to address and increase her LEAP hours based on the average at the time – 1.68 hours (Exhibit 1).

On or about January 6, 2022, I conducted a MS Teams meeting with Acting AIGI Perez and DAIGI Earle regarding concerns that SA Walton allegedly manipulated the case chronology log in the electronic case management system (ECMS), including my supervisory case review, to support a previously unsupported investigative activity.  On January 8, 2022, I sent records related to the alleged conduct to Acting AIGI Perez and DAIGI Earle (Exhibit 36).  These records showed that without knowledge or approval of management, SA Walton allegedly modified two previous chronology log entries in the ECMS to support a revised closing report submitted by SA Walton after management feedback on December 22, 2022.  These unapproved modifications were done five months after original entry and conflicted with a previously approved memorandum of the same activity in the ECMS. The alleged activity included the manipulation to a supervisory case review (i.e., a chronology entry entered by me to document the bi-weekly management review of the case) entered the ECMS on June 27, 2021. The case closing report submitted by SA Walton remains unapproved, as I believe the report to include false information, in direct contradiction to previous statements and work products submitted by SA Walton. In my meeting with Acting AIGI Perez and DAIGI Earle on or about January 6, 2022, I recommended the investigation of the alleged

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed  6/15/2022 |
|---|---|---|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:06:32 -05'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)***

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| **10** | **19** | **2022-0009-R06** |

misconduct by SA Walton as the conduct represented serious integrity concerns that could have ramifications of SA Walton's ability to testify under oath, per Giglio vs. United States, as the conduct could result in her being placed on a Giglio list.

On or about May 3, 2022, I discussed my concerns with Acting AIGI Perez regarding the modification of another case chronology log by SA Walton under a different case, in which the investigative activity was previously undocumented by SA Walton.  Acting AIGI Perez directed me to refer the matter to SA Brezinski to possibly include in the internal investigation.  On or about May 3, 2022, I discussed the alleged conduct with SA Brezinski and sent him a summary on May 3, 2022, prepared by ASAC (Exhibit 37), and related support records on May 6, 2022 (Exhibit 38).  These records showed that without knowledge or approval from management, SA Walton allegedly modified a previous chronology log entry to support a revision to a memorandum, in which a specific investigative activity was never documented by SA Walton.  The unapproved modification was done several months after original entry and conflicted with previous statements and submissions of work products by SA Walton.  The final work product submitted by SA Walton remains unapproved, as I believe the report to include false information, in direct contradiction to previous statements and work products submitted by SA Walton. In my meeting with Acting AIGI Perez on or about May 3, 2022, I recommended the investigation of the alleged misconduct by SA Walton as the conduct represented serious integrity concerns that could have ramifications of SA Walton's ability to testify under oath, per Giglio vs. United States, as the conduct could result in her being placed on a Giglio list.

On or about January 28, 2022, I discussed and forwarded concerns and related support records to Acting AIGI Perez and DAIGI Earle regarding SA Walton's alleged modification of a SME report without the SME's knowledge and approval (Exhibit 39). While I referred the matter to Acting AIGI Perez for possible inclusion into the internal investigation, I do not believe the issue was included, as Acting AIGI did not want to include so many issues that it downplayed the severity of the other issues. I referred the matter as the alleged conduct could have detrimental effects on the case and the credibility and reputation of the SME, as they may be called to testify to the accuracy and modifications to the report, for which they had prior knowledge of.

131. Was it your decision for an internal investigation for Complainant based on allegation of misconduct?  If so, please give in detail the reason for your decision.
     **Answer:** No. I did not make the decision to initiate an internal investigation but relayed my concerns and related documents/evidence to Acting AIGI Perez and DAIGI Earle regarding several allegations of misconduct issues involving SA Walton. I was excluded and was not involved in the internal investigation, including being restricted from viewing

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed  6/15/2022 |
|---------------------|---|------------------------|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:08:29 -05'00' | |

October 2015

Affidavit of
Page 49 of 804

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **11** | **19** | **2022-0009-R06** |

the case in the ECMS.  Accordingly, I had no detailed knowledge of the investigative plan, steps taken, or findings of the internal investigation.

132.  If you did not make the decision, what was your involvement, if any, in this action?
   **Answer:**  See answer to question 130 & 131.

133. If you had no knowledge or involvement in Complainant being given an internal interview, please identify who did and the reason(s) for doing so.  Provide the management official's name, position title, facility address, telephone number and email address.
   **Answer:** As I was excluded from involvement and oversight of the internal investigation, I had no direct involvement in the internal interview, other than coordination with the interviewing agents for EPA Region 6 entry.  The interviewing agents did not have the respective key cards/elevator badge to gain access to the interview location in the Dallas office.  In addition, the case agent, SA Paul Brezinski, EPA OIG, Philadelphia, PA, informed me that they intended to take SA Walton's EPA government-owned laptop computer and requested that I obtain a replacement laptop from IT.  I secured a replacement laptop computer for SA Walton in May 2022, from the OIG IT department.  Accordingly, on the day of the interview, May 25, 2022, I coordinated office entry and provided a replacement computer for SA Walton to SA Brezinski, and Joey Campbell, EPA OIG, Atlanta, GA.  Management officials with involvement in the interview – (possibly) ASAC Marcella Phelps, EPA OIG, Washington, DC, (202) 380-6395, phelps.marcella@epa.gov; Acting AIGI Marc Perez, EPA OIG, Seattle, WA, (202) 603-4861, perez.marc@epa.gov; and DAIGI Sean Earle, EPA OIG, Atlanta, GA, (404) 562-9865, earle.sean@epa.gov.

134.  Who concurred with the action for there to be an internal investigation for Complainant?  Identify by name, position title work location and phone number?
   **Answer:** Acting AIGI Marc Perez, EPA OIG, Seattle, WA, (202) 603-4861; and DAIGI Sean Earle, EPA OIG, Atlanta, GA, (404) 562-9865.

135.  Did you consult with anyone for guidance and or advice prior to Complainant  being involved in an internal investigation.? If so, identify him/her/them by full name and position and describe his/her/their involvement.
   **Answer:** I have brought the misconduct allegations to the attention of both Eric Mabry, HRD, and Lori Ruk, OC, for guidance. Based on consultation with HRD and OC, they opined that any conduct related issues could not be addressed until the full PIP and possible action were resolved.

136.  Identify by full name, position title and work location the management official(s) who  was responsible for the internal investigation.  Please describe each manager's role in the decision.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:10:27 -05'00' | Date Signed  6/15/2022 |
|---|---|---|

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet***)* | **12** | **19** | **2022-0009-R06** |

**Answer:**

- SAC Garrett J. Westfall, EPA OIG, Dallas, TX.  I coordinated and referred the misconduct allegations to HRD, OC, and OI Senior Leadership (Acting AIGI Perez/DAIGI Earle).
- ASAC Staci Gurin, EPA OIG, Kansas City, KS. ASAC Gurin observed four of the misconduct allegations and provided support records on two of the allegations (No. 4 & 5 as described in Question No. 130).
- Acting AIGI Marc Perez, EPA OIG, Seattle, WA. One of two senior OI leaders that decided the alleged conduct warranted an internal investigation.
- DAIGI Sean Earle, EPA OIG, Atlanta, GA. One of two senior OI leaders that decided the alleged conduct warranted an internal investigation.

137. Please explain in detail the facts that led up to the  internal investigation.
   **Answer:** Please see answer to Question 130.

138. How was Complainant notified (verbally or in writing) and who notified her regarding the internal investigation? ***If in writing, please provide a copy.  If verbally, explain what was said or done.***
   **Answer:** I am unaware how SA Walton was notified of the internal investigation.  I am aware the investigative agents, SA Campbell and SA Brezinski, attempted to schedule an interview with her and her attorney in early December 2021, but the interview was delayed until May 25, 2022.

139. When did the (dates- to and from ) internal investigation take place?
   **Answer:** Unknown.  I have no specific knowledge of the timeframe of the internal investigation.

140. Were you present during the internal investigation?  If so, please explain what happened and why.
   **Answer:** No. I have been excluded from the internal investigation and have not been present during the investigation or any interviews conducted. I have no oversight role as an OI manager of the investigation and have been restricted from access in the ECMS of the case.

141. Please state what information was to be obtained from the internal investigation.
   **Answer:** Unknown.  I have not been briefed or provided information on the planned investigative steps or subsequent findings of the internal investigation.

142. Please explain why there was an investigation into Complainant's misconduct.
   **Answer:** Please see response to Question 130.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:13:01 -05'00' | Date Signed  6/15/2022 |
|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 13 | 19 | 2022-0009-R06 |

143. Did the Complainant communicate with you and/or any management official(s) her concerns regarding the internal investigation? If so, please explain what was said and response Complainant received.
   **Answer:** SA Walton has not communicated with me any aspect of the internal investigation, including her concerns. I am unaware of any communication by SA Walton another management official on her concerns regarding the internal investigation.

144. Do you have any documentation or evidence to support the internal investigation? If so, what and provide a copy with your affidavit.
   **Answer:** Please see response to question 130 and related Exhibits 34-39 for documentation and evidence to support the alleged conduct referrals I made to Acting AIGI Perez and DAIGI Earle.

   For clarification, I do not have documentation of the internal investigation.

145. Was Complainant given a reason/explanation/justification for the internal investigation of Complainant's misconduct?
   **Answer:** Unknown, I have not communicated with SA Walton regarding the internal investigation.

   If so, state the reason/explanation Complainant was given and identify by full name and position the management official(s) who gave her the reason/explanation.
   **Answer:** Unknown

   If Complainant was given a reason/explanation, did she disagree with it? If so, explain in detail why.
   **Answer:** Unknown

146. Was Complainant's **race** a factor when an internal investigation was initiated based on allegations of misconduct?
   **Answer:** No. For clarification, I did not authorize or direct that an internal investigation be initiated involving SA Walton. My involvement included the referral of possible misconduct to Acting AIGI Perez and DIAGI Earle for possible action. SA Walton's race was not a factor when I made the referrals.

147. Was Complainant's **sex** was a factor when an internal investigation was initiated based on allegations of misconduct ?
   **Answer:** No. For clarification, I did not authorize or direct that an internal investigation be initiated involving SA Walton. My involvement included the referral of possible misconduct to Acting AIGI Perez and DIAGI Earle for possible action. SA Walton's sex was not a factor when I made the referrals.

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed 6/15/2022 |
|---------------------|--|------------------------|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:15:40 -05'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | **14** | **19** | **2022-0009-R06** |

148.  Was Complainant's **prior EEO activity** was a factor when an internal investigation was initiated based on allegations of misconduct?
   **Answer:** No., I have no knowledge or involvement in SA Walton's prior EEO activity. For clarification, I did not authorize or direct that an internal investigation be initiated involving SA Walton.  My involvement included the referral of possible misconduct to Acting AIGI Perez and DIAGI Earle for possible action. Since I have no knowledge of SA Walton's prior EEO activity, the said activity was not a factor when I made the referrals.

149.  How do you respond to Complainant's allegation that the cited action in this claim is a form of harassment against her?
   **Answer:** I disagree with above statement that the cited action is a form of harassment. I did not refer the alleged misconduct involving SA Walton based on race, sex, religion, national origin, age, disability, or genetic information.  Furthermore, SA Walton never made any harassment claims or reported to me that she felt she was being harassed or there was a hostile work environment.

   As an EPA OIG agent, an agent's work product is relied upon by both internal and external stakeholders to the government to include the Agency, prosecutors, judges, victims, and the subjects of our investigations. It is imperative that all work products be accurate, including information provided to prosecutors to support criminal or civil prosecutions. In short, case work products, whether a memorandum or ECMS chronology log entry are legal documents open to discovery, and subsequent review, examination, and suppression. Reliance on work products has real world effects to include taking away someone's civil liberties and livelihood. Products that contain factual errors or discrepancies could result in, for example, a criminal or civil case being dismissed if the underlying statements in the work products are later determined to be inaccurate or first lacking in credibility.

   When I began as a first-line supervisor in approximately July 19, 2020, I immediately began to see that SA Walton exhibited poor performance, to include possible misconduct concerns. As her performance and conduct could have material effects on her cases and the integrity and credibility of the OIG, I had a duty to address the performance deficiencies and misconduct observed.  Accordingly, I began coordination with HR and OC in as early as October 13, 2020, on performance and conduct related issues (Exhibit 10).

150. Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who **were given an internal investigation** as the Complainant?
   **Answer:**  I have not supervised any other employees who were in the same or similar circumstances like SA Walton.  Other than SA Walton, I have not referred allegations of

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | GARRETT WESTFALL | Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:18:16 -05'00' | Date Signed  6/15/2022 |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 15 | 19 | 2022-0009-R06 |

misconduct, which resulted in an internal investigation of any other employee under my supervision.

If so, identify each comparator employee by full name, position title race and sex and explain why they were given an internal investigation. .Provide the name of each employee's supervisor. **Provide copy for each cited comparator.**
**Answer:** N/A

Are you aware of each cited comparator having prior EEO activity? If so, when, and how did you become aware?
**Answer:** N/A

151.  Within the past two years were there other employees under your supervision and with the same or similar circumstance as the Complainant who **were not given an internal investigation** as the Complainant?
**Answer:**  I have not supervised any other employees who were in the same or similar circumstances like SA Walton.  Other than SA Walton, I have not referred allegations of misconduct, which resulted in an internal investigation of any other employee under my supervision.

If so, identify each comparator employee by full name, position title race, sex and explain why they were not given an internal investigation.  Provide the name of each employee's supervisor. **Provide copies for each cited comparator.**

Are you aware of each cited comparator having prior EEO activity? If so, when, and how did you become aware?
**Answer:**  N/A

152. Cite the Agency policies and/or contract provisions that were relied upon in your decisions and/or actions when an internal investigation was initiated based on allegations of misconduct by Complainant. Explain in detail how each policy and/or contract provision applies.
**Answer:**  I did not decide to initiate the internal investigation.  I did not rely upon any policies in initiating an internal investigation, as I only referred allegations of misconduct to Acting AIGI Perez and DAIGI Earle.

There are multiple OIG procedures, which I applied as criteria when evaluating SA Walton's alleged misconduct in drafting the referrals, including:

- Procedure 206: Case Administration – This procedure outlines the specific guidelines, expectations, and timeframes related to case work (Exhibit 11). Section

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed  6/15/2022 |
|---|---|---|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:20:34 -05'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| **16** | **19** | **2022-0009-R06** |

3.1 outlines general investigative standards such as any investigative product should be complete, concise, accurate and objective; and communicate the pertinent facts in clear, simple language.  Section 4.1 outlines requirements for the official case file in that all investigative activity, both exculpatory and incriminating, should be recorded in the official investigative file.

- Procedure 207: Interviews, Advisement of Right, Oaths, Statements and Record Reviews – This procedure outlines specific guidelines, expectations, and requirements for conducting interviews, advisement of rights, documenting interviews and record reviews, and obtaining statements (Exhibit 12). Section 5.3 outlines that the agent report an interview in a memorandum of activity within 10 days from the date of the interview. Section 7.2 outlines that record reviews will be similarly written within 10 days from the activity.

- Procedure 211: Physical and Documentary Evidence – This procedure outlines the specific guidelines, expectations, and requirements regarding the receipt, custody, and disposition of evidence as an agent, as well as an evidence custodian (Exhibit 13). As SA Walton was an evidence custodian during the rating period, this procedure was used to evaluate her possible misconduct in a collateral duty.

- Procedure 223: Investigative Reports – this procedure outlines the specific guidelines, expectations, and requirements in preparing investigative reports (Exhibit 15).  Section 2.1 provides the following report requirements, pertinent to SA Walton's performance:
  - All investigative reports will be complete, clear, concise, accurate and logically organized, and communicate the pertinent facts in clear, simple language. Unnecessary, obscure and confusing language should be avoided.
  - The report will contain facts discovered during the investigation, such as those learned during interviews, record reviews, searches, surveillances or other investigative activities. The report will not include any information that was not obtained during the course of the investigation.
  - Irrelevant material will not be included in investigative reports.
  - Investigative reports will address all aspects of the allegations and no issues will be left unaddressed.
  - All statements in the investigative report will be supported by exhibits. When an exhibit is referenced, the reader will be directed to the specific page and/or paragraph of the exhibit.
  - Investigative reports will contain the necessary supporting information so the reader does not have to make computations, question how amounts were determined, or review voluminous documents.
  - Tables, schedules or charts may be included in the report to clearly present information as long as they are supported by and referenced to the appropriate exhibits.

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed  6/15/2022 |
|---|---|
| GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:23:02 -05'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| **17** | **19** | **2022-0009-R06** |

Procedure 218: Law Enforcement Availability Pay – this procedure outlines the specific guidelines, expectations, and requirements in working and reporting LEAP hours (Exhibit 40). Section 5.3 outlines the information and required documentation for searches based on consent.

153. **Other than this EEO complaint** are you aware if the Complainant filed any other administrative action/appeal, grievance and/or met with higher level management when Complainant was given an internal investigation? If so, to whom (name and title) did she complain, when (what date), what was the resolution/response? And what is the status of the appeal? **Provide a copy of the written contentions, if applicable.**
   **Answer:** I am unaware of any appeal or grievance based on the internal investigation.

## HARASSMENT/HOSTILE WORK ENVIRONMENT:

154. Did Complainant tell you that your actions constituted harassment and/or a hostile work environment for her? If so, describe in detail when and what specifically the Complainant told you and what was your response/action?
   **Answer:** No. SA Walton never told me in verbal or written form that my actions constituted harassment and/or a hostile work environment.

155. Are you aware of Complainant (or anyone acting on behalf of Complainant) bringing to the attention of any other management official concerns about her allegation of harassment/hostile work environment? If so, to whom did he/she inform of her concerns and when, to the best of your knowledge.
   **Answer:** On March 22, 2022, I was notified that I was to be interviewed as part of EPA Order 4711, Procedure for Addressing Allegations of Workplace Harassment, regarding harassment in the workplace. Until that notification, I had never been apprised of any allegations regarding my actions being perceived as harassment or a hostile work environment. I have no background on the complaint provided by SA Walton and what official she provided the complaint to and when. On March 24, 2022, I was interviewed by the fact finder. The only harassment alleged, based on the line of questioning, was a conversation I had with SA Walton regarding evidentiary issues in the Dallas evidence room on August 24, 2021, during an evidence inventory. Please note, that there were two evidence inventories conducted by SA Walton in FY 2021 – August 24, 2021 and September 23, 2021. I was NOT present during the evidence inventory on August 24, 2021; the alleged dated of the harassment. I was present for the inventory on September 23, 2021. Please see my notes of the interaction with SA Walton on September 23, 2021 (Exhibit 1).

156. Was an investigation conducted into Complainant's allegations of harassment/hostile work environment? If so, by whom and when?

