IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| ALISA WALTON, <br><br> Plaintiff, <br><br> v. <br><br> LEE ZELDIN, Administrator, U.S. Environmental Protection Agency, <br><br> Defendant. | Civil Action No. 3:25-cv-00535-S |

**DEFENDANT'S REPLY**
**IN SUPPORT OF ITS RENEWED MOTION TO DISMISS**

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Tel: 817.252.5230
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

## I.   Introduction

Before transferring this case, the D.C. court ruled that Plaintiff Alissa Walton had, at best, only two possible claims: (1) "her discrimination and retaliation claims as based on her FY 2021 'unacceptable' rating;" and (2) "her placement on the Performance Improvement Plan." (Mem. Op. 8, ECF No. 8.) In a written order, the D.C. court then dismissed all Walton's other claims and transferred the case, without reaching the issue of whether Walton stated a claim under Rule 12(b)(6) on those two remaining possible claims. (*Id.* at 10; Order, ECF No. 27.) Walton is not challenging the dismissal of those claims in this Court.[1]

Yet, in response to the EPA's renewed motion to dismiss her two remaining claims, Walton now attempts to rely on claims the D.C. court already dismissed to show that she suffered some harm on her two remaining claims. Walton's attempt fails because the law requires that Walton's Amended Complaint contain nonconclusory, factual allegations that that the two remaining employment actions caused her "some harm." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024). Because her Amended Complaint fails to do so, it should be dismissed for failure to state a claim under Rule 12(b)(6).

## II.   Legal Standard

Along with her response brief, Walton filed a 138-page appendix of documents, from which she extracts bits and pieces that she hopes will supply the necessary factual allegations that are missing from her Amended Complaint.[2] While it is true that, when reviewing a motion to dismiss, a court may consider documents incorporated by

---

[1] Pl.'s Opp'n to Def.'s Renewed Mot. to Dismiss (Pl.'s Opp'n) 19 n.7, ECF No. 48 (clarifying that Walton is not seeking to "reinstate the dismissed claims").

[2] App'x in Supp. of Pl's Opp'n to Def.'s Renewed Mot. to Dismiss (Pl.'s App.), ECF No. 49; *see, e.g.*, Pl.'s Opp'n at 4, ECF No. 48 (citing to pages 20 and 126 of Pl's App.).

**Defendant's Reply in Support of its Renewed Motion to Dismiss – Page 1**

reference,[3] Rule 8(a)(2) requires that the complaint itself provide "a short and plain statement of the claim showing that the pleader is entitled to relief." If a defendant must parse through 138 pages of documents to guess at which specific factual allegations buried in those documents may support the plaintiff's claims, it stands to reason that the complaint cannot be said to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" as required by Rule 8. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

### III.   Argument and Authorities

**A.   Walton concedes that the Amended Complaint fails to state a cognizable claim of <u>retaliation</u> in relation to the two employment actions pending before this Court.**

In her response, Walton concedes that her Amended Complaint does not state a retaliation claim based on either (1) her 2021 performance evaluation; or (2) her placement on a performance improvement plan (PIP) in 2021. (Pl.'s Opp'n 9.) So those retaliation claims should be dismissed.

Instead, Walton now asserts a different retaliation claim – one based on the *administration* of her PIP. This new claim also fails, as addressed below in Section C.

**B.   The Amended Complaint does not plausibly allege that <u>Walton's 2021 performance rating</u> was more than a *de minimis* injury, as required to support her discrimination claim.**

   **1.   Walton's speculation that her rating caused her to miss a performance bonus or different job is insufficient.**

As predicted, Walton attempts to satisfy the requirement that she demonstrate "some harm" stemming from her 2021 performance rating by merely *speculating* that a higher performance rating would have resulted in a performance bonus or a different job.[4]

---

[3] *See Benfer v. City of Baytown*, 120 F.4th 1272, 1278 n.2 (5th Cir. 2024).

[4] Def.'s Renewed Mot. to Dismiss 12-15, ECF No. 47; Pl's Opp'n 10, 13-14.

In the Fifth Circuit, however, a plaintiff cannot state a claim based on a low performance rating merely by making speculative allegations that the performance rating would have resulted in a performance award or promotion. *See Johnson v. McDonald*, 623 F. App'x 701, 704 (2015). In *Johnson*, the complaint "baldly" asserted that the employee's low rating, "resulted in loss of "performance awards" and had a "negative impact on [his] ability to be promoted.'" *Id.* The plaintiff's speculative allegations, the Fifth Circuit held, was not enough to state a claim:

> The only fact supporting these allegations is that in 2010, when Johnson was rated "outstanding," he received a bonus." *Id.* But that says nothing about Johnson's entitlement to an award in 2011 or 2012. *There is no indication that performance pay is automatic upon achieving a specified rating.* Nor does Johnson allege that individuals who were rated "outstanding" in those years received bonuses. Consequently, Johnson's allegation that he was denied performance pay is speculative at best.

