IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

ALISA WALTON,

     Plaintiff,

v.

LEE ZELDIN, Administrator, U.S.
Environmental Protection Agency,

     Defendant.

Civil Action No. 3:25-cv-00535-S


## **DEFENDANT'S SECOND RENEWED MOTION TO DISMISS**


NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Tel: 817.252.5230
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

**Table of Contents**

I.    Introduction .................................................................................................. 1

II.   Procedural Context ........................................................................................ 2

    A.    Proceedings before the U.S. District Court for the District of
           Columbia ........................................................................................... 2

    B.    Proceedings before this Court ...................................................... 3

III.  Background.................................................................................................... 4

IV.   Legal Standard.............................................................................................. 6

V.    Argument and Authorities ........................................................................... 7

    A.    The Second Amended Complaint fails to state a cognizable claim of
           retaliation. ........................................................................................ 7

          1.    Only two employment actions remain in this suit, and Walton
                concedes that neither of them can support a retaliation claim. .......... 8

          2.    Walton's attempt to assert a new retaliation claim—based on
                a new employment action—fails....................................................... 9

    B.    The Second Amended Complaint fails to state a claim for
           discrimination because the alleged discriminatory employment
           actions do not clear the *de minimis* threshold for an actionable
           employment action. ....................................................................... 12

          1.    The Second Amended Complaint does not plausibly allege
                that Walton's 2021 performance rating was more than a *de
                minimis* injury................................................................................ 14

          2.    The Second Amended Complaint does not plausibly allege
                that Walton's placement on a performance improvement plan
                was more than a *de minimis* injury................................................ 19

VI.   Conclusion.................................................................................................. 22

# Table of Authorities

## Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................... 6, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 6

*Bravo v. Kendall*,
  2025 WL 965927 (W.D. Tex. Mar. 31, 2025) ....................... 14, 15

*Brazoria Cnty. v. E.E.O.C.*,
  391 F.3d 685 (5th Cir. 2004) ......................................................... 8

*Dixon v. Garland*,
  2024 WL 150509 (N.D. Tex. Jan. 12, 2024) ......................... 14, 15

*Dollis v. Rubin*,
  77 F.3d 777 (5th Cir. 1995) ......................................................... 11

*Fleming v. Methodist Healthcare Sys.*,
  2024 WL 1055120 (W.D. Tex. Mar. 11, 2024) ................. 13, 16, 20

*Green v. Kijakazi*,
  2024 WL 969703 (W.D. La. Mar. 6, 2024) ........................... 14, 15

*Hamilton v. Dallas Cnty.*,
  79 F.4th 494 (5th Cir. 2023) ................................................. 12, 13

*Harrison v. Brookhaven School District*,
  82 F.4th 427 (5th Cir. 2023) ....................................................... 13

*Johnson v. McDonald*,
  623 F. App'x 701 (5th Cir. 2015) .................................... 14, 15, 18

*Lemonia v. Westlake Mgmt. Servs.*,
  2023 WL 6878915 (5th Cir. Oct. 18, 2023) ...................... 19, 20, 21

*Muldrow v. City of St. Louis*,
  601 U.S. 346 (2024) .................................................................... 12

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) .................................................................... 10

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998) ...................................................................... 13

*Oyekwe v. Rsch. Now Grp., Inc.*,
  542 F. Supp. 3d 496 (N.D. Tex. 2021) ...................................... 6, 7

*Price v. Wheeler*,
   834 F. App'x 849 (5th Cir. 2020) ................................................................. 14

*Saketkoo v. Adm'rs of the Tulane Educ. Fund*,
   31 F.4th 990 (5th Cir. 2022) ........................................................................ 7

*Scott v. Performance Contractors Inc.*,
   1996 WL 460145 (5th Cir. Aug. 2, 1996) .................................................... 7

*Thomas v. Exxon*,
   943 F. Supp. 751 (S.D. Tex. 1996) ............................................................... 8

*Threat v. City of Cleveland*,
   6 F.4th 672 (6th Cir. 2021) .......................................................................... 13

*Welsh v. Fort Bend Indep. Sch. Dist.*,
   941 F.3d 818 (5th Cir. 2019) ............................................................... 14, 19

*Wilkiewicz v. City of Cibolo*,
   2025 U.S. Dist. LEXIS 116428 (W.D. Tex. Jun. 18, 2025) ........................ 19

**Statutes**

42 U.S.C. § 2000e-3(a) ........................................................................................ 7

42 U.S.C. § 2000e-16 .............................................................................. 1, 7, 22

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 6

Fed. R. Civ. P. 12(b)(6) ................................................................................. 7, 16

## I.    Introduction

This an employment-discrimination case that was transferred to this district from the United States District Court for the District of Columbia. The plaintiff, Alisa Walton, works as a Special Agent for the defendant, the Environmental Protection Agency. At this point in the proceedings, because of a prior ruling by the D.C. court, Walton's case concerns only two workplace events:

(1) her performance rating for fiscal year 2021, and

(2) her placement on a performance improvement plan (PIP) in 2021.

