**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **ALISA WALTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-CV-00535-S** |
| | ) | |
| **LEE ZELDIN,** | ) | |
| **Administrator, U.S. Environmental** | ) | |
| **Protection Agency,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S SECOND RENEWED MOTION TO DISMISS**

Robert C. Seldon, Esq., *pro hac vice*
D.C. Bar No. 245100
Seldon Bofinger &
Associates, P.C. 1319 F
Street, N.W., Suite 200
Washington, D.C. 20004
Phone: (202) 393-8200
Fax: (202) 318-2287
rcs@sba-pc.com

Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E.
Uloth 18208 Preston Rd.
Suite D-9 # 261 Dallas,
Texas 75252
Phone: (214) 989-4396
Fax: (972) 777-6951
Email: don.uloth@uloth.pro

Counsel for Plaintiff

November 25, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT....1

STATEMENT OF FACTS....5

Plaintiff's Rating of Unacceptable for Fiscal Year 2021....5
Plaintiff's Placement of a Performance Improvement Plan....6
Plaintiff Is Issued a Notice of Proposed Removal....7
Plaintiff's Reply to the Notice of Proposed Removal....7
Dismissal of the Notice of Proposed Removal....7
The Undisclosed Reasons For Dismissing The Notice of Proposed Removal....8
Roelke's Decision Not To Reassign Walton....9
Failure to Replace Plaintiff's FY 2021 or Issue One to Plaintiff for FY 2022....10

ARGUMENT....10

DEFENDANT'S SECOND RENEWED MOTION TO DISMISS MUST BE DENIED....10

I. Plaintiff Has Never Alleged That Defendant Retaliated Against Her In 2021....11

II. Plaintiff's Harm Far Exceeded the *Muldrow* "Some Harm" Standard....12

A. Defendant Failed To Acknowledge Much Less Apply *Muldrow*....12

B. Precedent Before And After *Muldrow* Holds That Properly Pled Claims Over Being Placed On A PIP Surpass Motion To Dismiss Standards....14

III. The Harm To Plaintiff's Career Far Exceeds The Standards of *Muldrow* and *Hamilton*....15

A. Plaintiff's Career Harm Flowed Directly From Her FY 2021 Rating and PIP...16

B. Defendant's Actions Altered The Terms And Conditions of Plaintiff's Employment....19

IV. Taking Account of the Effects Of Employment Action Is Consistent With *Muldrow, Hamilton*, And The Decision In The Original *Walton* Case....20

CONCLUSION....23

**TABLE OF AUTHORITIES**

**Cases**


*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................10, 11

*Bravo v. Kendall,* 2025 WL 965927*32 (W.D. Tex. Mar. 31, 2025) ....................13

*Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998) ....................4

*Burlington Northern I Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) ....................14

*Clayton v. Rumsfeld*, 106 Fed. App'x 268 (5th Cir. 2004) ....................2

*Craft Foods, Inc.,* 18 F.3d 1278 (5th Cir. 1994) ....................2

*Dixon v. Garland,* 2024 WL 150509 (N.D. Tex. Jan. 12,2024) ....................12

*EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621(D.C. 1997) ....................8

*Fleming v. Methodist Healthcare Sys.,* 2024 WL 1055120 (W.D. Tex. Mar. 11, 2024) ....................12

*Green v. Kijakazi,* 2024 WL 969703 (W.D. La. Mar. 6, 2024) ....................12

*Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981) ....................2

*Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc) ....................*passim*

*Harrison v. Brookhaven School District,* 82 F.4th 427 (5th Cir. 2023) ....................12

*Jenkins v. McKeithen*, 395 U.S. 411 (1969) ....................10

*Jenkins v. Tahmahkera,* 151 F.4th 739 (5th Cir. 2025) ....................8

*Johnson v. McDonald,* 623 F. App'x 701*703 (5th Cir. 2025) ....................13

*Land v. Dollar*, 330 U.S. 731 (1947) ....................11

*Lemonia v. Westlake Mgmt. Servs.,* 2023 WL 6878915 (5th Cir. Oct. 18, 2023) ....................12

*Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015 (5th Cir. 1966) ....................8

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) ....................*passim*

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ....................21

*Price v. Wheeler,* 834 F. App'x 849 (5th Cir. 2020) ....................12

*Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970) ....................2

*Smith v. Kendall*, 2024 WL 4442040 (5th Cir. 2024) ....................*passim*

*Smith v. McDonough*, 2023 WL 5918322 (W.D. Tex. 2023) ....................*passim*

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) ....................10

*Threat v. City of Cleveland,* 6 F.4th 672 (6th Cir. 2021) ....................12

*Walton v. Zeldin*, Civ. Action No. 23-2213 (D.D.C.) ....................1

*Welsh v. Fort Bend Indep. Sch. Dist.,* 941 F.3d 818 (5th Cir. 2019) ....................12

*Wilkiewicz v. City of Cibolo,* 2025 U.S. Dist. LEXIS 116428 (W.D. Tex. Jun. 18, 2025) ..........13

**Statutes**

42 U.S.C. § 2000e-16(c) ....................2

42 U.S.C. § 2000e-2(a)(1)....................12

**Regulations**

29 C.F.R. § 1614.105(a)(1) ....................20

29 C.F.R. § 1614.107(a)(2) ....................21

**PRELIMINARY STATEMENT**

Alisa Walton, the plaintiff in this action, is a highly regarded Special Agent/Criminal Investigator with the Office of the Inspector General ("OIG"), Office of Investigations ("OI"), of the Environmental Protection Agency ("EPA" or "defendant") assigned to the OIG Field Office in Dallas, Texas. ECF #55, ¶¶ 6, 26, *et seq.* The case was originally filed in the U.S. District Court for the District of Columbia where an Amended Complaint was with defendant's consent. *Walton v. Zeldin*, Civ. Action No. 23-2213 (D.D.C.) ("the original *Walton* case"). ECF #20-1; Minute Order of Feb. 26, 2024. The Second Amended Complaint was filed with leave from this Court and is the operative Complaint in this action as limited by the Memorandum Opinion and Order issued in the original *Walton* case before it was transferred here. ECF #27-#28; ECF #54-#55.[1]

Walton is an African American female and alleged in Count I of all three Complaints that defendant discriminated against her because of her race (African American), her sex (female), and/or her race plus her sex in taking six employment actions starting on October 10, 2021. ECF #1, ¶¶ 97-113, ECF #20-1, ¶¶ 97-113, ECF #55, ¶¶ 97-113. Count II of each Complaint alleged that defendant retaliated against plaintiff for filing an administrative EEO complaint over the fourth through the sixth employment actions she alleged in Count I were discriminatory. ECF #1, ¶¶ 114-123 ECF #20-1, ¶¶ 114-123, ECF #55, ¶¶ 114-123. The case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c). ECF #1, ECF #20-1; ECF #55.

