# SBA

## SELDON BOFINGER
### &
## ASSOCIATES, P.C.

1319 F STREET NW
SUITE 200
WASHINGTON, DC 20004

OFFICE: 202.984.7124

SELDONBOFINGER.COM

ROBERT C. SELDON
RCS@SBA-PC.COM
202.841.7627 (CELL)

December 4, 2025

<u>**VIA EMAIL**</u>

Mary M. Cherry, Esq.
Assistant United States Attorney
Office of the United States Attorney
 For the Northern District of Texas
1100 Commerce Street Third Floor
Dallas, TX 75242

*Re:  Walton v. Zeldin, Civ. Action No. 25-0535-S*

Dear Marti:

Under cover of this letter, we are serving Plaintiff's First Set of Interrogatories, Requests for Production of Documents, Requests for Admissions, and eDiscovery.  The fact that these are called plaintiff's First Set of Interrogatories, *etc*., does not mean there's a Second set on the way. It reflects the way documents are filed here.

Instruction No. 5 has a specific provision about asserting privilege.  It instructs you not to claim privilege before conferring with us.  We only represent clients in litigation, which means that our communication with them is limited to attorney-client privileged information or pleasantries about weather, horses, and things of that nature.  For that reason, all of our communication is either clearly privileged or irrelevant and we will object before claiming privilege.  I assume that your communication with client-agencies is the same as ours with clients. If you send me an email to that effect, we will not take any steps toward requiring anything more to interpose the attorney-client privilege.

I will be getting out several Notices of Depositions either tomorrow or early next week. Return dates on them will be placeholders only pending our conferring and working out dates for all concerned.

Overall, we are looking to having responses to our written discovery and electronic searches answered and depositions taken by early February but no later than the discovery cut-off date of February 16, 2026.  That would be a week before the mediation on February 23, 2026.

Also, when AUSA Emily Owen was representing EPA, we broached the subject of having a conference with her and an agency IT Specialist to go over eDiscovery before the agency started to run searches.  In my experience, a conference call can be the best way to tailor eDiscovery

AUSA Marti Cherry
December 4, 2025
Page 2 of 2

requests and not capture a large volume of irrelevant electronic documents. For example, in one case, we thought that limiting a search to documents in which our client's name and the name of a senior agency official who was involved in our client's involuntary reassignment for a brief period of time would be reasonable. As it turned out, that particular official sent out agency-wide email blasts all the time; so without streamlining our original search terms, they would have yielded a morass of irrelevant documents. Other times, a conference has eliminated misunderstandings on both sides about search terms. If EPA has pre-analytic capability, we would like to know that at the outset and get an estimate of how many documents would be returned before a search is run. Overall, we are looking to have a reasonable number of unique documents captured and produced to us.

When your immediate predecessor AUSA Andrea Hyatt was assigned to this case, she took the lead in preparing a draft protective order that incorporated some of our comments and standard provisions. The docket sheet does not reflect that it was ever filed and I do not have a way of knowing which version in our files is the final one AUSA Hyatt drafted. .

I am around the remainder of this week and in and out of depositions next week if you would like to talk about anything.

Very truly yours,

Robert C. Seldon

PS – I mentioned my first trial in one or another of our earlier emails. As I said, I was assigned to it two weeks before the trial began. The Special who had the case before me was a political appointee who had fallen into disfavor and was stashed in the Civil Division instead of dismissing her outright. She left behind two disorganized boxes of documents. In one of them was a pair of her shoes.

The trial itself took a couple of interesting turns. I won't bore you recounting them unless you are interested.

Encl.

