# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **ALISA WALTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-CV-00535-S** |
| | ) | |
| **LEE ZELDIN,** | ) | |
| **Administrator, U.S. Environmental** | ) | |
| **Protection Agency,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## APPENDIX IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO QUASH, STAY AND MODIFY SCHEDULE

Page Nos.      Description

2 – 9          Roelke Affidavit, 7.28.2022, Case No. 2022-0009-R06

10 – 32        Plaintiff's First Set of Interrogatories, Requests for Production of Documents and Requests for Admission

Respectfully Submitted,

Robert C. Seldon, Esq., *pro hac vice*
 D.C. Bar No. 245100
Seldon Bofinger &
Associates, P.C. 1319 F
Street, N.W., Suite 200
Washington, D.C. 20004
Phone: (202) 393-8200
Fax: (202) 318-2287
rcs@sba-pc.com

Counsel for Plaintiff

December 18, 2025

App. 0001

**EEO Investigative Affidavit *(Witness)***

| Page No. | No. Pages | Case No. |
|---|---|---|
| **1** | **7** | **2022-0009-R06** |

| 1. Affiant's Name (Last, First, MI) **Roelke, Thomas** | | 2. Employing Federal Agency and Office **EPA OIG** |
|---|---|---|
| 3. Position Title **Deputy Assistant Inspector General for Investigations** | 4. Grade and Series GS-1811/15 | 5.Address and Zip +4 1200 Pennsylvania Ave., NW Washington, DC 20460 | 6. Organizational Unit **HQ Operations Directorate, Office of Investigations** |

### Privacy Act Notice and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

### Response to Complaint

Regulations require all employees to cooperate in any EEO investigation

7. Statement (*Continue on Form 2569 if additional space is required. Form will auto-create if using Microsoft Word*)

### Please complete the top section of this form, boxes #2 thru #6.

1. Please state your name, position title, grade level, work location, work address (include zip+4), work telephone number, and work e-mail address.

   Name: Thomas Roelke
   Position title and grade level: Deputy Assistant Inspector General for Investigations
   Department/division/work group: Office of Inspector General, Office of Investigations, Headquarters Operations Directorate
   Work address: 1200 Pennsylvania Ave. NW, Washington, DC 20460
   Work telephone number: (202) 566-0549
   Work e-mail address: roelke.thomas@epa.gov

2. State the period of time you have held your current position.
   **Answer: I believe I started as the Acting Deputy Assistant Inspector General for Investigations in early 2021 and was subsequently selected to become one of the Deputy Assistant Inspector Generals due to the retirement of one of the OI DAIGIs. I cannot recall any exact dates.**

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:43:41 -04'00' | Date Signed |
|---|---|---|---|

October 2015

App. 0002

Affidavit F
Page 1 of 273

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 2 | 7 | 2022-0009-R06 |

3. Identify your first and second line supervisors.
    **Answer: Jason Abend, Assistant Inspector General for Investigations**
    **Nicole Murley, Acting Deputy Inspector General**

4. Describe your past or current working/reporting relationship with Complainant, Alisa Walton (i.e., co-worker, supervisor, etc.).  State the period of time of the working/reporting relationship with Complainant.
    **Answer: Alisa Walton is assigned to the Dallas OI office and I do not recall any times that I may have worked directly with her.**

<u>**RACE AND SEX ALLEGATION:**</u>

5. Please identify your **race.**
    **Answer: White**

6. Were you aware of Complainant's **race** during the time period (2019, 2020 and 2021) of this complaint?  How and when were you made aware of her **race**?
    **Answer: Not that I recall. I am sure that she may have been involved in previous video conferences during those time frames where I was also an attendee. I can recall Alisa's rebuttal with her attorney and our Human Resources Directorate when I was assigned as the deciding official for Alisa's proposed removal.**

7. Please identify your **sex.**
    **Answer: Male**

8. Were you aware of Complainant's **sex** during the time period (2019, 2020 and 2021) of this complaint?  How and when were you made aware of her **sex**?
    **Answer: Yes, based on my assumption due to her name, Alisa Walton and more than likely between 2019 – 2021, Alisa may have been referred to as a female. I cannot provide any specific information or time.**

**RETALIATION ALLEGATION:**

9. Were you aware of the Complainant being involved in EEO activity prior to this complaint? (EEO activity includes filing a charge, testifying, assisting another, or participating in a discrimination proceeding; or otherwise opposing discrimination.) If so, when did you become aware of the Complainant's EEO activity?
    **Answer: No**

10. If you were named by the Complainant as a Responsible Management Official or witness, in a prior EEO Complaint that he/she filed or was involved in, please identify the case number(s) and identify the issue(s) involved in the complaint.

