# United States District Court

### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ALISA WALTON | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-0535-S |
| | § | |
| LEE ZELDIN, Administrator, U.S. | § | |
| Environmental Protection Agency | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiff Alisa Walton's Motion for Reconsideration ("Motion") [ECF No. 60]. The Court has reviewed the Motion, Plaintiff's Brief in Support of the Motion ("Plaintiff's Brief")[1] [ECF No. 60], Defendant Lee Zeldin, Administrator, U.S. Environmental Protection Agency's Amended Response to the Motion [ECF No. 73], Plaintiff's Reply Brief in Support of the Motion [ECF No. 79], and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

### A. Plaintiff's Employment

This employment discrimination lawsuit arises out of Plaintiff's employment with the Office of Inspector General of the U.S. Environmental Protection Agency ("EPA OIG"). Second Am. Compl. [ECF No. 55] ¶ 1. Plaintiff, who identifies herself as an African American female, works for EPA OIG as a Special Agent/Criminal Investigator in the Office of Investigations. *Id.* ¶¶ 1, 4.

Plaintiff began working for EPA OIG in 2002. *Id.* ¶ 7. According to Plaintiff, she "made consistent progress," "had an impressive track record," and received positive performance reviews until mid-2020. *Id.* ¶¶ 8, 14, 16, 20, 24-25. Plaintiff's performance rating for the first nine months

---

[1] Plaintiff's Brief is attached to the Motion and begins at ECF page number 4.

of Fiscal Year 2020 was "Exceeds Successful." *Id.* ¶ 25. That rating was provided by Edwin Debiew, who served as Plaintiff's supervisor until he retired in June 2020. *Id.* ¶¶ 23-25. In July 2020, Garrett Westfall replaced Debiew as Plaintiff's first-line supervisor. *Id.* ¶ 26. Westfall's supervisor was Dan Hawthorne. *Id.*

Plaintiff claims that Westfall and Hawthorne "improperly" rated her performance for Fiscal Year 2020, even though they "had not supervised [Plaintiff] for at least 90 days during that rating cycle." *Id.* ¶ 28. Westfall and Hawthorne "ignored" Debiew's rating and instead gave Plaintiff "the lowest possible score for a Fully Successful for [Fiscal Year] 2020." *Id.* ¶¶ 29-30. This rating rendered Plaintiff ineligible for a performance bonus that year. *Id.* ¶ 35.

In 2021, Hawthorne retired, and Sean Earle became Westfall's supervisor. *Id.* ¶¶ 27, 38. That year, Westfall gave Plaintiff an "Unacceptable" rating. *Id.* ¶ 43. This rating again made Plaintiff ineligible for an annual performance bonus. *Id.* ¶ 53. Moreover, this rating prevented Plaintiff from qualifying for another Special Agent position or an internal promotion. *Id.* ¶ 54. On November 10, 2021, Westfall placed Plaintiff on a Performance Improvement Plan ("PIP"). *Id.* ¶ 55. As a result of the PIP, other agents were assigned to assist Plaintiff on projects, and Plaintiff's supervisors stopped assigning her to projects. *Id.* ¶ 62.

On February 15, 2022, Plaintiff filed a formal Equal Employment Opportunity Complaint ("EEO Complaint"). *Id.* ¶ 65. Two weeks later, Westfall issued Plaintiff a Notice of Proposed Removal, which proposed removing her from her position, and also removed her from a "highly significant" investigation. *Id.* ¶ 66; *see also id.* ¶ 74. The Deputy Assistant Inspector General for Investigations, Thomas Roelke, declined to remove Plaintiff from her position. *Id.* ¶¶ 67, 74. Upon issuing his decision on April 22, 2022, Roelke could have reassigned Plaintiff to a new supervisor, but he did not do so. *Id.* ¶¶ 74, 83. Further, Defendant did not restore Plaintiff to the highly

significant investigation from which she had been removed. *Id.* ¶ 85. Because of the PIP and Notice of Proposed Removal, Plaintiff did not receive a Full Year appraisal for Fiscal Year 2022. *Id.* ¶ 93. Plaintiff cannot transfer to a different position without that appraisal. *Id.* ¶¶ 93, 111.