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed  6/15/2022 |
|---|---|---|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:25:18 -05'00' | |

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 18 | 19 | 2022-0009-R06 |

**Answer:** Please see response to Question 155. I do not have detailed knowledge or specifics as the scope, timeframe, or other information to the EPA Order 4711 investigation. The fact finder was Mark Miller, Investigative Attorney, Administrative Investigations Directorate, EPA OIG.

157. To your knowledge, what was the outcome of the investigation? Please provide a copy of the report.
  **Answer:** I do not have a copy of the EPA Order 4711 investigative report, nor was I provided details of the findings. However, I received a memorandum from Acting AIGI Perez on May 3, 2022, that stated "I reviewed the fact-finding results; consulted with the agency's legal counsel and HR official; and concluded that the conduct described in the information gathered as part of the fact-finding inquiry fails to constitute harassment under EPA Order 4711. *See* EPA Order 4711, Sections IV(A), (K)." (Exhibit 29).

158. Was Complainant informed of the outcome? If yes, how?
  **Answer:** I am unaware on whether SA Walton was informed of the outcome.

159. Was any corrective or preventative action necessary? If so, what action was taken?
  **Answer:** I am unaware of any action taken.

160. If no investigation was conducted, please explain why.
  **Answer:** An investigation was conducted, but details of the investigation and related records are in the custody of the EPA OIG Administrative Investigations Directorate.

161. Have you received training, since your last affidavit, on anti-harassment/hostile work environment while employed by the agency? If so, when and what?
  **Answer:** My initial affidavit for this EEO action was submitted on June 14, 2022. I have not received any training on anti-harassment/hostile work environment since the initial submittal on June 14, 2022.

  My last recorded anti-harassment training – Anti-Harassment Procedures Training for EPA Employees, August 11, 2020. I have had other managerial training, which included harassment/hostile work environment training as part of the curriculum, such as the Office of Mission Support-Labor and Employee Relations All-Day Basic Supervisor Training, February 9, 2021.

162. Do you have any additional information or documentation that is relevant to the issue including in this EEO complaint and/or Complainant's claim of discrimination, retaliation, and harassment/hostile work environment? *If you mentioned any documents in answering your affidavit questions please provide.*
  **Answer:** No.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed 6/15/2022 |
|---|---|---|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:27:07 -05'00' | |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet*)*** | **19** | **19** | **2022-0009-R06** |

**I provided an extensive number of relevant and related source documents (Exhibits 33-40) as inclusive to this amended affidavit, and cited related documents from the prior affidavit (Exhibits 1-32). This amended affidavit is incomplete without the exhibits and should not be included in any report of investigation or referral without the referenced exhibits and previously submitted affidavit.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Date Signed  6/15/2022 |
|---|---|---|
| | GARRETT WESTFALL  Digitally signed by GARRETT WESTFALL  Date: 2022.06.15 18:29:20 -05'00' | |

October 2015

# Certification

I have read the proceeding attached statement, consisting of 19 pages with 8 Exhibits, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

### Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### Standards of Conduct

Regulations require all employees to cooperate in any EEO investigation.

Subscribed and (sworn) (affirmed) before me on the _____ day of_____, 20_____.

*(Affiant, sign in the presence of an EEO Complaints Investigator.)*

| Signature of EEO Complaints Investigator | Signature of Affiant |
|---|---|
|  |  |

### Declaration

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant must sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | | Date Signed |
|---|---|---|
| X   GARRETT WESTFALL | Digitally signed by GARRETT WESTFALL Date: 2022.06.15 18:55:10 -05'00' | 6/15/2022 |

Form 2571 October 2015

| | |
|---|---|
| **From:** | Westfall, Garrett |
| **To:** | "Sean Earle" |
| **Subject:** | FW: LEAP certification for FY21 |
| **Date:** | Monday, November 15, 2021 12:24:00 PM |
| **Attachments:** | PMA PP1 Screenshot 10.5.21.pdf |
| | PMA LEAP-Walton-FY21 10.7.21.pdf |
| | PMA LEAP-Walton-FY21 10.12.21.pdf |
| | AWALTON fy21 LEAP Cert and PMA Report 10.19.2021.pdf |
| | PMA Screen shot PP1 Walton.11.15.21.pdf |

Sean,

Here are the Allegations regarding LEAP for FY21:

It is alleged that Special Agent Alisa Walton, EPA OIG, Region 6, Dallas Office, inflated her Law Enforcement Availability Pay (LEAP) hours prior to submission of her FY21 annual certification to ensure she attained the average of 2.0 hours per day, as required under Office of Investigations Procedure No. 218.   While SA Walton had not yet completed and certified her time and LEAP hours for Pay Period 1 for FY22 (which includes the last week in FY21), she had not logged in any LEAP hours as of October 5, 2021, and October 12, 2021 (as of the morning).  On October 12, 2021, at 11:14 AM CST, ASAC Staci Gurin sent an email to Southwest Division agents requesting their submittal of the annual LEAP certification.  It is alleged that the certification requested prompted SA Walton to add the LEAP hours (10.25 from 9/26-9/28) to boost her average to over 2.0 (2.03) to report on the certification.  She later added some additional LEAP hours to the week in question (13.50 from 9/26-9/30), that ended her LEAP average at 2.05, as cited on her annual certification and PMA (submitted and approved on 10/14/21).  Accordingly, it is believed that SA Walton may have inflated her hours worked in an effort to meet the annual LEAP requirement.   While work products do not always correspond to the hours associated with a case, 6 LEAP hours were attributed to the ███████████████ case, and 5.5 LEAP hours were attributed to ███████████ case by SA Walton between 9/26-9/30/2021.  A review of I2M disclosed no MOAs or chron entries by SA Walton surrounding the questioned days on either case.

Please let me know if you need any further information. I included the original email & attachments as background.

Garrett J. Westfall
Special Agent in Charge
Western Region Field Office
U.S. Environmental Protection Agency
Office of Inspector General
Office of Investigations
1201 Elm Street, Suite 500
Dallas, TX 75270
(214) 665-6545 (fax)
(214) 846-9402 (cell)

**From:** Westfall, Garrett
**Sent:** Tuesday, October 12, 2021 7:32 PM
**To:** Mabry, Rufus <Mabry.Rufus@epa.gov>
**Cc:** Lee, Ellen <Lee.Ellen@epa.gov>; Gurin, Staci <gurin.staci@epa.gov>
**Subject:** LEAP certification for FY21

Erik

I am seeking guidance on how to address this issue with Alisa, or whether we are going to include it in the proposed PIP or if it is something I should not be addressed as this point because she technically has not reported her time/LEAP certification?

Every year Special Agents have to certify to their annual average of LEAP for the FY end.  SA Walton throughout the FY has been below the 2.0 average and has been reminded of her responsibility to get her average up on multiple occasions by myself and also ASAC Chris Huntington.  At mid-year, her LEAP average was at 1.68, which I specifically addressed with her.  This year, the average would include time charges associated with PP 1, ending last week (10/9) so Agents technically have through this week to get the hours in and submitted to their supervisor.  Supervisors have the ability to view Agents' timesheets in draft form prior to formal submittal.  As of last week and this morning (10/12), SA Walton had not reported (although it is technically in draft form until submittal to her supervisor) any LEAP associated with 9/26-9/30 (please see the snapshots of the reports attached), thus resulting in an average balance below requirements of 2.0 (**1.97**).  As shown in the above screenshot on 10/5 (and it was the same this morning as verified by SAC Westfall and ASAC Gurin), SA Walton had not completed any LEAP hours for 9/26-9/30 even though she had completed her regular hours for the week for 9/26 previously.  On October 4, 2021, ASAC Gurin sent an email requesting that all agent certification for the year to be completed, including the LEAP certification.  On October 12, 2021, at 11:14 AM CST, ASAC Gurin has sent an email to SW Division agents requesting their submittal of the annual LEAP certification.  We believe this prompted SA Walton to add the LEAP hours (**10.25 from 9/26-9/28**) to boost her average to over 2.0 (**2.03**) to report on the certification.  At this time, I am questioning the accuracy of these newly added LEAP hours (although technically not reported yet).

Accordingly:
- Is this even an issue that we need to address at this point (I assume it is)?
- Do we wait until she completed the certification/submitted the timesheet to address the issues?
- What can I or Staci request of her regarding the legitimacy of these hours?
- Can we ask for support records to show she in fact worked these LEAP hours, especially the Sunday hours?
- At what point does this need to be looked at by someone other than her supervisors (i.e., I would generally pull IP or VPN timeframes to see if she was on during the after-hours, but that would be an investigation, so I am not sure where the line is, if that makes sense.)

Any guidance would be appreciated.  Thank you

Garrett J. Westfall
Special Agent in Charge
Western Region Field Office
U.S. Environmental Protection Agency
Office of Inspector General
Office of Investigations
1201 Elm Street, Suite 500
Dallas, TX 75270
(214) 665-6545 (fax)
(214) 665-2249 (office)
(214) 846-9402 (cell)

# UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
## OFFICE OF INSPECTOR GENERAL
1301 CONSTITUTION AVE, NW
WASHINGTON, DC 20004

LAW ENFORCEMENT AVAILABILITY PAY
ANNUAL CERTIFICATION

---

EMPLOYEE CERTIFICATION

---

I, Alisa Walton _____, have read the requirements for
(Print Name of Special Agent)

availability pay as authorized by 5 U.S.C. § 5545a and set forth in OIG Policy 218.

For LEAP Year 20 21 , which started October 1, 20 20 and ended September 30, 20 21 , I certify
that I have met the requirement to perform an annual average of 2 hours of unscheduled duty per
regular work day. For LEAP Year 20 21 my annual average was 2.05 .

For LEAP Year 20 22 , which started October 1, 20 21 and ends September 30, 20 22 , I certify
that I expect to perform unscheduled duty sufficient to meet the requirement of an annual average
of 2 hours of unscheduled duty per regular work day.

_Alisa Walton_____          October 14, 2021
(Signature of Special Agent)                          (Date)

---

SUPERVISOR CERTIFICATION

---

I, Staci Gurin _____, have read the requirements for availability
(Print Name of Supervisor)

pay as authorized by 5 U.S.C. § 5545a and set forth in OIG Policy 218.

I certify that the above-named Special Agent met the requirement to perform an annual average of
2 hours of unscheduled duty per regular work day for LEAP Year 20 21 . His/her annual average
was 2.05 .

For LEAP Year 20 22 , I certify that the above Special Agent is expected to perform unscheduled
duty sufficient to meet the requirement of an annual average of 2 hours of unscheduled duty per
regular work day.

_____          10/19/2021
(Signature of Supervisor)                          (Date)

# Project Management Actuals

October 14, 2021

LEAP Statistics FY2021

**PP27:  27-Sep-20 - 10-Oct-20**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 6.00 | 4 00 | 0.67 |

**PP1:  11-Oct-20 - 24-Oct-20**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 7.00 | 19.00 | 2.71 |

**PP2:  25-Oct-20 - 07-Nov-20**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 4.00 | 10.75 | 2.69 |

**PP3:  08-Nov-20 - 21-Nov-20**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 7.00 | 14.50 | 2.07 |

**PP4:  22-Nov-20 - 05-Dec-20**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 8.00 | 15.75 | 1.97 |

**PP5:  06-Dec-20 - 19-Dec-20**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 9.00 | 18.75 | 2.08 |

**PP6:  20-Dec-20 - 02-Jan-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 0 | 0 | 0 |

**PP7:  03-Jan-21 - 16-Jan-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 8.00 | 15.50 | 1.94 |

**PP8:  17-Jan-21 - 30-Jan-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 8.00 | 16.25 | 2.03 |

**PP9:  31-Jan-21 - 13-Feb-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 7.00 | 11.00 | 1.57 |

**PP10:  14-Feb-21 - 27-Feb-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 3.00 | 1.75 | 0.58 |

**PP11:  28-Feb-21 - 13-Mar-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 10.00 | 13.00 | 1.30 |

**PP12:  14-Mar-21 - 27-Mar-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 8.00 | 6.75 | 0.84 |

**PP13:  28-Mar-21 - 10-Apr-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 9.00 | 24.25 | 2.69 |

**PP14:  11-Apr-21 - 24-Apr-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 9.00 | 24.75 | 2.75 |

**PP15:  25-Apr-21 - 08-May-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 10.00 | 19.00 | 1.90 |

**PP16:  09-May-21 - 22-May-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 6.00 | 14.50 | 2.42 |

**PP17:  23-May-21 - 05-Jun-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 8.00 | 17.00 | 2.13 |

**PP18:  06-Jun-21 - 19-Jun-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 9.00 | 19.00 | 2.11 |

**PP19:  20-Jun-21 - 03-Jul-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 4.00 | 8 00 | 2.00 |

**PP20:  04-Jul-21 - 17-Jul-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 9.00 | 13.50 | 1.50 |

**PP21: 18-Jul-21 - 31-Jul-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 10.00 | 16.75 | 1.68 |

**PP22: 01-Aug-21 - 14-Aug-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 9.00 | 26.00 | 2.89 |

**PP23: 15-Aug-21 - 28-Aug-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 10.00 | 21.25 | 2.13 |

**PP24: 29-Aug-21 - 11-Sep-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 9.00 | 22.75 | 2.53 |

**PP25: 12-Sep-21 - 25-Sep-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 10.00 | 24.00 | 2.40 |

**PP1: 26-Sep-21 - 09-Oct-21**

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 4.00 | 13.50 | 3.38 |

| Total Includable Days | Total LEAP Hours | Annual Avg |
|---|---|---|
| 201 | 411.25 | 2.05 |

# Project Management Actuals

October 7, 2021

## LEAP Statistics FY2021

Fiscal Year  2021   Apply

---

### PP27:  27-Sep-20 - 10-Oct-20

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 6.00 | 4.00 | 0.67 |

### PP1:  11-Oct-20 - 24-Oct-20

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 7.00 | 19.00 | 2.71 |

### PP2:  25-Oct-20 - 07-Nov-20

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 4.00 | 10.75 | 2.69 |

### PP3:  08-Nov-20 - 21-Nov-20

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 7.00 | 14.50 | 2.07 |

### PP4:  22-Nov-20 - 05-Dec-20

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 8.00 | 15.75 | 1.97 |

### PP5:  06-Dec-20 - 19-Dec-20

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 9.00 | 18.75 | 2.08 |

### PP6:  20-Dec-20 - 02-Jan-21

| Includable Days | LEAP Hours | Avg |
|---|---|---|
| 0 | 0 | 0 |

### PP7:  03-Jan-21 - 16-Jan-21

01252

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 8.00 | 15.50 | 1.94 |

### PP8:  17-Jan-21 - 30-Jan-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 8.00 | 16.25 | 2.03 |

### PP9:  31-Jan-21 - 13-Feb-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 7.00 | 11.00 | 1.57 |

### PP10:  14-Feb-21 - 27-Feb-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 3.00 | 1.75 | 0.58 |

### PP11:  28-Feb-21 - 13-Mar-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 10.00 | 13.00 | 1.30 |

### PP12:  14-Mar-21 - 27-Mar-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 8.00 | 6.75 | 0.84 |

### PP13:  28-Mar-21 - 10-Apr-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 9.00 | 24.25 | 2.69 |

### PP14:  11-Apr-21 - 24-Apr-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 9.00 | 24.75 | 2.75 |

### PP15:  25-Apr-21 - 08-May-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 10.00 | 19.00 | 1.90 |

### PP16:  09-May-21 - 22-May-21

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |

| 6.00 | 14.50 | 2.42 |

**PP17: 23-May-21 - 05-Jun-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 8.00 | 17.00 | 2.13 |

**PP18: 06-Jun-21 - 19-Jun-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 9.00 | 19.00 | 2.11 |

**PP19: 20-Jun-21 - 03-Jul-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 4.00 | 8.00 | 2.00 |

**PP20: 04-Jul-21 - 17-Jul-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 9.00 | 13.50 | 1.50 |

**PP21: 18-Jul-21 - 31-Jul-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 10.00 | 16.75 | 1.68 |

**PP22: 01-Aug-21 - 14-Aug-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 10.00 | 26.00 | 2.60 |

**PP23: 15-Aug-21 - 28-Aug-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 10.00 | 21.25 | 2.13 |

**PP24: 29-Aug-21 - 11-Sep-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 9.00 | 22.75 | 2.53 |

**PP25: 12-Sep-21 - 25-Sep-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |

**PP1:  26-Sep-21 - 09-Oct-21**

| Includable Days | LEAP Hours | Avg |
| --- | --- | --- |
| 4.00 | 0 | 0 |

| Total Includable Days | Total LEAP Hours | Annual Avg |
| --- | --- | --- |
| 202 | 397.75 | 1.97 |