*Johnson*, 623 F. App'x at 704 (5th Cir. 2015) (emphasis added). Similarly, a federal employee's speculation that her performance rating "materially impacted her ability to receive raises" did not cause her claim to rise "above the *de minimis* standard articulated in *Harrison*." *Dixon v. Garland*, No. 4:23-cv-00019-P, 2024 150509, at *6, 4-6 (N.D. Tex. Jan. 12, 2024). Although the employee there had alleged that her performance must have "impacted her ability to receive raises, " the district court recognized that "outstanding' reviews do not guarantee a raise" and refused "to act as the [agency's] super-personnel department" by scrutinizing the specifics of standard performance reviews. *Id.* at *5.

Here, Walton tries the same tactic that failed in *Johnson* and *Dixon*: she makes two bald, speculative allegations about how her performance evaluation *may* have led to some sort of harm. Specifically, she speculates that if she had received a higher rating: (1) "her supervisor or supervisors would have automatically signed off" on a performance bonus; and (2) her application for another position as a Special Agent would not have

been rejected. (Am. Compl. ¶¶ 54, 103.) She identifies no facts to support her speculation, and neither allegation is sufficient to raise her performance rating above the *de minimis* threshold. As in *Johnson*, "[t]here is no indication that performance pay is automatic upon achieving a specified rating. Nor does [Plaintiff] allege that individuals who were rated 'outstanding' in those years received bonuses. Consequently, [Plaintiff's] allegation that [she] was denied performance pay is speculative at best." *Johnson*, 623 F. App'x at 704-05. In sum, under *Johnson* and *Dixon*, Walton's bald speculation that her supervisors would have "automatically signed off" on a performance bonus is not enough to state a claim based on her performance rating.

There is a second reason why Walton cannot rely on her missed performance bonus as evidence of "some harm" deriving from her performance rating: the District Court for the District of Columbia already dismissed Walton's claim for her missed performance bonus.[5] Walton admits as much in her response: "the pre-transfer court dismissed the denial of a FY 2021 performance award."[6] So Walton cannot rely on the missed performance bonus to show that her performance rating caused her more than *de minimis* harm.

Walton makes a confusing and unsupported argument to the contrary in a footnote.[7] She argues that even though the D.C. court dismissed her claim regarding her denial of a performance bonus in 2021, she should still be able to bring that claim as "part of another claim."[8] However, this conflicts with Supreme Court precedent. The Supreme Court has specifically held that, when it comes to discrete employment actions, "[e]ach

---

[5] *See* Order ("The motion is granted for failure to exhaust claims based on the plaintiff's denial of a performance bonus, . . ."); Mem. Op. 8 (granting "the defendant's motion to dismiss her unexhausted claims relating to the 2021 denial of a performance bonus . . .").

[6] Pl.'s Opp'n 10 n.4.

[7] Pl.'s Opp'n 10 n.4.

[8] Pl.'s Opp'n 10 n.4.

incident of discrimination and each retaliatory adverse employment decision constitutes as separate actionable 'unlawful employment practice'" for which the plaintiff must exhaust her administrative remedies. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). Those discrete employment actions that the plaintiff did not exhaust are "no longer actionable," even if they are "plausibly or sufficiently related" to another employment action that the plaintiff did administratively exhaust. *Id.* So Walton's theory that she can assert an unexhausted and already dismissed claim as "part of" another claim is not supported by the caselaw.

### 2. Walton's speculation about other effects of her performance rating is insufficient.

In her response, Walton does not dispute that the allegations *in her Amended Complaint* itself are not enough to plausibly allege that she was denied a promotion because of her performance rating.[9] So she goes looking elsewhere for necessary allegations of actual injury from her performance rating. Buried deep in an affidavit that is, in turn, buried deep in an appendix to her response, she finds a few sentences that she hopes will do the trick:

> I became ineligible to apply for other 1811 positions with the EPA or within the federal government. I also became ineligible for cash awards, promotions, special assignments, details, bonus, etc. Outside the COVID Maximum Unscheduled Telework, I would be ineligible to telework.[10]

Walton's reliance on those sentences is misplaced for two reasons.