Walton's Second Amended Complaint asserts claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. However, her complaint fails to state a claim for either retaliation or discrimination for the following reasons:

- *The Second Amended Complaint fails to state a <u>retaliation</u> claim*. Walton concedes that neither of the two workplace events at issue in the case—her 2021 performance rating and her 2021 placement on a PIP—can serve as a basis for a retaliation claim because both those workplace events occurred *before* she initiated the EEO complaint process. Her attempt to assert a new retaliation claim fails because it is based on workplace events other than the two the D.C. court identified.

- *The Second Amended Complaint also fails to state a <u>discrimination</u> claim*. Neither Walton's 2021 performance rating nor her placement on a PIP support a discrimination claim because neither of those employment actions impacted the terms, conditions, or privileges of Walton's employment as required to plead an employment action that caused a more than *de minimis* harm.

Accordingly, the Second Amended Complaint should be dismissed under Rule 12(b)(6).

## II.      Procedural Context

**A.      Proceedings before the U.S. District Court for the District of Columbia**

This employment suit was previously pending in the United States District Court for the District of Columbia.[1] In that forum, the EPA moved to dismiss Walton's complaint in its entirety, and, alternatively, sought to transfer venue to the Northern District of Texas.[2] As the basis for its motion, the EPA explained that Walton had failed to exhaust her administrative remedies as to all claims, except two: (1) her claim challenging her FY2021 performance rating, and (2) her claim challenging her placement on a performance improvement plan in 2021.[3] With respect to those two claims, the Agency sought dismissal on the ground that Walton's complaint failed to state a claim of retaliation or discrimination.[4]

The District Court for the District of Columbia agreed with the EPA and granted the EPA's motion to dismiss as to all but two of Walton's claims due to her failure to exhaust her administrative remedies.[5] Among the claims dismissed by the District of Columbia district court was Walton's claim that she was denied a performance bonus in 2021, that the EPA failed to assign her to new cases, and that the EPA failed to issue her

---

[1] Compl. and Demand for Jury Trial, ECF No. 1.

[2] Def.'s Mot. to Dismiss Compl., or, in the Alternative, for Summ. J. and to Transfer Venue, ECF No. 9.

[3] *Id.* at 10.

[4] *Id.* at 13-17.

[5] Order, ECF No. 27; Mem. Op. 5-8, ECF No. 28.

a full-year appraisal for Fiscal Year 2022.[6] For the two claims that Walton did exhaust —

her FY2021 performance rating and her 2021 placement on a performance improvement

plan — the court made "no determination as to whether Walton has stated a claim under

Rule 12(b)(6)."[7] Instead, the court transferred those two surviving claims to the Northern

District of Texas.[8]

## B.    Proceedings before this Court

Because the District Court for the District of Columbia did not reach the issue of

whether Walton's complaint failed to state a claim on either of the two remaining

workplace actions, the EPA renewed its motion to dismiss before this Court.[9] In

response, Walton moved to amend her complaint again.[10] The Court granted Walton

leave to amend and terminated as moot the EPA's motion to dismiss.[11] Walton

subsequently filed her Second Amended Complaint.[12]

---

[6] Mem. Op. 8 (grating "the defendant's motion to dismiss her unexhausted claims relating to the 2021 denial of a performance bonus, her 2022 removal from a "highly significant" OIG investigation, the failure to assign her to new investigations, and the failure to issue her a full-year appraisal for Fiscal Year 2022").

[7] Mem. Op. 10.

[8] Mem. Op. 10.

[9] Def.'s Renewed Mot. to Dismiss, ECF No. 47.

[10] Pl.'s Opposed Mot. for Leave to Amend Compl., ECF No. 50.

[11] Order 2, ECF No. 54.

[12] Second Am. Compl. & Demand for Jury Trial ("Second Am. Compl."), ECF No. 55.

### III.    Background[13]

Walton is employed as a Special Agent in the EPA's Office of Inspector General at a field office in Dallas, Texas. (Second Am. Compl. ¶¶ 1, 6.)

On October 12, 2021, her supervisor, Garrett Westfall (the Assistant Special Agent in Charge of the Dallas Field Office), issued her a rating of "unacceptable" for the Fiscal Year 2021 performance period. (*Id*. ¶¶ 26, 41, 43.) When Walton questioned him about the basis for the rating, he cited her late submission of investigative reports, inaccuracies in her reports, errors in investigative memoranda, failing to document chain of custody, and lack of regular communication with her supervisor. (*Id*. ¶¶ 47-52.)