---

[1] Defendant moved to partially strike the Second Amended Complaint the day before filing its Renewed Motion to Dismiss and re-filed it that same day to include a certificate of having conferred with plaintiff's counsel. ECF #56-#58.

ECF numbers from ECF #1 to ECF #28 refer to documents filed in the original *Walton* case in the U.S. District Court for the District of Columbia. Docket numbers starting from ECF #29 were filed in this Court. This case was transferred to this jurisdiction upon the issuance of the Order in the original *Walton* case and docketed in this Court on March 3, 2025 [ECF # 29].

The Memorandum Opinion issued in the original *Walton* case before this case was transferred here dismissed all but plaintiff's claims over the two original employment actions – *i.e.*, plaintiff's Unacceptable rating for Fiscal Year 2021 and the Performance Improvement Plan" (PIP") issued as a result of that rating. ECF #27; ECF # 28 at 5-8. The basis of that Court's decision was that plaintiff's use of the nomenclature hostile work environment in describing those actions in her amended administrative complaint instead of calling them discrete employment actions meant that plaintiff failed to exhaust her administrative remedies as to those four actions. *Id.*[2] Plaintiff has moved the Court to reconsider and vacate that decision insofar as plaintiff alleged they were retaliatory, because the decision is inconsistent with long-established Fifth Circuit precedent for at least two independent reasons. ECF #60 (citing, among other authorities, *Craft Foods, Inc.,* 18 F.3d 1278, 1280 (5th Cir. 1994), *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970), *Clayton v. Rumsfeld*, 106 Fed. Appx. 268, 271 (5th Cir. 2004), and *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981)).

Defendant has now moved to dismiss the remaining claims again. The grounds in support of that motion are wide of the mark. Defendant's first argument is that plaintiff "concedes that neither of [the remaining two claims] can support a retaliation claim." ECF #58 at 12. None of plaintiff's Complaints has ever alleged that those actions were retaliatory. ECF #1, ¶¶ 114-123 ECF #20-1, ¶¶ 114-123, ECF #55, ¶¶ 114-123. Plaintiff's Brief in Response to defendant's third

[2] There is no doubt that plaintiff's amended administrative complaint was timely and specifically identified those employment actions and they were fully investigated. *See* Appendix to Motion to Reconsider Appendix [ECF #61] at 0003-000106, Letter of Acceptance of Formal Complaint of March 23, 2022; App. at 00007-00010, Letter of Acceptance of Amended Formal Complaint of May 23, 2022; App. at 00045-00093, Investigative Report. These documents were identified and explained in the accompanying Declaration of Robert C. Seldon, Esq. ECF #61-1.

motion to dismiss specifically alerted defendant to this fact and yet defendant is repeated this argument in this, its fourth motion to dismiss. ECF #58 at 12.

Defendant's other arguments are just as superficial. The Supreme Court's ground-breaking decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) greatly reduced the level of harm needed to support a claim under Title VII. No longer must actionable changes to the terms and conditions of employment be "significant," *id*. at 350; "serious and material," *id*. at 354, n.1; "economic or tangible," *id*. at 354; produce "materially significant disadvantage," *id.* at 352; result in "a significant alteration to … work responsibilities," *id*.; or cause "a diminution" in "salary or rank" or "benefits," *id*. at 353 . In keeping with the express language of Title VII, and doing away with "any similar adjective that the disadvantage to the employee must exceed a heightened bar," *Muldrow* definitively held that an employee who has suffered "some harm" to the terms and conditions of her employment has an actionable claim. *Id.* at 355, 360.

For one, defendant simply ignores specific allegations in the Second Amended Complaint that are not to its liking. Section II of this Brief demonstrates that plaintiff's Unacceptable performance rating for FY 2021, the PIP that followed right behind it, and her proposed removal were directly related to one another and in significant respects based on the same pretextual grounds. ECF #55, ¶¶ 54, 56, 61, 66, 68-84, 91. Although defendant would prefer to dissect the harm these actions caused plaintiff's career, doing so is at odds with these specific allegations in plaintiff's Second Amended Complaint, and there is nothing in the precedent defendant cites or in the Memorandum Opinion and Order in the original *Walton* case that prevents employment actions that are directly related to one another and cause harm on a rolling basis from being considered together in determining whether the *Muldrow* "some harm" standard has been met.

In this same vein, defendant fails to acknowledge that proposing her termination included "contemporaneously remov[ing] her as lead Special Agent from a highly significant OIG investigation, *i.e.*, an investigation receiving close attention from the IG or AIGI due to its particular importance" as a "significant factor in job satisfaction and progression of a Special Agent's career." *Id.*, ¶ 66. Removal of significant responsibilities is not only actionable under *Muldrow*, it was actionable for more than 25 years before *Muldrow*. 601 U.S. at 352; *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). And under *Muldrow*, it no longer needs to be a significant reduction. 601 U.S. at 350.

As to the PIP itself, conspicuously absent from defendant's motion is the *pre-Hamilton* decision in *Smith v. McDonough*, 2023 WL 5918322 (W.D. Tex. Sept. 8, 2023) that dealt specifically with placement on a PIP, which expressly held:

> To summarize, the factual allegations supporting [plaintiff's] complaint that shall proceed include supervisors … threatening to place him on a Performance Improvement Plan (PIP), and ultimately placing him on a PIP.