Cc:  Donald E. Uloth, Esq.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ALISA WALTON,** | ) | |
| | ) | |
| **Plaintiff ,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-CV-00535-S** |
| | ) | |
| **LEE ZELDIN,** | ) | |
| **Administrator, U.S. Environmental** | ) | |
| **Protection Agency,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION

Plaintiff Alisa Walton hereby propounds her First Set of Interrogatories and Requests for Production of Documents, and Requests for Admissions upon defendant pursuant to Rules 33, 34, and 36, Fed. R. Civ. P., and the Local Rules of this Court.  Serve a copy of your Answers and Objections no later than 30 days from your receipt of this discovery, or another date agreed to by the parties, on counsel for Plaintiff, Robert C. Seldon, Esq., Seldon Bofinger, & Associates, P.C., 1319 F Street, NW, Suite 200, Washington, DC 20004; and Donald E. Uloth, Esq., Law Office of Donald Uloth, 18208 Preston Rd. Suite D-9 #261, Dallas, TX 75252.  Respond in accordance with the Instructions and Definitions contained herein and the Federal Rules of Civil Procedure.

The preferred manner of service is email to rcs@sba-pc.com and don.uloth@uloth.pro.

1

## <u>INSTRUCTIONS</u>

1.)      <u>This discovery extends to all responsive information and documents</u> within your custody or possession or otherwise subject to your control, whether located on your business premises, virtually, in the cloud, or remotely, or at the business premises or residences of your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, grantees, awardees, parents, holding companies, affiliates, offices, officials, members, directors, representatives, agencies, departments, councils, bureaus, subsidiaries, units, divisions, and parts, or elsewhere.

2.)      <u>Segregate and index all responsive documents</u> according to the number of the Interrogatories or Request(s) for Production to which they respond.

3.)      <u>If any responsive documents have been produced previously,</u> you may answer without producing additional copies <u>provided you identify responsive documents by noting their titles and the Bates numbers where they appear.</u>

4.)      <u>If any responsive information or documents cannot be or are not produced in full due to their loss, destruction, or misplacement,</u> identify all such information and documents; provide a complete and accurate account of the reasons for nonproduction and the circumstances surrounding their destruction, loss, or unavailability; identify persons with personal knowledge of the circumstances surrounding their destruction, loss, or unavailability; and respond to the fullest extent possible.

5.)      <u>If any responsive documents or information is withheld on the grounds of privilege,</u> before formally claiming privilege or asserting work product, confer with counsel for plaintiff about a way or ways to eliminate unnecessary claims of privilege or work product.  If claims of privilege or work product remain as to any responsive documents or information after

2

the parties confer, identify:

      (a.)    the author(s), address(es), recipients(s), present custodian(s), and date(s) of all such documents and information;

      (b.)    all other persons who have seen or learned of all or part of any such documents and information;

      (c.)    the subject matter and contents of each such document;

      (d.)    the specific basis for the claim of privilege; and

      (e.)    all other information necessary to adjudicate the propriety of your claim of privilege.

6.)    <u>If you are unable to unequivocally admit a matter whose admission is sought, your answer must deny the matter specifically or set out in detail why you cannot admit or deny the matter.</u>  A denial must fairly meet the substance of the requested admission and, when good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you must specify so much of it as is true and qualify or deny the remainder.

7.)    <u>You may not give lack of knowledge or information as a reason for failure to admit or deny a request for admission</u> unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.  You may not object to a request on the basis that it presents a genuine issue for hearing.

8.)    <u>Each matter requested to be admitted may be deemed admitted</u> if you do not serve a timely written answer or objection.

9.)    <u>In responding to this discovery initiative, you have a duty to consult every available source</u> including, but not limited to your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, affiliates, officers, directors, representatives, agencies,

departments, awardees, grantees, bureaus, subsidiaries, units, divisions, councils, and parts.

10.)    <u>When an Interrogatory states "[p]rovide a complete and accurate account" of an action</u>, your response must include: a.) all persons (including all personnel and human resource specialists) involved in taking or not taking such action; b.) each such person's role in such action or inaction including their opinions, recommendations, and concurrences; c.) all communications made or received by each such person involved in the foregoing actions or inactions; d.) and the dates of each such person's communications.

11.)    <u>For each discovery or part thereof which you refuse to answer on grounds of burdensomeness or proportionality answer the parts that are not objectionable and state</u>:

a.) The number of files and/or documents needed to be searched to complete your answer without objection;

b.) The location of such files; and

c.) The number of employee-hours required to conduct the search and the basis for calculating that number.