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE | Date Signed |
|---|---|---|---|
| | | Date: 2022.07.28 13:45:13 -04'00' | |

October 2015

App. 0003
Affidavit F
Page 2 of 273

**EEO Investigative Affidavit (Continuation Sheet)**

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| | 3 | 7 | 2022-0009-R06 |

**Answer:  N/A**

11.  If you were involved in the prior EEO activity, what was your personal involvement in that case(s)?
**Answer: N/A**

12. If not involved, how did you become aware of the EEO activity?
**Answer: Alisa's rebuttal/reply to her proposed removal provided by her attorney, Mollie Buie.**

13. If you were involved in the prior EEO activity, what was your personal involvement in that case(s)?
**Answer: N/A**

**CLAIM 5: ON MARCH 1, 2022, COMPLAINANT WAS ISSUED A NOTICE OF PROPOSED REMOVAL FOR SUPPOSEDLY FAILING TO SUCCESSFULLY COMPLETE THE PIP COMPLAINANT WAS PLACED ON NOVEMBER 10, 2021. COMPLAINANT WAS NOTIFIED ON APRIL 22, 2022, THAT A DECISION WAS MADE TO NOT SUBSTANTIATE THE REMOVAL.**

14.  The Complainant alleged in her complaint that she received a Notice of Proposed Removal on or about March 1, 2022, for failing to successfully complete the PIP Complainant was placed on November 10, 2021, and notified on April 22, 2022, that a decision was made to not substantiate the Removal. Is this true?  Please respond to Complainant's allegation.
**Answer: Yes**

15.   The Complainant alleged you made the decision to not substantiate the Removal. If you did not make the decision, what was your involvement, if any, in this action?
**Answer: Correct**

16.  If you had no involvement in Complainant being issued the Notice of Proposed Removal, please provide the management official who did. Identify by name, position title, facility address, telephone number and email address.
**Answer: Garrett Westfall, Special Agent in Charge, Western Region Field Office, Office of Inspector General, Office of Investigations, 1201 Elm Street, Suite 500, Dallas, TX 75270.**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:46:35 -04'00' | Date Signed |
|---|---|---|---|

October 2015

App. 0004
Affidavit F
Page 3 of 273

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 4 | 7 | 2022-0009-R06 |

17. Who concurred with the action to issue the Complainant a Notice of Proposed Removal? Identify by name, position title work location and phone number.
    **Answer: I do not know, I was not involved in that process.**

18. Did Complainant provide you with an oral and/or written response to the Notice of Proposal Removal? If so, what was her oral presentation and if there was a written presentation, please provide a copy.
    **Answer: Yes, both.**

19. How was the Complainant notified (verbally or in writing) of being issued a Decision for the Notice of Proposed Removal? If verbally, who notified her and when? **If in writing, provide a copy of the written notification**.
    **Answer: Email.**

20. As the deciding official to Complainant's Notice of Proposed Removal, what was your decision? Please be specific.
    **Answer: I was informed by Human Resources that I could support the proposed removal, I could recommend reassignment or take no action. I wanted to reassign Alisa to a new supervisor; however, she was under new immediate supervision, so the recommendation was to take no action by not sustaining the proposal to remove her.**

21. Complainant alleges you made the decision to not sustain the proposal to remove her from her position. Is this accurate?
    **Answer: Yes.**

22. Please explain, if not already done so, why Complainant was issued a Decision to not sustain the Notice of Proposed Removal?
    **Answer: Please see below.**

**Upon review of the Performance Improvement Plan assessed results regarding SA Alisa Walton by SAC Garrett Westfall, I do not support SAC Westfall's proposed removal for unacceptable performance. I recommend no action as SA Walton has a new immediate supervisor.**

**I disagree with the created tasks and deadlines established for the PIP as I do not believe the tasks provided an opportunity for the employee to be successful.**
- **Tasks had to be reevaluated and subsequently the number of tasks had to be reduced.**
- **Established completion dates for the records review task was unrealistic and created without evaluating the quantity or quality of information associated with the task.**
- **Deadlines were consistently adjusted or extended for assignment during the evaluation period.**
- **Unintentionally, tasks may have been created and deadlines established based on what the supervisor believed that it would take someone with the same level of experience and training that the supervisor had to accomplish the task and not a GS-1811-13 employee.**

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:47:40 -04'00' | Date Signed |
|---|---|---|---|

October 2015

App. 0005
Affidavit F
Page 4 of 273

**EEO Investigative Affidavit (Continuation Sheet)**

| Page No. | No. Pages | Case No. |
|---|---|---|
| 5 | 7 | 2022-0009-R06 |

I disagree that the employee was provided the environment to demonstrate acceptable performance through closer than normal supervision.

- The supervisor conducting the evaluation had been promoted and was no longer the employee's immediate supervisor.
- The employee's daily interaction while working with the tasks identified on the PIP were conducted with a new immediate supervisor that was less experienced. While the evaluating supervisor met with the employee as identified, any questions, discussions, or concerns would have occurred daily between the employee and their new immediate and less experienced supervisor.
- I believe that this environment would be disadvantageous to the employee and could promote unclear expectations or conflicting guidance as stated during the employee's rebuttal.
- Other mitigating circumstances include a reported death in the evaluated employee's family and this occurring during the holiday season.

I disagree with evaluation of the of the work products submitted by the employee undergoing the PIP as I feel the evaluations were overly critical.