In early May 2022, the acting Assistant Inspector General for Investigations authorized an investigation into alleged misconduct by Plaintiff. *Id.* ¶¶ 86, 88. The investigation has prevented Plaintiff from being assigned to highly significant investigations. *Id.* ¶ 87. As of the filing of Plaintiff's Second Amended Complaint, the investigation into Plaintiff had not been closed. *Id.* ¶ 88.

### *B. The EEO Complaint*

In Plaintiff's EEO Complaint, she checked the boxes for race, color, and sex discrimination and retaliation. Decl. of Rashiida "Renee" Clark in Supp. of Agency's Mot. to Dismiss ("Clark Declaration") [ECF No. 21-3] Ex. A, at 3. Plaintiff explained that she believed the 2021 PIP and 2021 Unacceptable performance rating were discriminatory and retaliatory. *Id.* at 7. Plaintiff noted that "[a]s a result of the 1.6 rating, I am not eligible to receive a bonus or consideration for promotion." *Id.* Plaintiff also challenged an ongoing hostile work environment. *Id.*

On May 10, 2022, Plaintiff amended her EEO Complaint to challenge additional employment actions. Second Am. Compl. ¶ 95. Plaintiff added "two additional claims to the hostile work environment allegation." Clark Decl., Ex. C, at 13. In the amendment, Plaintiff challenged the March 2022 Notice of Proposed Removal and the May 2022 investigation into Plaintiff. *Id.* Plaintiff "allege[d] that both of these actions are part of an ongoing hostile work environment based on my sex, race, and protected [Equal Employment Opportunity] activity." *Id.*

### *C. The District of Columbia District Court's Decision*

Based on the foregoing allegations, Plaintiff filed suit in the United States District Court for the District of Columbia ("DC Court") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *See* Compl. [ECF No. 1]. Plaintiff asserted causes of action for race, sex, and race plus sex discrimination and retaliation. *Id.* ¶¶ 97-123. Defendant moved to dismiss Plaintiff's claims, arguing, among other things, that Plaintiff failed to exhaust her claims to the extent they were based on actions other than the 2021 performance rating and PIP. Mem. Op. ("DC Opinion") [ECF No. 28] 1, 6. The DC Court agreed with Defendant and concluded that Plaintiff only exhausted discrimination and retaliation claims based on the 2021 performance rating and PIP. *Id.* at 8. The DC Court granted Defendant's motion to dismiss Plaintiff's claims relating to: (1) the 2021 performance bonus denial; (2) her removal from a highly significant investigation in 2022; (3) the failure to assign her to new investigations; and (4) the failure to issue her a Full Year appraisal for Fiscal Year 2022. *Id.*

Defendant also moved to transfer this case to the Northern District of Texas, and the DC Court granted that request. *Id.* at 5, 10. After the case was transferred, this Court granted Plaintiff leave to file her Second Amended Complaint. *See* Order [ECF No. 54]. Defendant moved to strike portions of the Second Amended Complaint based on the DC Opinion, and Plaintiff asked the Court to reconsider the DC Opinion. *See* ECF Nos. 57, 60.

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) "allows parties to seek reconsideration of interlocutory orders." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Under Rule 54(b), a court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive

law." *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). Courts considering Rule 54(b) motions must determine "whether reconsideration is necessary under the relevant circumstances." *Choice Hotels Int'l, Inc. v. Goldmark Hosp., LLC*, No. 3:12-CV-0548-D, 2014 WL 642738, at *1 (N.D. Tex. Feb. 19, 2014) (citation omitted). The rule does not distinguish between "a situation where a trial judge revises his own order" and "a situation where a second judge revises the earlier order of a previous judge." *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 726-27 (5th Cir. 2012). "[A] successor judge may overrule a previous judge's order as long as the successor judge has a reason it deems sufficient." *Id.* at 728 (citation and internal quotation marks omitted).