October 13, 2021

ALISA WALTON - Period 1 (09/26/2021 - 10/09/2021) - Not Submitted

| | | Sun 09/26 | Mon 09/27 | Tue 09/28 | Wed 09/29 | Thu 09/30 | Fri 10/01 | Sat 10/02 | Sun 10/03 | Mon 10/04 | Tue 10/05 | Wed 10/06 | Thu 10/07 | Fri 10/08 | Sat 10/09 | Charge Total | Thru PP End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Mission Support - Cases** | | | | | | | | | | | | | | | | | |
| COMP-2015-51 -- COMP-2015-51 IMPROPER MATERIAL ON EPA ISSUED COMPUTER POSSIBLE POSSESSION OF | TW-Unsched | | | 2.50 | | | 1.00 | | | | | | | | | 3.50 | 3.50 |
| OI-CA-2014-CAC-0018 -- OI-CA-2014-CAC-0018 | TW-Unsched | | | | | 1.00 | 1.75 | | | | | | | | | 2.75 | 2.75 |
| OI-CA-2018-AFD-0091 -- OI-CA-2018-AFD-0091 | TW-Unsched | | | | | 2.00 | 1.50 | 1.00 | | | | | | | | 4.50 | 4.50 |
| OI-CA-2019-ADM-0004 -- OI-CA-2019-ADM-0004 EPA REGION 6 | TW-Unsched | | | 0.50 | | | | | | | | | | | | 0.50 | 0.50 |
| OI-CA-2019-AFD-0087 -- OI-CA-2019-AFD-0087 | TW-Unsched | | | | | 1.75 | | 2.00 | 1.50 | | 4.50 | 2.75 | | 2.50 | | 15.00 | 15.00 |
| OI-CA-2020-PPD-0100 -- OI-CA-2020-PPD-0100 | TW-Unsched | | | 3.00 | 2.75 | | | | | | | | | | | 5.75 | 5.75 |
| OI-CA-2021-ADM-0025 -- OI-CA-2021-ADM-0025 EPA REGION 6 | TW-Unsched | | | 1.00 | 1.75 | | 0.50 | | | | | | | 3.75 | | 7.00 | 7.00 |
| | **Mission Support - Cases Sub-total** | | | 6.50 | 6.75 | 5.00 | 3.00 | 5.75 | | | 4.50 | 2.75 | | 9.25 | | 39.00 | |
| **Mission Support - General Assignments** | | | | | | | | | | | | | | | | | |
| OI-FY21-G-0003 -- FY 2021 Collateral Duties | Reg | | | | | 2.00 | | | | | | | | | | 2.00 | 2.00 |
| OI-FY21-G-0003 -- FY 2021 Collateral Duties | TW-Unsched | | | | | | | | | | | | | | | 0.00 | 0.00 |
| OI-FY21-G-0007 -- FY 2021 Health Improvement Program | TW-Unsched | | | 1.00 | | 1.00 | 1.00 | | | | | | | | | 3.00 | 3.00 |
| OI-FY21-G-0012 -- FY 2021 Training | TW-Unsched | | | | | 2.00 | | | | | | | | | | 2.00 | 2.00 |
| OI-FY21-G-0018 -- FY 2021 General Employee Administration | Reg | | | | | 1.00 | | | | | | | | | | 1.00 | 1.00 |
| OI-FY22-G-0015 -- FY 2021 General Employee Administration | TW-Unsched | | | 0.50 | 1.25 | 1.00 | 1.50 | | | | | | | | | 4.25 | 4.25 |
| OI-FY22-G-0003 -- FY 2022 Collateral Duties | TW-Unsched | | | | | | 0.75 | | | | | | | | | 0.75 | 0.75 |
| OI-FY22-G-0007 -- FY 2022 Health Improvement Program | TW-Unsched | | | | | | | | | | 1.00 | 1.00 | | 1.00 | | 3.00 | 3.00 |
| OI-FY22-G-0015 -- FY 2022 General Employee Administration | TW-Unsched | | | | | | | | | | 0.75 | | 2.00 | 0.25 | | 3.00 | 3.00 |
| | **Mission Support - General Assignments Sub-total** | | | 1.50 | 1.25 | 5.00 | 4.50 | 0.75 | | | 1.75 | 1.00 | | 3.00 | 0.25 | 19.00 | |
| **Indirect Charges** | | | | | | | | | | | | | | | | | |
| Administrative Leave | | | | | | | | | | | | | | 1.50 | | 1.50 | 1.50 |
| Sick Leave | | | | | | | | 1.50 | | | 2.00 | 6.00 | | 1.50 | | 11.50 | 11.50 |
| | **Indirect Charges Sub-total** | | | | | | | 1.50 | | | 2.00 | 6.00 | | 1.50 | | 13.00 | |
| | **Grand Total** | | | 8.00 | 8.00 | 6.00 | 8.00 | 8.00 | | | 8.25 | 5.75 | 8.00 | 3.00 | 9.00 | 71.00 | |

| | | Sun 09/26 | Mon 09/27 | Tue 09/28 | Wed 09/29 | Thu 09/30 | Fri 10/01 | Sat 10/02 | Sun 10/03 | Mon 10/04 | Tue 10/05 | Wed 10/06 | Thu 10/07 | Fri 10/08 | Sat 10/09 | Charge Total | Thru PP End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overtime Charges** | | | | | | | | | | | | | | | | | |
| OI-CA-2019-AFD-0087 -- OI-CA-2019-AFD-0087 TAL | LEAP | | | 3.25 | 1.50 | | | | | | | | | | | 4.75 | 4.75 |
| OI-CA-2021-ADM-0025 -- OI-CA-2021-ADM-0025 EPA REGION 6 | LEAP | 3.75 | | | 1.75 | | | | | | | | | | | 5.50 | 5.50 |
| | **Overtime Charges Sub-total** | 3.75 | | 3.25 | 3.25 | | | | | | | | | | | 10.25 | |

Excludable Charges

ALISA WALTON · Period 1 (09/26/2021 - 10/09/2021) · Not Submitted

| | | Sun 09/26 | Mon 09/27 | Tue 09/28 | Wed 09/29 | Thu 09/30 | Fri 10/01 | Sat 10/02 | Sun 10/03 | Mon 10/04 | Tue 10/05 | Wed 10/06 | Thu 10/07 | Fri 10/08 | Sat 10/09 | Charge Total | Thru PP End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Mission Support - Cases** | | | | | | | | | | | | | | | | | |
| COMP-2015-51 – COMP-2015-51 ███████████ POSSIBLE POSSESSION OF IMPROPER MATERIAL ON EPA ISSUED COMPUTER | TW-Unsched | | 2.50 | | | | 1.00 | | | | | | | | | 3.50 | 3.50 |
| OI-DA-2014-CAC-0016 – OI-DA-2014-CAC-0016 | TW-Unsched | | | | 1.00 | | 1.75 | | | | | | | | | 2.75 | 2.75 |
| OI-DA-2018-AFD-0091 – OI-DA-2018-AFD-0091 | TW-Unsched | | | | 2.00 | 1.50 | 1.00 | | | | | | | | | 4.50 | 4.50 |
| OI-DA-2019-ADM-0094 – OI-DA-2019-ADM-0094 – ████████ EPA REGION 6 | TW-Unsched | | | | | | | | | | | | | | | 0.00 | 0.00 |
| OI-DA-2019-AFD-0087 – OI-DA-2019-AFD-0087 ET AL | TW-Unsched | | | 1.75 | | 2.00 | 1.50 | | | 4.50 | | | | | | 9.75 | 9.75 |
| OI-DA-2020-PFD-0100 – OI-DA-2020-PFD-0100 ████████ ET AL | TW-Unsched | | 3.00 | 2.75 | | | | | | | | | | | | 5.75 | 5.75 |
| OI-DA-2021-ADM-0025 – OI-DA-2021-ADM-0025 ████████ EPA REGION 5 | TW-Unsched | | | | | | 0.50 | | | | | | | | | 0.50 | 0.50 |
| | **Mission Support - Cases Sub-total** | | 5.50 | 4.50 | 3.00 | 3.50 | 5.75 | | | 4.50 | | | | | | 26.75 | |
| **Mission Support - General Assignments** | | | | | | | | | | | | | | | | | |
| OI-FY21-G-0003 – FY 2021 Collateral Duties | Reg | | | | 2.00 | | | | | | | | | | | 2.00 | 2.00 |
| OI-FY21-G-0003 – FY 2021 Collateral Duties | TW-Unsched | | | | | | 0.75 | | | | | | | | | 0.75 | 0.75 |
| OI-FY21-G-0007 – FY 2021 Health Improvement Program | TW-Unsched | | 1.00 | | 1.00 | 1.00 | | | | 1.00 | | | | | | 4.00 | 4.00 |
| OI-FY21-G-0012 – FY 2021 Training | TW-Unsched | | | | | 2.00 | | | | | | | | | | 2.00 | 2.00 |
| OI-FY21-G-0016 – FY 2021 General Employee Administration | TW-Unsched | | | 0.75 | 1.00 | 1.50 | | | | 0.75 | | | | | | 4.00 | 4.00 |
| OI-FY21-G-0016 – FY 2021 General Employee Administration | Reg | | | | 1.00 | | | | | | | | | | | 1.00 | 1.00 |
| | **Mission Support - General Assignments Sub-total** | | 1.00 | 0.75 | 5.00 | 4.50 | 0.75 | | | 1.75 | | | | | | 13.75 | |
| **Indirect Charges** | | | | | | | | | | | | | | | | | |
| Sick Leave | | | | | | | 1.50 | | | | | | | | | 1.50 | 1.50 |
| | **Indirect Charges Sub-total** | | | | | | 1.50 | | | | | | | | | 1.50 | |
| | **Grand Total** | | 6.50 | 5.25 | 8.00 | 8.00 | 8.00 | | | 6.25 | | | | | | 42.00 | |

| | | Sun 09/26 | Mon 09/27 | Tue 09/28 | Wed 09/29 | Thu 09/30 | Fri 10/01 | Sat 10/02 | Sun 10/03 | Mon 10/04 | Tue 10/05 | Wed 10/06 | Thu 10/07 | Fri 10/08 | Sat 10/09 | Charge Total | Thru PP End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Overtime Charges** | | | | | | | | | | | | | | | | | |
| | **Overtime Charges Sub-total** | | | | | | | | | | | | | | | | |
| **Excludable Charges** | | | | | | | | | | | | | | | | | |
| EOTH – Other | | | | | | | | | | | | | | | | 0.00 | 0.00 |
| ETNG – Training | | | | | | | | | | | | | | | | 0.00 | 0.00 |
| ETVL – Travel | | | | | | | | | | | | | | | | 0.00 | 0.00 |
| | **Excludable Charges Sub-total** | | | | | | | | | | | | | | | | |

ALISA WALTON · Period 1 (09/26/2021 - 10/09/2021) · Approved on 10/14/2021

Case 3:25-cv-00535-S   Document 49   Filed 08/06/25   Page 85 of 138   PageID 162

| Mission Support - Cases | | 09/26 | 09/27 | 09/28 | 09/29 | 09/30 | 10/01 | 10/02 | 10/03 | 10/04 | 10/05 | 10/06 | 10/07 | 10/08 | 10/09 | Charge Total | Thru PP End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COMP-2015-51 – COMP-2015-51 ███ POSSIBLE POSSESSION OF IMPROPER MATERIAL ON EPA ISSUED COMPUTER | TW-Unsched | | | 2.50 | | | 1.00 | | | | | | | | | 3.50 | 3.50 |
| OI-DA-2014-CAC-0001 – OI-DA-2014-CAC-001█ | TW-Unsched | | | | | 0.50 | 1.75 | | | | 2.25 | 1.50 | | | | 6.00 | 6.00 |
| OI-DA-2018-AFD-0091 – OI-DA-2018-AFD-0091 | TW-Unsched | | | | | 2.00 | 1.50 | 1.00 | | | | | | | | 4.50 | 4.50 |
| OI-DA-2019-ADM-0094 – OI-DA-2019-ADM-0094 █ EPA REGION 6 | TW-Unsched | | | | 0.50 | | | | | | | | | | | 0.50 | 0.50 |
| OI-DA-2019-AFD-0087 – OI-DA-2019-AFD-0087 ███ ET AL | TW-Unsched | | | 1.75 | | 2.00 | 1.50 | | | | 4.50 | 2.75 | | 1.00 | 2.50 | 16.00 | 16.00 |
| OI-DA-2020-PFD-0100 – OI-DA-2020-PFD-0100 | TW-Unsched | | 3.00 | 2.75 | | | | | | | | | 0.50 | | | 6.25 | 6.25 |
| OI-DA-2021-ADM-0025 – OI-DA-2021-ADM-0025 █ EPA REGION 6 | TW-Unsched | | 1.00 | 1.75 | | | 0.50 | | | | 1.75 | | 2.00 | 3.75 | | 10.75 | 10.75 |
| | Mission Support - Cases Sub-total | | 6.50 | 6.75 | 2.50 | 3.50 | 5.75 | | | | 6.25 | 5.00 | | 5.00 | 6.25 | 47.50 | |

| Mission Support - General Assignments | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OI-FY21-G-0003 – FY 2021 Collateral Duties | Reg | | | | | 2.00 | | | | | | | | | | 2.00 | 2.00 |
| OI-FY21-G-0007 – FY 2021 Health Improvement Program | TW-Unsched | | 1.00 | | | 1.00 | 1.00 | | | | | | | | | 3.00 | 3.00 |
| OI-FY21-G-0012 – FY 2021 Training | TW-Unsched | | | | | 2.00 | | | | | | | | | | 2.00 | 2.00 |
| OI-FY21-G-0016 – FY 2021 General Employee Administration | Reg | | | | | 1.50 | | | | | | | | | | 1.50 | 1.50 |
| OI-FY21-G-0016 – FY 2021 General Employee Administration | TW-Unsched | | 0.50 | 1.25 | | 1.00 | 1.50 | | | | | | | | | 4.25 | 4.25 |
| OI-FY22-G-0003 – FY 2022 Collateral Duties | TW-Unsched | | | | | | 0.75 | | | | | | | | | 0.75 | 0.75 |
| OI-FY22-G-0007 – FY 2022 Health Improvement Program | TW-Unsched | | | | | | | | | | 1.00 | 1.00 | | 1.00 | | 3.00 | 3.00 |
| OI-FY22-G-0016 – FY 2022 General Employee Administration | TW-Unsched | | | | | | | | | | 0.75 | | 2.00 | 0.25 | | 3.00 | 3.00 |
| | Mission Support - General Assignments Sub-total | | 1.50 | 1.25 | | 5.50 | 4.50 | 0.75 | | | 1.75 | 1.00 | | 3.00 | 0.25 | 19.50 | |

| Indirect Charges | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Administrative Leave | | | | | | | | | | | | | | 1.50 | | 1.50 | 1.50 |
| Sick Leave | | | | | | | 1.50 | | | | 2.00 | 8.00 | | | | 11.50 | 11.50 |
| | Indirect Charges Sub-total | | | | | | 1.50 | | | | 2.00 | 8.00 | | 1.50 | | 13.00 | |
| | Grand Total | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | | | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 8.00 | 80.00 | |

| Overtime Charges | | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Sun | Mon | Tue | Wed | Thu | Fri | Sat | Charge Total | Thru PP End |
| | | 09/26 | 09/27 | 09/28 | 09/29 | 09/30 | 10/01 | 10/02 | 10/03 | 10/04 | 10/05 | 10/06 | 10/07 | 10/08 | 10/09 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OI-DA-2014-CAC-0001 – OI-DA-2014-CAC-001█ | LEAP | | | | | 0.50 | | | | | 0.75 | | | | | 1.25 | 1.25 |
| OI-DA-2019-AFD-0087 – OI-DA-2019-AFD-0087 ███ ET AL | LEAP | | | 3.25 | 1.50 | 1.25 | | | | | 1.75 | | | | | 7.75 | 7.75 |
| OI-DA-2021-ADM-0025 – OI-DA-2021-ADM-0025 █ EPA REGION 6 | LEAP | | 3.75 | | 1.75 | | 1.50 | | | | | | | | | 7.00 | 7.00 |
| 7539 – OI-FY22-G-0016 FY 2022 General Employee Administration | LEAP | | | | | | | | | | | | | 1.00 | | 1.00 | 1.00 |
| | Overtime Charges Sub-total | | 2.75 | 3.25 | 3.25 | 1.75 | 1.50 | | | | 1.75 | 0.75 | | 1.00 | | 17.00 | |

| Excludable Charges | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EOTH – Other | | | | | | | | | | | | | | | | 0.00 | 0.00 |
| ETNG – Training | | | | | | | | | | | | | | | | 0.00 | 0.00 |
| ETVL – Travel | | | | | | | | | | | | | | | | 0.00 | 0.00 |
| | Excludable Charges Sub-total | | | | | | | | | | | | | | | | 0.00 | |

Overtime Charge Summary

| Regular Work Days This Period | Total LEAP Hours This Period | LEAP Hours Per Day |
|---|---|---|
| 9.00 | 17.00 | 1.90 |

01258

View Annual LEAP Statistics

| | |
|---|---|
| **From:** | Westfall, Garrett |
| **To:** | Perez, Marc |
| **Cc:** | "Sean Earle" |
| **Subject:** | Memo from EC on Missing Evidence - computer |
| **Date:** | Wednesday, November 10, 2021 10:16:00 AM |
| **Attachments:** | Memo to SAC File Dallas - Evidence███-OI-DA-2014-CAC-0016 - 10.29.2021 GJWaw.pdf |

Good morning Marc,

FYSA.  As discussed, attached is the memo I had Evidence Custodian, Alisa Walton, prepare in regards to the missing laptop computer first discovered during evidence disposition on the case in June of this year.  After conclusion of the Annual Inventories in September 2021, the computer was not found.  The resolution on restitution to the owner (former lab fraud owner/subject) is still outstanding, as I am waiting a response from OSD (Justin) on the path forward.  As far as corrective actions, I removed Alisa as a evidence custodian at the fiscal year end.  Paul is now primary and Brett is secondary evidence custodians.  In addition, this issue, as well as 7 other evidentiary issues, will also be addressed as conduct issues with Alisa (in coordination with HRD and OC), after the conclusion of the PIP (hopefully instituted this week).  On my to-do list as well is the development of an annual training for evidence custodians, with verification of participation and review of the Policy 211.

Let me know if you have any questions or need any additional information on this matter.

Garrett J. Westfall
Special Agent in Charge
Western Region Field Office
U.S. Environmental Protection Agency
Office of Inspector General
Office of Investigations
1201 Elm Street, Suite 500
Dallas, TX 75270
(214) 665-6545 (fax)
(214) 665-2249 (office)
(214) 846-9402 (cell)

# Exhibit 36

| | |
|---|---|
| **From:** | Westfall, Garrett |
| **To:** | "Earle, Sean" |
| **Cc:** | Perez, Marc |
| **Subject:** | Referral for Possible Investigation - Conduct Issue |
| **Date:** | Saturday, January 8, 2022 2:30:00 PM |
| **Attachments:** | 1.8.22 Conduct Referral-Walton_.docx |
| | 1.8.22 Conduct Referral Attachment 1_Redacted.pdf |
| | 1.8.22 Conduct Referral Attachment 2_Redacted.pdf |
| | 1.8.22 Conduct Referral Attachment 3_Redacted.pdf |
| | 1.8.22 Conduct Referral Attachment 4.pdf |
| | 1.8.22 Conduct Referral Attachment 5.pdf |

Sean,

Please find the allegation regarding I2M data manipulation by SA Walton and related attachments for your review and consideration for further inquiry.  The Attachments have been redacted to exclude the personnel matter.  Please let me know if you have any additional questions.

Thanks.

Garrett J. Westfall
Special Agent in Charge
Western Region Field Office
U.S. Environmental Protection Agency
Office of Inspector General
Office of Investigations
1201 Elm Street, Suite 500
Dallas, TX 75270
(214) 665-6545 (fax)
(214) 665-2249 (office)
(214) 846-9402 (cell)

**Exhibit 39**

| From: | Westfall, Garrett |
|---|---|
| To: | Perez, Marc |
| Cc: | "Sean Earle" |
| Subject: | Conduct issue |
| Date: | Friday, January 28, 2022 4:59:00 PM |
| Attachments: | DS Woods MOA Summary 1.28.2022 GJW.docx |
| | W10192020 Review of ▮▮▮▮ web site MOA ▮▮▮▮ (002).docx |
| | 10192020 Review of ▮▮▮▮ web site by Bruce Woods (2).docx |
| | FW ▮▮▮▮ report.msg |

Good afternoon Marc,

Please find the conduct issue raised to my attention today by ASAC Gurin regarding SA Alisa Walton. Specifically, SA Walton modified a MOA from a SME – Dr. Bruce Woods. While SA Walton did not change or modify any content, she added highlights (green, blue, pink, and red) to the MOA that then created confusion. More importantly, Dr. Woods did not make the highlights (only yellow highlights). While even though the addition is highlighted content, I believe it is problematic for an agent to modify, in any way, a deliverable/report from a SME. Please see the summary from ASAC Gurin. The first MOA (W10192020...) is the original MOA prepared and provided to SA Walton in October 2020. The second MOA (10192020...) is the MOA uploaded by SA Walton on 1/27/22. On a side note, the MOA was not finalized and uploaded until 2022 (see email chain). I am forwarding this issue to you for your awareness.