First, those sentences are mere conclusory allegations couched as factual allegations. Such allegations "are not entitled to the assumption of truth." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Garza v. Escobar,* 972 F.3d 721, 727 (5th Cir. 2020) (courts "are not bound to accept as true a legal conclusion couched as a factual

---

[9] *Compare* Def.'s Renewed Mot. to Dismiss 11-15 *with* Pl.'s Opp'n 13-14.

[10] Pl.'s App. 117, ¶ 59 (cited in Pl.'s Opp'n 14).

allegation"). They lack the necessary "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For example, there is no factual allegation that the EPA has a policy whereby employees are ineligible to apply for other positions with the EPA or any other agency based on their performance ratings. There is only Walton's conclusory allegation, which is not enough.

Second, these sentences allege only *speculative* harm. Even under the new, lower bar, the Supreme Court requires that "an employee must show some harm." *Muldrow*, 601 U.S. at 350. The two sentences Walton relies on do not allege—even in conclusory fashion—that Walton was actually harmed by any of the potential negative consequences of a poor performance rating she alleges.[11] For example, there is no allegation that Walton actually *applied for and was denied* other positions within the EPA because of her performance rating, that she actually *applied for and was denied* other positions within the federal government because of her performance rating, or that she actually *sought and was denied* telework opportunities.[12] Without such allegations of actual harm, her allegations do not satisfy even the new, lower bar in *Muldrow*. Thus, her discrimination claim based on the FY2021 performance rating must dismissed.

**C.	The Amended Complaint does not state a claim based on Walton's <u>2021 PIP</u>.**

In her response, Walton now asserts that she actually has two claims based on her PIP: (1) a discrimination claim challenging her placement on the PIP, and (2) a new alleged retaliation claim for the administration of her PIP—i.e., "the 45 days she was under it."[13] Neither claim is viable, for the reasons stated below.

---

[11] Pl.'s App. 117, ¶ 59 (cited in Pl.'s Opp'n 14).

[12] Pl's App. 117, ¶ 59 (cited in Pl.'s Opp'n 14).

[13] Pl.'s Opp'n 14.

### 1. The Amended Complaint does not state a discrimination claim based on Walton's <u>placement on a PIP</u>.

In its motion to dismiss, the EPA pointed to five cases where courts in the Fifth Circuit have held that mere placement on a performance improvement plan alone does not constitute an adverse employment action — both before and after *Hamilton*.[14] In Walton's response, she cites no authority to the contrary.[15] Instead, she makes the curious choice to focus on this sentence from the Fifth Circuit's decision in *Lemonia*:

> To determine if an employer's action is materially adverse, the court looks to indicia such as whether the action affected job title, grade, hours, salary, or benefits or caused "a diminution in prestige or change in standing among [ ] co-workers."

Pl.'s Opp'n 14-15 (citing *Lemonia v. Westlake Mgmt. Servs.*, No. 22-30630, 2023 WL 6878915, at *6 (5th Cir. Oct. 18, 2023)). Walton's reliance on that passage is misplaced because she does not allege that her placement on the PIP affected any of the indicia on *Lemonia*'s list. The Amended Complaint admits that her job title, grade, hours, salary, and benefits were never impacted by her placement on the PIP. (Am. Compl. ¶¶ 1, 6.). And the Amended Complaint does not allege that Walton's placement on a PIP caused any diminution in prestige or change in standing among her co-workers.[16] For example, it does not allege that the VA notified Walton's co-workers that she was on a PIP, or that they were even aware she was on a PIP. Therefore, Walton's mere placement on a PIP, by itself, does not state a claim. Walton cannot forestall dismissal of her PIP discrimination claim.

---

[14] Def.'s Renewed Mot. to Dismiss 15.

[15] Pl's Opp'n 14.

[16] Walton's *response* does allege that she experienced "significant damage to Walton's reputation within [*sic*] EPA, including with coworkers and ongoing tensions within her supervisory line." Pl.'s Opp'n 4. But she does not cite her Amended Complaint for such allegations. *Id.* Instead, she cites to two pages of her appendix—pages 20 and 126. Neither page contains any such allegations. Pl.'s App. 20, 126.

### 2.   Walton cannot bring a claim for the <u>administration of the PIP</u> because she failed to exhaust that claim.

Having conceded that she has no viable retaliation claim regarding the only two claims pending in this court (the FY2021 rating and the November 10, 2021 placement on a PIP), Walton now raises an entirely new retaliation claim—one that she did not assert in her Amended Complaint or before the D.C. court. She now asserts a claim not for her *placement* on a PIP, but for the *administration* of the PIP—i.e., the 45 days that she spent on the PIP.[17] But this claim fails out of the gate because Walton never exhausted her administrative remedies on such a claim, as the D.C. court already ruled.