On November 10, 2021, Westfall issued Walton a Performance Improvement Plan ("PIP"). (*Id*. ¶ 55.) The aim of a PIP is "improving the employee's performance." (*Id*.) A PIP is designed to provide the employee with "specific examples of deficient performance, specific assignments, and clear directions how to succeed," along with "regular in-person mentoring." (*Id*.)

*After* receiving the Performance Improvement Plan on November 10, 2021, Walton contacted an EEO counselor that same day regarding her placement on the performance improvement plan, the October 2021 "unacceptable" rating, and alleged "ongoing harassment." (*Id*. ¶ 63.)

---

[13] Unless otherwise noted, the factual background is drawn from the allegations in the Second Amended Complaint and Demand for Jury Trial, ECF No. 55, which are assumed to be true solely for purposes of this motion to dismiss.

But Walton disliked being on a PIP for the 45 days it lasted. (*Id.* ¶ 68.) She did not like having her performance "closely monitored," and she missed the level of autonomy she had previously enjoyed. (*Id.* ¶ 61.) She would have preferred to be given new assignment working alongside other investigators instead of completing the assignments in the PIP, which she alleges caused her to work additional hours. (*Id.* ¶¶ 61, 62, 68.) Finally, she harbored a suspicion that the PIP and performance rating—as opposed to her job performance—were the reason for other events that happened at work. She did not receive an annual performance bonus for 2021. (*Id.* ¶ 53.) She was not selected for a transfer she sought to a different position as a Special Agent, and she believed the performance rating made her ineligible for internal promotions or career advancements for two years. (*Id.* ¶¶ 54, 94.) Finally, "Walton began hearing rumors from both other agents both within and outside EPA, as well as various other federal employees, that Walton being unreliable and unable to perform as a special agent." (*Id.* ¶ 62.) Overall, felt "the pressures of the job" more while she was on the PIP and felt like it created tension between herself and her supervisors and even her co-workers (although she does not allege that her co-workers knew she was on a PIP). (*Id.* ¶ 62.)

On March 1, 2022, after determining that Walton had failed to improve her performance under the Performance Improvement Plan, her supervisor (Westfall) issued her a Notice of Proposed Removal. (*Id.* ¶ 66.) The deciding official on the proposed removal was a Deputy Assistant Inspector General (Thomas Roelke). (*Id.* ¶ 67.) On April 22, 2022, the deciding official issued a decision "not sustaining" the proposed removal.

(*Id.* ¶ 74.) So Walton remained (and remains employed) as a Special Agent with EPA's Office of Inspector General. (*Id.* ¶ 1.)

Although Walton clearly disliked being on a PIP, her job title, grade, and salary were never impacted by either by the PIP, or by her 2012 performance rating. (*Id*. ¶¶ 1, 6.) Those remained unchanged. (*Id.*).

## IV.      Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 & n.3; *accord Oyekwe v. Rsch. Now Grp., Inc*., 542 F. Supp. 3d 496, 503 (N.D. Tex. 2021) (Scholer, J.). Thus, while a court must accept all the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Oyekwe*, 542 F. Supp. 3d at 503.

The facts pleaded must allow a court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678; *Oyekwe*, 542 F. Supp. at 502. To allege a plausible right

to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Iqbal*, 556 U.S. at 678; *Oyekwe*, 542 F. Supp. at 502. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 678; *Oyekwe*, 542 F. Supp. at 502. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

A motion to dismiss under Rule 12(b)(6) is based on the face of the complaint. *Scott v. Performance Contractors Inc.*, 95 F.3d 55, 1996 WL 460145, at *1 (5th Cir. Aug. 2, 1996). For purposes of such a motion, the plaintiff is "bound by the assertions made on the face of her complaint." *Id.*

## V.    Argument and Authorities

### A.    The Second Amended Complaint fails to state a cognizable claim of <u>retaliation</u>.

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "*because* he has opposed a practice that Title VII forbids or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *See Saketkoo v. Adm'rs of the Tulane Educ. Fund*, 31 F.4th 990, 999 (5th Cir. 2022) (cleaned up) (emphasis added).[14] Common sense dictates that "when an

---

[14] Title VII's public-sector provision, 42 U.S.C. § 2000e-16, contains no express anti-retaliation provision. With respect to private employees, section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an

adverse employment action occurs before the plaintiff engages in activity protected by Title VII," that adverse employment action could not possibly have been caused by the plaintiff's protected activity, so there can be no retaliation claim. *See, e.g., Thomas v. Exxon*, 943 F. Supp. 751, 763 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1067 (5th Cir. 1997).

### 1.    Only two employment actions remain in this suit, and Walton concedes that neither of them can support a retaliation claim.