*Id. at* *4. After *Muldrow,* the Fifth Circuit cited this decision with approval in *Smith v. Kendall,* 2024 WL 4442040*6 (5th Cir. Oct. 8, 2024). Section II.A of this Brief demonstrates that none of the precedent defendant did cite in its Second Renewed Motion to Dismiss changes the essential holding of the two *Smith* decisions that threatening to and then placing an employee under a Performance Improvement Plan to "set" an employee "up for failure" are not only actionable under *Muldrow,* they stated claims for relief a year before then under the Fifth Circuit's *en banc* decision in *Hamilton v. Dallas Cnty.,* 79 F.4th 494 (5th Cir. 2023) (*en banc*).[3] *Smith v. McDonough*, 2023 WL 5918322*1 (discussed with approval in *Smith v. Kendall,* 2024 WL 4442040*6).

---

[3] Accordingly, even if the Court denies Plaintiff's Motion for Reconsideration [ECF #60] to reinstate plaintiff's claims of retaliation, plaintiff's Unacceptable rating for Fiscal Year

This precedent cannot be reconciled with defendant's legal argument. Yet beyond listing *Muldrow* in the Table of Authorities, Defendant's Second Renewed Motion to Dismiss paid nothing more than a tip of the hat to that precedent setting case. *Muldrow*. ECF #58 at 3, 16, 19. Case-by-case, Section II.A. of this Brief shows that nine of the twelve cases cited by defendant preceded *Muldrow* and not one of them occurred in the context of successive adverse employment actions that caused harm far greater than *Muldrow's* standard. For these reasons and others explained below, plaintiff respectfully submits that Defendant's Second Renewed Motion to Dismiss must be denied.

**STATEMENT OF FACTS**

Plaintiff's Second Amended Complaint set forth a detailed account of defendant's unlawful employment actions, as well as the harm that plaintiff inevitably suffered as a result. Just by way of background, although it is not a claim in this case, defendant's discrimination against plaintiff began when Garrett Westfall, plaintiff's new supervisor for part of Fiscal Year 2020, gave plaintiff a performance appraisal at the lowest possible score for Fully Successful. ECF #55, ¶¶ 26-35. Westfall did that although he was ineligible to rate plaintiff by ignoring plaintiff's rating just a fraction below Outstanding by her supervisor for most of that year. *Id*., ¶¶ 25, 28-29. Unchecked, Westfall's discriminatory actions against plaintiff persisted and they provide the backdrop for the discriminatory actions described below that followed in FY 2021 and FY 2022. *E.g., Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir. 2002) ("Discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts.").

---

2021 that defendant issued on October 12, 2021 and the Performance Improvement Plan ("PIP") that defendant issued on November 10, 2021, remain actionable as discriminatory.

**Plaintiff's Rating of Unacceptable for Fiscal Year 2021**

Plaintiff's Unacceptable rating by Westfall for FY 2021 on October 12, 2021, is the subject of the first of plaintiff's claims. ECF #55, ¶¶ 42-55. Most prominently, "Westfall improperly rated Walton against the performance criteria for a Senior Special Agent, which was a full grade higher" than hers. *Id.*, ¶ 42. Using that higher rating scale, Westfall gave plaintiff "scores of zero in two Critical Element" and an overall rating of 1.66. *Id.*, ¶43. Westfall also pretextually blamed plaintiff for not handing in investigative reports on time despite knowing that OI's electronic case management system malfunctioned and was "not to be used for performance appraisals." *Id.*, ¶ 47. Westfall also pretextually blamed plaintiff for reports that were based on reports of departed agents Westfall had approved, *id.*; improperly singled plaintiff out for not following non-existent OIG policy, *id.*; held her accountable for the failure of other Special Agents to prepare close-out reports, *id.*, ¶ 51; and faulted her for following OIG procedures in place since before Westfall's arrival, *id.*, ¶ 52.

**Plaintiff's Placement of a Performance Improvement Plan**

On November 10, 2021, Westfall placed Walton on a pretextual Performance Improvement Plan ("PIP"). ECF #55, ¶ 55. A PIP is supposed to be "designed to give an employee notice that his or her performance is not at the Minimally Successful level" and provide "clear directions how to succeed and schedule regular in-person mentoring " *Id.* Westfall's did not. The PIP he issued to Walton it was based on the same Unacceptable ratings he gave plaintiff several weeks earlier in the same Critical Elements of her performance plan. *Id.*, (comparing *Id.*, ¶ 43). "In other words, the PIP was issued for the identical false and pretextual reasons Westfall used in issuing Walton's FY 2021 Unacceptable rating." *Id.* And as he had also done previously Westfall supplanted the supervisor who was to have been the one to decide whether to issue plaintiff a PIP. *Id.*, ¶¶ 56-58.

**Plaintiff Is Issued a Notice of Proposed Removal**

On March 1, 2022, Westfall issued Plaintiff a Notice of Proposed Removal and simultaneously removed her as lead Special Agent from a highly significant OIG investigation, *i.e.*, an investigation of high career satisfaction because it receives close attention from the Inspector General the Assistant Inspector General for Investigations and potentially interest from the Department of Justice due to its particular importance. ECF # 55, ¶ 66. Westfall took this step despite the fact that plaintiff was "performing at the Exceeds Successfully level, and despite the fact that her performance was equal to or exceeded the performance of Special Agents in EPA OIG OI who are male and/or are not African American who did not receive a Notice of Proposed Removal. *Id*.

**Plaintiff's Reply to the Notice of Proposed Removal**

Plaintiff submitted her written Reply to Westfall's Notice of Proposed Removal to Deputy Assistant Inspector General for Investigations Thomas Roelke on March 17, 2022, and subsequently appeared for an oral reply session. ECF # 55, ¶ 67. The Reply and oral session disproved all of the pretexts Westfall used to proposed her removal in great detail. *Id*., ¶¶ 68-73.