12.)    <u>If you contend that any of these Interrogatories, Requests for Production, or Requests for Admissions exceed any numerical limitations</u> upon these Interrogatories, Requests for Production, or Requests for Admissions, do not decide which of these Interrogatories, Requests for Production, or Requests for Admissions you will not be answering without first conferring with Plaintiff's counsel.

13.)    <u>This discovery initiative is continuing in character</u> and must be supplemented to the extent required by the Federal Rules of Civil Procedure. <u>If you are withholding any information or documents in respon</u>se to Plaintiff's Interrogatories or Requests for Production of Documents,

your responses must state that and provide an explanation sufficient for it to be understood the information and documents being withheld.

15.)    <u>Responsive documents contained in the Report of Investigation of Plaintiff's Administrative Complaint of Discrimination</u> at your option do *not* have be produced, provided you identify responsible documents by title, Report of Investigation volume number, and Bates numbers.

## **<u>DEFINITIONS</u>**

Unless the text indicates to the contrary:

A.)    "<u>You</u>" or "<u>your</u>" means the person holding the office of the Administrator of the Environmental Protection Agency ("EPA") on permanent or acting basis, EPA as an entity, and all of your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, affiliates, parents, holding companies, offices, officials, members, directors, sub-agencies, departments, bureaus, subsidiaries, units, divisions, parts, predecessors, successors, assigns, grantees, or awardees.  Where documents, knowledge or information in your custody or possession or subject to your control is requested or referred to, such request or referral includes documents, knowledge, and information in the custody or possession or subject to the control of all of the foregoing persons and entities.

B.)    "<u>Document</u>" means the original and all non-identical copies and drafts of all of the following that can be found in any medium and/or storage device, including but not limited to: <u>cloud-based storage systems and applications</u>; <u>servers and IT systems</u>; <u>personal computers</u>, <u>external hard drives and flash drives</u>; <u>mobile phones</u>, <u>tablets</u>, <u>hand held</u> and <u>wearable devices</u>; <u>postings on the internet, including but not limited to postings on Facebook, Bluesky, Twitter, X, Periscope, Reddit, Instagram, You Tube, TikTok and any other form of social media and internet-</u>

5

based communication; and hard copies, text messages, emails, and other electronic communications and virtual recordations.

C.)    "Person" means any individual, government entity, natural person, corporation, partnership, association, joint venture, sole proprietorship, limited liability company, firm or other business enterprise or legal entity, or any of such person's agents, attorneys, officers, representatives, employees, contractors, sub-contractors, grantees, awardees, affiliates, offices, officials, members, directors, representatives, agencies, departments, bureaus, subsidiaries, units, divisions, parts, parents, holding companies, predecessors, successors, or assigns.

D.)    "Identify" with respect to a person means to provide each such person's name and last known business address, place of residence, and business and residence telephone numbers, and business email address.

E.)    "Identify" with respect to a document means to provide a description thereof, its title, the date of its creation and transmission(s), its author(s), its recipient(s), its subject matter(s), and all attachments thereto.

F.)    "And" and "or" mean "and/or."

G.)    Use of the singular is deemed to include the plural and vice versa.

H.)    Use of the feminine is deemed to include the masculine and vice versa.

I.)    "Action" means action or inaction.

J.)    "Any" means any/or all.

K.)    "All" means all and/or any.

L.)    "OIG" means the EPA Office of the Inspector General.

M.)    "OI" means the Office of Investigations of OIG.

N.)    "Dallas Field Office" means the OIG Office to which plaintiff is assigned.

O.      "PIP" means Performance Improvement Plan.

P.      "EPARS" means Employee Performance and Recognition Systems Plan.

Q.      "Special Agent" means current and former Special Agents.

## INTERROGATORIES

In accordance with the foregoing Definitions and Instructions:

1.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's performance standards and EPARS for Fiscal Year 2020.

2.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's performance standards and EPARS for Fiscal Year 2021.