- As with the identification of the tasks to be evaluated during the PIP, the supervisor may have unintentionally set their expectations at their level (GS-1811-15) and not at the employee's level who was being evaluated. The supervisor's level of training and experience provides the supervisor with a better level of understanding when evaluating information and determining the information's relevancy which the employee may not possess. This creates a level of assumption by the supervisor the evaluated employee would know what the supervisor would identify as relevant and why that information would be relevant.
- Supervisors are required to review and confirm work products submitted by agents that contain dates, monetary amounts, cited sources, and other statements which may take a significant amount of time. As stated by the supervisor, the "Reliance on your work products has real world effects to include taking away someone's civil liberties and livelihood." However, the supervisor also states that extensive reviews should not have to be conducted by management on work products by a GS-1811-13. The supervisor is still responsible for the accuracy of the information and its review but implies the level of information verification as conducted during this evaluation may not be applied equally amongst other GS-1811-13s.
- The employee's work product was expected to be at a higher grade than their current GS-1811-13 grade as indicated by the evaluating supervisor. The supervisor indicated they should be able to provide the employee's work product to internal and external stakeholders; however, as a GS-1811-13 they are not expected to produce reports which do not require management oversight, review, or corrections.

23. What reason(s) was provided to the Complainant for issuing her a Decision to not sustain the Notice of Proposed Removal?
    **Answer: That after carefully reviewing the totality of materials and information that I have been provided, I am not sustaining the proposal to remove you from your position.**

24. Was Complainant's **race** a factor in your decision?
    **Answer: No**

If so, explain in detail how the Complainant's **race** was a factor and why.
**Answer: N/A**

25. Was Complainant's **sex** a factor in your decision?
    **Answer: No**

_____
**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE | Date Signed |
|---|---|---|---|
| | | Date: 2022.07.28 13:49:01 -04'00' | |

October 2015

App. 0006
Affidavit F
Page 5 of 273

| | Page No. | No. Pages | Case No. |
|---|---|---|---|
| **EEO Investigative Affidavit (Continuation Sheet)** | **6** | **7** | **2022-0009-R06** |

If so, explain in detail how the Complainant's **sex** was a factor and why.
**Answer: N/A**

26. Was Complainant's **prior EEO activity** a factor in your decision?
    **Answer: No**

If so, explain in detail how the Complainant's **prior EEO activity** was a factor and why.
**Answer: N/A**

27. Cite the Agency policies and/or contract provisions that were relied upon in your decisions and/or actions when issuing the Complainant, a Notice of Proposed Removal. Explain in detail how each policy and/or contract provision applies.
    **Answer: I relied on counsel with HRD that I had three options based on the information provided by the supervisor for the PIP. I could sustain their recommendation of removal, recommend reassignment or not sustain the supervisor's recommendation.**

28. **Other than this EEO complaint** are you aware if the Complainant filed any other kind of administrative action/appeal, grievance and/or met with higher level management when Complainant was issued a Notice of Proposed Removal? If so, to whom (name and title) did she complain, when (what date), what was the resolution/response? And what is the status of the appeal? **Provide a copy of the written contentions, if applicable.**
    **Answer: In the final reply provided by Alisa Walton's attorney, Molly Buie, there are references regarding Alisa Walton seeking EEO counseling in Nov 2021 and filing a formal complaint in Feb 2022.**

## HARASSMENT/HOSTILE WORK ENVIRONMENT:

29. Did Complainant tell you that your actions constituted harassment and/or a hostile work environment for her? If so, describe in detail when and what specifically the Complainant told you and what was your response/action?
    **Answer: No.**

30. Are you aware of Complainant (or anyone acting on behalf of Complainant) bringing to the attention of any other management official concerns about her allegation of harassment/hostile work environment? If so, to whom did he/she inform of her concerns and when, to the best of your knowledge.
    **Answer: No.**

31. Was an investigation conducted into Complainant's allegations of harassment/hostile work environment? If so, by whom and when?

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE Date: 2022.07.28 13:50:53 -04'00' | Date Signed |
|---|---|---|---|
| October 2015 | | | |

| **EEO Investigative Affidavit (Continuation Sheet)** | Page No.<br>**7** | No. Pages<br>**7** | Case No.<br>**2022-0009-R06** |
|---|---|---|---|

    **Answer: I do not know.**

32.  To your knowledge, what was the outcome of the investigation?  Please provide a copy of the report.
   **Answer: I do not know.**

33.  Was Complainant informed of the outcome?  If yes, how?
    **Answer: I cannot answer.**

34.  Was any corrective or preventative action necessary?  If so, what action was taken?
    **Answer: I cannot answer.**

35.  If no investigation was conducted, please explain why.
    **Answer: I cannot answer.**

36.  Have you received training, since your last affidavit, on anti-harassment/hostile work environment while employed by the agency?  If so, when and what?
   **Answer: N/A**

*37.*  Do you have any additional information or documentation that is relevant to the issue including in this EEO complaint and/or Complainant's claim of discrimination, retaliation, and harassment/hostile work environment?  ***[If you mentioned any documents in answering your affidavit questions please provide.***
    **Answer: I have provided the documents.**

---

**I declare under penalty of perjury that the foregoing is true and correct.**

| Affiant's Signature | | Digitally signed by THOMAS ROELKE<br>Date: 2022.07.28 13:52:13 -04'00' | Date Signed |
|---|---|---|---|

October 2015

App. 0008
Affidavit F
Page 7 of 273

# Certification

| Case Number |
|---|
| **2022-0009-R06** |

I have read the proceeding attached statement, consisting of __7__ pages, and it is true and complete to the best of my knowledge and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code which states:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both."