## III. ANALYSIS

In her request for reconsideration, Plaintiff clarifies that she intends to challenge six employment actions. Those actions are: (1) the 2021 performance rating and performance bonus denial; (2) the 2021 PIP; (3) the 2022 Notice of Proposed Removal; (4) failing to reassign Plaintiff on April 22, 2022; (5) opening an investigation into Plaintiff; and (6) refusing to close the investigation into Plaintiff. Pl.'s Br. 2. Plaintiff seeks reconsideration of the DC Court's rulings on her retaliation claims based on the third through sixth actions.[2] *Id.* at 2 & n.3. Though the parties ably brief the law applicable to exhaustion of retaliation claims, their arguments largely stem from apparent confusion about what Plaintiff asks this Court to reconsider and what the DC Court decided. Because of the ambiguities present in this case, the Court finds it necessary to thoroughly analyze the DC Court's rulings and reconsider certain parts of the DC Opinion.

---

[2] Plaintiff does not seek reconsideration of the dismissal of her discrimination claims predicated on the third through sixth actions. Pl.'s Br. 2 n.3.

### A. *Unchallenged Actions*

As an initial matter, the Court notes that Plaintiff does not challenge the dismissal of her claims based on her removal from a highly significant investigation in 2022, the failure to assign her to new investigations, and the failure to issue her a Full Year appraisal for Fiscal Year 2022. Plaintiff did not include these decisions in the list of six actions on which her claims are based. *See* Pl.'s Br. 2. And Plaintiff does not mention these actions or argue for their exhaustion elsewhere in her Brief. As such, Plaintiff does not ask the Court to review the dismissal of these three discrete acts, rendering reconsideration unnecessary under the circumstances.

### B. *Notice of Proposed Removal and Investigation*

It is not clear whether the DC Court ruled on Plaintiff's retaliation claims based on the Notice of Proposed Removal or the investigation into Plaintiff. In its analysis, the DC Court stated that "before the EEO, [Plaintiff] did not raise discrete claims for discrimination or retaliation based on those acts." DC Op. 7. But in listing the claims that were being dismissed, the DC Court omitted any reference to either action. *See id.* at 8; *see also* Order ("DC Order") [ECF No. 27] 1 (listing actions being dismissed as the bases for claims and not mentioning the Notice of Proposed Removal or investigation). If the DC Court did not dismiss those claims, there is nothing to reconsider. If the DC Court dismissed those claims, the Court finds it necessary to reconsider that decision both for clarity on what actions remain at issue in this case and because the Court finds that Plaintiff exhausted the claims under the law of both the transferor and transferee circuit.

In her amendment to the EEO Complaint, Plaintiff challenged the Notice of Proposed Removal and investigation as part of "the hostile work environment allegation." Clark Decl., Ex. C, at 13. Because Plaintiff specified that the acts were alleged in connection with a hostile work environment claim, the DC court concluded that Plaintiff "did not raise discrete claims for

6

discrimination or retaliation based on those acts." DC Op. 7. Further, the DC Court faulted Plaintiff for not "object[ing] to EEO's response to her amendment request, which specified that her allegations . . . were only accepted for investigation as a claim of hostile work environment." *Id.* (internal quotation marks omitted).

However, Plaintiff alleged that "these actions are part of an ongoing hostile work environment based on my . . . protected EEO activity." Clark Decl., Ex. C, at 13. In both the Fifth Circuit and D.C. Circuit, courts look beyond the four corners of the charge of discrimination and consider "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (citation omitted); *see also Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("[T]he Title VII claims must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." (citation and internal quotation marks omitted)). And courts look to the "substance" of the plaintiff's statement rather than its "label." *Jennings*, 11 F.4th at 342 (citation omitted); *see also Ortiz-Diaz v. U.S. Dep't of Hous. & Urb. Dev.*, 961 F. Supp. 2d 104, 112 (D.D.C. 2013) ("Complainants can normally still raise claims even if they failed to check the box appropriate to those claims on their EEOC complaint as long as they allege facts that support the claims." (citation omitted)). "[T]he crucial element of a charge of discrimination is the factual statement contained therein. Everything else entered on the form is, in essence, a mere amplification of the factual allegations." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