Please let me know if you have any questions or need any additional information. Thank you

Garrett J. Westfall
Special Agent in Charge
Western Region Field Office
U.S. Environmental Protection Agency
Office of Inspector General
Office of Investigations
1201 Elm Street, Suite 500
Dallas, TX 75270
(214) 665-6545 (fax)
(214) 665-2249 (office)
(214) 846-9402 (cell)

**EEO Investigative Affidavit (Witness)**

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | **1** | **7** | **2022-0009-R06** |

| 1. Affiant's Name (Last, First, MI) **Roelke, Thomas** | | 2. Employing Federal Agency and Office **EPA OIG** |
|---|---|---|

| 3. Position Title **Deputy Assistant Inspector General for Investigations** | 4. Grade and Series GS-1811/15 | 5.Address and Zip +4 1200 Pennsylvania Ave., NW Washington, DC 20460 | 6. Organizational Unit **HQ Operations Directorate, Office of Investigations** |
|---|---|---|---|

### Privacy Act Notice and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### Response to Complaint

Regulations require all employees to cooperate in any EEO investigation

7. Statement (*Continue on Form 2569 if additional space is required. Form will auto-create if using Microsoft Word*)

**Please complete the top section of this form, boxes #2 thru #6.**

1. Please state your name, position title, grade level, work location, work address (include zip+4), work telephone number, and work e-mail address.

   Name: Thomas Roelke
   Position title and grade level: Deputy Assistant Inspector General for Investigations
   Department/division/work group: Office of Inspector General, Office of Investigations, Headquarters Operations Directorate
   Work address: 1200 Pennsylvania Ave. NW, Washington, DC 20460
   Work telephone number: (202) 566-0549
   Work e-mail address: roelke.thomas@epa.gov

2. State the period of time you have held your current position.
   **Answer: I believe I started as the Acting Deputy Assistant Inspector General for Investigations in early 2021 and was subsequently selected to become one of the Deputy Assistant Inspector Generals due to the retirement of one of the OI DAIGIs. I cannot recall any exact dates.**

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:43:41 -04'00' | Date Signed |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 2 | 7 | 2022-0009-R06 |

3. Identify your first and second line supervisors.
   **Answer: Jason Abend, Assistant Inspector General for Investigations**
   **Nicole Murley, Acting Deputy Inspector General**

4. Describe your past or current working/reporting relationship with Complainant, Alisa Walton (i.e., co-worker, supervisor, etc.).  State the period of time of the working/reporting relationship with Complainant.
   **Answer: Alisa Walton is assigned to the Dallas OI office and I do not recall any times that I may have worked directly with her.**

<u>RACE AND SEX ALLEGATION:</u>

5. Please identify your **race.**
   **Answer: White**

6. Were you aware of Complainant's **race** during the time period (2019, 2020 and 2021) of this complaint?  How and when were you made aware of her **race**?
   **Answer: Not that I recall. I am sure that she may have been involved in previous video conferences during those time frames where I was also an attendee. I can recall Alisa's rebuttal with her attorney and our Human Resources Directorate when I was assigned as the deciding official for Alisa's proposed removal.**

7. Please identify your **sex.**
   **Answer: Male**

8. Were you aware of Complainant's **sex** during the time period (2019, 2020 and 2021) of this complaint?  How and when were you made aware of her **sex**?
   **Answer: Yes, based on my assumption due to her name, Alisa Walton and more than likely between 2019 – 2021, Alisa may have been referred to as a female. I cannot provide any specific information or time.**

**RETALIATION ALLEGATION:**

9. Were you aware of the Complainant being involved in EEO activity prior to this complaint? (EEO activity includes filing a charge, testifying, assisting another, or participating in a discrimination proceeding; or otherwise opposing discrimination.) If so, when did you become aware of the Complainant's EEO activity?
   **Answer: No**

10. If you were named by the Complainant as a Responsible Management Official or witness, in a prior EEO Complaint that he/she filed or was involved in, please identify the case number(s) and identify the issue(s) involved in the complaint.

_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE<br>Date: 2022.07.28 13:45:13 -04'00' | Date Signed |
|---|---|---|---|

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **3** | **7** | **2022-0009-R06** |

**Answer:  N/A**

11.  If you were involved in the prior EEO activity, what was your personal involvement in that case(s)?
**Answer: N/A**

12. If not involved, how did you become aware of the EEO activity?
**Answer: Alisa's rebuttal/reply to her proposed removal provided by her attorney, Mollie Buie.**

13. If you were involved in the prior EEO activity, what was your personal involvement in that case(s)?
**Answer: N/A**

**CLAIM 5: ON MARCH 1, 2022, COMPLAINANT WAS ISSUED A NOTICE OF PROPOSED REMOVAL FOR SUPPOSEDLY FAILING TO SUCCESSFULLY COMPLETE THE PIP COMPLAINANT WAS PLACED ON NOVEMBER 10, 2021. COMPLAINANT WAS NOTIFIED ON APRIL 22, 2022, THAT A DECISION WAS MADE TO NOT SUBSTANTIATE THE REMOVAL.**

14.  The Complainant alleged in her complaint that she received a Notice of Proposed Removal on or about March 1, 2022, for failing to successfully complete the PIP Complainant was placed on November 10, 2021, and notified on April 22, 2022, that a decision was made to not substantiate the Removal. Is this true?  Please respond to Complainant's allegation.
**Answer: Yes**

15.   The Complainant alleged you made the decision to not substantiate the Removal. If you did not make the decision, what was your involvement, if any, in this action?
 **Answer: Correct**

16. If you had no involvement in Complainant being issued the Notice of Proposed Removal, please provide the management official who did. Identify by name, position title, facility address, telephone number and email address.
**Answer: Garrett Westfall, Special Agent in Charge, Western Region Field Office, Office of Inspector General, Office of Investigations, 1201 Elm Street, Suite 500, Dallas, TX 75270.**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:46:35 -04'00' | Date Signed |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)*

| Page No. | No. Pages | Case No. |
|----------|-----------|----------|
| 4 | 7 | 2022-0009-R06 |

17. Who concurred with the action to issue the Complainant a Notice of Proposed Removal? Identify by name, position title work location and phone number.
    **Answer: I do not know, I was not involved in that process.**

18. Did Complainant provide you with an oral and/or written response to the Notice of Proposal Removal? If so, what was her oral presentation and if there was a written presentation, please provide a copy.
    **Answer: Yes, both.**

19. How was the Complainant notified (verbally or in writing) of being issued a Decision for the Notice of Proposed Removal? If verbally, who notified her and when? **If in writing, provide a copy of the written notification**.
    **Answer: Email.**

20. As the deciding official to Complainant's Notice of Proposed Removal, what was your decision? Please be specific.
    **Answer: I was informed by Human Resources that I could support the proposed removal, I could recommend reassignment or take no action. I wanted to reassign Alisa to a new supervisor; however, she was under new immediate supervision, so the recommendation was to take no action by not sustaining the proposal to remove her.**

21. Complainant alleges you made the decision to not sustain the proposal to remove her from her position. Is this accurate?
    **Answer: Yes.**

22. Please explain, if not already done so, why Complainant was issued a Decision to not sustain the Notice of Proposed Removal?
    **Answer: Please see below.**

**Upon review of the Performance Improvement Plan assessed results regarding SA Alisa Walton by SAC Garrett Westfall, I do not support SAC Westfall's proposed removal for unacceptable performance. I recommend no action as SA Walton has a new immediate supervisor.**

**I disagree with the created tasks and deadlines established for the PIP as I do not believe the tasks provided an opportunity for the employee to be successful.**
- **Tasks had to be reevaluated and subsequently the number of tasks had to be reduced.**
- **Established completion dates for the records review task was unrealistic and created without evaluating the quantity or quality of information associated with the task.**
- **Deadlines were consistently adjusted or extended for assignment during the evaluation period.**
- **Unintentionally, tasks may have been created and deadlines established based on what the supervisor believed that it would take someone with the same level of experience and training that the supervisor had to accomplish the task and not a GS-1811-13 employee.**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:47:40 -04'00' | Date Signed |
|---------------------|--|---------------------------------------------------------------------|-------------|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 5 | 7 | 2022-0009-R06 |

I disagree that the employee was provided the environment to demonstrate acceptable performance through closer than normal supervision.

- The supervisor conducting the evaluation had been promoted and was no longer the employee's immediate supervisor.
- The employee's daily interaction while working with the tasks identified on the PIP were conducted with a new immediate supervisor that was less experienced. While the evaluating supervisor met with the employee as identified, any questions, discussions, or concerns would have occurred daily between the employee and their new immediate and less experienced supervisor.
- I believe that this environment would be disadvantageous to the employee and could promote unclear expectations or conflicting guidance as stated during the employee's rebuttal.
- Other mitigating circumstances include a reported death in the evaluated employee's family and this occurring during the holiday season.

I disagree with evaluation of the of the work products submitted by the employee undergoing the PIP as I feel the evaluations were overly critical.

- As with the identification of the tasks to be evaluated during the PIP, the supervisor may have unintentionally set their expectations at their level (GS-1811-15) and not at the employee's level who was being evaluated. The supervisor's level of training and experience provides the supervisor with a better level of understanding when evaluating information and determining the information's relevancy which the employee may not possess. This creates a level of assumption by the supervisor the evaluated employee would know what the supervisor would identify as relevant and why that information would be relevant.
- Supervisors are required to review and confirm work products submitted by agents that contain dates, monetary amounts, cited sources, and other statements which may take a significant amount of time. As stated by the supervisor, the "Reliance on your work products has real world effects to include taking away someone's civil liberties and livelihood." However, the supervisor also states that extensive reviews should not have to be conducted by management on work products by a GS-1811-13. The supervisor is still responsible for the accuracy of the information and its review but implies the level of information verification as conducted during this evaluation may not be applied equally amongst other GS-1811-13s.
- The employee's work product was expected to be at a higher grade than their current GS-1811-13 grade as indicated by the evaluating supervisor. The supervisor indicated they should be able to provide the employee's work product to internal and external stakeholders; however, as a GS-1811-13 they are not expected to produce reports which do not require management oversight, review, or corrections.

23. What reason(s) was provided to the Complainant for issuing her a Decision to not sustain the Notice of Proposed Removal?

    **Answer: That after carefully reviewing the totality of materials and information that I have been provided, I am not sustaining the proposal to remove you from your position.**

24. Was Complainant's **race** a factor in your decision?
    **Answer: No**

If so, explain in detail how the Complainant's **race** was a factor and why.
**Answer: N/A**

25. Was Complainant's **sex** a factor in your decision?
    **Answer: No**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:49:01 -04'00' | Date Signed |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet***)*

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | **6** | **7** | **2022-0009-R06** |

If so, explain in detail how the Complainant's **sex** was a factor and why.
**Answer: N/A**

26.  Was Complainant's **prior EEO activity** a factor in your decision?
 **Answer: No**

If so, explain in detail how the Complainant's **prior EEO activity** was a factor and why.
**Answer: N/A**

27.  Cite the Agency policies and/or contract provisions that were relied upon in your decisions and/or actions when issuing the Complainant, a Notice of Proposed Removal.  Explain in detail how each policy and/or contract provision applies.
 **Answer: I relied on counsel with HRD that I had three options based on the information provided by the supervisor for the PIP. I could sustain their recommendation of removal, recommend reassignment or not sustain the supervisor's recommendation.**

28.  **Other than this EEO complaint** are you aware if the Complainant filed any other kind of administrative action/appeal, grievance and/or met with higher level management when Complainant was issued a Notice of Proposed Removal? If so, to whom (name and title) did she complain, when (what date), what was the resolution/response? And what is the status of the appeal? **Provide a copy of the written contentions, if applicable.**
 **Answer: In the final reply provided by Alisa Walton's attorney, Molly Buie, there are references regarding Alisa Walton seeking EEO counseling in Nov 2021 and filing a formal complaint in Feb 2022.**

**HARASSMENT/HOSTILE WORK ENVIRONMENT:**

29.  Did Complainant tell you that your actions constituted harassment and/or a hostile work environment for her?  If so, describe in detail when and what specifically the Complainant told you and what was your response/action?
 **Answer: No.**

30.  Are you aware of Complainant (or anyone acting on behalf of Complainant) bringing to the attention of any other management official concerns about her allegation of harassment/hostile work environment?  If so, to whom did he/she inform of her concerns and when, to the best of your knowledge.
 **Answer: No.**

31.  Was an investigation conducted into Complainant's allegations of harassment/hostile work environment?  If so, by whom and when?

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:50:53 -04'00' | Date Signed |
|---|---|---|---|

October 2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 7 | 7 | 2022-0009-R06 |

Answer: I do not know.

32. To your knowledge, what was the outcome of the investigation?  Please provide a copy of the report.
  **Answer: I do not know.**

33. Was Complainant informed of the outcome?  If yes, how?
    **Answer: I cannot answer.**

34. Was any corrective or preventative action necessary?  If so, what action was taken?
    **Answer: I cannot answer.**

35. If no investigation was conducted, please explain why.
    **Answer: I cannot answer.**

36. Have you received training, since your last affidavit, on anti-harassment/hostile work environment while employed by the agency?  If so, when and what?
    **Answer: N/A**

37. Do you have any additional information or documentation that is relevant to the issue including in this EEO complaint and/or Complainant's claim of discrimination, retaliation, and harassment/hostile work environment?  *If you mentioned any documents in answering your affidavit questions please provide.*
    **Answer: I have provided the documents.**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:52:13 -04'00' | Date Signed |
|---|---|---|---|

October 2015

# Certification

| Case Number |
| --- |
| **2022-0009-R06** |

I have read the proceeding attached statement, consisting of __7_ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

## Standards of Conduct

Regulations require all employees to cooperate in any EEO investigation.

Subscribed and (sworn) (affirmed) before me on the __28__ day of July_____, 2022___.

*(Affiant, sign in the presence of an EEO Complaints Investigator.)*

| Signature of EEO Complaints Investigator | Signature of Affiant |
| --- | --- |
|  | Digitally signed by THOMAS ROELKE<br>Date: 2022.07.28 14:04:44 -04'00' |

## Declaration

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant must sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed |
| --- | --- |
| X   Digitally signed by THOMAS ROELKE<br>Date: 2022.07.28 14:05:11 -04'00' | **July 28, 2022** |

Form 2571 October 2015



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
**WASHINGTON, D.C. 20460**

OFFICE OF
INSPECTOR
GENERAL

April 22, 2022

**MEMORANDUM**

**SUBJECT:** Decision on Proposed Removal

**FROM:** Thomas Roelke, Deputy Assistant Inspector General
Office of Investigations

**TO:** Alisa Walton, Special Agent
Dallas Field Office, Office of Investigations

On  March 1, 2022, Garrett Westfall, Special Agent in Charge, Western Region Field Office, Office of Investigations proposed that you be removed from your position as a Special Agent, GS-1811-13, with the Office of Investigations, Office of Inspector General, U.S. Environmental Protection Agency, due to unacceptable performance on Critical Element 2: Communication and Critical Element 3: Results Orientation, in your Employee Performance Appraisal and Recognition System (EPARS) performance plan for fiscal year 2021. The purpose of this memorandum is to notify you of my decision regarding your proposed removal.

This action was proposed pursuant to 5 U.S.C. Chapter 43 and the implementing regulations at 5 C.F.R. Part 432. The specific reasons for the proposed action were outlined in the proposal notice.

## I.    **EMPLOYEE RESPONSE**

The March 1, 2022, proposal notice informed you of your right to provide a written and/or oral response within ten (10) calendar days of the receipt of your proposal notice.

On March 17, 2022, you provided an oral and written response to the proposal.

## II.    **DECISION**

In making this decision, I have carefully and objectively considered the facts detailed in the Notice of Proposed Removal for Unacceptable Performance and the supporting documentation, as well as your oral and written responses.

Decision on Proposed Removal
Page 2

After carefully reviewing the totality of materials and information that I have been provided, I am not sustaining the proposal to remove you from your position.

CC:   Garrett Westfall, Special Agent in Charge
        Western Region Field Office, Office of Investigations
        Erik Mabry, Human Resources Specialist, Employee Relations



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**

WASHINGTON, D.C. 20460



OFFICE OF
CIVIL RIGHTS

May 23, 2022

<u>**Return Receipt Requested**</u>                    <u>**In Response Refer To:**</u>
**VIA EMAIL ONLY**

Discrimination Complaint Number:
**2022-0009-R06**

Ms. Molly Buie
meb@sba-pc.com

Dear Ms. Buie:

On February 15, 2022, Alisa Walton, (Complainant) whom you represent, filed the above-referenced discrimination complaint against the U.S. Environmental Protection Agency ("Agency") which the agency accepted for investigation, claims 1-4, on March 23, 2022.  On May 9, 2022, the agency received your client'srequest to amend the above-referenced complaint. This letter acknowledges receipt of the amendment request.

STATEMENT OF AMENDED CLAIMS

In the May 9, 2022, amendment request, Complainant alleged that she was subjected to a hostile work environment based on race (African American), sex (female) and retaliation (prior EEO Activity) when:

5.  On March 1, 2022, Complainant was issued a Notice of Proposed Removal for supposedly failing to successfully complete the PIP Complainant was placed on November 10, 2021. Complainant was notified on April 22, 2022, that a decision was made to not substantiate the Removal.

6. On May 2, 2022, Complainant was informed me that an internal investigation was initiated based on allegations of misconduct by Complainant.

ACCEPTANCE OF AMENDED CLAIMS

Complainant's claims 5 and 6 are accepted for investigation as a claim of hostile work environment and will be assigned to an Equal Employment Opportunity (EEO) Investigator.

The EEO Investigator is authorized to contact all parties concerned; to gather information and documents relevant to all situations precipitating the complaint; to require the cooperation of all employees; and to take testimony from you and other witnesses in the form of affidavits or sworn statements.

The accepted claims will be added to the pending complaint and will be assigned to Equal Employment Opportunity (EEO) Investigator, Nadine Jenkins. The EEO Investigator is authorized to contact all parties concerned; to gather information and documents relevant to all situations precipitating the complaint; to require the cooperation of all employees; and to take testimony from complainant and other witnesses in the form of affidavits or sworn statements.