As the D.C. court explained, as a precondition to seeking judicial relief, Title VII requires a federal employee claiming discrimination to exhaust administrative remedies:

> *The exhaustion requirement limits the scope of an employee's federal suit* "to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations."[18]

The D.C. court reviewed the records of Walton's administrative proceedings and determined that Walton had exhausted only two claims: "[T]he Court finds that Walton has only administratively exhausted her discrimination and retaliation claims as based on her Fical [*sic*] Year 2021 'unacceptable' rating and her *placement* on the Performance Improvement Plan."[19] Those are the only two claims that are potentially actionable at this point.

Furthermore, in Walton's response, she correctly states that during the administrative process, the employment action she challenged was "*placing* [her] on a Performance Improvement Plan."[20] She also cites to the EEO Counselor's Report, in

---

[17] Pl.'s Opp'n 15-17.

[18] Mem. Op. 5-6 (emphasis added).

[19] Mem. Op. 8 (emphasis added); *see generally id.* 3-4, 5-8.

[20] Pl.'s Opp'n at 4.

which the EEO Counselor described Walton's claim as challenging her *placement* on a PIP:[21]

> **D. CLAIM (BASES AND ISSUES)**
>
> Counselee indicates she has been subjected to a history of discrimination on the bases of race (African American) and sex (female) with the most recent incident being placed on a performance improvement plan on 11/10/21 after receiving a low rating on her annual performance appraisal (10/13/21), despite positive feedback on tangible work products and a track record of high performance ratings.

Similarly, Walton's formal administrative complaint complained only about her *placement* on the PIP: "On November 10, 2021, I learned that I would be *placed* on a Performance Improvement Plan (PIP).[22]

    The final proof of exactly what Walton claimed during the administrative phase is memorialized in a standard, formal notice—sometimes called a "scope letter"—that the EEO office sent to Walton via her attorney.[23] That scope letter lists the exact claims Walton made, and it set forth the scope of the EEO office's investigation.[24] The scope letter lists only the following claim regarding Walton's PIP: [25]

> 1. On November 10, 2021, Complainant learned that she would be placed on a Performance Improvement Plan (PIP);

---

[21] Pl.'s App. 4 (cited in Pl.'s Opp'n 4) (emphasis added).

[22] Pl.'s App. 21 (emphasis added).

[23] Notice of Filing, ECF No. 15 (PageID 417-420) (letter from EPA Office of Civil Rights and Civil Liberties dated March 23, 2022).

[24] *Id.*

[25] *Id.* (PageID 417).

Walton never objected to the manner in which the EEO Office identified her claim, which is further evidence that she did not intend for her claim to include the *administration* of the PIP.[26] A plaintiff's failure to object to the framing of the issue is properly considered when determining whether a plaintiff has exhausted his administrative remedies with respect to those claims not approved by the agency's EEO Office. *See Dollis v. Rubin*, 77 F.3d 777, 780 (5th Cir. 1995) ("Dollis [the plaintiff] never objected to the issues as stated by the RCC [the agency's Regional Complaint Center]. Consequently, we must assume that the issues were correctly framed.").

Here, the undisputed record demonstrates that Walton intentionally limited her PIP claim to her November 10, 2021 *placement* on a PIP—not the nature of the assignments or comparative workload she experienced under it. Walton's placement on a PIP is the only PIP claim transferred by the D.C. court and the only PIP claim pending before this Court.[27] Her new PIP argument cannot survive dismissal. In sum, Walton cannot now avoid dismissal of her complaint by manufacturing a new claim that was never administratively exhausted and which the D.C. court did not identify as a surviving claim.

## IV.   Conclusion

The Amended Complaint is ripe for dismissal for failure to state a claim under Rule 12(b)(6).

---

[26] Walton later asked for two additional claims to be added — a request the EEO Office granted. But she did not ask for the first claim to be changed. Pl.'s App. 99-99 (scope letter from EPA Office of Civil Rights and Civil Liberties dated March 23, 2022) .

[27] Mem. Op. 8.

      Respectfully submitted,

      NANCY E. LARSON
      ACTING UNITED STATES ATTORNEY

      */s/ Andrea Hyatt*
      Andrea Hyatt
      Assistant United States Attorney
      Texas Bar No. 24007419
      Burnett Plaza, Suite 1700
      801 Cherry Street, Unit #4
      Fort Worth, Texas 76102-6882
      Tel: 817.252.5230
      Fax: 817.252.5458
      Andrea.Hyatt@usdoj.gov

      *Attorneys for Defendant*

## Certificate of Service

On August 20, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

      */s/ Andrea Hyatt*
      Assistant United States Attorney