The D.C. Court ruled that Walton had "only administratively exhausted her discrimination and retaliation claims" on two employment actions:

  1.  "her Fical [*sic*] year 2021 'unacceptable' rating," and

  2.  "her *placement* on the Performance Improvement Plan."[15]

The D.C. Court dismissed all other employment actions Walton had attempted to challenge because she had failed to exhaust them.[16]

Walton has conceded that she cannot state a retaliation claim based on either of those two, remaining employment actions—(1) her 2021 performance evaluation; or (2) her *placement* on a PIP in 2021—"because both predate her EEO activity."[17] Because those are the only two employment actions at issue at this stage of the proceeding, Walton necessarily cannot state a claim for retaliation. Her retaliation claim should,

---

unlawful employment practice by this subchapter, or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Although not expressly provided in the statute, the Fifth Circuit has held that "§ 2000e-16 bars retaliation" against federal employees as well. *Brazoria Cnty. v. E.E.O.C.*, 391 F.3d 685, 690 (5th Cir. 2004).

[15] Mem. Op. 7.

[16] Mem. Op. 7.

[17] Pl.'s Opp. to Def.'s Renewed Mot. to Dismiss 9 ("Pl.'s Opp'n"), ECF No. 48.

therefore, be dismissed for failure to state a claim. *See, e.g., Thomas*, 943 F. Supp. at 763

(S.D. Tex. 1996) (granting summary judgment on a retaliation claim because the adverse

employment action occurred before the plaintiff complained of discrimination).

### 2. Walton's attempt to assert a new retaliation claim—based on a new employment action—fails.

Because she cannot make out a retaliation claim based on the live claims in this

proceeding, Walton now attempts to assert a new retaliation claim based on an

employment action that is not one of the two the D.C. Court held that she had exhausted.

Namely, now seeks assert a new retaliation claim based, not on her *placement* on a PIP,

but on events that allegedly occurred *afterward*—during the 45-days she was on the

PIP.[18] But that new claim fails out of the gate because Walton never exhausted her

administrative remedies on such a claim, as the D.C. court already ruled.

As the D.C. court explained, as a precondition to seeking judicial relief, Title VII

requires a federal employee claiming discrimination to exhaust administrative remedies:

> *The exhaustion requirement limits the scope of an employee's federal suit* "to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations."[19]

The Supreme Court has held that, when it comes to discrete employment actions—like

failure to promote, denial of transfer, or refusal to hire, "[e]ach incident of discrimination

and each retaliatory adverse employment decision constitutes as separate actionable

'unlawful employment practice'" for which the plaintiff must exhaust her administrative

---

[18] Pl.'s Opp'n 15-17.

[19] Mem. Op. 5-6 (emphasis added).

**Defendant's Second Renewed Motion to Dismiss – Page 9**

remedies. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002). Those discrete employment actions that the plaintiff did not exhaust are "no longer actionable," even if they are "plausibly or sufficiently related" to another employment action that the plaintiff did administratively exhaust. *Id.*

Here, the D.C. Court found that "Walton has only administratively exhausted her discrimination and retaliation claims as based on her Fical [*sic*] Year 2021 'unacceptable' rating and her *placement* on the Performance Improvement Plan."[20] The court made that finding after carefully reviewing the records of Walton's administrative proceedings, which include the following three, key documents.

First, the EEO Counselor's Report states that Walton was challenging only her *placement* on the PIP:[21]

> **D.    CLAIM (BASES AND ISSUES)**
>
> Counselee indicates she has been subjected to a history of discrimination on the bases of race (African American) and sex (female) with the most recent incident being placed on a performance improvement plan on 11/10/21 after receiving a low rating on her annual performance appraisal (10/13/21), despite positive feedback on tangible work products and a track record of high performance ratings.

Second, in Walton's formal administrative complaint, she complained only about her *placement* on the PIP: "On November 10, 2021, I learned that I would be *placed* on a Performance Improvement Plan (PIP).[22]

---

[20] Mem. Op. 8 (emphasis added); *see generally id.* 3-4, 5-8.

[21] Pl.'s App. 4 (cited in Pl.'s Opp'n 4) (emphasis added).

[22] Pl.'s App. 21 (emphasis added).