**Dismissal of the Notice of Proposed Removal**

On April 22, 2022, Roelke issued his Decision on Walton's proposed removal. In Roelke's words, after "carefully and objectively" considering "the facts detailed in the Notice of Proposed Removal" and "the supporting documentation, as well as [Walton's] oral and written responses," he was "not sustaining the proposal to remove" Walton from her position. ECF #55, ¶ 74. That was the extent of Roelke's decision that he provided to plaintiff. *Id*., ¶ 75.

**The Undisclosed Reasons For Dismissing The Notice of Proposed Removal**

"Roelke's analysis of the PIP and Westfall's assessment of Walton's performance during the PIP period only came to light as a result of the investigation of Walton's EEO complaint." ECF #55, ¶ 78. Roelke gave a full explanation of the reasons for not sustaining the proposed removal in the Affidavit he gave during the investigation of plaintiff's administrative complaint. *Id.*, ¶ 77. Except for his investigative Affidavit, "Roelke's analysis was not available to plaintiff, was not known to plaintiff, and could not have been known to plaintiff in the exercise of due diligence." *Id.*, 76.[4]

Roelke's analysis plainly demonstrated that Westfall's proposal to remove plaintiff was the direct product of the improper PIP.

> Roelke agreed with Walton that Westfall was improperly evaluating Walton against the performance standards for a Senior Special Agent, a more highly graded position than Walton's. [ECF #55, ¶¶ 81) (summarizing Roelke's investigative Affidavit, ECF # 61 at 241-42).
>
> Roelke concluded that Westfall was in the wrong for even issuing the PIP; that was [plaintiff's second line supervisor's] job. [It was she who] supervised Walton during the PIP and, without coordination with Westfall, was responsible for mentoring Walton, which 'could promote unclear expectations or conflicting

---

[4] The quotations above were taken directly from the Second Amended Complaint as opposed to Roelke's Affidavit itself. Roelke's Affidavit was "incorporated the [Second] Amended Complaint by reference,. ECF #55, ¶ 77 In the Fifth Circuit, "in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents *either attached to or incorporated* in the complaint." *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1016 (5th Cir. 1966) (emphasis supplied) (quoted in *Jenkins v. Tahmahkera*, 151 F.4th 739, 744, n. 1 (5th Cir. 2025)).

Roelke's Affidavit was also incorporated by reference in plaintiff's Amended Complaint in the original *Walton* case, and defendant concurred that documents incorporated by reference into that Complaint could be considered on a motion to dismiss. ECF #21 at 10 (citing, among other authorities, *EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624-25 (D.C. 1997).

Roelke's investigative Affidavit appears in the Appendix to Plaintiff's Motion to Reconsider [ECF #61] at 238-45.

guidance as stated during the employee's rebuttal.' ECF #55, ¶ 78 (quoting Roelke's investigative Affidavit, ECF #61 at 242).

Roelke also confirmed "all of the errors in the assignment of 'tasks'' assigned to plaintiff during the PIP that were "identified in plaintiff's written Reply" to the notice of proposed removal. ECF #55, ¶ 80.

Most damning of all, Roelke concluded that "Westfall was improperly evaluating Walton against the performance standards for a Senior Special Agent, a more highly graded position than Walton's" just as Westfall had improperly done in rating plaintiff Unacceptable in the FY 2021 performance appraisal that triggered the PIP. *Id.*, ¶ 81 (summarizing Roelke's investigative Affidavit ECF #61 at 241-42).

From this and more, Roelke "disagree[d]" that Walton "was provided the environment to demonstrate acceptable performance." ECF #55, ¶ 79 (quoting Roelke's investigative Affidavit, ECF #61 at 242) (ECF #61 at 242).

**Roelke's Decision Not To Reassign Walton**

Walton's Reply to the Notice of Proposed Removal specifically raised the issue that she had been subject to a hostile work environment. ECF #55, ¶82. Roelke had the option to reassign Walton when he dismissed the Notice of Proposed Removal, but claimed to have decided against that option because plaintiff had a new first line supervisor. ECF #55, ¶ 83. That was a pretext. Although plaintiff had a new first-line supervisor since shortly before she was rated Unacceptable, one of the main reasons Roelke did not support the proposal to remove Walton was that Westfall improperly displaced the new supervisor in the PIP and proposed removal processes. *Id.*, ¶84 (referencing Roelke's investigative Affidavit, ECF #61 at 242). Further, although Roelke claimed during the administrative investigative process to having no knowledge that plaintiff had been alleging that she was subject to a hostile work environment and wanted a reassignment away from

Westfall, that was just a pretext. ECF #55, ¶¶ 84-85. Plaintiff's written reply to Roelke about the Notice of Proposed Removal had "specifically stated that she had been subject to a hostile work environment." *Id., ¶85.*

**Failure to Replace Plaintiff's FY 2021 Appraisal or Issue One for FY 2022**

Despite the fact that Roelke did not sustain Westfall's Unacceptable rating of plaintiff for FY 2021 and found, among other matters, that Westfall had improperly rated plaintiff against performance standards for a Senior Special Agent as he had been doing since first becoming plaintiff's supervisor, plaintiff's Unacceptable rating was never withdrawn. ECF #55, ¶ 93. Westfall never issued plaintiff a full year appraisal for FY 2022. *Id.* Failing to do so has resulted in Walton's elimination for consideration for a new position as a Special Agent because candidates' applications must be accompanied by Full Year appraisals from their most recent performance cycles. *Id*. When Walton applied for another Special Agent position, she could only submit the second half, six-month appraisal for FY 2022 that continued to be at a pretextually low level. The hiring manager for that position specifically told Walton that she could not even be considered for the position. *Id*., ¶ 54.