3.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's mid-year and full-year performance appraisals for Fiscal Year 2020.

4.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's mid-year and full-year performance appraisals for Fiscal Year 2021, the latter of which was issued on or about October 12, 2021.

5.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's mid-year and full-year performance appraisals for Fiscal Year 2022.

6.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing  a PIP to plaintiff on or about November 10, 2021.

7.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing a Notice of Proposed Removal for Unacceptable Performance to plaintiff on or about March 1, 2022.

8.)      Provide a complete and accurate account of drafting, finalizing, approving, and issuing a Decision on Proposed Removal to plaintiff on or about April 22, 2022.

7

9.)    Provide a complete and accurate account of your knowledge of and information about plaintiff's informal administrative complaint of discrimination from her Initial Contact with your Office of Civil Rights until plaintiff filed her formal administrative complaint of discrimination with your Office of Civil Rights until on or about February 15, 2022.

10.)    Provide a complete and accurate account of your knowledge of and information about plaintiff's formal administrative complaint of discrimination Office of Civil Rights until plaintiff filed the amendments to plaintiff's formal administrative complaint of discrimination on or about May 9, 2022, and May 10, 2022.11.)

11.)    Provide a complete and accurate account of your knowledge of and information about plaintiff's formal administrative complaint of discrimination and amendments to plaintiff's formal administrative complaint of discrimination until the issuance of the Report of Investigation of those complaints on or about October 27, 2022.

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendant is directed to produce the following documents:

1.)    All documents that refer or relate, whether in whole or in part, to Defendant's answers to Plaintiff's Interrogatories.

2.)    All documents that are a part of plaintiff's Official Personnel File.

3.)    All documents that refer or relate, whether in whole or in part, to plaintiff's performance or conduct while in your employ that are not contained within her Official Personnel File from Fiscal Year 2020 to Fiscal Year 2022.

4.)    Except to the extent they have been produced in response to the foregoing Requests for Production, all documents that refer or relate, whether in whole or in part, to plaintiff's EPARS and performance appraisals, mid-year and full-year, from Fiscal Year 2020 to Fiscal Year 2022.

5.)      All documents that refer or relate, whether in whole or in part, to your manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to developing and putting into effect EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022.

6.)      All documents that refer or relate, whether in whole or in part, to you policies, manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to processes by which performance appraisals and ratings of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 are established and put into effect for Fiscal Year 2020 through Fiscal Year 2022.

7.)      All documents that refer or relate, whether in whole or in part, to your policies, manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to processes by which PIP's are issued or may be considered to be issued to OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 and put into place for Fiscal Year 2020 through Fiscal Year 2022.

8.)      All documents that refer or relate, whether in whole or in part, to your policies, manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to processes by which performance-based awards and bonuses are issued to OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 and put into place for Fiscal Year 2020 through Fiscal Year 2022.

9.)      All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year

2022 put into place, issued, conferred about, was consulted about, approved, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Garrett Westfall.

10.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Daniel Hawthorne.

11.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Staci Gurin.

12.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

12.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 after Sean Earle became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred

about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity that related to plaintiff.

12.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Christopher Huntington.

14.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Garrett Westfall.

15.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Staci Gurin .

16.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Daniel Hawthorne.

17.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Christopher Huntington.  .

18.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 through the time that Sean Earle became Deputy Assistant Inspector General for Investigations that Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance by Sean Earle after he became Deputy Assistant Inspector General for Investigations that Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity that related to plaintiff.

19.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Garrett Westfall put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

20.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Staci Gurin recommended put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

21.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Daniel Hawthorne put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity..

22.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Christopher Huntington recommended, issued, approved, signed or concurred in.

23.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that Sean Earle became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity..

23.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that Sean Earle became Deputy Assistant Inspector General for Investigations

which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

All documents that refer or relate, whether in whole or in part, to bonuses or cash awards that related to plaintiff o plaintiff after Sean Earle became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity that related to plaintiff.

24.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Garrett Westfall recommended, issued, approved, signed or concurred in.