## Privacy Act Statement and Rehabilitation Act Notice

**Privacy Act Statement:** Your information will be used to adjudicate complaints of alleged discrimination and to evaluate the effectiveness of the EEO program. Collection is authorized by 39 U.S.C. 401, 409, 410, 1001, 1005, and 1206. Providing the information is voluntary, but if not provided, we may not be able to process your request. We may disclose your information as follows: in relevant legal proceedings; to law enforcement when the Agency or requesting agency becomes aware of a violation of law; to a congressional office at your request; to entities or individuals under contract with the Agency; to entities authorized to perform audits; to labor organizations as required by law; to federal, state, local or foreign government agencies regarding personnel matters; to the Equal Employment Opportunity Commission; and to the Merit Systems Protection Board or Office of Special Counsel.

**Rehabilitation Act Notice:** Under the Rehabilitation Act, medical information is confidential and may only be requested or disclosed in very limited circumstances. Medical documentation about the complainant's and possible comparison employees' medical conditions and work restrictions may be requested in connection with the investigation of an EEO complaint. Information about medical restrictions (but not medical conditions) obtained in the course of an EEO investigation may be disclosed to supervisors and managers who need to know about restrictions on the work or duties of the employee and about necessary accommodations. Supervisors and managers are not permitted to share such information with peers or subordinates or to discuss the information with those who have no need to know and whose requests for the information are not job-related and consistent with business necessity.

## Standards of Conduct

Regulations require all employees to cooperate in any EEO investigation.

Subscribed and (sworn) (affirmed) before me on the _28_ day of July_____, 2022___.

*(Affiant, sign in the presence of an EEO Complaints Investigator.)*

| Signature of EEO Complaints Investigator | Signature of Affiant | |
|---|---|---|
| | *[signature]* | Digitally signed by THOMAS ROELKE<br>Date: 2022.07.28 14:04:44 -04'00' |

## Declaration

I declare under penalty of perjury that the foregoing is true and correct.

*(Affiant must sign and date if attached statement was not completed in the presence of an EEO Complaints Investigator.)*

| Signature of Affiant | Date Signed |
|---|---|
| X *[signature]* Digitally signed by THOMAS ROELKE<br>Date: 2022.07.28 14:05:11 -04'00' | **July 28, 2022** |

Form 2571 October 2015

App. 0009<br>Affidavit F<br>Page 8 of 273

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

ALISA WALTON,          )
                        )
          **Plaintiff ,**     )
                        )
         **v.**           )     **Case No. 3:25-CV-00535-S**
                        )
LEE ZELDIN,          )
  **Administrator, U.S. Environmental**  )
  **Protection Agency,**     )
                        )
         **Defendant.**   )
                        )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND REQUESTS FOR ADMISSION

Plaintiff Alisa Walton hereby propounds her First Set of Interrogatories and Requests for Production of Documents, and Requests for Admissions upon defendant pursuant to Rules 33, 34, and 36, Fed. R. Civ. P., and the Local Rules of this Court.  <u>Serve a copy of your Answers and Objections no later than 30 days from your receipt of this discovery, or another date agreed to by the parties</u>, on counsel for Plaintiff, Robert C. Seldon, Esq., Seldon Bofinger, & Associates, P.C., 1319 F Street, NW, Suite 200, Washington, DC 20004; and Donald E. Uloth, Esq., Law Office of Donald Uloth, 18208 Preston Rd. Suite D-9 #261, Dallas, TX 75252.  Respond in accordance with the Instructions and Definitions contained herein and the Federal Rules of Civil Procedure.

<u>The preferred manner of service</u> is email to <u>rcs@sba-pc.com</u> and <u>don.uloth@uloth.pro</u>.

1

## INSTRUCTIONS

1.)    This discovery extends to all responsive information and documents within your custody or possession or otherwise subject to your control, whether located on your business premises, virtually, in the cloud, or remotely, or at the business premises or residences of your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, grantees, awardees, parents, holding companies, affiliates, offices, officials, members, directors, representatives, agencies, departments, councils, bureaus, subsidiaries, units, divisions, and parts, or elsewhere.

2.)    Segregate and index all responsive documents according to the number of the Interrogatories or Request(s) for Production to which they respond.

3.)    If any responsive documents have been produced previously, you may answer without producing additional copies provided you identify responsive documents by noting their titles and the Bates numbers where they appear.