In this case, the Court concludes that the factual statement in Plaintiff's amendment to her EEO Complaint adequately encompassed a retaliation claim based on the Notice of Proposed Removal and investigation. Plaintiff challenged those two actions and stated that they were taken

7

"based on [her] . . . protected EEO activity." Clark Decl., Ex. C, at 13. Accordingly, Plaintiff included a retaliation claim by "describing retaliation" based on the Notice of Proposed Removal and investigation, *Anderson v. Venture Express*, 694 F. App'x 243, 247 (5th Cir. 2017), and a reasonable investigation arising from Plaintiff's amendment would have included a retaliation claim based on those two actions. As to Plaintiff's failure to object to the agency's characterization of her amendment, the applicable standard for exhaustion in the Fifth Circuit is not the scope of the actual investigation, but what the Court reasonably would expect the agency to investigate. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 & n.9 (5th Cir. 1994) (citation omitted). For the above reasons, the Court finds that a reasonable investigation would have encompassed the relevant actions. Therefore, to the extent the DC Court intended to dismiss Plaintiff's retaliation claim based on the Notice of Proposed Removal and investigation, the Court reconsiders that decision and determines that such a claim survives dismissal based on exhaustion.

### C. Failure to Close Investigation

The DC Court did not rule on any discrimination or retaliation claim based on the failure to close the investigation into Plaintiff. *See, e.g.*, DC Order 1 (not mentioning failure to close the investigation as an action being dismissed as a basis for a claim). Thus, any such claim was not dismissed, and there is nothing for the Court to reconsider. And if the failure to close the investigation should instead be considered part of the claim based on the investigation itself, the Court has decided that Plaintiff's retaliation claim based on the investigation survives.

### D. Failure to Reassign

The DC Court also did not rule on Plaintiff's discrimination and/or retaliation claim based on failure to reassign. The DC Court only ruled on Plaintiff's claim based on the alleged failure to assign Plaintiff to new investigations, which, as noted above, Plaintiff does not challenge here. *See*

8

DC Op. 7 (stating that Plaintiff brought "claims based on . . . the failure to assign her to new investigations"); *id.* at 8 (dismissing unexhausted claims related to "the failure to assign [Plaintiff] to new investigations"). The DC Court did not, however, rule on Plaintiff's claim based on not being assigned to a new supervisor.

In Plaintiff's Brief, she states that the basis for her claims is not the failure to assign her to new investigations, but rather "failing to reassign [P]laintiff on April 22, 2022." Pl.'s Br. 2; *see also* Second Am. Compl. ¶ 120 (asserting the April 22, 2022, failure to reassign as a retaliatory action). Looking to the pleadings before the DC Court and this Court, the failure to reassign that took place on that date pertained to supervisors, rather than investigations. Roelke declined the Notice of Proposed Removal on April 22, 2022. Am. Compl. [ECF No. 20-1] ¶ 72; Second Am. Compl. ¶ 74. According to Plaintiff, "Roelke had the option to reassign [Plaintiff] upon dismissing the Notice of Proposed Removal and claims that he wanted to reassign [Plaintiff] *to a new supervisor.*" Am. Compl. ¶ 81 (emphasis added); Second Am. Compl. ¶ 83. However, he did not do so. Am. Compl. ¶ 81; Second Am. Compl. ¶ 83; *see also* Am. Compl. ¶ 118 ("On April 22, 2022, although [D]efendant determined that the Notice of Proposed Removal would not be sustained, [D]efendant failed to reassign [Plaintiff] . . . ."); Second Am. Compl. ¶ 120 (same).

Because the DC Court never considered or dismissed Plaintiff's claims based on the failure to reassign her to a new supervisor, there is nothing for the Court to reconsider. Any claims based on this action remain pending.

### E. Performance Bonus

The DC Court concluded that Plaintiff did not exhaust her claim based on the denial of a bonus in 2021 because it was "not raised in her EEO charge or amendment request" and because she "did not raise discrete claims for discrimination or retaliation based on [that] act[]." DC Op. 7.