The investigation will be factually thorough, impartial, and completed within 180 days from the date of filing the discrimination complaint or if amended, within the earlier of 180 days after the last amendment to the complaint or 360 days after the filing of the original complaint. Within these regulatory timeframes, complainant and the Agency may agree in writing to extend the investigatory period of ninety (90) days.

If your client disagrees with the manner in which the accepted claims have been identified, she must contact the Assistant Director within 5 calendar days from receipt of this letter. Otherwise, it will be assumed that the Agency has correctly identified your client's claims. If your client wishes to amend her complaint, she must submit a written statement to the Assistant Director in order for the Agency to determine whether the proposed amendments are like or related to the allegations previously accepted for investigation. The Agency shall acknowledge receipt of the amendment to a complaint in writing and inform her of the date on which the amendment was filed.

Proposed amendments and requests to change accepted allegations should be sent to:

U.S. Environmental Protection Agency
Employment Complaints Resolution Staff, Assistant Director
Office of Civil Rights
darden.cynthia@epa.gov

RIGHTS AND RESPONSIBILITIES

Complainant has the right, after 180 days from the filing of this discrimination complaint, to request a hearing before an EEOC Administrative Judge. Complainant should refer to her Notice of Rights and Responsibilities for information on additional rights, including the right to file a lawsuit in a United States district court after prescribed time periods.

Following the investigation, your client will be provided with a copy of the report of investigation (ROI). After your client receives the ROI, she has the right to request either a hearing on the merits of her discrimination complaint or an immediate Final Agency Decision. If your client decides to request a hearing, she must send the request, within 30 days, to the Equal Employment Opportunity Commission (EEOC).

2

Any request for hearing should be sent to:

> Equal Employment Opportunity Commission
> Chicago District Office
> https://publicportal.eeoc.gov

If your client requests a hearing, she must serve a copy of the request to the Office of Civil Rights at:

> U.S. Environmental Protection Agency
> Employment Complaints Resolution Staff
> Cynthia Darden, Assistant Director
> Office of Civil Rights
> darden.cynthia@epa.gov

Your client also has the right to file a civil action in an appropriate United States District Court. If she chooses to file a civil action, she may do so after 180 days from the date of filing this complaint if an appeal has not been filed and final action has not been taken.

If your client decides to file a civil action in a United States District Court, she must name Michael Reagan, Administrator, U.S. Environmental Protection Agency as the defendant. Failure to provide Mr. Reagan's name or official title may result in dismissal of her case.

If your client decides to file a civil action, and if she does not have or cannot afford the services of an attorney, she may request that the Court appoint an attorney to represent her. Complainant may also request that the Court permit her to file the action without payment of fees, cost, or other security. The granting or denial of the request is within the sole discretion of the Court. Filling a request for an attorney does not extend the time in which Complainant must file a civil action.

If a civil action is filed, we request that a copy of the civil complaint be mailed on the date of the filing to:

> U.S. Environmental Protection Agency
> Office of General Counsel – Mail Code 2377A
> 1200 Pennsylvania Avenue, NW
> Washington, D.C.  20460-0001

To avoid possible dismissal of Complainant's discrimination complaint for failure to prosecute, she should promptly acknowledge receipt of all certified mail; provide the Office of Civil Rights with any change of address; cooperate with the EEO Investigator in the conduct of the investigation; and, if a hearing is requested, proceed with the hearing without undue delay. Failure to cooperate may result in dismissal of her discrimination complaint pursuant to

3

29 C.F.R. § 1614.107(a) (7).

If Complainant has any questions concerning this matter, please contact Renee Clark at 202/564-7269 or clark.renee@epa.gov.

Sincerely,

*RClark*

*for* JuanCarlos Hunt
Director

cc:  **VIA EMAIL ONLY**
Alisa Walton
Walton.Alisa@epa.gov

4

Claims to be Investigated
Page 4 of 8

**EEO Investigative Affidavit (Complainant)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 1 | 27 | **2022-0009-R06** |

| 1. | | 2. Employing Federal Agency and Office |
|---|---|---|
| Name (Last, First, MI) | Affiant's | EPA-OIG |
| **Walton, Alisa, A** | | |

| 3. Position Title | 4. Grade and Series | 5. Address and Zip +4 | 6. Organizational Unit |
|---|---|---|---|
| **Special Agent** | GS13-1811 | 1201 Elm St #500, Dallas, TX 75270 | OI |

**Privacy Act Notice and Rehabilitation Act Notice**

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

**Important Information Regarding Your Complaint**

This *EEO Investigative Affidavit (Complainant),* and the other form mentioned below, are being provided for you to use to fully respond to the accompanying questions. Mail or deliver your completed statement to the EEO complaints investigator within 15 calendar days of the date you received the forms. Use *EEO Investigative Affidavit (Continuation Sheet)* as needed to complete your written statement. Remember to number the top of each page and sign and date the bottom of each page of your statement. If you return your statement by mail, the return envelope must be postmarked on or before the 15th calendar day after the date that you received the affidavit forms. Failure to complete your statement and return the forms within the allotted time period could result in your complaint being dismissed based upon your failure to proceed. EEOC complaints processing regulation, 29 C.F.R. 1614.107(a)(7), states, in part, [A complaint may be dismissed] "Where the agency has provided the complainant with the written request to provide relevant information or otherwise proceed with the complaint, and the complainant has failed to respond to the request within 15 days of its receipt, or the complainant's response does not address the agency's request, provided that the request included a notice of the proposed dismissal."

7. Statement (*Continue on Form 2569 if additional space is required. Form will auto-create if using Microsoft Word*)

**Affidavit of:  Complainant**

1.      Please state your name, personal mailing address, personal telephone number, and personal e-mail address.

**Name: Alisa Walton**
**Personal mailing address: 929 Cherry Hil Ln, Desoto, TX 75115**
**Personal telephone number: 214-529-3841**
I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **2** | **27** | **2022-0009-R06** |

**Personal email address:  alisawalton43@gmail.com**

*If any changes have occurred since the initial EEO complaint processing stage, please identify those changes; e.g., name change, new place of residence, new designated representative.*
   **Answer:**

2.     **You have the right to be assisted by a representative of your choice at all times during the EEO process**.  Please indicate that you are aware of this right and choose to either exercise it or waive it at this time.  (If you do have a representative, state his/her name, position title, address, and telephone number.)
   **Answer: Molly E. Buie, Esq., Seldon Bofinger& Associates, P.C., 1319 F Street, NW, Suite 200, Washington, DC 20004; 202-393-8200 (office)**

3.     Are you currently employed by **United States Environmental Protection Agency (EPA)**?  If so, identify your department/division/work group.
   **Answer: Yes, Office of Inspector General/Office of Investigations**

4.     State the dates you have been employed by EPA.
   **Answer: June 2, 2002 to present**

5.     State your current position and grade level with EPA.
   **Answer: Special Agent, GS13**

6.     State the dates/period of time you have held this position.
   **Answer: August 2006 to present**

7.     State your work telephone number, e-mail address, and mailing address.
   **Answer: 214-287-1551, Walton.alisa@epa.gov, 1201 Elm St. #500, Dallas, TX 75270**

8.     Identify by full name and position your current first and second-level supervisors.
   **Answer: Staci Gurin, Assistant Special Agent in Charge (ASAC) and Garrett Westfall, Special Agent in Charge (SAC)**

9.     If different, identify by full name and position your first and second-level supervisors during the time of the alleged incidents.
   **Answer: Same as above**

10.     Identify by full name and position title the individuals who you believe have discriminated against you.   **Answer: SAC Garrett Westfall and Sean Earle, Acting Deputy Inspector General of Investigations (ADAIGI)**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **3** | **27** | **2022-0009-R06** |

## RACE AND SEX ALLEGATIONS:

11.    Please identify your **race**.
   **Answer: African American**

12.    Do you believe the individual(s) who you allege discriminated against you was/were aware of your **race** at the time of the incident/action you allege?  If so, **how, and when** do you believe he/she/they became aware of your **race**?
   **Answer: Yes, Garrett Westfall and I met in person shortly after he began employment with the EPA-OIG-OI, in August 2020. Sean Earle met during an EPA-OIG All Hands conference shortly after I became an agent. Earle was also close friends with Susan Chandler, against whom I filed an EEO complaint regarding racial discrimination in 2015.**

13.    Please identify your **sex**.
   **Answer: Female**

14.    Do you believe the individual(s) who you allege discriminated against you was/were aware of your **sex** at the time of the incident/action you allege?  If so, **how, and when** do you believe he/she/they became aware of your **sex**?
   **Answer: Same as above for Garrett Westfall. Same as above for Sean Earle.**

## RETALIATION ALLEGATION:

15. You alleged discrimination based on Retaliation.  What was the EEO activity you engaged in that you believe is being used to retaliate against you? *(Protected EEO Activity may include: filing a charge of discrimination or harassment; testifying, assisting another, or participating in a discrimination proceeding; or otherwise opposing discrimination, such as writing a letter or vocally protesting against discrimination or harassment.)*
 **Answer: Filing a charge of discrimination**

16. Identify the date(s) of the activity.
 **Answer: In 2015, I filed a complaint against former Special Agent Susan Chandler.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |
| October 2015 | |

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 4 | 27 | 2022-0009-R06 |

17. If a prior EEO case, please identify the case number(s) and date(s) for your previous EEO case.
 **Answer: On or about March 23, 2015, I filed an EEO and mediation was on or about June 16, 2015.**

18. Was/were the management official(s) you cited in this complaint involved in your protected EEO activity?  If so, explain **how** and **when** each management official was involved.
 **Answer: I alleged that agency management failed to take action to stop Susan Chandler from subjecting me to a discriminatory hostile work environment on account of my race.**

19. If they were not involved in the protected EEO activity, were they aware of your protected activity, and if so, **how,** and **when** did they become aware?
 **Answer: DAIGI Sean Earle was close associates with former SA Susan Chandler and also was responsible for taking Chandler's weapon upon her being placed on administrative leave/suspension.**

**CLAIM 1: ON NOVEMBER 10, 2021, COMPLAINANT WAS PLACED ON A PERFORMANCE IMPROVEMENT PLAN (PIP)**

20. Identify by full name and position the management official(s) that was responsible for placing you on a Performance Improvement Plan (PIP).
    **Answer: Garrett Westfall, Special Agent in Charge**

21. To your knowledge, was/were any other management official(s) involved in the decision to place you on a Performance Improvement Plan?  If so, identify him/her/them by full name and position and explain his/her/their involvement in and/or input in detail.
    **Answer: On information and belief, Sean Earle, Special Agent in Charge/ Acting Deputy Assistant Inspector General - at a minimum - would have been informed of the PIP and had to approve it.**

22. You have alleged that on November 10, 2021, you were placed on a Performance Improvement Plan.  Please explain the facts that led up to this action/decision.
    **Answer: On October 13, 2021, I met via MS Teams with Special Agent in Charge (SAC) Garrett Westfall, and Assistant Special Agent in Charge (ASAC) Staci Gurin gave me a 1.66 performance rating. Westfall rated me a zero on Critical element 2: Communication and Critical Element 3: Results Orientation. I was also given a rating of 2 for Critical Element 4: Teamwork and Critical Element 6: Resource Management, and a**

_____

I declare under penalty of perjury that the foregoing is true and correct.

Affiant's Signature                                                  Date Signed
*Alisa Walton*                                                      May 5, 2022

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **5** | **27** | **2022-0009-R06** |

rating of 3 for Critical Element 1: Leadership and Critical Element 3: Customer Relations. I have never received a rating below fully successful on an annual appraisal.

23. How were you informed, verbally or in writing, that you were being placed on PIP?  If verbally, state what was communicated to you, by whom and when?  If in writing, state the contents of the notification, who notified you and when. **Please provide a copy of the notification.**
   **Answer: On November 10, 2021, I received an email from Westfall at 12:30 CST stating effective today I was being placed on a PIP. The email also stated I should be prepared to discuss expectations and the assignments at 1:00 CST. At 1:00 CST, I had an MS Teams call with Westfall and Gurin (see attached).**

24. Did management attempt to schedule any meetings with you when placing you on a PIP? If so, were you available for and did you attend these meetings?  If so, state the dates of the meetings, describe in detail what was stated during the meetings, and the outcomes.  If you were not available or did not attend the meetings, explain in detail why.
   **Answer: See #23.**

25. Did you discuss your concerns regarding being placed on a PIP with any management official(s)?  If so, identify the management official(s) by full name and position, state the date of the discussion(s), describe in detail what was stated during the discussion(s), and the outcome(s).  If you did not discuss your concerns regarding the PIP, explain in detail why you did not.
   **Answer: Garrett Westfall, Special Agent in Charge, November 10, 2021. I informed Westfall I did not agree with the PIP and did believe it was warranted/justified.**

26. If not previously addressed, were any performance issues brought to your attention prior to or during any discussion(s) involving the PIP?  If so, describe in detail what you were told.
   **Answer: Prior to being placed on the PIP, in June 2021, I was told by Westfall that previous agents and I had not properly documented evidence and chain of custody forms. Specifically, a laptop was still in evidence when documentation showed the laptop had actually been sent to the EPA-OIG-OI electronic crimes division. I had not opened the banker box, which the laptop was originally stored inside. Westfall instructed me to ensure I was properly documenting evidence and the chain of custody.**

27. If you were notified of any performance issues, did you attempt to correct the issues?   If so, what did you do?  If not, explain in detail why you did not.
   **Answer: Westfall instructed me to go through all the evidence in the evidence room and ensure they were properly documented and the chain of custody was properly documented. Over the course of a few months, I prepared memorandums to file to**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa A Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **6** | **27** | **2022-0009-R06** |

**address the improperly documented evidence for closed cases, which were not my cases. When cases are closed, the case agent is supposed to notify the evidence custodian and instruct if evidence related to the case is to be returned to the subject or destroyed.**

28. Please explain in detail why you believe you should not have been placed on a Performance Improvement Plan.

    **Answer: I should not have been placed on a PIP because the performance rating of 1.66 was unjustified. My performance, which is documented in my FY21 self-assessment, warranted a significantly higher rating.**

29. Did management give you any documentation regarding your placement on the Performance Improvement Plan? If yes, please provide a copy.

    **Answer: Yes (see attached)**

30. Were you given a reason(s) for being placed on a Performance Improvement Plan? If so, state the reason(s) you were given.

    **Answer: I was told I was being placed on a PIP because I received a rating of zero (unacceptable) for Critical Element 2: Communication and Critical Element 3: Results Orientation.**

31. If you were given a reason(s) for being placed on PIP, please explain in detail how you find the reason(s) unacceptable.

    **Answer: I found the reasons to be unacceptable because, during FY21 regarding Critical Element 2: Communication, I was required to conduct eight fraud awareness briefings. I conducted 13 fraud awareness briefings. I conducted 11 briefings independently and two briefings were conducted with other agents. I also regularly briefed Assistant United States Attorneys on my cases. In addition, I briefed senior management, which included Sean O'Donnell, EPA, Inspector General; Charles Sheehan, EPA-OIG, Deputy Inspector General; Allan Williams, Assistant Deputy Inspector General; Sean Earle, Special Agent in Charge; Garrett Westfall, Special Agent in Charge; and other managers. The briefing to senior management was related to a case in which I had received a confession from the subject. After the briefing I received an email from Williams stating I did a great job and made the Office of Investigations proud.**

    **In regards to Critical Element 3: Results Orientation, my results for FY21 statistics were: one conviction, one suspension and debarment of a subject.**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |
| October 2015 | |

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **7** | **27** | **2022-0009-R06** |

**My statistics for both Critical Element 2: Communication and Critical Element 3: Results Orientation, clearly prove that I should not have received an unacceptable rating of zero. It is very common for agents to complete a fiscal year and not have any criminal or administrative actions. I had one criminal action and two administrative actions during FY21.**

32. What was the beginning and end date for the Performance Improvement Plan issued to you on November 10, 2021? Has the Performance Improvement Plan been terminated and if so, when (date)?
    **Answer: November 10, 2021, was the beginning date for the PIP and December 24, 2021, was the end date.**

33. Did you appeal the decision in connection with being placed on a PIP?  If so, explain in detail what has occurred during the process so far. *[Provide all relevant documentation regarding the process.]*
    **Answer: No**

34. Cite the Agency policies that you feel apply or were violated when you were placed on a PIP.  Explain in detail how each policy applies.  If applicable, explain in detail how you believe each policy was violated.
    **Answer: I believe the PIP was initiated for discriminatory and retaliatory reasons; therefore, the agency violated its own policies, as well as federal statutes and regulations that prohibit discrimination and retaliation against employees.**

35. Why do you believe your **race** was a factor in your allegation when on November 10, 2021, you learned that you were being placed on a Performance Improvement Plan?
    **Answer: The PIP was unjustified as explained above, and because I was singled out for ratings of zero even though I accomplished more than some of my other colleagues who are not African American.**

36. Why do you believe your **sex** was a factor in your allegation when on November 10, 2021, you learned that you were being placed on a Performance Improvement Plan?
    **Answer: The PIP was unjustified as explained above, and because I was singled out for ratings of zero even though I accomplished more than some of my male colleagues.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 8 | 27 | 2022-0009-R06 |

37. Why do you believe your **prior EEO activity** was a factor in your allegation when on November 10, 2021, you learned that you were being placed on a Performance Improvement Plan?

**Answer:  The PIP was unjustified as explained above, and because I was singled out for ratings of zero even though I accomplished more than some of my colleagues who had not engaged in protected EEO activity.**

38.    How were you harmed when you were placed on a PIP on November 10, 2021?
**Answer: I was embarrassed, physically, mentally and emotionally distressed. I had constant headaches, was often unable to eat or sleep for extended periods. I often withdrawn from my friends and family. I felt depressed and extreme tension in my neck, shoulders and back. On the nights I would finally go to sleep, I would not want to get up and begin work. I would often have headaches when I began work. The headaches would get more intense when I would get an email from Westfall or Gurin. Whenever I would meet via MS Teams with Westfall and Gurin I would experience anxiety and feel my heart racing. On some occasions I experienced the same feeling when I met with Gurin alone and she continuously requested unnecessary information for reports to follow up on Westfall's request.**

**The PIP caused me to become hesitant and fearful of submitting reports because I knew they would be unjustly scrutinized and sent back for rewriting.**

39. Please explain why you believe the action(s) taken against you in this claim constitutes harassment. (Please be specific.)
**Answer:  As an initial matter, the PIP I was placed on was completely unmanageable as I explained in my reply to proposed removal (see attached).  The amount of work and deadlines required were impossible to meet.  The PIP seemed designed as a set up for failure rather than a legitimate effort to help me improve my performance.**

**Throughout the PIP, my work was subjected to extreme scrutiny, and I was continuously told to rewrite reports. Westfall and Staci Gurin, Assistant Special Agent in Charge, would make edits to reports, add information, ask numerous unnecessary questions and request that I add information that was not required to complete the report. Some reports would be sent back for changes at least three to five times. The edits and changes would often change the purpose of the report.**

**A similar pattern existed even before I was placed on the PIP.  Weekly and sometimes daily Westfall would bring up the issues with the evidence storage room and**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature   *Alisa Walton* | Date Signed   May 5, 2022 |
|---|---|

October  2015

| EEO Investigative Affidavit (Continuation Sheet) | Page No. 9 | No. Pages 27 | Case No. 2022-0009-R06 |
| --- | --- | --- | --- |

continuously let me know how he was a stickler for evidence. Westfall had me write memorandums to file for closed cases that were not my cases. In addition to writing the memorandums, I had to give detailed case summaries, which was completely unnecessary for a closed case.