The final proof of exactly what Walton claimed during the administrative phase is memorialized in a standard, formal notice—sometimes called a "scope letter"—that the EEO office sent to Walton via her attorney.[23] Here, the scope letter lists the exact claims Walton made, which in turn dictated the scope of the EEO office's investigation.[24] The scope letter lists only the following claim regarding her PIP:[25]

> 1.  On November 10, 2021, Complainant learned that she would be placed on a Performance Improvement Plan (PIP);

A plaintiff's failure to object to the framing of the issues in a scope letter is properly considered when determining whether a plaintiff has exhausted his administrative remedies with respect to those claims not approved by the agency's EEO Office. *See Dollis v. Rubin*, 77 F.3d 777, 780 (5th Cir. 1995) ("Dollis [the plaintiff] never objected to the issues as stated by the RCC [the agency's Regional Complaint Center]. Consequently, we must assume that the issues were correctly framed."). As the D.C. Court noted, Walton never objected to the manner in which the scope letter described her claim, which is further evidence that she did not intend for her claim to include the *administration* of the PIP.[26]

---

[23] Notice of Filing, ECF No. 15 (PageID 417-420) (letter from EPA Office of Civil Rights and Civil Liberties dated March 23, 2022).

[24] *Id.*

[25] *Id.* (PageID 417).

[26] Mem. Op. 6-7. As the D.C. Court also noted, Walton later asked for two additional claims to be added — a request the EEO Office granted. But she did not ask for the first claim—the one about her PIP—to be changed. Mem. Op. 6-7; Pl.'s App. 99-99 (scope letter from EPA Office of Civil Rights and Civil Liberties dated March 23, 2022).

Based on the undisputed record of Walton's EEO proceeding, the D.C. Court properly held that Walton intentionally limited her EEO claim to "her *placement* on the Performance Improvement Plan"[27]—not the nature of the assignments or comparative workload she had during the 45 days she was on the PIP. Walton cannot now avoid dismissal of her retaliation claim by manufacturing a new claim that was never administratively exhausted and which was not one of surviving employment actions transferred to this Court by the D.C. court.

**B.    The Second Amended Complaint fails to state a claim for <u>discrimination</u> because the alleged discriminatory employment actions do not clear the *de minimis* threshold for an actionable employment action.**

Although the caselaw regarding what constitutes an actionable employment action has changed in the last several years, even under the current caselaw, a plaintiff "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024).

The caselaw regarding actionable employment actions changed in this circuit in 2023, when the Fifth rejected its earlier "ultimate employment decision" test for an "adverse employment action" in favor of a less strict standard. *See Hamilton v. Dallas Cnty.,* 79 F.4th 494, 502 (5th Cir. 2023) (en banc). Although *Hamilton* lowered the "ultimate employment decision" threshold for adverse employment actions, it declined to provide a minimum standard for what constitutes an actionable "adverse employment action." *Hamilton,* 79 F.4th at 505 ("We thus leave for another day the precise level of

---

[27] Mem. Op. 8.

minimum workplace harm a plaintiff must allege on top of showing discrimination in one's 'terms, conditions, or privileges of employment.'").

The Fifth Circuit provided further guidance the following month, when it issued its opinion in *Harrison v. Brookhaven School District*, 82 F.4th 427 (5th Cir. 2023). There, the Fifth Circuit explained that to state a discrimination claim, a plaintiff "must allege not only an adverse action, but something more than a *de minimis* harm borne of that action." *Harrison*, 82 F.4th at 431 (5th Cir. 2023) (citation omitted). That requirement constitutes the "materiality" threshold, which the Fifth Circuit described as follows:

> To "discriminate" reasonably sweeps in some form of an adversity and a materiality threshold. It prevents the undefined word "discrimination" from commanding judges to supervise the minutiae of personnel management. It ensures that a discrimination claim involves a meaningful difference in the terms of employment and one that injures the affected employee.

*Id*. at 431 (quoting *Threat v. City of Cleveland*, 6 F.4th 672, 678 (6th Cir. 2021)). As one district court explained, *Hamilton* lowered the bar, but *Harrison* ensured the lower bar did not "transform Title VII into a general civility code for the American workplace." *Fleming v. Methodist Healthcare Sys.,* SA-21-CV-01234-XR, 2024 WL 1055120, at *12 (W.D. Tex. Mar. 11, 2024) (quoting *Hamilton*, 79 F.4th at 504-05 (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80 (1998))). Even under the lower bar, "[t]he challenged action must not only 'involve[] a meaningful difference in the terms of employment' but also 'injure[] the affected employee.'" *Fleming*, 2024 WL 1055120, at *12.

So under the current state of the law, the question is this: does Walton's Second Amended Complaint allege facts that, if true, would show that she suffered a non-de minimis injury when she (1) received an "unacceptable" performance rating, or (2) was placed on a performance improvement plan? As explained below and in accordance with caselaw in this Circuit, the answer is "no."

### 1.    The Second Amended Complaint does not plausibly allege that Walton's 2021 performance rating was more than a *de minimis* injury.