**ARGUMENT**

**DEFENDANT'S SECOND RENEWED MOTION TO DISMISS MUST BE DENIED**

There is no "heightened pleading standard" for a case arising under Title VII; rather, "ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 514 (2002) (cited and quoted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007)). In the context of a motion to dismiss, "all the material allegations of the Complaint" and all inferences to be drawn therefrom must be taken "as admitted" unless they are so threadbare or contradictory as to be implausible. *Jenkins v. McKeithen*, 395 U.S. 411, 421

(1969). To surmount a motion to dismiss for failure to state a claim, a complaint need not contain "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must simply "raise a right to relief above the speculative level" and show only that it "is plausible on its face." *Id*. at 570. This standard is met when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations in the Second Amended Complaint are highly detailed and set forth plausible claims of discrimination that far surpass these pleading standards. *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 570; *Land v. Dollar*, 330 U.S. 731, 735, n.4 (1947). Nothing more need be demonstrated at this point to meet these standards.

## I. <u>Plaintiff Has Never Alleged That Defendant Retaliated Against Her In 2021</u>

None of plaintiff's Complaints – not the Second Amended Complaint she filed in this Court or the original and Amended Complaints she filed in the original *Walton* case – has ever alleged that defendant retaliated against plaintiff by issuing her an Unacceptable Performance Rating on October 12, 2021, or placing her under a PIP on 10, 2021. ECF #1, ¶¶ 114-123 ECF #20-1, ¶¶ 114-123, ECF #55, ¶¶ 114-123. Any doubt on this score is immediately dispelled just by glancing at the headings on Count II of each Complaint which refer exclusively to employment actions occurring in 2022.[5] Moreover, plaintiff's Brief in response to defendant's First Renewed Motion to Dismiss specifically alerted defendant to the fact that plaintiff had not asserted that she was retaliated against by its actions toward her in 2021, only that defendant discriminated against her. ECF #48 at 13. Nonetheless, Defendant's Second Renewed Motion to Dismiss opens with the

[5] Those 2022 employment actions that plaintiff alleged to have been retaliatory were defendant's pretextual proposal to remove plaintiff, its failure to reassign plaintiff; its removal of plaintiff from Highly Significant OIG Investigations, its initiation of an investigation of plaintiff, and its failure to issue plaintiff a full year performance appraisal for FY 2022 after Roelke vitiated the notice proposing plaintiff's removal. ECF #55 at 31; ECF # 1 at 28; ECF # 20-1 at 30.

argument that plaintiff "concedes that neither of" the remaining two claims can "support a retaliation claim" ECF #58 at 12. This argument is at best meritless. More accurately, it is sloppy.

## II. Plaintiff's Harm Far Exceeded the *Muldrow* "Some Harm" Standard

### A. Defendant Failed To Acknowledge Much Less Apply *Muldrow*

The Supreme Court's ground-breaking decision in *Muldrow* greatly reduced the level of harm needed to support a claim under Title VII. In keeping with the express language of Title VII that prohibits discrimination in the "terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), *Muldrow* did away with any "heightened threshold of harm" that a Title VII plaintiff must satisfy. 601 U.S. at 353. Since *Muldrow*, changes to the terms and conditions of employment no longer need to be "significant" to be actionable under Title VII, *id*. at 355, or "serious and material," *id*. at 355, n.1; or "economic or tangible," *id*. at 355; or amount to "material employment disadvantage," *id.* at 352; or result in "a significant alteration to … work responsibilities," *id*.; or cause "a diminution" in "title, salary or benefits," *id*. at 353.

*Muldrow* definitively held that an employee who has suffered "some harm" to her employment has an actionable claim under Title VII. 601 U.S. at 354-55. Of the twelve cases cited by defendant, neither the eight from the Fifth Circuit nor the one from the Sixth Circuit mentioned *Muldrow* because they *preceded Muldrow;*[6] and one of those cases was expressly abrogated in *Hamilton.*[7] In two cases after *Muldrow*, one plaintiff's complaint failed to allege any

---

[6] *Hamilton v. Dallas Cnty.,* 79 F.4th 494 (5th Cir. 2023) (*en banc*); *Harrison v. Brookhaven School District,* 82 F.4th 427 (5th Cir. 2023); *Welsh v. Fort Bend Indep. Sch. Dist.,* 941 F.3d 818 (5th Cir. 2019); *Fleming v. Methodist Healthcare Sys.,* 2024 WL 1055120 (W.D. Tex. Mar. 11, 2024); *Price v. Wheeler,* 834 F. App'x 849 (5th Cir. 2020); *Green v. Kijakazi,* 2024 WL 969703 (W.D. La. Mar. 6, 2024); *Dixon v. Garland,* 2024 WL 150509 (N.D. Tex. Jan. 12, 2024); *Lemonia v. Westlake Mgmt. Servs.,* 2023 WL 6878915 (5th Cir. Oct. 18, 2023); *Threat v. City of Cleveland,* 6 F.4th 672 (6th Cir. 2021) (summary judgment unopposed).

[7] *Hamilton*, 79 F.4th at 501, 534 (abrogating *Welsh.,* 941 F.3d at 824).

harm from the issuance of a rating of Satisfactory, as opposed to an Unacceptable rating;[8] while the second plaintiff could not show any harm at all *on summary judgment*.[9] In the remaining case defendant relied upon, the plaintiff abandoned his case for reasons apparently unrelated to the litigation after being granted leave to amend his complaint but before it was adjudicated.[10]

Defendant's implicit argument that all of these cases survived *Muldrow* is based on its self-serving reading of the Fifth Circuit's *en banc* decision in *Hamilton*, which was also issued a year before *Muldrow*. Over and above the timing of *Hamilton,* there are insurmountable problems with defendant's argument. For one, the core holding of *Hamilton* that was not abrogated by *Muldrow* is that Title VII's prohibitions are not limited to "ultimate employment decisions." *Hamilton*, 79 F.4th at 500-03. Rather, *Hamilton* recognized that: "Bound by" the ultimate employment action "standard, we have reached some remarkable conclusions … But that is not what the statute says – at all" and "[o]ur ultimate-employment-decision ignores [the] key language" of Title VII . *Id*. at 500-01. By definition, under *Hamilton,* claims for relief over employment actions occurring before a decision becomes final are actionable precisely because Title VII encompasses far more than tangible and economic changes in terms and conditions of employment. 79 F.4th at 503, 506.