25.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Daniel Hawthorne recommended, issued, approved, signed or concurred in.

26.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Christopher Huntington recommended, issued, approved, signed or concurred in.

27.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Staci Gurin put into place, issued, approved, conferred

14

about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

28.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

29.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Garrett Wesfall.

30.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Staci Gurin.

31.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Daniel Hawthorne.

32.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Christopher Huntington.

33.)     Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations which Sean Earle issued or signed as a rating official, reviewing official, or any other official capacity

34.)     Performance appraisals and ratings of Garrett Westfall from Fiscal Year 2020 through Fiscal Year 2022.

35.)     Performance appraisals and ratings of Staci Gurin from Fiscal Year 2020 through Fiscal Year 2022.

36.)     Performance appraisals and ratings of Daniel Hawthorne from Fiscal Year 2020 through Fiscal Year 2022.

37.)     Performance appraisals and ratings of Christopher Huntington from Fiscal Year 2020 through Fiscal Year 2022.

38.)     Performance appraisals and ratings of Sean Earle from Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations.

39.)     Counseling reports and requests to initiate the informal administrative EEO complaints process, formal administrative EEO complaints, Reports of Investigation of formal administrative EEO complaints, Final Agency Decisions on administrative EEO complaints, U.S. Equal Employment Opportunity Commission decisions on formal administrative EEO complaints and Final Agency Decisions on administrative EEO complaints, and final decisions and settlement agreements issued by federal courts in which any of the following persons is alleged to have engaged in discrimination based on sex, race, color or retaliation from Fiscal Year 2020 through Fiscal Year 2022.

16

A.)    Garrett Westfall

B.)    Staci Gurin

C.)    Daniel Hawthorne

D.)    Sean Earle

E.)    Christopher Huntington

40.)    All documents that refer or relate, whether in whole or in part, to performance-based actions that you considered or drafted for issuance to plaintiff during Fiscal Year 2020 through Fiscal Year 2022that were not issued to plaintiff.

41.)    All documents that refer or relate, whether in whole or in part, to your manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to circumstances and complaints in which a subordinate has alleged that she has been subjected to a hostile work environment by a supervisor or requested reassignment because she has alleged she has been subjected to a hostile work environment by a supervisor.

42.)    All documents that were returned to you in response to the electronic discovery accompanying this written discovery.

## **REQUESTS FOR ADMISSION**

1.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 did not appraise plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 13.

2.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 appraised plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent higher than GS Grade 13.

17

3.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 appraised plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 14.

4.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 appraised plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 15.

5.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was not based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 13.

6.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent higher than GS Grade 13.

7.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 14.

8.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 15.

9.)    Admit that in determining that plaintiff failed the PIP she was issued on or about November 10, 2021, plaintiff's performance was not based on an appraisal or rating of plaintiff's performance during the PIP against a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 13.

10.)    Admit that in determining that plaintiff failed the PIP she was issued on or about November 10, 2021, plaintiff's performance was based on an appraisal or rating of plaintiff's performance during the PIP against a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 14.

11.)    Admit that in determining that plaintiff failed the PIP she was issued on or about November 10, 2021, plaintiff's performance was based on an appraisal or rating of plaintiff's performance during the PIP against a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 15.

12.)    Admit that on or about March 1, 2022, Garrett Westfall issued a Notice of Proposed Removal for Unacceptable Performance to plaintiff.

13.)    Admit that you delegated authority to Thomas Roelke to be the deciding official responsible for making your decision on the a reduction in grade or removal of plaintiff including but not limited to, your decision whether to sustain .

14.)    Admit that on or about April 22, 2022, Thomas Roelke issued your decision not to sustain the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022.

15.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, Thomas Roelke carefully and objectively considered the facts detailed in the Notice of Proposed Removal for Unacceptable Performance and the supporting documentation, as well as plaintiff's oral and written responses.

16.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other

19

matters, Thomas Roelke determined that the tasks and deadlines established in the PIP that preceded the foregoing Notice of Proposed Removal did not provide plaintiff with an opportunity to be successful.