4.)    If any responsive information or documents cannot be or are not produced in full due to their loss, destruction, or misplacement, identify all such information and documents; provide a complete and accurate account of the reasons for nonproduction and the circumstances surrounding their destruction, loss, or unavailability; identify persons with personal knowledge of the circumstances surrounding their destruction, loss, or unavailability; and respond to the fullest extent possible.

5.)    If any responsive documents or information is withheld on the grounds of privilege, before formally claiming privilege or asserting work product, confer with counsel for plaintiff about a way or ways to eliminate unnecessary claims of privilege or work product.  If claims of privilege or work product remain as to any responsive documents or information after

2

the parties confer, identify:

       (a.)   the author(s), address(es), recipients(s), present custodian(s), and date(s) of all such documents and information;

       (b.)   all other persons who have seen or learned of all or part of any such documents and information;

       (c.)   the subject matter and contents of each such document;

       (d.)   the specific basis for the claim of privilege; and

       (e.)   all other information necessary to adjudicate the propriety of your claim of privilege.

6.)     <u>If you are unable to unequivocally admit a matter whose admission is sought, your answer must deny the matter specifically or set out in detail why you cannot admit or deny the matter</u>.  A denial must fairly meet the substance of the requested admission and, when good faith requires that you qualify an answer or deny only a part of the matter of which an admission is requested, you must specify so much of it as is true and qualify or deny the remainder.

7.)     <u>You may not give lack of knowledge or information as a reason for failure to admit or deny a request for admission</u> unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.  You may not object to a request on the basis that it presents a genuine issue for hearing.

8.)     <u>Each matter requested to be admitted may be deemed admitted</u> if you do not serve a timely written answer or objection.

9.)     <u>In responding to this discovery initiative, you have a duty to consult every available source</u> including, but not limited to your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, affiliates, officers, directors, representatives, agencies,

App. 0012

departments, awardees, grantees, bureaus, subsidiaries, units, divisions, councils, and parts.

10.)    When an Interrogatory states "[p]rovide a complete and accurate account" of an action, your response must include: a.) all persons (including all personnel and human resource specialists) involved in taking or not taking such action; b.) each such person's role in such action or inaction including their  opinions, recommendations, and concurrences; c.) all communications made or received by each such person involved in the foregoing actions or inactions; d.) and the dates of each such person's communications.

11.)    For each discovery or part thereof which you refuse to answer on grounds of burdensomeness or proportionality answer the parts that are not objectionable and state:

    a.) The number of files and/or documents needed to be searched to complete your answer without objection;

    b.) The location of such files; and

    c.) The number of employee-hours required to conduct the search and the basis for calculating that number.

12.)    If you contend that any of these Interrogatories, Requests for Production, or Requests for Admissions exceed any numerical limitations upon these Interrogatories, Requests for Production, or Requests for Admissions, do not decide which of these Interrogatories, Requests for Production, or Requests for Admissions you will not be answering without first conferring with Plaintiff's counsel.

13.)    This discovery initiative is continuing in character and must be supplemented to the extent required by the Federal Rules of Civil Procedure.  If you are withholding any information or documents in response to Plaintiff's Interrogatories or Requests for Production of Documents,

your responses must state that and provide an explanation sufficient for it to be understood the information and documents being withheld.

15.)    <u>Responsive documents contained in the Report of Investigation of Plaintiff's Administrative Complaint of Discrimination</u> at your option do *not* have be produced, provided you identify responsible documents by title, Report of Investigation volume number, and Bates numbers.

## **<u>DEFINITIONS</u>**

Unless the text indicates to the contrary:

A.)    "<u>You</u>" or "<u>your</u>" means the person holding the office of the Administrator of the Environmental Protection Agency ("EPA") on permanent or acting basis, EPA as an entity, and all of your agents, attorneys, officers, representatives, employees, contractors, sub-contractors, affiliates, parents, holding companies, offices, officials, members, directors, sub-agencies, departments, bureaus, subsidiaries, units, divisions, parts, predecessors, successors, assigns, grantees, or awardees. Where documents, knowledge or information in your custody or possession or subject to your control is requested or referred to, such request or referral includes documents, knowledge, and information in the custody or possession or subject to the control of all of the foregoing persons and entities.

B.)    "<u>Document</u>" means the original and all non-identical copies and drafts of all of the following that can be found in any medium and/or storage device, including but not limited to: <u>cloud-based storage systems and applications</u>; <u>servers and IT systems</u>; <u>personal computers</u>, <u>external hard drives and flash drives</u>; <u>mobile phones</u>, <u>tablets</u>, <u>hand held</u> and <u>wearable devices</u>; <u>postings on the internet, including but not limited to postings on Facebook, Bluesky, Twitter, X, Periscope, Reddit, Instagram, You Tube, TikTok and any other form of social media and internet-</u>

App. 0014

based communication; and hard copies, text messages, emails, and other electronic communications and virtual recordations.