9

However, Plaintiff clarifies that she challenges the denial of her 2021 performance bonus in connection with the Unacceptable performance rating she received in 2021.[3] *See* Pl.'s Br. 2 ("The first action is issuing [P]laintiff an Unacceptable Performance Rating and denying [P]laintiff a performance bonus for Fiscal Year 2021[.]"). And the live version of the complaint at the time of the DC Court's ruling supports Plaintiff's interpretation. *See* Am. Compl. ¶ 103 ("[Plaintiff] was denied a performance bonus for FY 2021 as a result of the false and pretextually low Unacceptable performance rating that [D]efendant issued to [Plaintiff] for that year . . . ."); *see also* Second Am. Compl. ¶ 105 (same). This characterization is in line with Plaintiff's EEO Complaint, in which she challenged the failure to award a bonus. *See* Clark Decl., Ex. A, at 7 ("As a result of the 1.6 rating, I am not eligible to receive a bonus . . . ."); *see also id.* at 5 ("I am seeking retroactive payment for any monetary bonus . . . that I would have received had I been rated at the 'Exceeds Fully Successful' level for [Fiscal Year] 2021.").

Because Plaintiff challenged the 2021 performance bonus denial in her EEO complaint, the performance bonus falls within "the scope of the administrative charge itself," and Plaintiff has exhausted her discrimination claim based on that action under the law of both the Fifth Circuit and the D.C. Circuit. *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (citation omitted); *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019) (stating that a plaintiff may bring claims in court "that were actually part of the administrative charge" (citation omitted)).

---

[3] Plaintiff does not explicitly challenge the dismissal of this claim. Instead, she appears to believe the DC Court did not dismiss it. *See* Pl.'s Br. 2 n.3 (indicating that the DC Opinion did not affect Plaintiff's claim of discrimination based on the denial of a performance bonus). Plaintiff views the performance rating and ensuing bonus denial as one action. *See id.* at 2. The DC Court instead treated them as two separate actions but did not provide an explanation for doing so. *See* DC Op. 7-8. Because of this confusion, the Court sua sponte reconsiders the DC Opinion on this point. *See Baig v McDonald*, 749 F. App'x 238, 241 (5th Cir. 2018) (holding that a district court did not abuse its discretion in reconsidering a prior ruling); *Hernandez v. Kloesel*, No. 6:20-CV-00034, 2021 WL 5987042, at *2 (S.D. Tex. Dec. 15, 2021) (stating that district courts may "*sua sponte* reconsider an order under Rule 54(b)" (citation omitted)).

\*       \*       \*

In summary, the Court concludes that Plaintiff currently has a discrimination claim based on (1) the 2021 performance rating and denial of a bonus; (2) the PIP; (3) the failure to reassign Plaintiff to a new supervisor; and (4) the failure to close the investigation into Plaintiff. Plaintiff has a retaliation claim based on (1) the Notice of Proposed Removal; (2) the failure to reassign Plaintiff to a new supervisor; (3) the opening of an investigation into Plaintiff; and (4) the failure to close the investigation into Plaintiff.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Alisa Walton's Motion for Reconsideration [ECF No. 60]. The Court **GRANTS** the Motion as to: (1) Plaintiff's retaliation claim based on the Notice of Proposed Removal and investigation; and (2) Plaintiff's discrimination claim based on the denial of a performance bonus in 2021. The Court **DENIES** the Motion to the extent Plaintiff intended to seek reconsideration of the rulings on her claims based on her removal from a highly significant investigation in 2022, the failure to assign her to new investigations, and the failure to issue her a Full Year appraisal for Fiscal Year 2022. With respect to Plaintiff's claims based on the failure to close the investigation and the failure to reassign her to a new supervisor, the DC Court did not dismiss those claims, and the Court cannot reconsider a decision that was not made. As such, the Court **TERMINATES AS MOOT** Plaintiff's request for reconsideration of those claims.

**SO ORDERED.**

SIGNED April 10, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

11