40.    Did you file a union grievance with regard to this allegation/claim? If so, at what stage is the grievance?  If a final decision was reached, what was the result?  (If applicable, please include copies of documentation.)
**Answer: No, I am not a part of a union.**

41. In the past year, are you aware of any other employee(s) in your same chain of command (those at your job level and rated by the same Rating Official) and in similar circumstances as you who were also placed on a PIP?  Provide the following information for each identified comparator employee:

a. Name, position, and grade level.
b. Identify the race and sex of each named comparator.
c. Whether or not the person engaged in prior protected EEO activity. (state yes, no, or unknown)
d.    The name(s) of the agency official(s) responsible for the PIP.
e.    Please explain why you believe that you were treated the same under similar circumstances
    **Answer: No**

42. In the past year, are you aware of any other employee(s) in your same chain of command (those at your job level and rated by the same Rating Official) and in similar circumstances as you who were <u>not</u> placed on a PIP?  Provide the following information for each identified comparator employee:

a. Name, position, and grade level.
b. Identify the race and sex of each named comparator.
c. Whether or not the person engaged in prior protected EEO activity. (state yes, no, or unknown)

d.    The name(s) of the agency official(s) responsible for the PIP.
e.    Please explain why you believe that you were treated less favorably under similar circumstances.
    **Answer: No**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature<br>*Alisa Walton* | Date Signed<br>May 5, 2022 |
| --- | --- |

October  2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 10 | 27 | 2022-0009-R06 |

**CLAIM. 2: ON OCTOBER 12, 2021, COMPLAINANT RECEIVED A RATING OF ZERO ON CRITICAL ELEMENTS 2 AND 3 OF HER PERFORMANCE APPRAISAL.**

43.    You have alleged on October 12, 2021 you received a rating of zero on critical elements 2 and 3 of your FY 2021 Performance Appraisal. Please explain this allegation in detail.
   **Answer: See #31**

44.    Identify by full name and position of the Rating Official(s) and any other management official that was involved in and/or had input into your FY 2021 performance appraisal. Explain each identified person involvement in and/or their input in detail.
   **Answer: Sean Earl, Special Agent in Charge and Acting Deputing Inspector General; Garrett Westfall, Special Agent in Charge; Staci Gurin, Assistant Special Agent in Charge (Caucasian female); Christopher Huntington, Assistant Special Agent in Charge (Caucasian male) ;**

   **In August 2021, Westfall was promoted from ASAC to SAC. Huntington was ASAC for the Western Division, but became Acting ASAC for the Southwest Division until Gurin was promoted to ASAC for the Southwest Division in September 2021.**

   **During the period Huntington (Caucasian male) was Acting ASAC for the Southwest Division, he returned each of my submitted documents and requested I make changes that were according to his preferred report writing style/format. The format/changes were personal preferences and not written policy or report writing standards. Some of the requests were reverting back to changes that were made numerous years ago, such as listing and citing attachments throughout the documents. Prior to Huntington's supervision of me, all of my reports were written in the same manner, which I submitted to him and they were approved.**

45.    Please clarify what is meant by zero rating and its relevance to the rating you received on your performance appraisal.
   **Answer: The ratings are on a scale of 0-5. A rating of 0-1.99= Unacceptable; 2-2.99 = Minimally Successful; 3-3.79 = Fully Successful; 3.8-4.49 = Exceeds Fully Successful; 4.5-5.0 = Outstanding.  As stated above, I received ratings of zero on two elements.**

46.    What were your performance goals for the FY2021 appraisal period?  Did you accomplish these goals?  Please describe how.
   **Answer: My performance goals were to exceed the required briefings, obtain an administrative stat (suspension and/or debarment), obtain additional training and meet with more State stakeholders. I accomplished the briefing goal and exceeded it by five. I**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **11** | **27** | **2022-0009-R06** |

**obtained both a suspension and a debarment stat. Due to COVID-19 and travel restrictions, I did not accomplish the last two goals relating to training and meeting with State stakeholders.**

47.   State the rating you believe you should have been given for Critical Elements 2 and 3 for the subject rating period.  Explain in detail why you believe you earned this rating and include supporting documentation.
    **Answer: I believe I should have received a 4 or higher based on my statistics. See #31.**

48.   Did the rating official provide you with a deadline to submit your written accomplishments for the fiscal year?  If so, did you meet this deadline?  Please supply a copy of your accomplishments.
    **Answer: Yes, I submitted them and met the deadline (see attached).**

49.   During the FY2021 performance appraisal period and prior to being given your final FY 2021 rating, did you and your Rating Official and/or other management official(s) engage in any discussions regarding your performance?  If so, identify the management official(s) by full name and position, state the date(s) of the discussion(s), describe in detail what was stated during the discussion(s), and the outcome(s).
    **Answer: See #26. Also on June 9, 2021, August and/or September 2021, and November 3, 2021, SAC Garrett Westfall spoke to me about not properly documenting evidence. As previously stated, Westfall stated at different times that I had not properly documented evidence in the Dallas evidence room.**

50.   If not previously addressed, were any other performance issues brought to your attention during any performance discussion(s)?  If so, describe in detail what you were told.
    **Answer: Westfall told me that I incorrectly documented some dates on several Memorandum of Activity (MOA). I was told to make sure the dates were accurate. I was also told I made assumptions at times and should have asked Westfall about investigative procedures. I informed Westfall I never made up dates or made any assumptions. I also informed Westfall I was following procedures that were in place prior to him joining the EPA and becoming my supervisor.**

51.   If you were notified of any performance issues, did you attempt to correct the issues?   If so, what did you do?  If not, explain in detail why you did not.
    **Answer: I attempted to correctly document the dates, but the process of changing the report date and the activity date continuously changed. That process caused my activity and report dates to be inconsistent. I mentioned that to both Westfall and Gurin,**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **12** | **27** | **2022-0009-R06** |

but Westfall continued to make it seem as if I was just making up dates and incorrectly documenting dates on MOA's. I explained to Gurin and she seemed to understand, but it did not appear to matter because Westfall continued to point out what he considered inaccurate dates. In regards to Westfall stating I made assumptions, Westfall spoke negatively regarding the majority of the procedures or processes former ASAC Edwin Debiew (African American) put in place prior to Westfall joining EPA. Westfall stated I should ask before doing certain things or making certain decisions. I informed Westfall I did not ask questions because the process/procedures had been in place since before Westfall came and I was never told to do anything differently.

52.     Did you discuss your concerns regarding your zero ratings with your Rating Official or with any other management official(s)?  If so, identify the management official(s) by full name and position, state the date of the discussion(s), describe in detail what was stated during the discussion(s), and the outcome(s).  If you did not discuss your concerns regarding your rating, explain in detail why you did not.

     **Answer: Yes, I discussed my concerns with Westfall and Gurin on the day, October 13, 2021, they discussed the rating with me.**

53.     Were you given a reason why you were given a zero rating for Critical Elements 2 and 3 of your FY 2021 performance appraisal?  If so, state the reason you were given, by whom, and when.

     **Answer: Westfall told me that I was given a 1 for Critical Elements 2 and 3, but the system defaults to zero. For Critical Elements 2: Communication, Westfall stated I had seven reports that had inaccurate information. However, I never received the seven reports with inaccurate information. Westfall noted in my performance review: "Due to an upgraded transition and limitations of the electronic case management system, the analytics involving performance measures for communication were unquantifiable, and as such, will not be used as a basis for rating the performance standard." However, Westfall stated, For FY21, SA Walton produced 64 investigative reports. Of that number, only 35 (54%) were within the policy timeframes at the time, as calculated by her supervisor." I was not given evidence of how the timeliness was calculated when our system was being upgraded and often down.**

     **Westfall also stated, "While her supervisor requested that SA Walton proactively communicate with him on a consistent and weekly basis, SA Walton has failed to routinely communicate with her supervisor." This statement is not factual.**

     **Westfall stated I received a zero for Critical Elements 3: Results Orientation, Westfall stated I did not keep my cases in ECMS updated.**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature   *Alisa Walton* | Date Signed |
|---|---|
| | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **13** | **27** | **2022-0009-R06** |

Sometime in October or November before my FY20 Performance Rating, Westfall stated he felt ASAC Debiew did not mentor me and he wanted to mentor me. Westfall wanted to meet regularly with me, and he placed MS Teams meetings titled "Weekly Status of Cases" on our calendars. According to my calendar, Westfall and I met November 2, 2020, to discuss my cases. On November 10, 2020, Westfall and I met for my FY20 Performance Rating. Although the meetings were titled "Weekly Status of Cases," the calendar dates were bi-weekly. According to my calendar, the last meeting listed was April 6, 2021. I do not recall the date, but Westfall told me we would no longer be meeting and he would be available if I needed him.

*Note: It is not common and I have never heard of a GS-13 receiving mentorship from a GS-14. Therefore, I was not certain why Westfall felt Debiew should have mentored me. I have had a professional mentor and my meetings with Westfall would not be what I would call mentorship. The meetings were more like weekly case updates and to see if I had any questions.*

On April 13, 2021, SAC Daniel Hawthorne retired. I do not see any more meetings on the schedule for Westfall and me. On May 18, 2021, I have on my calendar that I had a call with Westfall. Westfall also deleted future meetings from our calendar. The calendar invite is titled "Case and Evidence check-in". My calendar also shows a MS Teams meeting with Westfall dated May 25, 2021. June 1, 2021, the team had a meeting with SAC Sean Earle, who was Acting SAC for Western Division. *Prior to that meeting Westfall had a Team meeting with the Western Division and told us he would "protect" his people from Sean. Westfall also called me and told me, "You know how Sean is. If you ever get a call from Sean and he starts to go off, do not argue with him. Because you know he likes to get under peoples skin. Do not argue with him, but politely say, "Let me get Garrett on the phone" and I will take care of everything. I will make sure I protect my people."*

We were told Acting SAC Earle began to require bi-weekly case reviews. According to my calendar, on July 20, 2021, I had my first bi-weekly case review. In August 2021, Westfall was promoted to SAC and no longer conducted bi-weekly reviews with me. On August 18, 2021, ASAC Christopher Huntington, conducted a bi-weekly case review. On September 13, 2021, ASAC Staci Gurin conducted a bi-weekly case review after she became my first line supervisor.

54. If you were given a reason for the FY 2021 zero rating on Critical Elements 2 and 3 of your performance appraisal, did you disagree with the reason you were given? If so, explain in detail why you disagree with the reason you were given.

_____

I declare under penalty of perjury that the foregoing is true and correct.

| | |
|---|---|
| Affiant's Signature | Date Signed |
| *Alisa Walton* | May 5, 2022 |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **14** | **27** | **2022-0009-R06** |

**Answer: See #53. No, I did not agree with the reason.**

55.    Did you appeal the decision in connection with the zero rating for Critical Elements 2 and 3?  If so, explain in detail what has occurred during the appeal process so far.  *[Provide all relevant documentation regarding the appeal process.]*

   **Answer: No, I did not appeal the decision, but I did clearly state to both Westfall and Gurin that I did not agree with the ratings for the two critical elements.  Later, Westfall proposed to remove me for supposedly failing the PIP.  I submitted written and oral replies to the proposed removal - I have attached my written reply here.  The removal was <u>not</u> sustained by the deciding official - see the attached decision of April 22, 2022 (see attached).**

56.    Explain in detail why you believe your <u>race</u>  was a factor(s) in your FY 2021 performance zero rating for Critical Elements 2 and 3.

   **Answer: I am the only African American female throughout the EPA-OIG-OI. Westfall continuously had negative comments about the performance of Debiew (also African American), although he had not worked with him. I am aware that Earle and Debiew did not have a great relationship. Earle became Westfall's immediate supervisor and things rapidly changed for me. Also, to my knowledge, no other individual within the Western Field Office received a zero rating for any Critical Elements. On information and belief, many of the actions have been encouraged by Earl (Caucasian male). Earle has been known to be close friends with Hawthorne. At one point, Earle was close friends with former Special Agent Susan Chandler (Caucasian female), who was the subject of my 2015 EEO complaint. It is therefore likely that Earle has been aware of my projected activity since that time.  Additionally, Earle has allegedly made statements in the past to the effect that women do not belong in law enforcement. *Prior to the June 1, 2021,  meeting Westfall had a Team meeting with the Western Division and told us he would "protect" his people from Sean. Westfall also called me and told me, "You know how Sean is. If you ever get a call from Sean and he starts to go off, do not argue with him. Because you know he likes to get under peoples skin. Do not argue with him, but politely say, "Let me get Garrett on the phone" and I will take care of everything. I will make sure I protect my people."***

57.    Explain in detail why you believe your <u>sex</u> was a factor(s) in your FY 2021 performance zero rating for Critical Elements 2 and 3.

   **Answer: See #56.**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **15** | **27** | **2022-0009-R06** |

58.    Explain in detail why you believe your **prior EEO activity** was a factor(s) in your FY 2021 performance zero rating for Critical Elements 2 and 3.
   **Answer:  See #56.**


59.    How were you harmed when you were rated a zero on Critical Elements 2 and 3 of your performance appraisal?
**Answer: I became ineligible to apply for other 1811 positions with the EPA or within the federal government. I also became ineligible for cash awards, promotions, special assignments, details, bonus, etc.  Outside the COVID Maximum Unscheduled Telework, I would be ineligible to telework. Additionally, Westfall tried to fire me in March of 2022 for supposedly failing the PIP.  Having a pretextual basis to remove me seemed to be the point of the PIP to begin with.**

60. Please explain why you believe the action(s) taken against you in this claim constitutes harassment. (Please be specific.)
**Answer: The unjustified performance ratings, PIP, and unrelenting scrutiny of my work, as well as the constant negative comments about Debiew and my supposed mishandling of evidence were part of an ongoing, pervasive effort to make my work environment intolerable.  As I explained above in response to #38, the stress of this environment caused me to experience severe mental and physical symptoms.  The constant negativity directed at me was in stark contrast to my experience with my previous supervisors, as confirmed in my reply to proposed removal (see attached).**

**Although Westfall stated his reasons for lowering my rating were due to lateness in uploading reports and entering information into the system, Westfall continued to talk about what Debiew did not do. Westfall did not rate me for any of my accomplishments. He only rated me on what he stated I did not do properly.**

**On April 22,2022, I received the notification that the proposed removal was not sustained. On April 26, 2022, I submitted a six page report. The report included a review of five years of bank statements from seven bank accounts. Within less than 24 hours, Gurin approved the report with no questions or returns for edits. This proves management's harassment and does not support Westfalls claims in his proposed removal.**

61.    Cite the Agency policies that you feel apply or were violated when you received the zero rating for Critical Elements 2 and 3.  Explain in detail how each policy applies.  If applicable, explain in detail how you believe each policy was violated.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |
| October  2015 | |

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | 16 | 27 | 2022-0009-R06 |

**Answer: I believe the ratings were unjustified and given discriminatory and retaliatory reasons; therefore, the agency violated its own policies, as well as federal statutes and regulations that prohibit discrimination and retaliation against employees.**

62. In the past year, are you aware of any other employee(s) in your same chain of command (those at your job level and rated by the same Rating Official) and in similar circumstances as you who received a zero rating on any of their Critical Elements on their performance appraisal?  Provide the following information for each identified comparator employee:

a)       Name, position, and grade level.
b)       Identify the  race  and sex of each named comparator.
c)       Whether or not the person engaged in prior protected EEO activity. (state yes, no, or unknown)
d)       The evaluation he/she received for FY 2021.
e)       The name(s) of the agency official(s) responsible for the evaluation.
f)       Please explain why you believe that you were treated the same under similar circumstances.
     **Answer: No**

63.  In the past year, are you aware of any other employee(s) in your same chain of command (those at your job level and rated by the same Rating Official) and in similar circumstances as you who did not receive a zero rating on any of their Critical Elements on their performance appraisal? Provide the following information for each identified comparator employee:

a)       Name, position, and grade level.
b)       Identify the race and sex of each named comparator.
c)       Whether or not the person engaged in prior protected EEO activity. (state yes, no, or unknown)
d)       The evaluation he/she received for FY 2021.
e)       The name(s) of the agency official(s) responsible for the evaluation.
f)       Please explain why you believe that you were treated less favorably under similar circumstances.
     **Answer: No**

64.  Did you file a union grievance with regard to this allegation/claim? If so, at what stage is the grievance?  If a final decision was reached, what was the result?  (If applicable, please include copies of documentation.)
**Answer: No, I am not a part of a union.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **17** | **27** | **2022-0009-R06** |

**CLAIM 3. COMPLAINANT'S 2020, PERFORMANCE APPRAISAL WAS LOWERED WITHOUT EXPLANATION**

65.   You have alleged your 2020 Performance appraisal rating was lowered without explanation.  Please explain this allegation in detail.

**Answer: Debiew left the agency in late June of 2020, prior to the close of the performance rating cycle. Because he had supervised me for the majority of the year, he provided an "interim rating" of 4.33 for me. Even though I became sick with COVID and was out of work for a period of time between Debiew's departure and the end of the FY2020 rating cycle three months later, my annual rating was baselessly downgraded to 3.0 by then SAC Dan Hawthorne (Caucasian male) and Westfall.**

**Hawthorne told me that I had been downgraded because I missed a meeting on July 1, 2020, when I was sick with COVID; however, each one of my Critical Elements, with the exception of No. 1 (Leadership), was lowered on the final appraisal without explanation. The communication was lowered from a 4 to a 2. The others were lowered from ratings of 4 or 5 to 3. When I expressed my dissatisfaction and disagreement with Hawthorne and Westfall. Hawthorne stated a 3 is not bad. It means you did what you were supposed to do. Westfall stated you only took off two weeks for COVID, as if to say COVID had no effect. I ended the conversation by saying I still do not agree with the lowering of my rating and their reasons were not justified.**

**None of the lowered ratings were justified, particularly given my illness and the fact that I had carried a heavier case load than any other agent in the Western Region Field Office (WRFO) in FY2020. During March 2020, Debiew advised Hawthorne to reassign some of my cases to another agent. None of my cases were assigned to another agent until September 2020.**

66.    Identify by full name and position of the Rating Official(s) and any other management official that was involved in and/or had input in lowering your 2020 performance appraisal without explanation. Explain each identified person's involvement in and/or their input in detail.