The Fifth Circuit has long held that performance ratings do not constitute adverse employment actions under Title VII. *See, e.g.*, *Price v. Wheeler*, 834 F. App'x 849, 856 (5th Cir. 2020) ("Receiving a low performance evaluation does not alone constitute an adverse employment action").[28] Even after *Hamilton* and *Harrison*, district courts have continued to hold that a low performance evaluation is not an adverse employment action because a performance evaluation does not meet the materiality requirement. *See Bravo v. Kendall*, No. 5:22-CV-1186-JKP, 2025 WL 965927, at *32 (W.D. Tex. Mar. 31, 2025); *Dixon v. Garland*, No. 4:23-cv-00019-P, 2024 WL 150509, at *5 (N.D. Tex. Jan. 12, 2024); *aff'd*, No. 24-10215, 2024 WL 4948843 (5th Cir. Dec. 3, 2024); *Green v. Kijakazi*, No. CV 21-3938, 2024 WL 969703, at *8 (W.D. La. Mar. 6, 2024).

For example, in one of those recently issued cases, an employee of the federal Bureau of Prisons argued that receiving an "excellent" rating on her performance review

---

[28] *See also Welsh v. Fort Bend Indep. Sch. Dist.,* 941 F.3d 818, 824 (5th Cir. 2019) (citing cases for the proposing that a poor performance review is not an adverse employment action); *Johnson*, 623 F. App'x at 704 ("[T]his court has held a low performance evaluation alone is not an adverse employment action, . . .").

(as opposed to an "outstanding" rating) constituted an adverse employment action because it affected her ability to receive raises. *Dixon*, 2024 WL 150509, at *5. The district court flatly rejected that argument, calling it "uniquely absurd" for two reasons. *Id.* First, "'outstanding' reviews do not guarantee a raise." *Id.* (citing *Johnson v. McDonald*, 623 F. App'x 701, 704 (5th Cir. 2015) for the proposition that "performance pay is not automatic upon achieving a specific review rating"). Second, the court refused "to act as the BOP's super-personnel department" by scrutinizing "the specifics of standard performance reviews." *Dixon*, 2024 WL 150509, at *5. Relying on *Dixon*, another federal district court also refused "to scrutinize the specifics of standard performance reviews" because they "do not rise above the *de minimus* standard articulated in *Harrison*." *Green*, 2024 WL 969703, at *8.

Similarly, in a case issued earlier this year, the district court rejected the argument that a poor performance review, by itself, somehow makes a meaningful difference in the terms of employment or injures an employee. *Bravo*, 2025 WL 965927, at *32. "Plaintiff has not shown that her performance review brought about any disadvantageous change to any employment term or condition," the court reasoned. "Accordingly, under *Hamilton* and *Muldrow*, the review does not qualify as an adverse employment action." *Id.* (emphasis added). In sum, poor performance evaluations do not rise above the *de minimis* standard necessary to state a claim under the applicable standard.

Just like the plaintiffs in the three cases above, Walton cannot state a claim based on her performance rating because, based on the allegations in her Second Amended Complaint, her performance rating does not rise above the *de minimis* standard necessary

to state a claim. The Court should, therefore, dismiss Walton's performance-evaluation claim for failure to state a claim, under Rule 12(b)(6).

Walton cannot avoid this result by pointing to passages in her complaint where she *speculates* that a higher performance rating could or would have resulted in a performance bonus or a different job. (*E.g.*, Second Am. Compl. ¶¶ 53-54, 105.) The Fifth Circuit has specifically held that a plaintiff cannot bring a claim based on a low-performance rating by speculating about how the rating might have impacted the plaintiff's pay or promotions:

> Even assuming that a low evaluation coupled with other tangible effects is an adverse employment action, Johnson's complaint is unspecific on what—if any—effect the "low" ratings had. It baldly asserts that the "low" rating resulted in loss of "performance awards" and had a "negative impact on [his] ability to be promoted." The only fact supporting these allegations is that in 2010, when Johnson was rated "outstanding," he received a bonus. But that says nothing about Johnson's entitlement to an award in 2011 or 2012. *There is no indication that performance pay is automatic upon achieving a specified rating.* Nor does Johnson allege that individuals who were rated "outstanding" in those years received bonuses. Consequently, Johnson's allegation that he was denied performance pay is speculative at best.

*Johnson*, 623 F. App'x at 704-05 (emphasis added); *see also Dixon*, 2024 WL 150509, at *5 (ruling that plaintiff's bald assertions that her performance review "materially impacted her ability to receive raises" was insufficient).

Here, Walton tries the same tactic that failed in *Johnson* and *Dixon*: she makes three bald, speculative allegations about how her performance evaluation may have led to some sort of harm. Specifically, she speculates that, *if* she had received a higher rating, (1) "her supervisor or supervisors would have automatically signed off" on a performance

**Defendant's Second Renewed Motion to Dismiss – Page 16**

bonus; (2) she would have been eligible for other "internal promotion or career ladder advancements"; and (3) her application for another position as a Special Agent would not have been rejected. (Second Am. Compl. ¶¶ 53-54.) She identifies no facts to support her speculation and none of those allegations are sufficient to raise her performance rating above the *de minimis* threshold.