---

8 *Johnson v. McDonald,* 623 F. App'x 701*703 (5th Cir. 2025) (no harm resulting from *Satisfactory* appraisal).

9 *Bravo v. Kendall*, 2025 WL 965927*32 (W.D. Tex. Mar.. 31, 2025.

10 *Wilkiewicz v. City of Cibolo,* Civ. Action No. 24-1471, ECF #20 at 1; ECF #21, ECF #26, Minute Order Sept. 18, 2025; 2025 U.S. Dist. LEXIS 116428 (W.D. Tex. Jun. 18, 2025).

### B. **Precedent Before And After *Muldrow* Holds That Properly Pled Claims <u>Over Being Placed On A PIP Surpass Motion To Dismiss Standards</u>**

The 5th Circuit's decision in *Smith v. Kendall* is completely consistent with the only distinction articulated in *Hamilton* between employment claims that are actionable and those that are not. Occupying the latter category are "*de minimis* workplace trifles." 79 F.4th at 505. As far as anything else was concerned, *Hamilton* decided to "leave for another day the precise level of workplace harm a plaintiff must allege." *Id*.

Properly applied, the most that can be said of *Hamilton* is that the one thing it did not disturb is the universal precedent that Title VII does not amount to "a general civility code for the American workplace." 79 F.4th at 505 (derived from *Burlington Northern,* 548 U.S. at 68 (2006)). *Hamilton* did not delineate how much more injurious employment actions must be above that level to be actionable, or less presage the as yet unannounced standard the Supreme Court set the following year in *Muldrow*. *Smith v. Kendall,* 2024 WL 4442040*5.

Conspicuously absent from defendant's motion is the case issued under the higher *Hamilton en banc* standard, *Smith v. McDonough*, 2023 WL 5918322 (W.D. Tex. Sept. 8, 2023)[11], which expressly held that "[f]actual allegations supporting" a plaintiff's complaint that supervisors … threatening to place him on a Performance Improvement Plan (PIP), and ultimately placing him on a PIP" are actionable. *Id.* at *3.

---

[11] *Smith v. McDonough* was issued after the original panel decision in *Hamilton v. Dallas County*, 42 F.4th 550 (5th Cir. 2022), and before *en banc* decision in *Hamilton*.

*Smith* was also perfectly clear about the differences between allegations that are needed to overcome a Rule 12(b) motion to dismiss for failure to state a claim and admissible evidence that is needed to defeat a Rule 56 motion for summary judgment.

> [A plaintiff] will have to proffer competent *summary judgment* evidence to overcome a challenge to his allegation that he was criticized and placed on a PIP for discriminatory reasons.
>
> That being said, [a plaintiff's] factual allegations are sufficient for this claim to move forward at this stage of litigation [*i.e.,* on a motion to dismiss].

*Smith v. McDonough*, 2023 WL 5918322*3, *5 (emphasis supplied). After *Hamilton* and *Muldrow,* the Fifth Circuit cited the district court decision in *Smith v. McDonough* with approval in *Smith v. Kendall,* 2024 WL 4442040*6.[12] The Fifth Circuit's decision in *Smith* v. *Kendall* expressly cited *Hamilton* and *Muldrow* and that decision speaks directly to the fallacy in of defendant's position and the mélange of cases upon which it relies. *Id*. at *5.

### III. The Harm To Plaintiff's Career Far Exceeds The Standards of *Muldrow* and *Hamilton*

*Smith v. Kendall* made clear that only set an absolute floor of the harm needed for pre-decisional claims to be actionable and but it did not decide how much harm above the *de minimis* level they must cause. *Smith v. Kendall,* 2024 WL 4442040*5 (5th Cir. 2024). No amount of harsh pruning can squeeze the extensive allegations in the Second Amended Complaint of harm that flowed directly from plaintiff's Unacceptable Fiscal Year performance appraisal and PIP into a

---

12 In *Smith v. McDonough*, the district court not only held placement on a PIP to be actionable, it also held that a separate claim over termination of an "agreement to telework from home" was also actionable. *Smith*, 2023 WL at 5918322*4. In citing *Smith v. McDonough* favorably, the Fifth Circuit's decision in *Smith v. Kendall* pointed to its "applying *Hamilton* in the first instance to find plaintiff "sufficiently pled he suffered adverse employment action based on unfair scrutiny of his work and having his telecommuting agreement revoked." *Smith v. Kendall,* 2024 WL at 4442040*6. The district court's decision in *Smith v. McDonough* clearly spoke of those two actions as separate, and there is no reason to conclude that the Fifth Circuit thought otherwise in *Smith v. Kendall.*

Procrustean bed of "de minimis workplace trifles." Even if there was a way, the injury to plaintiff's career far exceeds *Muldrow's* "some harm" standard.

### A. Plaintiff's Career Harm Flowed Directly From Her FY 2021 Rating and PIP

The Statement of Facts in of this Brief specifically demonstrated that the allegations in the Second Amended Complaint of the harm to plaintiff's career flowed directly from her FY 2021 Unacceptable performance review and the PIP defendant issued to her (referencing ECF #55, ¶¶42-58, 74-77, 80-82, 93). These were far more than constructive criticism of plaintiff's work. They were tools designed by plaintiff's second line supervisor Garrett Westfall to make plaintiff fail at her job and set her up for removal. Even without more, they are actionable as discriminatory after *Muldrow* and *Hamilton*. *Smith v. Kendall,* 2024 WL 4442040*6. But much more did follow.