17.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that plaintiff was not provided the environment to demonstrate acceptable performance.

18.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that the work environment provided to plaintiff during the PIP would be disadvantageous to plaintiff.

19.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that the work environment provided to plaintiff could promote unclear expectations or conflicting guidance during the PIP.

20.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that during the PIP, the work product plaintiff was expected to produce was the work product expected of a GS 1811 Special Agent higher than plaintiff's grade level.

21.)    Admit that on or about January 24, 2022, you delegated authority to Thomas Roelke to be the deciding official responsible for making your decision on a proposed reduction in grade or removal of plaintiff.

20

Respectfully,

_____

Robert C. Seldon, Esq.
 D.C. Bar No. 245100
 *Pro hac vice*
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200
rcs@sba-pc.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I served Plaintiff's First set of Interrogatories

and Requests for Production of Documents, and Requests for Admissions via email upon:

Mary M. Cherry, Esq.
Assistant United States Attorney
Office of the United States Attorney
 For the Northern District of Texas
1100 Commerce Street
3rd Floor
Dallas, TX 75242
Mary.Cherry@usdoj.gov

__ //Robert C. Seldon, Esq._____

**<u>Electronic Searches</u>**

**<u>General Instructions</u>**

**<u>Types of Electronic Documents and Messages</u>**

Emails and other electronic communication to, from, cc'd, bcc'd, drafted by, in-box, out box, junk, spam, deleted, trash, <u>etc</u>., whether stored in email boxes and hard drives

Attachments to emails and other electronic communication

Text messages on cell phones, tablets, and other electronic devices

**<u>Format of Production</u>**

pdf (preferably compiled and searchable)

Native (for attachments)

**<u>Instructions</u>**

Capitalization or lack of capitalization in search terms is to be ignored.

Terms connected by "OR" means a search for documents in which either of the original terms, for example "PIP" OR "Performance" or "rating" OR "appraisal" appears in one document.

Terms connected by "AND" means a search for documents in which the original term, for example "Reduction" AND another of the listed terms, for example "Grade," both appear in one document.

When terms appear within quotation marks, for example "Notice of Proposed," the terms must appear together in one document and in the order in which they are written.

When "w/s" appears between two search terms, for example "cat" w/s "dog" searches should be conducted for documents in which both "cat" and "dog" appear in the same sentence.

When "w/p" appears between two search terms, for example "bird" w/p "house" searches should be conducted for documents in which both "bird" and "house" appear in the same paragraph sentence.

Searches where an "*" is included at the end of a search term should include every variation of the search term, <u>e.g.</u>, a search for "appraisal*" should include searches for "plans," "planned," and "pl

Searches should be conducted using root terms, _e.g._, a search for "Performance Improvement Plan" is to include "Performance Improvement Plans" and a search for "Investigating Officer" should include "Investigating Officer's."

## A. <u>Date Range of Searches</u>

October 1, 2019 through September 30, 2022

## B. <u>Individuals' Emails And Electronic Documents To Be Searched For</u>

Garrett Westfall
Staci Gurin
Sean Earle
Erik Mabry
Thomas Roelke
Alisa Walton
Christopher Huntington

## C. <u>Searches Of Emails And Electronic Documents of the Foregoing Individuals</u>

Walton **AND**

"Employee Performan*" **OR**
"Recognition System" **OR**
"Apprais*" **OR**
"Rat*" **OR**
"Critical" **OR**
"Element" **OR**
"Bonus" **OR**
"Award" **OR**
"PIP" **OR**
"Performance" w/p "Improvement" **OR**
"Opportunity" w/p "Acceptable" **OR**
"Notice" w/p "Proposed" **OR**
"Unacceptable" w/p "Proposed" **OR**
"Proposed Removal" **OR**
"Decision on" w/p "regarding your"

## D. <u>Searches Of Text Messages of the Foregoing Individuals _Other Than Alisa Walton_</u>

Walton **OR**
Alisa