C.)    "Person" means any individual, government entity, natural person, corporation, partnership, association, joint venture, sole proprietorship, limited liability company, firm or other business enterprise or legal entity, or any of such person's agents, attorneys, officers, representatives, employees, contractors, sub-contractors, grantees, awardees, affiliates, offices, officials, members, directors, representatives, agencies, departments, bureaus, subsidiaries, units, divisions, parts, parents, holding companies, predecessors, successors, or assigns.

D.)    "Identify" with respect to a person means to provide each such person's name and last known business address, place of residence, and business and residence telephone numbers, and business email address.

E.)    "Identify" with respect to a document means to provide a description thereof, its title, the date of its creation and transmission(s), its author(s), its recipient(s), its subject matter(s), and all attachments thereto.

F.)    "And" and "or" mean "and/or."

G.)    Use of the singular is deemed to include the plural and vice versa.

H.)    Use of the feminine is deemed to include the masculine and vice versa.

I.)    "Action" means action or inaction.

J.)    "Any" means any/or all.

K.)    "All" means all and/or any.

L.)    "OIG" means the EPA Office of the Inspector General.

M.)    "OI" means the Office of Investigations of OIG.

N.)    "Dallas Field Office" means the OIG Office to which plaintiff is assigned.

6

App. 0015

O.      "PIP" means Performance Improvement Plan.

P.      "EPARS" means Employee Performance and Recognition Systems Plan.

Q.      "Special Agent" means current and former Special Agents.

## INTERROGATORIES

In accordance with the foregoing Definitions and Instructions:

1.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's performance standards and EPARS for Fiscal Year 2020.

2.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's performance standards and EPARS for Fiscal Year 2021.

3.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's mid-year and full-year performance appraisals for Fiscal Year 2020.

4.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's mid-year and full-year performance appraisals for Fiscal Year 2021, the latter of which was issued on or about October 12, 2021.

5.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing plaintiff's mid-year and full-year performance appraisals for Fiscal Year 2022.

6.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing  a PIP to plaintiff on or about November 10, 2021.

7.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing a Notice of Proposed Removal for Unacceptable Performance to plaintiff on or about March 1, 2022.

8.)     Provide a complete and accurate account of drafting, finalizing, approving, and issuing a Decision on Proposed Removal to plaintiff on or about April 22, 2022.

9.)    Provide a complete and accurate account of your knowledge of and information about plaintiff's informal administrative complaint of discrimination from her Initial Contact with your Office of Civil Rights until plaintiff filed her formal administrative complaint of discrimination with your Office of Civil Rights until on or about February 15, 2022.

10.)    Provide a complete and accurate account of your knowledge of and information about plaintiff's formal administrative complaint of discrimination Office of Civil Rights until plaintiff filed the amendments to plaintiff's formal administrative complaint of discrimination on or about May 9, 2022, and May 10, 2022.11.)

11.)    Provide a complete and accurate account of your knowledge of and information about plaintiff's formal administrative complaint of discrimination and amendments to plaintiff's formal administrative complaint of discrimination until the issuance of the Report of Investigation of those complaints on or about October 27, 2022.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

Defendant is directed to produce the following documents:

1.)    All documents that refer or relate, whether in whole or in part, to Defendant's answers to Plaintiff's Interrogatories.

2.)    All documents that are a part of plaintiff's Official Personnel File.

3.)    All documents that refer or relate, whether in whole or in part, to plaintiff's performance or conduct while in your employ that are not contained within her Official Personnel File from Fiscal Year 2020 to Fiscal Year 2022.

4.)    Except to the extent they have been produced in response to the foregoing Requests for Production, all documents that refer or relate, whether in whole or in part, to plaintiff's EPARS and performance appraisals, mid-year and full-year, from Fiscal Year 2020 to Fiscal Year 2022.

8

App. 0017

5.)     All documents that refer or relate, whether in whole or in part, to your manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to developing and putting into effect EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022.

6.)     All documents that refer or relate, whether in whole or in part, to you policies, manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to processes by which performance appraisals and ratings of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 are established and put into effect for Fiscal Year 2020 through Fiscal Year 2022.

7.)     All documents that refer or relate, whether in whole or in part, to your policies, manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to processes by which PIP's are issued or may be considered to be issued to OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 and put into place for Fiscal Year 2020 through Fiscal Year 2022.

8.)     All documents that refer or relate, whether in whole or in part, to your policies, manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to processes by which performance-based awards and bonuses are issued to OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 and put into place for Fiscal Year 2020 through Fiscal Year 2022.

9.)     All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year

9

2022 put into place, issued, conferred about, was consulted about, approved, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Garrett Westfall.

10.) All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Daniel Hawthorne.

11.) All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Staci Gurin.

12.) All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

12.) All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 after Sean Earle became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred

about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity that related to plaintiff.

12.)     All documents that refer or relate, whether in whole or in part, to EPARS, performance standards, performance plans, and any other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Christopher Huntington.

14.)     All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Garrett Westfall.

15.)     All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Staci Gurin .

16.)     All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Daniel Hawthorne.

11

17.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity by Christopher Huntington.  .