**Answer:  See my response to #56 and #65.  On information and belief, Sean Earle and Hawthorne were close business associates, and both were SAC's.  Earle was known to express his opinion on how other agents, who he did not supervise, should be reprimanded. It is possible that Earle had some involvement in my FY 2020 rating as well.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

**EEO Investigative Affidavit (Continuation Sheet)**

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 18 | 27 | 2022-0009-R06 |

67.    What were your performance goals for the 2020 appraisal period?  Did you accomplish these goals?  Please describe how.

**Answer: My performance goals were to obtain more cases, attend more professional trainings/developments and provide more fraud awareness briefings. Yes, I accomplished my goals with the exception of professional trainings, due to COVID.**

68.    State the rating you believe you should have been given for the subject rating period. Explain in detail why you believe you earned this rating and include supporting documentation.

**Answer: I should have been given a fair rating of at least a 4 - 4.5 (Exceeds Fully Successful/ Outstanding). From January 2019 - September 2020, I was the only case agent in the Dallas office. I was responsible for reviewing all complaints and preliminary inquiries that were received by Region 6 OIG-Investigations. Although our FY20 standards required us to maintain at least eight cases, I maintained 11 cases. I opened two cases within the first two months of COVID. I also opened another case later in the year and closed one case. I was responsible for coordinating with all contractors to get new office set up before and after our move into the new building, July 2019 (see attached).**

69.    During the 2020 performance appraisal period and prior to being given your final 2020 rating, did you and your Rating Official and/or other management official(s) engage in any discussions regarding your performance?  If so, identify the management official(s) by full name and position, state the date(s) of the discussion(s), describe in detail what was stated during the discussion(s), and the outcome(s).

**Answer: Yes, ASAC Edwin Debiew, regularly provided me feedback on my performance. Specifically, in April 2020 during my mid-year review Debiew stated I was doing a great job and encouraged me to keep up the great work because he was retiring soon (June 2020).**

70.    If not previously addressed, were any performance issues brought to your attention during any performance discussion(s) prior to your 2020 appraisal being lowered?  If so, describe in detail what you were told by whom and when.

**Answer: See #69**

71.    If you were notified of any performance issues, did you attempt to correct the issues?   If so, what did you do?  If not, explain in detail why you did not.

**Answer: No issues. See #69**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature    *Alisa Walton* | Date Signed May 5, 2022 |
|---|---|

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **19** | **27** | **2022-0009-R06** |

72.    Did you discuss your concerns, with your Rating Official or with any other management official(s), regarding your 2020 performance appraisal rating being lowered? If so, identify the management official(s) by full name and position, state the date of the discussion(s), describe in detail what was stated during the discussion(s), and the outcome(s).  If you did not discuss your concerns regarding your rating, explain in detail why you did not.

**Answer: I discussed my 2020 performance rating with Hawthorne and Westfall. I also discussed the changed rating with Debiew after he retired. See #65**

73.    Were you given a reason for why your 2020 performance rating was lowered without explanation?  If so, state the reason you were given.

**Answer: See #65**

74.    If you were given a reason for the FY 2020 lowered performance rating, did you disagree with the reason? If so, explain in detail why you disagree with the reason you were given.

**Answer: See #65**

75.    Did you appeal the decision in connection with the FY 2020  lowered performance rating? If so, explain in detail what has occurred during the appeal process so far.  *[Provide all relevant documentation regarding the appeal process.]*

**Answer: No, I did not appeal the decision in connection with the FY2020 performance rating. After contracting COVID, I remained positive for approximately two months and was still dealing with COVID symptoms until late December. By the time I was physically/mentally in a position to appeal, the appeal period had passed. Also, I believed I would be retaliated against.**

76.    Cite the Agency policies that you feel apply or were violated when you received the FY 2020 lowered performance rating.  Explain in detail how each policy applies.  If applicable, explain in detail how you believe each policy was violated.

**Answer: I believe the ratings were lowered for discriminatory and retaliatory reasons; therefore, the agency violated its own policies, as well as federal statutes and regulations that prohibit discrimination and retaliation against employees.**

77.    Explain in detail why you believe your **race** was a factor when your FY 2020 performance rating was lowered without explanation.

**Answer: See# 56**

78.    Explain in detail why you believe your **sex** was a factor when  your FY 2020 was lowered  on your performance rating.

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **20** | **27** | **2022-0009-R06** |

Answer: See 56

79.    Explain in detail why you believe your **prior EEO activity** was a factor when your FY 2020 was lowered on your performance rating.
    Answer: See #56

80.    How were you harmed when in 2020 your performance appraisal was lowered without explanation?
**Answer: I was unable to apply for 1811 positions within or outside the EPA. I was embarrassed, mentally and emotionally disturbed and stressed. The stress began to affect me physically and I was often unable to eat or sleep.**

81.    Please explain why you believe the action(s) taken against you in this claim constitutes harassment. (Please be specific.)
**Answer: The unjustified lowering of my performance FY20 ratings was one of the first actions the agency took to go after me after Debiew's retirement.  Subsequently, I was given the unjustified ratings on my FY 21 appraisal, placed on a PIP, and subjected to unrelenting scrutiny of my work as well as constant negative comments about Debiew and my supposed mishandling of evidence.  These were all part of an ongoing, pervasive effort to make my work environment intolerable.  As I explained above in response to #38, the stress of this environment caused me to experience severe mental and physical symptoms.  The constant negativity directed at me was in stark contrast to my experience with my previous supervisors, as confirmed in my reply to proposed removal (see attached).**

82.    Did you file a union grievance with regard to this allegation/claim? If so, at what stage is the grievance?  If a final decision was reached, what was the result?  (If applicable, please include copies of documentation.)
**Answer: No, I am not a part of a union.**

**CLAIM 4: IN APRIL 2019, COMPLAINANT WAS PLACED ON A 30-DAY PIP**

83.    Identify by full name and position the management official(s) who was responsible for placing you on a 30-day PIP in April 2019.
    **Answer: former SAC Michael Fiore**

_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| _Alisa Walton_ | May 5, 2022 |

October 2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **21** | **27** | **2022-0009-R06** |

84.    To your knowledge, was/were any other management official(s) involved in the decision to issue you a Performance Improvement Plan?  If so, identify him/her/them by full name and position and explain his/her/their involvement in and/or input in detail.

**Answer: On information and belief, Acting Deputy Assistant Inspector General/SAC Sean Earle was involved in this action. Earle has been known to strongly express his thoughts and opinions regarding agents performance and/or reprimands (see Attachment**

85.    Please explain what led up to your being placed on a 30-day PIP in April 2019.

**Answer: A couple of weeks before being placed on the PIP, I was told that Debiew would no longer be supervising my day-to-day activities – that Fiore, who was located in the Chicago office, would be taking over that role.  Even though Debiew had been my supervisor for years, he was not informed nor consulted about the 2019 PIP before it was imposed on me.**

86.    How were you notified, verbally or in writing, that you were being placed on a 30-day Performance Improvement Plan?  If verbally, state what was communicated to you, by whom and when?  If in writing, state the contents of the notification, who notified you and when. Please provide a copy of the notification.

**Answer: I received a call from former SAC Fiore on April 24, 2019, and was notified verbally. I also received a written notification via email the same day (see attached).**

87.    Did management meet with you prior to placing you the 30-day Performance Improvement Plan?  If so, state the dates of the meetings, describe in detail what was stated during the meetings, and the outcomes.  If you were not available or did not attend the meetings, explain in detail why.

**Answer: No**

88.    Did you discuss your concerns regarding being placed on a 30-day Performance Improvement Plan with any management official(s)?  If so, identify the management official(s) by full name and position, state the date of the discussion(s), describe in detail what was stated during the discussion(s), and the outcome(s).  If you did not discuss your concerns regarding the PIP, explain in detail why you did not.

**Answer: As I discussed with former ASAC Debiew, the PIP was unexpected. I informed Debiew that I received a call from Fiore about some reports/documents not being uploaded into the electronic case management system (ECMS). Fiore called me and asked about some reports/documents. I informed him I had completed the documents and he stated he did not see them uploaded in the ECMS. I looked in my file folders on my computer and realized the reports/documents had not been uploaded. I**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **22** | **27** | **2022-0009-R06** |

advised Fiore I would upload the reports/documents into the ECMS. Fiore instructed me to hold off on uploading the reports/documents and he would let me know when to upload them. A few days/weeks later I received a call from Fiore stating I was being placed on a PIP for Critical Element 3: Results Orientation and Critical Element 6: Resource Management.

89.    If not previously addressed, were any performance issues brought to your attention prior to your being placed on a 30-day Performance Improvement Plan in April 2019.  If so, describe in detail what you were told, by whom, and when.
   **Answer: Yes, I need to be timely with submitting my reports and timesheets**

90.    If you were notified of any performance issues, did you attempt to correct the issues? If so, what did you do?  If not, explain in detail why you did not.
   **Answer: Yes, I attempted to correct it and submit timesheets and reports on time. However we had three timekeeping systems and we only got a reminder for one system, which was our payroll timekeeping system.**

91.    Were you given a reason(s) for being placed on a 30-day  Performance Improvement Plan in April 2019?  If so, state the reason(s) you were given.
   **Answer:  Yes, they were stated in the PIP.**

92.    If you were given a reason(s) for being placed on the 30-day Performance Improvement Plan in April 2019, did you disagree with reason. If so, why did you disagree?
   **Answer: No, I did not agree with being placed on a PIP when I had already completed the work, but had not uploaded it into the ECMS.**

93.    Did management give you any documentation regarding being placed on a 30-day Performance Improvement Plan in April 2019? If yes, please provide a copy.
   **Answer: Yes (see attached)**

94.    What was the beginning and end date for the Performance Improvement Plan 30-day in April 2019?
   **Answer: April 24, 2019 - May 21, 2019**

95.    Why do you believe your **race** was a factor in your allegation when you were placed on a  Performance Improvement Plan 30-day  in April 2019?
   **Answer:  I do not believe that Fiore discriminated against me for my race, sex, or EEO activity; however, if Earle was involved in this action, I assert that he was**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature  _Alisa Walton_ | Date Signed |
|---|---|
| | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **23** | **27** | **2022-0009-R06** |

motivated by race and sex discrimination and reprisal for the reasons discussed above. In particular, Earle has supposedly made statements in the past that women do not belong in law enforcement.  Additionally, Earle was close friends with Susan Chandler, who was the subject of an EEO complaint I filed in 2015 based on her racist comments towards me. Earle was also close associates with Fiore and often expressed how other African American agents, who he did not manage, should be reprimanded.

96.    Why do you believe your **sex** was a factor in your allegation  you were placed on a Performance Improvement Plan 30-day  in April 2019?
    **Answer:  See #95.**

97.    Why do you believe your **prior EEO activity** was a factor in when  you  were placed on a   Performance Improvement Plan 30-day  in April 2019?
    **Answer: See #95.**

98.    How were you harmed when you were placed on the 30-day Performance Improvement Plan in April 2019?
    **Answer:  I later found out others knew about it and felt my professional reputation was damaged. I was not given opportunities for advancement or special projects. I was no longer asked to conduct or assist with computer forensics, although I am a trained Seized Computer Evidence Recovery Specialist (SCERS). Also see #99.**

99.    Please explain why you believe the action(s) taken against you in this claim constitutes harassment. (Please be specific.)
    **Answer: The PIP was one part of the hostile work environment to which I have been subjected by the agency.  Subsequently, my performance ratings for FY20 were baselessly lowered, I was given the unjustified ratings on my FY 21 appraisal, placed on a PIP, and subjected to unrelenting scrutiny of my work as well as constant negative comments about Debiew and my supposed mishandling of evidence.  As I explained above in response to #38, the stress of this environment caused me to experience severe mental and physical symptoms.  The constant negativity directed at me was in stark contrast to my experience with my previous supervisors, as confirmed in my reply to proposed removal (attached). The FY19 PIP was baseless and after completing the PIP I received a rating of a 4.0. According to Fiore, I completed the PIP with "flying colors". (see attached)**

### HARASSMENT/HOSTILE WORK ENVIRONMENT:

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **24** | **27** | **2022-0009-R06** |

100.   Other than as previously addressed, did you or anyone acting on your behalf tell the alleged harasser or person that created the hostile work environment that you found his/her behavior unacceptable, unwelcome, and/or offensive? If so, provide the following:
a. Who did you tell? **Answer: I did not tell anyone within the EPA-OIG-OI. I felt and believed no one would do anything about the behavior and/or I would be retaliated against.**
b. When did you tell them?
c. What did you/they tell him/her?
d. What was his/her response?

(If in writing, please provide a copy.)

101.   Did you ask that the alleged behavior stop?  If not, please explain why.
    **Answer: During the incident in August/September 2021, while in the evidence room, I told Westfall that if I was documenting evidence incorrectly it was because I was improperly trained. The purpose of this statement was to end the conversation because he was speaking to me in a fast-paced, loud tone. On November 17, 2021, I informed Westfall I had a lot of things going on and I did not have the headspace to deal with his continuous interrogation.**

102.   Did you or did anyone else acting on your behalf bring your concerns regarding the alleged harassment/hostile work environment to the attention of other management officials? If so, provide the following:
a.        Who did you tell? **Answer: See #100**
b.        When did you tell them?
c.        What did you/they tell him/her?
d.        What was his/her response?

    (If in writing, please provide a copy.)

103.   Was an investigation conducted into your allegations of harassment/hostile work environment?  If so, who conducted the investigation and when was it conducted?
        **Answer: Yes, apart from this EEO investigation, Mark Miller, Investigative Attorney, Office of Special Review, Office of Inspector General, conducted an investigation on March 22, 2022.**

104.   If an investigation was conducted, were you advised of the outcome? If so, when, by whom and what was the outcome?

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature    *Alisa Walton* | Date Signed May 5, 2022 |
|---|---|

October  2015

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **25** | **27** | **2022-0009-R06** |

**Answer: Yes, I was advised on May 3, 2022, by Marc Perez, Acting Assistant Inspector General, Office of Investigations, that the conduct described in the information gathered as part of the fact-finding inquiry failed to constitute harassment under the EPA Order 4711 (see attached)**

(If in writing, please provide a copy.)

105.   What, if any, effect did the harassment/hostile work environment have on your physical or emotional well-being?

**Answer: The harassment caused me to have severe headaches, unable to eat or sleep.  In addition, within the past 12 months the EPA-OIG-OI has hired at least 24 new employees/agents and none of them were African American. Three of the individuals were Caucasian females, one was an Asian male and the other 20 were Caucasian males. These statistics for an organization/division that investigate and is suppose to provide fair treatment and impartial judgement paints the picture of discrimination and racism. Throughout the EPA-OIG-OI there are only two African American males. As stated in an earlier response, I am the only African American female. Knowing I am still the only African-American female throughout the EPA-OIG-OI, after a recent hire of 24 agents, causes me to experience anxiety whenever I think about it or have to discuss it. For further response, see my answer to #38, above.**

106.   What, if any, effect did the alleged harassment/hostile work environment have on your work performance?

**Answer: Because of harassment/hostile work environment all of my work was scrutinized, unusual and unnecessary changes were made and work was sent back to me with edits numerous times before being approved. The constant changes caused me to spend more time on reports and be hesitant and second guess every report or email I sent.**

**As previously stated in #60, on April 22,2022, I received the notification that the proposed removal was not sustained. On April 26, 2022, I submitted a six page report. The report included a review of five years of bank statements from seven bank accounts. Prior to submitting the report, although it was complete, I spent several days reviewing the report and contemplating when to submit it, due to fear of it being scrutinized and returned for changes. Less than 24 hours after submitting the report, Gurin approved the report with no questions or returns for edits. This proves management's harassment and does not support Westfalls claims in his proposed removal.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature *Alisa Walton* | Date Signed May 5, 2022 |
|---|---|

October  2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 26 | 27 | 2022-0009-R06 |

Due to fear of my reports being scrutinized and returned for changes, I still get anxious and spend a lot of time contemplating when to submit a completed report.

107.  Have you received training in harassment and/or a hostile work environment, and if so, when and what training did you receive?

    **Answer: EPA Anti-Harrassment Policy Statement 2021**

108.  Are you familiar with the Agency's policy on anti-harassment/hostile work environment? Is the policy displayed for employees to view in your work area?  If so, where is the policy displayed?

    **Answer: Yes, I am familiar with EPA's anti-harassment/hostile work environment policy. I am not certain where the policy is located in the EPA work area, but I have received emails throughout the years.**

109.   How would you like to see this EEO Complaint resolved? **Please be specific.**

    **Answer: I am seeking for each of the critical elements in the FY 2020 Interim rating provided by Garrett Westfall/Dan Hawthorne to be changed to "Exceeds Fully Successful;" and all critical elements and the overall rating for my FY 2021 performance rating to be increased to reflect my actual performance of "Exceeds Fully Successful." I am seeking retroactive payment for any monetary bonus, time off award, step increase, or other benefit that I would have received had I been rated at the "Exceeds Fully Successful" level for FY 2021. I am also seeking to have all records of the lowered performance appraisal removed from my official and unofficial personnel records and all other federal records. In addition, I am seeking to have the 2019 and 2021 Performance Improvement Plans (PIPs), and all documents that refer or relate to both PIPs, removed from my official and unofficial personnel records and all other federal records.**

    **I am seeking to be reassigned to a non-hostile work environment, outside the chain of command of the management officials who have been named in my complaint, to an 1811 position that commensurate with my background, skills, abilities, and current grade level.**

    **I am seeking the maximum amount available under the law for the emotional distress, pain and suffering, embarrassment, and harm to my reputation the agency's actions have caused. I am also seeking the restoration of leave taken due to stress while dealing with and/or preparing for oral and written responses for proposed removal and payment of my attorneys' fees and costs.**

_____

I declare under penalty of perjury that the foregoing is true and correct.

| Affiant's Signature _Alisa Walton_ | Date Signed May 5, 2022 |
|---|---|

October  2015

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 27 | 27 | 2022-0009-R06 |

_____
_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | Date Signed |
|---|---|
| *Alisa Walton* | May 5, 2022 |

October  2015

# Certification

Case Number
**2022-0009-R06**

I have read the proceeding attached statement, consisting of ___27___ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

## Standards of Conduct

Regulations require all employees to cooperate in any EEO investigation.

Subscribed and (sworn) (affirmed) before me on the _____ day of_____, 20_____.