The first allegation—about an alleged missed performance bonus—is insufficient for two reasons. First, the District Court for the District of Columbia already dismissed Walton's claim related to the allege denial of her performance bonus.[29] So Walton cannot rely on the missed performance bonus to show that her performance rating caused her more than *de minimis* harm. Second, the missed-performance-bonus allegation is purely speculative. Walton surmises that if she had received a different performance rating, her supervisors would have exercised their discretion to "sign off" on a performance bonus. (Second Am. Compl. ¶ 53, 105.) However, the Second Amended Complaint cites no facts to indicate or identify any EPA policy or procedure that provides that bonuses are automatically tied to performance ratings. Nor does the Second Amended Complaint allege that all other employees who received the rating Walton sought in FY2021 received performance bonuses. As in *Johnson*, "[t]here is no indication that performance pay is automatic upon achieving a specified rating. Nor does [Plaintiff] allege that individuals who were rated 'outstanding' in those years received bonuses. Consequently,

---

[29] *See* Order ("The motion is granted for failure to exhaust claims based on the plaintiff's denial of a performance bonus, . . ."); Mem. Op. 8 (granting "the defendant's motion to dismiss her unexhausted claims relating to the 2021 denial of a performance bonus . . .").

[Plaintiff's] allegation that [she] was denied performance pay is speculative at best." *Johnson*, 623 F. App'x at 704-05. Walton's speculative allegations about her performance bonus therefore cannot save her claim from dismissal.

The second allegation—about how her 2021 performance rating made her ineligible for "internal promotion or career ladder advancements" for two years—is also insufficient for two reasons. (Second Am. Compl. ¶ 54.) First, the complaint does not identify any such promotions/advancements that were even available to Walton or that she applied to—let alone promotions/advancements that she was denied because of her 2021 performance rating. (*Id.* ¶ 54.) Second, the allegation is conclusory—it lacks any factual underpinnings, such as an indication that Walton was otherwise eligible for an internal promotion (e.g., that she was found to possess the ability to perform at a higher grade level in any career ladder). This is a purely speculative claim with no actual allegation of specific harm.

Finally, the third allegation—about Walton's rejected application for another Special Agent position—is also unavailing. (*Id.* ¶ 54.) The Second Amended Complaint itself explains that the reason Walton's application was rejected is not because of her 2021 performance rating but because she chose to submit an incomplete application. Specifically, she chose to submit only a partial-year performance appraisal, even though "[a]n application for a position as a Special Agent must be accompanied by the applicant's most recent Full Year performance appraisal." (*Id.* ¶ 54.) The complaint therefore fails to tie Walton's FY2021 performance rating to the reason her application for another Special Agent job was denied. And, even if it had made that connection, the

D.C. Court already held that Walton could not assert claims based on her allegations about her partial-year appraisal for Fiscal Year 2022.[30]

In the end, just like the plaintiffs in *Johnson* and *Dixon*, Walton's allegations about how her performance rating impacted her employment are "speculative at best." *Johnson*, 623 F. App'x at 704. Her claim, like those rejected in *Johnson* and *Dixon*, should be dismissed as a matter of law.

### 2. The Second Amended Complaint does not plausibly allege that Walton's placement on a performance improvement plan was more than a *de minimis* injury.

The Second Amended Complaint also fails to state an actionable discrimination claim regarding Walton's 2021 placement on a performance improvement plan. Fifth Circuit and lower courts within the circuit have held that mere placement on a performance improvement plan alone does not constitute an adverse employment action — both before and after *Hamilton*. *See Lemonia v. Westlake Mgmt. Servs.,* No. 22-30630, 2023 WL 6878915, at *7 (5th Cir. Oct. 18, 2023) ("[T]he district court did not err to the extent the court concluded that [the plaintiff's] placement on a PIP, without more, did not constitute an adverse employment action."); *Welsh*, 941 F.3d at 824 ("An employer's decision to place an employee on a performance improvement plan is not an adverse employment action."); *Wilkiewicz v. City of Cibolo*, No. 5:24-cv-01471, 2025 U.S. Dist. LEXIS 116428, at *7-8 (W.D. Tex. Jun. 18, 2025) (finding that the plaintiff

---

[30] Mem. Op. 7 (granting "the defendant's motion to dismiss her unexhausted claims relating to . . . the failure to issue her a full-year appraisal for Fiscal Year 2022").