Plaintiff's FY 2021 Unacceptable rating in October of 2021 led directly to her being placed under the PIP the following month. "The PIP Westfall issued advised Walton that it was" based on the same "Unacceptable ratings Westfall had given Walton several weeks earlier in her FY 2021" under the same Critical Elements cited in the rating, specifically "Critical Element No. 2, Communication, and Critical Element No. 3, Results Orientation." ECF #55, ¶ 56.[13] "Walton was placed under the PIP without grounds, despite performing at the Exceeds Successfully level, and despite the fact that her performance was equal to or exceeded the performance of Special Agents in EPA OI who are male and/or are not African American" *Id*. As alleged extensively in the Second Amended Complaint, "Westfall issued the PIP to set the basis for Walton's removal, as the PIP was designed to be impossible for any employee to successfully complete." *Id*. (referencing paragraphs 68 through 81 in the Second Amended Complaint). Furthermore:

---

13 The pretext in Westfall's criticism of plaintiff's is alleged in detail in paragraphs 59 and 60 of the Second Amended Complaint.

> In order to attempt to meet the requirements of the PIP, Walton worked far beyond her regular duty hours. She worked nights and weekends, including Christmas Eve, to produce the memoranda and reports required by the PIP. She also [decided] to forgo the administrative leave, given by [the] Inspector General [] for both the Thanksgiving and Christmas holidays, in order to attempt to complete each of the 14 tasks she was assigned under the PIP. These 14 tasks were in addition to her regular caseload and collateral duties, which Walton remained responsible for throughout the PIP.

ECF #55, ¶61. The PIP disrupted plaintiff's life and left her unable to take advantage of the Inspector General's offer of administrative leave over the holidays surely caused her harm. *Burlington Northern Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006).

In February of 2022, Westfall issued plaintiff the Notice of Proposed Removal based on her alleged deficient performance under the PIP. *Id.,* ¶ 66. The issuance of the Notice of Proposed Removal required that plaintiff be removed from a Highly Significant Investigation that unquestionably diminished her employment responsibilities. ECF # 55, ¶¶ 66-67. Under *Muldrow*, the extent and significance of the reduction in plaintiff's responsibilities is irrelevant since the Second Amended Complaint alleges far more than "some harm." 601 U.S. at 355. Plaintiff's written and oral Reply to the Notice of Proposed Removal demonstrated that Westfall had assigned her an insurmountable number of investigation tasks during the PIP period. The accomplishment of those tasks that plaintiff alleged to do, "extended over the Thanksgiving holiday up until Christmas" of 2021 and "coincided" with a death in plaintiff's family. ECF #55, ¶ 68. This unreasonable volume of Walton's assignments left no time for [her] to edit and revise her written product." *Id*. Just one of the tasks Westfall assigned during the PIP period gave plaintiff only a week to analyze "five years' worth of disorganized invoices provided by the subject of the investigation," which "[n]either Walton nor any other Special agent could" do; "write a flawless Memorandum of Activity" about that investigation and another investigation; and perform her regular case work" all at the same time. *Id*., ¶ 70.

Roelke, the official designated to determine whether plaintiff's employment would be terminated based on her alleged sub-standard performance during the PIP period, and as repeated in the Notice of Proposed Removal, decided he was "not sustaining the proposal to remove." ECF #55, ¶74. Roelke's decision left no room to doubt that Westfall's Notice of Proposed Removal was the *direct product* of the PIP and plaintiff's FY 2021 appraisal. For one, "Westfall was improperly evaluating Walton against the performance standards for a Senior Special Agent, a more highly graded position than Walton's, as had been done by Westfall … since FY 2020." *Id*., ¶ 81. For another, the work atmosphere Westfall placed plaintiff in was designed for her to fail the PIP. *Id*., ¶ 80. For yet another, Westfall was not even the management official authorized to place plaintiff under a PIP. *Id*., ¶ 78. Many other examples were alleged with great specificity in the Second Amended Complaint. *Id*., ¶¶ 77-81.

Despite Roelke's decision to vitiate the Notice of Proposed Removal and recognition that it was based, among other matters, on improper performance standards Westfall used to evaluate plaintiff's performance during the PIP and for her FY 2021 performance appraisal, that appraisal was never replaced with an accurate one and a superseding full-year appraisal for FY 2022 was never issued to plaintiff. ECF # 55, ¶¶ 64, 93. Without a full year appraisal accurately documenting her performance for in FY 2021 or a full year appraisal plaintiff was eliminated "for consideration for a new position as a Special Agent … because candidates' applications must be accompanied by Full Year appraisals from their most recent performance cycles." *Id.*, ¶ 93. "When Walton applied for another Special Agent position," the "hiring manager for the position told Walton that she could not even be considered" because she did not have one. *Id*., ¶ 54.

**B. Defendant's Actions Altered The Terms And Conditions Of Plaintiff's Employment**

The Unacceptable 2021 rating that defendant issued to plaintiff and the PIP that placed her could not have fit the definition of actionable changes in the terms and conditions of employment any better *Muldrow* and *Hamilton.* Although neither caused plaintiff "economic or tangible" harm, *Muldrow*, 601 U.S. at 354; and neither were an "ultimate employment decision[]." *Hamilton*, 79 F.4th at 500-03, they did cause plaintiff career harm that vastly exceeded the *Muldrow* standard by causing "some harm" to the terms and conditions of her employment. 601 U.S. at 355, 360.

Even had that not been the case, plaintiff did suffer tangible and economic harm as a result of the phony Unacceptable FY 2021 appraisal and the pretextual PIP. The rating itself eliminated plaintiff for a bonus that she would otherwise have received and prevented her from receiving higher level assignments. ECF #55, ¶ 105. Trying to accomplish the investigative tasks Westfall assigned her during the PIP required plaintiff to forego administrative leave and increase her hours of duty, which plaintiff could not properly be expected to do. *Id.*, ¶¶ 61, 79-81. Not being given an accurate full year appraisal for FY 2021 and leaving the Unacceptable rating in place would make it impossible for plaintiff to qualify for a new position and did so when she sought one. *Id.*, ¶¶ 54, 91. There are many other examples of tangible harm alleged in the Second Amended Complaint. If all Westfall had ever done was to threaten to place plaintiff under a PIP for her alleged Unacceptable performance for FY 2021 or merely placed plaintiff under a PIP, plaintiff would have met *Hamilton's* standards. *Smith v. McDonough*, 2023 WL 5918322*4 (as discussed in *Smith v. Kendall,* 2024 WL 4442040*6).