18.)    All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 through the time that Sean Earle became Deputy Assistant Inspector General for Investigations that Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

All documents that refer or relate, whether in whole or in part, to EPARS, performance appraisals, performance ratings, and another other measures of performance by Sean Earle after he became Deputy Assistant Inspector General for Investigations that Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity that related to plaintiff.

19.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Garrett Westfall put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

12

20.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Staci Gurin recommended put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

21.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Daniel Hawthorne put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity..

22.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Christopher Huntington recommended, issued, approved, signed or concurred in.

23.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that Sean Earle became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity..

23.)    All documents that refer or relate, whether in whole or in part, to bonuses or cash awards for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that Sean Earle became Deputy Assistant Inspector General for Investigations

13

which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

All documents that refer or relate, whether in whole or in part, to bonuses or cash awards that related to plaintiff o plaintiff after Sean Earle became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity that related to plaintiff.

24.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Garrett Westfall recommended, issued, approved, signed or concurred in.

25.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Daniel Hawthorne recommended, issued, approved, signed or concurred in.

26.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Christopher Huntington recommended, issued, approved, signed or concurred in.

27.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 which Staci Gurin put into place, issued, approved, conferred

14

about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

28.)    All documents that refer or relate, whether in whole or in part, to PIP's and the outcomes of PIP's for OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations which Sean Earle put into place, issued, approved, conferred about, was consulted about, or signed as a rating official, reviewing official, or acted upon in any other official capacity.

29.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Garrett Wesfall.

30.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Staci Gurin.

31.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Daniel Hawthorne.

32.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through Fiscal Year 2022 under the direct or indirect supervision of Christopher Huntington.

33.)    Documents from which the following information can be derived:  names, races, sexes, and grade levels of OIG GS-1811 Special Agents from GS Grade 13 to GS Grade 15 for Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations which Sean Earle issued or signed as a rating official, reviewing official, or any other official capacity

34.)    Performance appraisals and ratings of Garrett Westfall from Fiscal Year 2020 through Fiscal Year 2022.

35.)    Performance appraisals and ratings of Staci Gurin from Fiscal Year 2020 through Fiscal Year 2022.

36.)    Performance appraisals and ratings of Daniel Hawthorne from Fiscal Year 2020 through Fiscal Year 2022.

37.)    Performance appraisals and ratings of Christopher Huntington from Fiscal Year 2020 through Fiscal Year 2022.

38.)    Performance appraisals and ratings of Sean Earle from Fiscal Year 2020 through the time that he became Deputy Assistant Inspector General for Investigations.

39.)    Counseling reports and requests to initiate the informal administrative EEO complaints process, formal administrative EEO complaints, Reports of Investigation of formal administrative EEO complaints, Final Agency Decisions on administrative EEO complaints, U.S. Equal Employment Opportunity Commission decisions on formal administrative EEO complaints and Final Agency Decisions on administrative EEO complaints, and final decisions and settlement agreements issued by federal courts in which any of the following persons is alleged to have engaged in discrimination based on sex, race, color or retaliation from Fiscal Year 2020 through Fiscal Year 2022.

16

    A.)     Garrett Westfall

    B.)     Staci Gurin

    C.)     Daniel Hawthorne

    D.)     Sean Earle

    E.)     Christopher Huntington

40.)    All documents that refer or relate, whether in whole or in part, to performance-based actions that you considered or drafted for issuance to plaintiff during Fiscal Year 2020 through Fiscal Year 2022that were not issued to plaintiff.

41.)    All documents that refer or relate, whether in whole or in part, to your manuals, policies, handbooks, guidance, and requirements that refer or relate, whether in whole or in part, to circumstances and complaints in which a subordinate has alleged that she has been subjected to a hostile work environment by a supervisor or requested reassignment because she has alleged she has been subjected to a hostile work environment by a supervisor.

42.)    All documents that were returned to you in response to the electronic discovery accompanying this written discovery.

### <u>REQUESTS FOR ADMISSION</u>

1.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 did not appraise plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 13.

2.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 appraised plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent higher than GS Grade 13.

App. 0026

3.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 appraised plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 14.

4.)    Admit that plaintiff's performance appraisal for Fiscal Year 2020 appraised plaintiff's performance under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 15.

5.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was not based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 13.

6.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent higher than GS Grade 13.

7.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 14.

8.)    Admit that the PIP plaintiff was issued on or about November 10, 2021, was based on an appraisal of plaintiff's performance for Fiscal Year 2021 under a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 15.

9.)    Admit that in determining that plaintiff failed the PIP she was issued on or about November 10, 2021, plaintiff's performance was not based on an appraisal or rating of plaintiff's performance during the PIP against a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 13.

App. 0027

10.)     Admit that in determining that plaintiff failed the PIP she was issued on or about November 10, 2021, plaintiff's performance was based on an appraisal or rating of plaintiff's performance during the PIP against a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 14.

11.)     Admit that in determining that plaintiff failed the PIP she was issued on or about November 10, 2021, plaintiff's performance was based on an appraisal or rating of plaintiff's performance during the PIP against a performance plan or against performance standards of an OIG GS-1811 Special Agent GS Grade 15.