*(Affiant, sign in the presence of an EEO Complaints Investigator.)*

| Signature of EEO Complaints Investigator | Signature of Affiant |
|---|---|
| | *Alisa Walton* |

## Declaration

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant must sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed |
|---|---|
| X  *Alisa Walton* | X   May 5, 2022 |

Form 2571 October 2015



1319 F Street NW
Suite 200
Washington, DC 20004

SELDON BOFINGER
&
ASSOCIATES, P.C.

Office: (202) 393-8200
Cell: (202) 841-5038
seldonbofinger.com

Molly Buie
meb@sba-pc.com

March 17, 2022

**VIA EMAIL**
Thomas Roelke
Deputy Assistant Inspector General for Investigations
Headquarters Operations
Office of Inspector General
1200 Pennsylvania Ave., NW
Washington, DC 20460

        Re:    Alisa Walton Reply to Proposed Removal

Dear Mr. Roelke:

This letter and the attachments to it constitute Special Agent (SA) Alisa Walton's written reply to the Notice of Proposed Removal that was issued to her on March 1, 2022. SA Walton already presented her oral reply but would be happy to address any additional questions or concerns you may have after reviewing this written submission.

## Background

Alisa Walton began her career with the Environmental Protection Agency (EPA) Office of Inspector General (OIG) 20 years ago as a part-time GS-5 Management Analyst Trainee while she was an undergraduate at the University of Texas at Dallas. She later assumed a full-time position as a Criminal Investigator (Agent) Trainee while pursuing her master's degree in Business Administration. SA Walton worked her way up the ranks, eventually becoming a GS-13 agent in 2011. Along the way, she completed Seized Computers Evidence Recovery Specialist (SCERS) training and spent two years on the Deep Water Horizon Criminal Investigative Team in New Orleans. SA Walton was recognized by then-U.S. Attorney General, Eric Holder, for the stellar job she did on that case.

Throughout her career with EPA OIG, SA Walton has impressed her supervisors with her work ethic, talent, and willingness to jump in to help her colleagues as attested to in the four affidavits attached to this Reply. Indeed, each of her former supervisors expressed shock that the

agency has proposed to remove SA Walton from the federal service based on her performance, which they all described in glowing terms.

In recent years, SA Walton served as the only agent in the Dallas office for almost a year and a half – from January 2019 to September 2020 – after the retirement of one of her colleagues. During that time, she not only handled *eleven* cases but also oversaw the office move, performed all necessary collateral duties, and helped keep the office running during the Covid pandemic. Rather than receive a commendation for her dedication during that extremely difficult time, SA Walton is now facing the loss of her career just as the Dallas office is getting back on its feet.

### SA Walton's History of Performance

Prior to the events at issue in this Reply, SA Walton had never been rated below the fully successful level on an annual appraisal in her career. In fact, she has repeatedly been issued ratings of "Exceeds Fully Successful," including in FY 2014, 2015, and 2016.

After she suffered a family tragedy, SA Walton was reluctantly placed on a Performance Improvement Plan (PIP) in 2019 by her former supervisor, Mike Fiore, but "passed the PIP with flying colors" and earned a final rating of "Exceeds Fully Successful" for the year. Fiore Aff., ¶¶8-13. She also was rated as "Exceeds" in an interim rating for FY 2020 just before former Assistant Special Agent in Charge (ASAC) Edwin Debiew retired in June of that year.[1] Id. ¶13.

In other words, over the past eight years, SA Walton has earned four annual performance ratings and one interim rating at the "Exceeds Fully Successful" level – hardly the record of a failing GS-13 agent. Throughout that time, her work helped achieve a number of successful outcomes for the Office of Investigations (OI), including financial recoveries; and civil, administrative, and criminal actions. Debiew Aff. ¶¶9-10.

### The 2021 Performance Improvement Plan

The description of SA Walton's performance by Special Agent in Charge (SAC) Garrett Westfall in the Notice of Proposed Removal stands in stark contrast to her demonstrated, years-long record of producing high quality written products for the Office of Investigations. SAC Westfall has described a GS-13 agent who seemingly has no understanding of how to produce a cogent, timely report. This characterization is impossible to square with SA Walton's history of achievement working under a number of different supervisors (see attached affidavits).

A glance at the PIP reveals at least part of the problem: the 14 "tasks" or assignments that SA Walton was expected to complete within the 45-day PIP period would have been insurmountable for any agent, regardless of their abilities. SA Walton's PIP began on November 10, 2021, and within the first week she was required to complete three tasks. A week after that, she had two more sizeable tasks due on the day before Thanksgiving, and two more the following week – there was no time built into the schedule for editing/revisions. To make matters worse, SA

---

[1] Her year-end rating was inexplicably lowered to "Fully Successful" by Special Agent in Charge (SAC) Garrett Westfall three months later as discussed further below.

Walton was required to keep up with her regular caseload and collateral duties throughout the PIP. As she mentioned in the oral reply, SA Walton also suffered the loss of an aunt during this time period.

The grossly excessive nature of the PIP's assignment list is evident from the fact that SAC Westfall had to remove Tasks 6, 9, 11, and 12 "[d]ue to time constraints" and disregard Task 3 because the evidence was not received in time. Nevertheless, SA Walton made every effort to complete her PIP assignments in a timely manner and worked far beyond her regular duty hours to try to meet the PIP's unreasonable schedule. She worked nights and weekends, including Christmas Eve, to produce the required memoranda and reports. She also made the decision to forgo the administrative leave, given by Inspector General Sean O'Donnell, for the Thanksgiving and Christmas holidays. But SA Walton – the same woman who had handled eleven cases for the Dallas office in 2019 and 2020 – simply could not keep up with the crush of assignments, even with the very minor "extensions" that SAC Westfall granted and then held against her in the Proposed Removal.

One example of the unreasonableness of the PIP schedule was Task 5, in which SA Walton was to analyze **five years'** worth of disorganized invoices provided by the subject of the investigation. SA Walton could not begin to get through the documents in a week, never mind write a flawless Memorandum of Activity (MOA), complete another MOA, and perform her regular case work during that timeframe. Indeed, Task 5 is not complete to this day because of the overwhelming volume of material involved, but SA Walton was given one week to do it under the PIP.

When SA Walton did submit the various MOAs required under the PIP, SAC Westfall picked every detail apart, even criticizing SA Walton's use of italics in one report. The idea that he was evaluating her work under a "Minimally Successful" performance standard is clearly refuted by his written comments. Several of the issues he raised about discrepancies with dates and attachments had to do with changes in the electronic case management system as well as office policy regarding the way reports should be completed, as discussed further below. The Merit Systems Protection Board has held that "it is improper for an agency to apply a performance standard for a final work product to an employee's draft work products, especially when it did not do so to drafts of other employees, and it was not unusual for drafts of similarly situated employees to be incomplete in some respects or to have some errors." Brosseau v. Dept. of Agriculture, 97 M.S.P.R. 637, 642-43 (Nov. 1, 2003) (concurring opinion of Neil McPhie) (citing Thompson v. Farm Credit Admin., 51 M.S.P.R. 569, 578 (1991)). That certainly appears to be the case here.

The agency's inconsistent direction about report formatting was an issue touched on by some of SA Walton's former supervisors in the attached affidavits. The Dallas office alone has seen many changes in leadership during the past few years. Since the departure of ASAC Debiew in June of 2020, SA Walton has had four different first-line supervisors, each of whom has brought a different approach to report writing and other office procedures. Specifically, during a period of fewer than 30 days between August and September of 2021, SA Walton had *three* different first-line supervisors. It is no wonder that she was unclear about the current procedures.

Moreover, SAC Westfall and ASAC Gurin (SA Walton's current first-line supervisor), often gave conflicting directions to SA Walton during the PIP and did not communicate with each other effectively as supervisors.  For example, in the Notice of Performance Evaluation for Performance Improvement Plan, SAC Westfall criticized SA Walton for emailing Task 1 "to ASAC Gurin for management review rather than uploading it into I2M," but ASAC Gurin had instructed SA Walton to email the document for her review.

SA Walton has addressed, below, many of the supposedly unsatisfactory tasks identified by SAC Westfall in the Notice of Performance Evaluation for Performance Improvement Plan memo.  She will be glad to make herself available should you desire further clarification about any of them.

### Response to Specific Tasks/Assignments Under the PIP

**Task 1:**

Regarding the evidence collection date, SA Walton cited September 20, 2019 because that is the date that the agent from the Department of Interior mistakenly used on the preamble to her notes from the interview.  That is also the date that is reflected on the transcript.  Based on those documents, SA Walton had cited the September 20 date in a previous MOA that ASAC Gurin had approved; accordingly, when she prepared the MOA for Task 1 under the PIP, she went back to the September 20 date.  It was an innocent and honest mistake based on the other agent's initial error, which occurred outside the timeframe of the PIP.

The grand jury coding error was based on the fact that the case itself did contain grand jury information, even though the particular document SA Walton prepared did not.  The new I2M case management system requires agents to check a box to indicate whether each document contains grand jury information.  SA Walton believed that she should check "yes" based on the overall status of the case.

As discussed above, SA Walton emailed the revised MOA to ASAC Gurin for management review because that is what ASAC Gurin had told her to do.

**Task 2:**

In this assignment, SA Walton was required to analyze a number of tax documents from a two-year period that had been supplied by the subject of the investigation, including two spreadsheets that he had prepared.  These were not tax filings with the IRS but rather the sort of documents a person might submit to his accountant at tax time.  SA Walton was not given adequate time to complete this task, especially given the other two PIP assignments she had to complete in the same week.

Some of the criticisms highlighted by SAC Westfall were attributable to the documents themselves.  For example, the discrepancy between $15,802 and $25,802 was because the information provided by the subject in the spreadsheets was inconsistent.  SA Walton made an agent's note of the discrepancy in her report.  SA Walton's MOA was necessarily based on the

"evidence" provided by the subject.  She did not have access to the underlying documents to confirm its accuracy.

The discrepancy with the interview date and grand jury coding error are the same as discussed in Task 1, above.  In addition, SA Walton mistakenly used a "newly issued" grand jury MOA template.

## Task 4:

SAC Westfall criticized SA Walton for including a date range – from January 8, 2021 to August 26, 2021 (a time period outside of the PIP) – in the "period of review" without a description of "what review activity took place from January to August."  The date of review issue was something that SA Walton had received unclear guidance about.

Previously, agents were able to list a date range in the footer for "Activity Date" if they reviewed or revised a document over a period of time.  During the PIP period, because of the recent MOA change and procedure relating to "Activity Date" and "Reporting Date," SA Walton was limited to either using the date the activity was started or the date of the last activity.  In the MOA at issue, SA Walton used the date of last activity according to guidance she received from ASAC Gurin.  That is why she cited investigative activity on November 23, 2021.

This is the type of report preparation procedure that was constantly changing – at one point, agents in the Dallas office were given two different sets of rules in the span of a month.  Throughout the PIP, SAC Westfall consistently noted the in-text citing of attachments, a procedure that began during the 30-day period in the fall of 2021 in which SA Walton had three different supervisors.

As confirmed by former ASAC Debiew, inconsistency in the policies and procedures around report preparation was an agency-wide problem and one that SA Walton should not be faulted for.  Debiew Aff. ¶¶12-13.

## Task 5:

This task was simply impossible to complete within the PIP schedule.  It required SA Walton to analyze five years' worth of disorganized invoices provided by the subject of the investigation.  The 2015 invoices were spread over 16 individual PDF files; 2016 invoices included 25 individual PDF files and 5 Excel files; 2017 consisted of 4 PDF files, one of which contained 39 pages not in date order; and 2018 contained 1 PDF with 77 pages, not in date order, and included handwritten invoices/notes and 2019 invoices.

Under the PIP schedule, SA Walton was to complete this assignment in a week, while she was also working on Task 4 and providing edits/revisions to the MOAs from Tasks 1 through 3.  She ultimately was given an extension until December 8 (i.e., two weeks), which was still unreasonable given the extent of the documents and the other assignments on her plate.

SAC Westfall has cited this Task as being unsatisfactory because it was "submitted after the deadline without an approved extension." In fact, as of February 15, 2022 when the case was reassigned to another agent, SA Walton was still working on analyzing the documents – that is how huge of an undertaking the project was. She had been directed by ASAC Gurin to focus on preparing a spreadsheet to organize and keep track of the data in the invoices rather than preparing the MOA. To SA Walton's understanding, the new agent has not worked on or completed the invoices at all since receiving the case.

**Task 7**:

This Task involved a case SA Walton was working with EPA CID. SAC Westfall's reference to "inaccurate or unsupported dates" concerns evidence that SA Walton had gathered prior to the PIP period, such as screenshots she took of the subject company's website. Because there were not chronology log entries in I2M for investigative activity on the dates of the screenshots, SAC Westfall concluded that the "authenticity and accuracy of the cited activities were questionable." This, despite the fact that the screenshots were date stamped, which SA Walton showed to SAC Westfall. Again, this is an instance of SA Walton being penalized during her PIP for actions that occurred outside of the PIP period.

SAC Westfall also criticized SA Walton for inadvertently including screenshots by an EPA CID criminal investigator in an attachment she submitted with the MOA and suggested that she had falsely attributed those screenshots as being taken by her. In fact, SA Walton accidentally inserted the other agent's screenshots in the PDF when she was assembling the attachment and had no intention of taking credit for them. During that same time period, SA Walton was working with the EPA CID investigator to prepare information for the AUSA, which included some of the screenshots. Working on both assignments and the PIP is what led to the mix-up.

SA Walton's own screenshots comprised the majority of the attachment – it was obvious that the other screenshots had been included by mistake. This is exactly the type of error that can be expected when an agent is forced to work at all hours of the day and night to complete an unreasonable and unmanageable number of assignments while under the strain of a PIP that was clearly a setup for failure.

**Task 13**:

This Task required SA Walton to prepare an internal memorandum for approval to dispose of evidence, and the subsequent destruction of the evidence, for a closed case that had belonged to retired ASAC Debiew. The evidence was in a box that had been shipped from the Electronic Crimes Division via UPS to the Dallas Field Office, but only some of the evidence was listed on Evidence Custody Forms. Accordingly, SA Walton had to search through I2M and the evidence logbooks to figure out which case the evidence was associated with.

The "inaccurate information … inaccurate dates" and "failure to properly identify source material" cited by SAC Westfall were due to errors made by other agents long before SA Walton was assigned to write the memorandum and should not have been held against her during the PIP. See Brosseau v. Dept. of Agriculture, 97 M.S.P.R. 637, 642-43 (Nov. 1, 2003) (concurring opinion

by Neil McPhie) (finding that employee was denied a reasonable opportunity to demonstrate performance under PIP when he had "assumed responsibility for an audit that had begun approximately a year earlier, and for which the fieldwork was nearly completed before he became involved.") (emphasis in original).

## The Illegal Basis for the Agency's Actions

The 2021 PIP and subsequent effort to fire SA Walton were not the first time she was subjected to unjustified performance actions by the agency, and SAC Westfall in particular. As mentioned above, her former supervisor, ASAC Debiew, left the agency in late June of 2020, prior to the close of the performance rating cycle. Because he had supervised SA Walton for the majority of the year, he left an "interim rating" of 4.33 for her (attached). Even though SA Walton became sick with Covid and was out of work for a period of time after Mr. Debiew's departure and before the end of the FY 2020 rating cycle three months later, her annual rating was baselessly downgraded to 3.0 by then-SAC Dan Hawthorne and Mr. Westfall.

SA Walton was told that she had been downgraded because she missed a meeting on July 1, 2020, when she was sick with Covid; however, each one of her performance elements, with the exception of No. 1 (Leadership), was lowered on the final appraisal without explanation. The communications element was lowered from a 4 to a 2. The others were lowered from ratings of 4 or 5 to 3. None of the lowered ratings was justified, particularly given her illness and the fact that she had carried a heavier case load than any other agent in the Western Region Field Office in FY 2020.

On information and belief, many of these actions have been encouraged or directed by the Acting Deputy Assistant Inspector General for Investigations, Sean Earle, who has reportedly made statements to the effect that women do not belong in law enforcement. Acting DAIGI Earle also has reportedly made discriminatory statements about African Americans. At one point, Acting DAIGI Earle was close friends with former Special Agent Susan Chandler, who was the subject of an EEO complaint SA Walton filed in 2015 over SA Chandler's repeated, blatantly racist comments and harassment.

SA Walton sought EEO counseling on November 10, 2021 and filed a formal complaint on February 15, 2022 over the 2021 PIP and performance rating, as well as the ongoing hostile work environment to which she has been subjected since ASAC Debiew left the agency. Within two weeks of filing that complaint, she received the Notice of Proposed Removal that is the subject of this Reply. The close timing between those two events, as well as the exceedingly unreasonable nature of the PIP itself, is strong evidence of reprisal in this case. See Clark Cty. School District v. Breeden, 532 U.S. 268, 273-74 (2001).

SA Walton is not alone in believing that she is being unfairly targeted for removal. Both Mr. Debiew and Mr. Fiore said as much in their affidavits. Mr. Debiew stated, "The Notice seems designed to force SA Walton, who has over 16 years of experience, out of the agency for false reasons. In my experience, this is a common practice in EPA OIG for people of color. I believe she is being treated this way based on her sex (female) and race (African American)." Debiew Aff. at ¶15.

Mr. Fiore described previous experiences in which Acting DAIGI Earle tried to force him to take unwarranted performance action against subordinates, refused to promote two female agents, and bragged about being the "go to" person when the agency wanted to fire someone. Fiore Aff. at ¶¶14-20. He concluded, "In short, it would not surprise me to learn that DAIGI Earle had something to do with Alisa's proposed removal, or that the PIP and proposed removal were done in retaliation for Alisa's prior protected activity, as the allegations that are being made about her performance are very different from my experience in supervising her." Id. ¶20.

<u>All</u> of SA Walton's former supervisors agreed that she was a good agent who consistently produced well-written work products and required minimal supervision. It strains credulity, therefore, to imagine that her performance has slipped so badly in such a short period of time that she can no longer even meet "Minimally Successful" performance standards.

An employee whose supervisors "by their actions before, during, and after the performance improvement period, revealed their predetermination that [the employee] was going to fail" has been denied her substantive right under 5. U.S.C. 4303 to a meaningful opportunity to demonstrate acceptable performance. Thompson v. Farm Credit Admin., 51 M.S.P.R. 569, 578-79 (Dec. 3, 1991). In this case, the PIP that SA Walton was placed on – with its onerous deadlines, unfair expectations, and overly harsh critiques – was clearly designed for failure.

## **Conclusion**

For all of the foregoing reasons and those expressed in her oral reply, SA Walton urges you to rescind the Notice of Proposed Removal.

Respectfully submitted,

Molly E. Buie, Esq.

cc: Alisa Walton


Enclosures:

Walton 2014 through 2020 EPARS

Affidavits of Ahmad, Clinton, Debiew, and Fiore