**Defendant's Second Renewed Motion to Dismiss – Page 19**

"insufficiently alleged an adverse employment action" because his placement on PIP did not constitute an adverse action post-*Hamilton*, given that he failed "to demonstrate how the plan affected his title, hours, salary, benefits, or reputation"); *Fleming v. Methodist Healthcare Sys.*, No. SA-21-CV-01234, 2024 WL 1055120, at *13 (W.D. Tex. Mar. 11, 2024) ("Even after *Hamilton*, the Fifth Circuit has confirmed that written reprimands, placement on a performance improvement plan ('PIP'), and other corrective or remedial measures do not constitute adverse employment actions unless they 'affect job title, grade, hours, salary, or benefits or cause a diminution in prestige or change in standing among coworkers.'"). To be actionable, the PIP must negatively affect the employee's job title, hours, grade, salary, or benefits. *See Lemonia*, 2023 WL 6878915 at *7 n. 2 (holding that summary judgment for the employer was on "solid footing" where the employee failed "to show that his PIP affected his employment").

Here, as in *Lemonia* and *Wilkiewicz*, the Second Amended Complaint fails to allege that Walton's placement on a performance improvement plan in 2021 negatively affected her job title, grade, salary, or benefits. Tellingly, the Second Amended Complaint does not allege that placement on the plan changed any of those aspects of Walton's employment as a Special Agent. To the contrary, the Second Amended Complaint acknowledges that Walton's job title, grade, and salary *were never impacted* by the performance improvement plan. (Second Am. Compl. ¶¶ 1, 6.) In addition, the Second Amended Complaint acknowledges that aim of a PIP is to improve an employee's performance:

> A PIP is designed to give an employee notice that his or her performance is not at the Minimally Successful level in one or more of the Critical Elements in his or her Performance Plan provide them with specific examples of deficient performance, specific assignments, and clear directions how to succeed and schedule regular in-person mentoring. The aim of a PIP is improving an employee's performance, . . . . .

(Second Am. Compl. ¶ 55.) Because the Second Amended Complaint does not allege any facts showing that being placed on the performance improvement plan negatively affected Walton's job title, grade, salary, or benefits, her placement on the performance improvement plan insufficiently alleges an adverse employment action.

Walton's efforts to allege actual harm from her placement on a PIP fail. She claims that a copy of the PIP "would be placed in Walton's electronic Official Personnel File." (Second Am. Compl. ¶ 58.) But she does not allege that anyone did or could have accessed her personnel file or that having a copy of her PIP in a personnel file could possibly have affected her "job title, grade, hours, salary, or benefits or caused 'a diminution in prestige or change in standing among [ ] co-workers" as required to satisfy the legal standard for a non-de minimis injury. *Lemonia*, 2023 WL 6878915, at *6.

Her other allegations regarding the PIP all concern events that allegedly occurred *after* she was placed on the PIP—during the 45 days she was on the PIP. (Second Am. Compl. ¶ 61-62.) None of these allegations relate to the only PIP claim before this Court – *her November 2021 placement on the PIP*. For example, she alleges that while she was on the PIP, she had less autonomy, was more "closely monitored," felt tension between herself and her supervisors and co-workers, was required to focus on the PIP assignments rather than being assigned to new investigations, felt compelled to work longer hours,

and heard rumors that she was unreliable. (*Id.* ¶¶ 61-62.) She also alleges that it was improper for Westfall to administer the PIP because Westfall was not her first-line supervisor. (*Id.* ¶¶ 57-58.) But those allegations are irrelevant because, as explained above, only Walton's *placement* on the PIP survived the D.C. Court's ruling—any claims about events that happened while Walton was on the PIP were not raised during the EEO counseling process, were not administratively exhausted, are not before this Court.[31]

In sum, Walton does not allege any non-de minimis harm from her *placement* on the PIP. Therefore, her placement on the PIP cannot support a discrimination claim.

\* \* \*

In sum, the Second Amended Complaint does not state a claim for discrimination. It does not plausibly allege facts showing that either the FY2021 performance rating or 2021 placement on a performance improvement plan caused Walton anything more than *de minimis* injury. Walton's conclusory and speculative allegations cannot change this result.

## VI.    Conclusion

Despite being given multiple opportunities to amend, Walton latest complaint still fails to state a claim for either retaliation or discrimination under Title VII. Her claim should be dismissed for failure to state a claim under Rule 12(b)(6).

---

[31] *See supra* at 9-12.

**Defendant's Second Renewed Motion to Dismiss – Page 22**

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Tel: 817.252.5230
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

<u>Certificate of Service</u>

On November 4, 2025, I electronically submitted the foregoing document with the

clerk of court for the U.S. District Court, Northern District of Texas, using the electronic

case filing system of the court. I hereby certify that I have served all parties electronically

or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Andrea Hyatt*
Assistant United States Attorney