But Westfall did much more. Westfall not only placed plaintiff on the PIP, Westfall proposed to remove her using the same pretextually higher performance standards that he had been using to grade plaintiff. ECF #55, ¶ 81. Then, and despite vitiating Westfall's proposal to remove

plaintiff, Roelke did not even consider reassigning plaintiff and left her in the very office where her removal had been plotted, where he knew Westfall had poisoned the atmosphere in which plaintiff worked and deprived her of and "environment" she needed "to demonstrate acceptable performance." *Id.*, ¶ 79. These changes and others damaged the terms and conditions of plaintiff's employment as a Special Agent and far exceeded the standards of harm set by *Muldrow* and *Hamilton.*

**IV. Taking Account of the Effects Of Employment Action Is Consistent With *Muldrow, Hamilton*, And The Decision In The Original *Walton* Case**

The primary holding of *Hamilton* is clear: an employee does not have to wait until an employer makes its "ultimate decision" and implements discriminatory employment actions before bringing suit. 79 F.4th at 500-01. In other words, under *Muldrow*, an employee need not wait around until the harm to her career manifests itself tangibly or economically. 601 U.S. at 354. Westfall's concerted campaign to end plaintiff's career lasted months, starting with giving plaintiff an Unacceptable rating in October of 2021 and ending only when Roelke dismissed Westfall's Notice of Proposal Removal six months later in April of 2022. ECF #55, ¶¶ 41, 74. From beginning to end, Westfall interfered not only with plaintiff's ability to perform her job but to keep it. Giving employees the opportunity to challenge actions like these before they destroy an employee's career is the fundamental change in the law worked by *Muldrow* and *Hamilton*.

Defendant's strategy is to ignore *Muldrow* and misinterpret *Hamilton*. Reduced to its essence, defendant's position is simply that until harm to a plaintiff's career manifests itself in concrete terms, it is not actionable. That is directly contrary to the core holdings in *Muldrow* and *Hamilton* that an employee need not wait until the "ultimate employment decision" when harm becomes "economic" or "material" or "any similar adjective" to be actionable. *Muldrow,* 605 U.S.

at 355; *Hamilton,* 79 F.4th at 500-03. Defendant's argument is simple yet deceptive: return the law to its pre-*Muldrow* and pre-*Hamilton* state.

Defendant's argument is particularly pernicious in seeking to apply it here. In the federal sector, an employee only has 45 days to initiate the informal administrative complaints process over an unlawful employment practice. 29 C.F.R. § 1614.105(a)(1). If she does not meet that deadline, the complaint is time-barred and must be dismissed pursuant to 29 C.F.R. § 1614.107(a)(2). *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002).[14] According to defendant's theory, a plaintiff cannot maintain suit until she suffers tangible or material or concrete harm had not yet occurred. But if harm at the level does not occur until more than 45 days after the action that triggered it, according to defendant's underhanded theory, the an administrative complaint must be dismissed because the original pre-decisional action caused no harm and the follow-on complaint is time-barred.

There is nothing in the Memorandum Opinion and Order in the original *Walton* case suggesting that the only harm to plaintiff's career that was not time-barred must have occurred no more than 45 days after Westfall's FY 2021 Unacceptable rating on October 10, 2021, and his PIP on November 12, 2025. ECF #27 at 5-8; ECF #28. The Second Amended Complaint alleges in great detail that the effects of the Unacceptable rating and the PIP issued to plaintiff were felt not only immediately but for months and months. ECF #55, ¶¶ 42-93. According to defendant, none of that counts. On the contrary, the Memorandum Opinion in the original *Walton* case held that plaintiff could not pursue the claims in her amended administrative complaint because by framing them as parts of a hostile work environment as opposed to discrete employment actions, plaintiff

---

[14] *Morgan* arose in the context of a private sector complaint, where the filing deadline is 180 or 300 days, *i.e.,* between four and six and a third times longer than in the public sector, depending on the jurisdiction in which a charge is filed. 536 U.S. at 110.

did not exhaust her administrative remedies. ECF #28 at 5-8. Plaintiff does appreciate that unless the Court grants her Motion to Reconsider and reinstates her claims of retaliation [ECF #60], that is the law of the case. But that is a far sight different from stating that economic and tangible harm resulting directly from the claims plaintiff asserted in her original administrate complaint cannot be considered in determining whether her Unacceptable rating and PIP caused harm actionable under *Muldrow* and *Hamilton.* The decision in the original *Walton* case did not consider that issue because it was irrelevant. Once that decision determined that plaintiff did not exhaust administrative remedies to pursue those claims as discrete actions as opposed to parts of a hostile work environment, the case was transferred to this District where the FY 2021 appraisal and PIP were issued. ECF #28 at 5-8. Therefore, taking account of the effects of the harm caused by the issuance of the appraisal and PIP is consistent with the outcome of Memorandum Opinion and Order issued in the original *Walton* case.

**CONCLUSION**

For the foregoing reasons, plaintiff respectfully requests that the Court deny Defendant's Second Renewed Motion to Dismiss.

Respectfully submitted,

*//s//* Robert C. Seldon, Esq.
Robert C. Seldon, Esq., *pro hac vice*
D.C. Bar No. 245100
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200
Counsel for Plaintiff
rcs@sba-pc.com

/s/ Donald E. Uloth
Donald E. Uloth
Texas Bar No. 20374200
Law Office of Donald E. Uloth
18208 Preston Rd. Suite D-9 # 261
Dallas, Texas 75252
Phone: (214) 989-4396
Fax: (972) 777-6951
Email: don.uloth@uloth.pro

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2025, I served a copy of the Brief in Support of Plaintiff's Opposition to Defendant's Second Renewed Motion to Dismiss upon Assistant United States Attorney Mary M. Cherry, counsel for defendant, through the U.S. Courts' PACER system in accordance with Rule 5(b)(2)(e) of the Federal Rules of Civil Procedure.

*//s//* Robert C. Seldon, Esq.
Robert C. Seldon, Esq., *pro hac vice*