12.)     Admit that on or about March 1, 2022, Garrett Westfall issued a Notice of Proposed Removal for Unacceptable Performance to plaintiff.

13.)     Admit that you delegated authority to Thomas Roelke to be the deciding official responsible for making your decision on the a reduction in grade or removal of plaintiff including but not limited to, your decision whether to sustain .

14.)     Admit that on or about April 22, 2022, Thomas Roelke issued your decision not to sustain the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022.

15.)     Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, Thomas Roelke carefully and objectively considered the facts detailed in the Notice of Proposed Removal for Unacceptable Performance and the supporting documentation, as well as plaintiff's oral and written responses.

16.)     Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other

App. 0028

matters, Thomas Roelke determined that the tasks and deadlines established in the PIP that preceded the foregoing Notice of Proposed Removal did not provide plaintiff with an opportunity to be successful.

17.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that plaintiff was not provided the environment to demonstrate acceptable performance.

18.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that the work environment provided to plaintiff during the PIP would be disadvantageous to plaintiff.

19.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that the work environment provided to plaintiff could promote unclear expectations or conflicting guidance during the PIP.

20.)    Admit that in not sustaining the Notice of Proposed Removal for Unacceptable Performance issued by Garrett Westfall to plaintiff on or about March 1, 2022, among other matters, Thomas Roelke determined that during the PIP, the work product plaintiff was expected to produce was the work product expected of a GS 1811 Special Agent higher than plaintiff's grade level.

21.)    Admit that on or about January 24, 2022, you delegated authority to Thomas Roelke to be the deciding official responsible for making your decision on a proposed reduction in grade or removal of plaintiff.

20

App. 0029

Respectfully,

_____

Robert C. Seldon, Esq.
 D.C. Bar No. 245100
   *Pro hac vice*
Seldon Bofinger & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C. 20004
(202) 393-8200
rcs@sba-pc.com
Counsel for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I served Plaintiff's First set of Interrogatories

and Requests for Production of Documents, and Requests for Admissions via email upon:


Mary M. Cherry, Esq.
Assistant United States Attorney
Office of the United States Attorney
 For the Northern District of Texas
1100 Commerce Street
3rd Floor
Dallas, TX 75242
Mary.Cherry@usdoj.gov


   //Robert C. Seldon, Esq.

21

App. 0030

### Electronic Searches

### General Instructions

#### Types of Electronic Documents and Messages

Emails and other electronic communication to, from, cc'd, bcc'd, drafted by, in-box, out box, junk, spam, deleted, trash, <u>etc</u>., whether stored in email boxes and hard drives

Attachments to emails and other electronic communication

Text messages on cell phones, tablets, and other electronic devices

#### Format of Production

pdf (preferably compiled and searchable)

Native (for attachments)

#### Instructions

Capitalization or lack of capitalization in search terms is to be ignored.

Terms connected by "OR" means a search for documents in which either of the original terms, for example "PIP" OR "Performance" or "rating" OR "appraisal" appears in one document.

Terms connected by "AND" means a search for documents in which the original term, for example "Reduction" AND another of the listed terms, for example "Grade," both appear in one document.

When terms appear within quotation marks, for example "Notice of Proposed," the terms must appear together in one document and in the order in which they are written.

When "w/s" appears between two search terms, for example "cat" w/s "dog" searches should be conducted for documents in which both "cat" and "dog" appear in the same sentence.

When "w/p" appears between two search terms, for example "bird" w/p "house" searches should be conducted for documents in which both "bird" and "house" appear in the same paragraph sentence.

Searches where an "*" is included at the end of a search term should include every variation of the search term, <u>e.g.</u>, a search for "appraisal*" should include searches for "plans," "planned," and "pl

Searches should be conducted using root terms, e.g., a search for "Performance Improvement Plan" is to include "Performance Improvement Plans" and a search for "Investigating Officer" should include "Investigating Officer's."

## A. Date Range of Searches

October 1, 2019 through September 30, 2022

## B. Individuals' Emails And Electronic Documents To Be Searched For

Garrett Westfall
Staci Gurin
Sean Earle
Erik Mabry
Thomas Roelke
Alisa Walton
Christopher Huntington

## C. Searches Of Emails And Electronic Documents of the Foregoing Individuals

Walton **AND**

"Employee Performan*" **OR**
"Recognition System" **OR**
"Apprais*" **OR**
"Rat*" **OR**
"Critical" **OR**
"Element" **OR**
"Bonus" **OR**
"Award" **OR**
"PIP" **OR**
"Performance" w/p "Improvement" **OR**
"Opportunity" w/p "Acceptable" **OR**
"Notice" w/p "Proposed" **OR**
"Unacceptable" w/p "Proposed" **OR**
"Proposed Removal" **OR**
"Decision on" w/p "regarding your"

## D. Searches Of Text Messages of the Foregoing Individuals *Other Than Alisa Walton*

Walton **OR**
Alisa